UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| NELLIE SAMPSON,<br><br>*on behalf of herself and all other employees similarly situated,*<br><br>*Plaintiffs,*<br><br>v.<br><br>**MEDISYS HEALTH NETWORK INC., THE JAMAICA HOSPITAL, THE BROOKDALE HOSPITAL MEDICAL CENTER, FLUSHING HOSPITAL AND MEDICAL CENTER, PENINSULA HOSPITAL CENTER, DAVID P. ROSEN, AND MAX SCLAIR,**<br><br>*Defendants.* | **AMENDED COMPLAINT- CLASS ACTION AND DEMAND FOR JURY TRIAL**<br><br>**Civil Action No. 10-cv-1342** |

## NATURE OF CLAIM

1.    This is a proceeding for injunctive and declaratory relief and monetary damages to redress the deprivation of rights secured to plaintiff, Nellie Sampson, individually, as well as all other employees similarly situated ("Class Members"), under the Fair Labor Standards Act of 1938 ("FLSA"), the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961 *et seq.*, the New York Labor Law, and under the common law and various laws of the State of New York.

## JURISDICTION AND VENUE

2.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343 (3) and (4) conferring original jurisdiction upon this Court of any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights; under 28 U.S.C. § 1337 conferring jurisdiction of any civil action arising under any Act of Congress regulating interstate commerce; under the Declaratory Judgment Statute, 28 U.S.C. § 2201; under 29 U.S.C. § 216(b); and under 18 U.S.C. §

1964(a) and (c).

3.    This Court's supplemental jurisdiction of claims arising under New York State Law is also invoked.

4.    Venue is appropriate in the Eastern District of New York since the allegations arose in this District and the Named Plaintiff resides in this District.

## CLASS ACTION ALLEGATIONS

5.    The claims arising under RICO are properly maintainable as a class action under Federal Rule of Civil Procedure 23 ("Rule 23").

6.    The class action is maintainable under subsections (1), (2) and (3) of Rule 23(b).

7.    The class consists of current and former employees of defendants who were injured by defendants' scheme to cheat employees out of their property and to convert the employees' property, including their wages and/or overtime pay, by misleading employees about their rights under the law.

8.    Common questions of law and fact predominate in this action because the claims of Plaintiffs and Class Members are based on whether defendants' policies and practices of not properly paying employees for all hours worked is a part of a scheme to defraud Plaintiffs in violation of RICO.

9.    The claims arising under New York State law are also properly maintainable as a class action under Rule 23.

10.    The class consists of current and former employees who worked for defendants, were paid hourly, and were not paid for all the time they worked including applicable premium pay.

11.     Common questions of law and fact predominate in this action because the claims of all class members are based on whether defendants' practice of not paying nonexempt employees for all hours worked and/or overtime for hours worked over forty per week violates the law.

12.     The class size is believed to be over 11,000 employees.

13.     The Plaintiffs will adequately represent the interests of the Class Members because they are similarly situated to the Class Members and their claims are typical of, and concurrent to, the claims of the other Class Members.

14.     There are no known conflicts of interest between the Plaintiffs and the other Class Members.

15.     The Class Counsel, Thomas & Solomon LLP, is qualified and able to litigate the Plaintiffs' and Class Members' claims.

16.     The Class Counsel concentrates its practice in employment litigation, and its attorneys are experienced in class action litigation, including class actions arising under federal wage and hour laws.

17.     The class action is maintainable under subsections (2) and (3) of Rule 23(b) because the Plaintiffs and Class Members seek injunctive relief, common questions of law and fact predominate among the Plaintiffs and Class Members, and the class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## PARTIES

A.     **Defendants**

18.     Collectively, MediSys Health Network Inc., The Brookdale Hospital Medical Center, Flushing Hospital and Medical Center, The Jamaica Hospital, Peninsula Hospital

-3-

Center, David P. Rosen, and Max Sclair (collectively, "Named Defendants") are related organizations through, for example, common membership, governing bodies, and trustees and/or officers.

19.    Named Defendants' health care facilities and centers include the following: MediSys-Astoria Ambulatory Care Center, MediSys-East New York Ambulatory Care Center, MediSys-Hollis Ambulatory Care Center, MediSys Hollis Tudors Ambulatory Care Center, MediSys-Howard Beach Ambulatory Care Center, MediSys-Jamaica Ambulatory Care Center, MediSys Ozone Park Ambulatory Care Center, MediSys-Richmond Hill Family Practice, MediSys-Senior Health Center, MediSys-Women's Health, Senior Health Center, MediSys-St. Albans Ambulatory Care Center, Jamaica Hospital's Dental Center, Jamaica Hospital Chest Pain Center, Lupus Center at Jamaica Hospital, Trump Pavilion for Nursing and Rehabilitation, The Brady Institute, Arlene and David Schlang Pavilion, Schulman and Schachne Institute, Schulman and Schachne Adult Day Health Care, Community Health Center, Brookdale Family Care Center Flatbush at Brookdale University and Medical Center, Brookdale Family Care Center Bristol at Brookdale University and Medical Center, Brookdale Family Care Center Pennsylvania at Brookdale University Hospital and Medical Center, Brookdale Family Care Center New Lots at Brookdale University Hospital and Medical Center, Brookdale Family Care Center at Linden at Brookdale University Hospital and Medical Center, Brookdale Family Care Urban Strategies at Brookdale University Hospital and Medical Center, Bruner Developmental Disabilities Center, Pediatric Pulmonary Division and Sleep Center, Brookdale Digestive Health Center, Treatment for Life Center at Brookdale University Hospital and Medical Center, Child and Adolescent Psychopharmacology Clinic, Ambulatory Dialysis Clinic, the Blood Conservation Program,

Comprehensive Pediatric Sickle Cell Center, the Hyperbaric Medicine and Wound Healing Center, Chernow Urological Research Center, Sanford Avenue Clinic, Geriatric Clinic, Memory Disorders Clinic, Ambulatory Clinic at Flushing House, Pain Management Clinic at Flushing Medical Center, Eisenstadt Hospice Center at Peninsula, Peninsula Center for Extended Care and Rehabilitation and Wound Care Center at Flushing Hospital Medical Center (collectively "Health Centers").

20.     Named Defendants affiliated health care facilities and centers include the following: The Brookdale Hospital Center Hegeman Avenue Housing Company, Inc., The Schulman and Schachne Institute for Nursing and Rehabilitation, Inc., Linroc Community Service Corporation, The Brookdale Residence Housing Development Fund Corporation, Rockreal Corporation, Amboy Properties Corporation, VWE Properties Corporation, MediSys Ambulance Service, Inc., International Association of Medical Bike Units, Inc., NHP Holdings LLC, Royal Health Care of Long Island, LCSC Holdings, Inc., MediSys Ventures, Inc., FRR Recovery, Inc., MediSys Management, LLC, Jamaica Hospital Nursing Home, Inc., MediSys Service Corporation, Flushing Manor Care Center, Inc., Advanced Center for Psychotherapy, Inc., Brookdale Family Care Centers, Inc., and Albert Einstein College of Medicine of Yeshiva University (collectively, "Affiliates").

21.     Together the Named Defendants, the Health Centers and the Affiliates are referred to as "MediSys Health Network Inc." or "defendants."

22.     MediSys Health Network Inc. is an enterprise engaged in the operation of hospitals and/or the care of the sick and is a healthcare consortium.

23.     Defendants operate over 40 health care facilities and centers and employ approximately 11,000 individuals.

24.    Further, MediSys Health Network Inc. claims they are one of the largest employers in New York City, consisting of an integrated network.

25.    Defendants publish one newsletter "MediSys Pulse" for the entire System.

26.    Therefore, defendants constitute an integrated, comprehensive, consolidated health care delivery system, offering a wide range of services.

27.    For example, defendants have centralized supply chain management, and financial, computer, payroll and health records systems that are integrated throughout their locations.

28.    Further, defendants' labor relations and human resources are centrally organized and controlled, as well as the maintenance of system-wide policies and certain employee benefit plans.

29.    Defendants share common management, including oversight and management by a senior executive team and board of directors.

30.    Defendants have common ownership.

31.    At all relevant times, MediSys Health Network Inc. has suffered or permitted Plaintiffs and Class Members to perform work for it at its various health care locations.

32.    Plaintiffs and Class Members are or have been employed by MediSys Health Network Inc. and/or have been jointly employed by MediSys Health Network Inc.

33.    MediSys Health Network Inc. operates locations, either directly or indirectly through the Health Centers and Affiliates, and therefore is the employer of Plaintiffs and Class Members who are or were employed at all locations.

34.    As such, defendants are the employer (single, joint or otherwise) of the Plaintiffs and Class Members and/or alter egos of each other.

-6-

35.     In light of the economic realities of the enterprise operated by MediSys Health Network Inc., MediSys Health Network Inc. is a joint employer of Plaintiffs and Class Members.

36.     Collectively, MediSys Health Network Inc. comprises a single, integrated enterprise, as they perform related activities through common control for a common business purpose.

37.     Defendants also engage in a joint venture of operational control for providing healthcare services by entering an agreement, established through their conduct in sharing the profits and losses.

38.     Defendants jointly managed and controlled this venture as well as its employees and assets.

39.     Defendants are jointly and severally liable to the Plaintiffs and Class Members for the damages arising out of this joint venture.

40.     David P. Rosen is the President and Chief Executive Officer ("CEO") of MediSys Health Network Inc.

41.     As the President and CEO of MediSys Health Network Inc., Mr. Rosen has operational control over the System.  For example, Mr. Rosen has also been involved in the acquisition of Peninsula Hospital Center into the MediSys Health Network Inc.  Such an acquisition provides Mr. Rosen further bargaining power in the marketplace on behalf of the MediSys Health Network Inc.

42.     As President and CEO, Mr. Rosen is listed as the Principal Officer of the MediSys Health Network Inc. on tax documentation.

43.     In 2006, Mr. Rosen testified before the New York State Assembly Committee

on Health Insurance, on behalf of MediSys Health Network Inc., regarding the role of HMOs in New York State healthcare.

44.    In concert with others, Mr. Rosen has the authority to, and does, make decisions that concern defendants' operations and significant functions, including functions related to employment, human resources, training and payroll.

45.    For example, as President and CEO, Mr. Rosen has participated in employee recognition programs.

46.    In his role as President and CEO of MediSys Health Network Inc., Mr. Rosen serves on the boards of the Greater New York Hospital Association, New York State Coalition of Financially Distressed Hospitals, and New York City Primary Care Development Corporation, as well as the Greater Jamaica Development Corporation.

47.    Due in part to his role, Mr. Rosen, has the authority to, and does, make decisions concerning the policies defendants adopt and the implementation of those policies.

48.    Further, Mr. Rosen in concert with others, is involved in the creation and/or maintenance of the illegal policies complained of in this case.

49.    Because Mr. Rosen has authority to hire or fire employees, provide and direct support regarding human resources issues, including the hiring and firing of employees, and control the drafting and enforcement of the policies which govern the hiring and firing of employees, Mr. Rosen has the power to hire and fire employees.

50.    Because Mr. Rosen, in concert with others, provides day-to-day support regarding human resources issues, including employees' work schedules and/or conditions of employment and controls the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, he is affirmatively, directly, and

actively involved in operations of the defendants' business functions, particularly in regards to the employment of employees.

51.    Based upon the foregoing, Mr. Rosen is liable to Plaintiffs and Class Members because of his operational control over the corporation, his role in the violations complained of in this action, his status as an employer, and/or according to law.

52.    Max Sclair is the Vice President of Human Resources for MediSys Health Network Inc.

53.    As Vice President of Human Resources of MediSys Health Network Inc., Mr. Sclair has operational control over the human resource functions across MediSys Health Network Inc.

54.    As Vice President of Human Resources, Mr. Sclair has hosted employee recognition programs.

55.    Mr. Sclair, in concert with others, has the authority to, and does, make decisions that concern defendants' operations and controls significant functions of MediSys Health Network Inc., including functions related to employment, human resources, training, payroll and benefits.

56.    As Vice President of Human Resources, Mr. Sclair is actively involved in payroll functions across MediSys Health Network Inc.

57.    In his role, Mr. Sclair controls significant functions of MediSys Health Network Inc.   For example, in the concert with others, Mr. Sclair, created and/or implemented human resource policies for MediSys Health Network Inc.

58.    Mr. Sclair, in concert with others, is actively involved in the determination and drafting of human resources policies, the resolution of issues and disputes regarding policies

and their application, the counseling locations receive regarding human resources issues, and communications with employees about human resources issues and policies.

59.     As Vice President of Human Resources, Mr. Sclair, in concert with others, is involved in the creation and/or maintenance of the illegal policies complained of in this case.

60.     In his role as Vice President of Human Resources, Mr. Sclair is actively involved in defendants' employment and human resources records, including the systems for keeping and maintaining those records.

61.     Further, Mr. Sclair, is actively involved in reviewing and counseling defendants regarding employment decisions, including hiring and firing of Plaintiffs.

62.     Because Mr. Sclair has authority to hire or fire employees, provide and direct support regarding human resources issues, including the hiring and firing of employees, and control the drafting and enforcement of the policies which govern the hiring and firing of employees, Mr. Sclair has the power to hire and fire employees.

63.     Based upon the foregoing, Mr. Sclair is liable to employees because of his operational control over the corporation, his role in the violations complained of in this action, his status as an employer, and/or according to law.

**B.     Plaintiffs**

*Named Plaintiff*

64.     At all relevant times, Nellie Sampson ("Plaintiffs") was an employee and was employed within this District.

*Class Members*

65.     The Class Members are those employees of defendants who were suffered or permitted to work by defendants and not paid their regular or statutorily required rate of pay

for all hours worked.

## FACTUAL BACKGROUND

66.    MediSys Health Network Inc. is a large health care provider in New York.

67.    As discussed below, defendants maintained several illegal pay policies that denied Plaintiffs and Class Members compensation for all hours worked, including applicable premium pay rates.

### *Meal and Break Deduction Policy*

68.    Pursuant to defendants' "Meal and Break Deduction Policy," defendants' timekeeping system automatically deducts time from employees' paychecks each day for meals, breaks and other reasons.

69.    Despite having this policy, defendants do not ensure that Plaintiffs and Class Members perform no work during the breaks.

70.    Plaintiffs and Class Members do in fact perform work during those breaks and are not paid for that time.

71.    Defendants know or should have known that the Plaintiffs and Class Members perform work during these meal and other unpaid breaks, but still do not pay them for this time pursuant to their Meal and Break Deduction Policy.

72.    Defendants maintain the Meal and Break Deduction Policy throughout their facilities and centers.

73.    Plaintiffs and Class Members allow defendants to operate on a 24/7 basis, and in doing so, Plaintiffs and Class Members often perform compensable work for defendants during their uncompensated breaks.

74.    Defendants do not prohibit Plaintiffs and Class Members from working

-11-

during their unpaid breaks and do not have rules against such work.

75.   Although defendants' policy deducts time each shift, defendants expect Plaintiffs and Class Members to be available to work throughout their shifts and consistently require their employees to work during their unpaid breaks.

76.   Plaintiffs and Class Members are not relieved by another employee when their break comes, or asked to leave their work location.

77.   Further, given the demands of the health care industry and short staffing, defendants' management knew that to get the tasks done they assigned to Plaintiffs and Class Members, when they needed to get done, Plaintiffs and Class Members had to work through their meal breaks, even during times they were not paid for their meal breaks.

78.   Accordingly, defendants should have known that Plaintiffs and Class Members perform work during their unpaid breaks.

79.   Further, defendants actually know that Plaintiffs and Class Members perform work during their unpaid breaks.

80.   For example, Plaintiffs and Class Members perform work for the defendants, on defendants' premises, in plain sight, and at management's request.

81.   Defendants' management has repeatedly observed Plaintiffs and Class Members working through their unpaid breaks.  Defendants' management has gone so far as to direct Plaintiffs and Class Members to work during their unpaid breaks even though defendants' management knew that they would not be able to have a full break.

82.   Plaintiffs and Class Members had conversations with defendants' managers in which they discussed how they were working through their meals or unpaid breaks and were not getting paid for such work.

83.     When questioned by employees about the Meal and Break Deduction Policy, the defendants affirmatively stated that the employees were being fully paid for the work time for which they were entitled to be paid, even though defendants knew compensable work time was being excluded from the employees' pay.  Such conversations occurred with Plaintiffs and Class Members on a number of occasions.  These representations were part of a course of conduct ( *see e.g.,* ¶¶ 101-105, 122-132) to defraud Plaintiffs and Class Members from the pay they were owed, and to mislead them into believing they had been fully paid as required by law.

84.     Even though defendants know or should have known their employees are performing such work, defendants fail to compensate their employees for such work.

85.     All Plaintiffs and Class Members are subject to the Meal and Break Deduction Policy and are not fully compensated for work they perform during breaks, including, without limitation, hourly employees working at MediSys Health Network Inc.'s facilities and centers, such as secretaries, housekeepers, custodians, clerks, porters, registered nurses, licensed practical nurses, transport nurses, nurse aides, administrative assistants, anesthetists, clinicians, medical coders, medical underwriters, nurse case managers, nurse interns, nurse practitioners, nurse aides, practice supervisors, professional staff nurses, quality coordinators, resource pool nurses, respiratory therapists, senior research associates, operating room coordinators, surgical specialists, admissions officers, student nurse techs, trainers, transcriptionists, occupational therapists, occupational therapy assistants, physical therapists, physical therapy assistants, radiation therapists, staff therapists, angiotechnologists, x-ray technicians, CAT scan technicians, mammographers, MRI technologists, sleep technologists, surgical technologists, radiographers, phlebotomists, respiratory technicians, respiratory care

specialists, respiratory care practitioners, clinical coordinators, medical assistants, home care nurses, home health aides, clinical case managers, midwives and other health care workers.

86.    Plaintiffs and Class Members are entitled to compensation for all time they performed work for defendants, including during their unpaid breaks.

87.    In addition, if Plaintiffs' and Class Members' hours had been properly calculated, the time spent working during unpaid breaks often would include work that should have been calculated at applicable premium pay rates.

88.    Plaintiffs and Class Members subject to the Meal and Break Deduction Policy are members of Subclass 1.

### *Unpaid Pre- and Post Schedule Work Policy*

89.    Defendants suffered or permitted Plaintiffs and Class Members to perform work before and/or after the end of their scheduled shifts.

90.    However, defendants failed to pay Plaintiffs and Class Members for all time spent performing such work as a result of defendants' policies, practices and/or time recording system (the "Unpaid Preliminary and Postliminary Schedule Work Policy").

91.    In addition, if Plaintiffs' and Class Members' hours had been properly calculated, the time spent performing work before and/or after their shifts often would have included work that should have been calculated at applicable premium pay rates.

92.    Plaintiffs and Class Members subject to the Unpaid Preliminary and Postliminary Schedule Work Policy are members of Subclass 2.

### *Unpaid Training Policy*

93.    Defendants also suffered or permitted Plaintiffs and Class Members to attend compensable training programs.

94.     However, defendants fail to pay employees for all time spent attending such training sessions (the "Unpaid Training Policy").

95.     In addition, if Plaintiffs' and Class Members' hours had been properly calculated, the time spent attending training often would have included work that should have been calculated at applicable premium pay rates.

96.     All Plaintiffs and Class Members subject to the Unpaid Training Policy are members of Subclass 3.

97.     Collectively, the Meal and Break Deduction Policy, the Unpaid Preliminary and Postliminary Schedule Work Policy, and the Unpaid Training Policy, are referred to herein as the "Unpaid Work Policies."

### *Additional Allegations*

98.     Plaintiffs and Class Members were subject to defendants' timekeeping policies which fail to ensure that employees are compensated for all hours worked, including pursuant to the Unpaid Work Policies.

99.     Even though MediSys Health Network Inc. knows its employees are performing such work, MediSys Health Network Inc. fails to compensate its employees for such work.

100.    Defendants' practice is to be deliberately indifferent to these violations of the statutory wage and overtime requirements.

101.    Through the paystubs and payroll information it provided to employees, MediSys Health Network Inc. deliberately concealed from its employees that they did not receive compensation for all compensable work that they performed and misled them into believing they were being paid properly.

-15-

102.    Further, by maintaining and propagating the illegal Unpaid Work Policies, defendants deliberately misrepresented to Plaintiffs and Class Members that they were being properly paid for all compensable time, even though Plaintiffs and Class Members were not receiving pay for all time worked including applicable premium pay.

103.    The defendants engaged in such conduct and made such statements to conceal from the Plaintiffs and Class Members their rights and to frustrate the vindication of the employees' rights.

104.    As a result, employees were unaware of their claims.

105.    Defendants' failure to pay overtime as required by the FLSA is willful.

106.    Defendants, however, at all times, intended to violate applicable laws by failing to pay Plaintiffs and Class Members their regular or statutorily required rate of pay for all hours worked including applicable premium pay.

107.    Among the relief sought, Plaintiffs and Class Members seek injunctive relief to prevent defendants from continuing the illegal policies and practices perpetuated pursuant to the Unpaid Work Policies.

108.    As used in this Complaint, "mailed" means: (1) placing in any post office or authorized depository for mailed matter, any matter or thing to be delivered by the United States Postal Service; (2) causing to be deposited any matter or thing to be delivered by any private or commercial interstate carrier; (3) taking or receiving therefrom any such matter or thing; and/or (4) knowingly causing to be delivered by any such means any such matter.

109.    Plaintiffs and Class Members allege that defendants devised, intended to devise, and carried out a scheme to cheat Plaintiffs and Class Members out of their property and to convert Plaintiffs' and Class Members' property, including their wages and/or overtime

pay (the "Scheme").  Defendants' Scheme consisted of illegally, willfully and systematically withholding or refusing to pay Plaintiffs and Class Members their regular or statutorily required rate of pay for all hours worked in violation of law, as described previously in this Complaint.

110.    Defendants' Scheme involved the employment of material misrepresentations and/or omissions and other deceptive practices reasonably calculated to deceive Plaintiffs and Class Members.  The Scheme involved depriving Plaintiffs and Class Members of their lawful entitlement to wages and overtime.

111.    In executing or attempting to execute the Scheme and to receive the financial benefits of the Scheme, defendants repeatedly mailed payroll checks, either directly to Plaintiffs and Class Members or between defendants' business locations.  These mailings occurred on a regular basis and more than 100 such mailings occurred in the last 10 years.

112.    The payroll checks were false and deceptive because they misled Plaintiffs and Class Members about the amount of wages to which they were entitled, the number of hours which they had worked, and whether defendants had included all compensable work time, as well as Plaintiffs' and Class Members' status and rights under the FLSA.  Plaintiffs and Class Members relied to their detriment on the misleading payroll checks that defendants mailed and those misleading documents were a proximate cause of Plaintiffs' and Class Members' injuries.

113.    Each time a check was mailed to Plaintiffs and Class Members, Plaintiffs and Class Members were separately injured.  Therefore, a separate cause of action accrues for each such injury.

114.    Before plaintiffs and Class Members received each separate paycheck, they

were unaware of such injury.

115.   Defendants' predicate acts of mailing the misleading payroll checks in furtherance of their Scheme constitute a pattern of conduct unlawful pursuant to 18 U.S.C. § 1961(5) based upon both the relationship between the acts and continuity over the period of time of the acts.  The relationship was reflected because the acts were connected to each other in furtherance of the Scheme.  Continuity was reflected by both the repeated nature of the mailings during and in furtherance of the Scheme and the threat of similar acts occurring in the future.  The threat was reflected by the continuing and ongoing nature of the acts.

116.   Defendants' predicate acts were related, because they reflected the same purpose or goal (to retain wages and overtime pay due to Plaintiffs and Class Members for the economic benefit of defendants and members of the enterprise); results (retention of wages and overtime pay); participants (defendants and other members of the enterprise); victims (Plaintiffs and Class Members); and methods of commission (the Scheme and other acts described in the Complaint).  The acts were interrelated and not isolated events, since they were carried out for the same purposes in a continuous manner over a substantial period of time.

117.   At all relevant times, in connection with the Scheme, defendants acted with malice, intent, knowledge, and in reckless disregard of Plaintiffs' and Class Members' rights.

118.   Each of the Plaintiffs and Class Members is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964.

119.   Each defendant is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

120.   Defendants were members of an "enterprise" under 18 U.S.C. §§ 1961(4) and

-18-

1962(a), which was engaged in or the activities of which affected interstate and foreign commerce.

121.    Each defendant received income from a pattern of conduct unlawful under RICO, in which defendants participated through continuous instances of providing Plaintiffs and Class Members with misleading documents which defendants mailed and upon which Plaintiffs and Class Members relied to their detriment.

122.    Plaintiffs and Class Members were injured in their business and property under 18 U.S.C. § 1964(c) by reason of defendants' commission of conduct which was unlawful under RICO.

123.    Every wage payment that the defendants mailed to the Plaintiffs and Class Members as part of the Scheme constituted a new legal injury to the Plaintiffs and Class Members.

124.    Therefore, each and every improper payment within the relevant statute of limitations period constitutes a new legal injury and the Plaintiffs and Class Members are entitled to recover based on the reduction in each improper payment.

125.    Additionally, as set forth in the allegations above, including ¶¶ 83, 101-105, the defendants fraudulently concealed from the Plaintiffs and Class Members the facts that are the basis for their claims. Further, such conduct by the defendants equitably tolls the statute of limitations covering Plaintiffs' and Class Members' claims.

126.    Because of such conduct, the Plaintiffs and Class Members did not discover in the relevant statute of limitations period that the defendants were not paying them properly.

127.    The Plaintiffs and Class Members exercised due diligence, but still were unaware of their rights.

128.   The Plaintiffs and Class Members are not experts in proper payment under labor laws, and more specifically are not aware of what time is compensable for interrupted and missed meal breaks, nor how the defendants' internal computer systems were determining the amount they were being paid.

129.   Further, when questioned, the defendants falsely assured Plaintiffs and Class Members that the defendants understood federal and state labor laws and that based on that knowledge, the defendants were ensuring that they were properly paying the Plaintiffs and Class Members.

130.   The defendants made this representation despite the fact that such claims were false, fully knowing that Plaintiffs and Class Members were relying on the defendants' "expertise" and assurances.

131.   Further, these assurances were not contradicted by the information in legal postings required by state or federal law to be displayed prominently at places of work to which Plaintiffs and Class Members had access.

132.   Prior to seeking legal advice from Class Counsel, the Plaintiffs were never alerted to the defendants' concealment of their violation of the law by failing to pay the Plaintiffs and Class Members properly.

133.   Further, not until the commencement of this action were Class Members made aware that the defendants' conduct in fact violated the law.

134.   Plaintiffs and Class Members were not classified as exempt employees because hourly employees do not fall under one of the enumerated exemptions under the FLSA.

135.   Plaintiffs and Class Members were subject to defendants' timekeeping policies which fail to ensure that employees are compensated for all hours worked, including pursuant

to the Unpaid Work Policies.

136.    Defendants' practice is to be deliberately indifferent to these violations of the statutory wage and overtime requirements contained under New York Labor Law and state common law.

137.    Defendants failed to act in good faith by failing to pay wages and overtime as required by New York Labor Law and state common law.

138.    As a direct and proximate cause of defendants' failure to act in good faith, defendants violated the New York Labor Law and state common law.

139.    In addition, Plaintiffs and Class Members have suffered non-economic harm as a result of the Unpaid Work Policies, including, but not limited to, the personal loss of break and rest time, personal suffering and emotional distress.

140.    Because defendants' Unpaid Work Policies involve an employer intentionally misleading and deceiving employees about their wages, and withholding wages legally and properly payable to employees, they are policies that are against the strong public policy of the State of New York with respect to employees' wages.

141.    Among the relief sought, Plaintiffs and Class Members seek injunctive relief to prevent MediSys Health Network Inc. from continuing the illegal policies and practices perpetuated pursuant to the Unpaid Work Policies.

142.    By entering into an employment relationship, defendants and Plaintiffs and Class Members entered into a contract for employment, including implied contracts and express contracts.  While these contracts were generally oral express contracts and/or implied contracts, from time to time, these contracts were memorialized in writing.

143.    Defendants entered into express oral contracts with Plaintiffs and Class

Members that were explicitly intended to order and govern the employment relationship between defendants and Plaintiffs and Class Members.

144.    In particular, Plaintiffs and Class Members had express oral contracts with MediSys Health Network Inc.

145.    Plaintiffs and Class Members also had express oral contracts with those Named Defendants, Affiliates and Health Centers where they worked.

146.    These binding, express oral contracts provided that Plaintiffs and Class Members would provide services and labor to defendants in return for compensation under the provisions of the contract.

147.    This express oral contract also included defendants' explicit promise to compensate Plaintiffs and Class Members for "all hours worked" by them during their employment period.

148.    As alleged herein, Plaintiffs and Class Members regularly worked hours both under and in excess of forty per week and were not paid for all of those hours.

149.    The defendants failed to pay for time that Plaintiffs and Class Members worked including, but not limited to, during their meal breaks, time that Plaintiffs and Class Members spent in required, job related training, and time that Plaintiffs and Class Members spent before and after their regular work hours performing work-related tasks.

150.    Defendants also entered into implied contracts with Plaintiffs and Class Members as a result of their on-going dealings and course of conduct with Plaintiffs and Class Members.

151.    In particular, Plaintiffs and Class Members had implied contracts with MediSys Health Network Inc., David P. Rosen and Max Sclair.

-22-

152.    Plaintiffs and Class Members also had implied contracts with those Named Defendants, Affiliates and Health Centers who employed them.

153.    Pursuant to these implied contracts, Plaintiffs and Class Members agreed with defendants that, among other things, defendants would pay Plaintiffs and Class Members for all hours worked.

154.    Specifically, defendants contracted to hire Plaintiffs and Class Members at a set rate of pay, with a set work schedule for a particular position, and under set terms of employment.

155.    Defendants failed to compensate Plaintiffs and Class Members in compliance with this implied contract by failing to compensate Plaintiffs and Class Members for time that they worked, including pursuant to the Unpaid Work Policies.

156.    As noted above, from time to time, the contracts between defendants, including MediSys Health Network Inc. and Plaintiffs and Class Members were memorialized in writing and were explicitly intended to order and govern the employment relationship between defendants and Plaintiffs and Class Members.

157.    Defendants failed to act in good faith and breached the express and/or implied contract terms by failing to pay Plaintiffs and Class Members for all of the time Plaintiffs and Class Members worked and by failing to pay Plaintiffs and Class Members for all time worked including applicable premium pay.  As a result of defendants' breach of express and implied contracts, Plaintiffs and Class Members have been harmed, and as a direct and proximate result have suffered damages including all amounts they should have been paid for all time worked including applicable premium pay.

158.    Both unwritten contracts and any written contracts between Plaintiffs and

Class Members and defendants contained an implied covenant of good faith and fair dealing, which obligated defendants to perform the terms and conditions of the employment contract fairly and in good faith and to refrain from doing any act that would deprive Plaintiffs and Class Members of the benefits of the contract.

159.   As a result of defendants' breach of the duty of good faith and fair dealing, Plaintiffs and Class Members have been harmed and as a direct and proximate result have suffered damages including all amounts they should have been paid for all the time worked, including applicable premium pay.

160.   As detailed herein, Plaintiffs and Class Members had valid express and/or implied contracts with defendants.

161.   In the event that Plaintiffs and Class Members are found not to have a contract claim, in the alternative, Plaintiffs and Class Members allege that defendants are liable to Plaintiffs and Class Members because they have been unjustly enriched and/or are liable under the theory of quantum meruit for their treatment of Plaintiffs and Class Members under the Unpaid Work Policies.

162.   Plaintiffs and Class Members conferred a benefit upon defendants by working on defendants' behalf without receiving compensation, including premium overtime compensation.

163.   As detailed herein, rather than incur additional labor costs by paying non-exempt hourly-paid employees for all of the hours that they worked, defendants required Plaintiffs and Class Members to work hours under and in excess of forty hours per week without receiving any compensation for those hours.

164.   Defendants failed to compensate Plaintiffs and Class Members for all time

worked, including pursuant to the Unpaid Work Policies.

165.    Defendants had an appreciation or knowledge of the benefit conferred by these Plaintiffs and Class Members.  For example, defendants' management has: observed Plaintiffs and Class Members working through their unpaid meal breaks, directed Plaintiffs and Class Members to work during their unpaid meal breaks, and affirmatively told Plaintiffs and Class Members that they could not be paid for such time.

166.    Defendants have received financial gain at the expense of Plaintiffs and Class Members because they did not pay Plaintiffs and Class Members for all hours worked and defendants kept the monies owed to the Plaintiffs and Class Members.

167.    Defendants have received financial gain under such circumstances that, in equity and good conscience, defendants ought not to be allowed to profit at the expense of Plaintiffs and Class Members.

168.    Defendants enjoyed the benefit of the monies rightfully belonging to the Plaintiffs and Class Members at the expense of the Plaintiffs and Class Members.

169.    Defendants failed to act in good faith by failing to pay for all the time worked including applicable premium pay, which has unjustly enriched defendants to the detriment of Plaintiffs and Class Members.

170.    Defendants failed to act in good faith and violated their obligations by failing to pay Plaintiffs and Class Members for the reasonable value of the services performed by Plaintiffs and Class Members for defendants.

171.    As a direct and proximate result of defendants' unjust enrichment, Plaintiffs and Class Members have suffered injuries and are entitled to reimbursement, restitution and disgorgement from defendants of the benefits conferred by Plaintiffs' and the Class Members'

work without compensation.

172.   In the event that Plaintiffs and Class Members are found not to have a contract claim against defendants, in the alternative, Plaintiffs and Class Members allege that defendants are liable for having engaged in fraud and negligent misrepresentation in the course of maintaining their Unpaid Work Policies in their dealings with Plaintiffs and Class Members, for having converted property belonging to Plaintiffs and Class Members under the Unpaid Work Policies.

173.   Through the paystubs and payroll information it provided to employees, MediSys Health Network Inc. deliberately concealed from its employees that they did not receive compensation for all the work they performed and misled them into believing they were being paid properly.

174.   Plaintiffs and Class Members are under no duty to inquire of defendants that they were paid for all hours worked including applicable premium pay. As a direct and proximate cause of defendants affirmatively misleading Plaintiffs and Class Members regarding the fact that they were to be paid for all hours worked, defendants are estopped from asserting statute of limitations defenses against Plaintiffs and Class Members.

175.   Further, by maintaining and propagating the illegal policies, defendants deliberately misrepresented to Plaintiffs and Class Members that they were being properly paid for time worked, even though Plaintiffs and Class Members were not receiving pay for all time worked.

176.   Defendants, through their corporate publications and through statements of their agents, represented that wages would be paid legally and in accordance with defendants' obligations pursuant to applicable state laws.

-26-

177.    Defendants misrepresented in their employee manuals and policy manuals to Plaintiffs and Class Members that they would be paid for all hours worked including those worked both under and in excess of forty in a work week.

178.    Defendants intended for Plaintiffs and Class Members to rely upon defendants' misrepresentations that they would be paid for all the time worked, including applicable premium pay.

179.    However, at all times, defendants intended to violate applicable state laws by failing to pay Plaintiffs and Class Members for all the time worked, including applicable premium pay.

180.    These misrepresentations were material to the terms of Plaintiffs' and Class Members' employment contracts (express and implied), and Plaintiffs and Class Members relied on the misrepresentations in agreeing to accept and continue employment with defendants.  This reliance was reasonable, as Plaintiffs and Class Members had every right to believe that defendants would abide by their obligations pursuant to applicable law.

181.    When defendants hired Plaintiffs and Class Members, they represented to Plaintiffs and Class Members that they would be fully compensated for all services performed.

182.    Defendants affirmatively misled Plaintiffs and Class Members regarding the fact that defendants failed to pay Plaintiffs and Class Members for all hours worked.

183.    Defendants induced Plaintiffs and Class Members to accept employment with defendants by misrepresenting to Plaintiffs and Class Members that they would be fully compensated for all hours worked.

184.    There was no reasonable basis for defendants to believe these representations

because defendants had a continuing practice and policy of failing to pay their employees for all the time worked, including applicable premium pay. Plaintiffs and Class Members relied upon defendants' representations by performing work and services for defendants. This reliance was reasonable, as Plaintiffs and Class Members had every right to believe that defendants would abide by their obligations to pay for all hours worked pursuant to applicable law.

185. The defendants engaged in such conduct and made such statements to conceal from the Plaintiffs and Class Members their rights and to frustrate the vindication of the employees' rights under the law.

186. As a result, employees were unaware of their claims.

187. As a direct and proximate cause of defendants' fraud and negligent misrepresentations, Plaintiffs and Class Members have suffered damages because they were not compensated for all hours that they worked both under and in excess of forty hours per week.

188. At all relevant times, defendants had and continued to have a legal obligation to pay Plaintiffs and Class Members all earnings and overtime due. The wages belong to Plaintiffs and Class Members as of the time the labor and services were provided to defendants and, accordingly, the wages for services performed are the property of the Plaintiffs and Class Members.

189. In refusing to pay wages and applicable premium pay to Plaintiffs and Class Members, defendants knowingly, unlawfully and intentionally took, appropriated and converted the wages and overtime earned by Plaintiffs and Class Members for defendants' own use, purpose and benefit. At the time the conversion took place, Plaintiffs and Class

Members were entitled to immediate possession of the amount of wages and overtime earned. As a result, Plaintiffs and Class Members have been denied the use and enjoyment of their property and have been otherwise damaged in an amount to be proven at trial. This conversion was done in bad faith, oppressively, maliciously, and fraudulently and/or done with conscious disregard of the rights of the Plaintiffs and Class Members. This conversion was concealed from Plaintiffs and Class Members.

190.    Defendants' failure to compensate Plaintiffs and Class Members for all the time they worked, including applicable premium pay, constitutes the conversion of the monies of Plaintiffs and the Class Members.

191.    As a direct and proximate result of the conversion by defendants of monies belonging to Plaintiffs and Class Members, Plaintiffs and Class Members have suffered damages including all amounts they should have been paid at regular or premium rates for time worked.

192.    Pursuant to the relationship between defendants and Plaintiffs and Class Members, defendants had a legal duty and obligation to fully account to Plaintiffs and Class Members for all monies due as a result of Plaintiffs' and Class Members' work on behalf of defendants.

193.    Plaintiffs and Class Members were not classified as exempt employees because hourly employees do not fall under one of the enumerated exemptions under the New York Labor Law.

194.    Defendants failed to pay all wages due to Plaintiffs and Class Members on regular days designated in advance pursuant to New York Labor Law.

195.    Plaintiffs and Class Members also allege that defendants have engaged in a

failure to keep accurate records in the course of maintaining their Unpaid Work Policies in their dealings with Plaintiffs and Class Members.

196.    As such, defendants failed to make, keep and preserve true and accurate records of the hours worked by Plaintiffs and Class Members in violation of New York Labor Law.

## FIRST CAUSE OF ACTION
### *FLSA*

197.    Plaintiffs and Class Members reallege the above paragraphs as if fully restated herein.

198.    Defendants willfully violated their obligations under the FLSA and are liable to Plaintiffs and Class Members.

## SECOND CAUSE OF ACTION
### *RICO*

199.    Plaintiffs and Class Members reallege the above paragraphs as if fully restated herein.

200.    Plaintiffs and Class Members bring these claims under 18 U.S.C. § 1964(c), which confers on private individuals the right to bring suit for any injury caused by a violation of 18 U.S.C. § 1962.

201.    Defendants' conduct, and the conduct of other members of the enterprise, injured Plaintiffs and Class Members by refusing to pay their regular or statutorily required rate of pay for all hours worked.  Defendants conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity, by devising a Scheme to obtain Plaintiffs' and Class Members' property by means of false or fraudulent representations, at least some of which were made in the misleading payroll checks

which defendants mailed.

### THIRD CAUSE OF ACTION
#### *New York Labor Law*

202.    Plaintiffs and Class Members reallege the above paragraphs as if fully restated herein.

203.    As a direct and proximate cause of defendants' acts, including defendants' failure to act in good faith, defendants willfully violated the New York Labor Law and Plaintiffs and Class Members have suffered damages pursuant to N.Y. LAB. LAW § 190(8) and N.Y. LAB. LAW § 191 *et seq.*

### FOURTH CAUSE OF ACTION
#### *Breach of Implied Oral Contract*

204.    Plaintiffs and Class Members reallege the above paragraphs as if fully restated herein.

205.    Defendants willfully violated their obligations under the oral contract by failing to pay Plaintiffs or Class Members for all of the work performed for defendants and are liable to Plaintiffs and Class Members for breach of their implied oral contract.

206.    As a direct and proximate cause of defendants' breach of the implied contract, Plaintiffs and Class Members have suffered damages.

### FIFTH CAUSE OF ACTION
#### *Breach of Express Oral Contract*

207.    Plaintiffs and Class Members reallege the above paragraphs as if fully restated herein.

208.    Defendants willfully violated their obligations under the oral contract by failing to pay Plaintiffs and Class Members for all of the work performed for defendants and are liable to Plaintiffs and Class Members for breach of their express oral contract.

209.     As a direct and proximate cause of defendants' breach of this express oral contract, Plaintiffs and Class Members have suffered damages.

## SIXTH CAUSE OF ACTION
### *Breach of Implied Covenant of Good Faith and Fair Dealing*

210.     Plaintiffs and Class Members reallege the above paragraphs as if fully restated herein.

211.     Defendants willfully violated their obligations under the common laws and state laws of New York by breaching the implied covenant of good faith and fair dealing.

212.     As a direct and proximate cause of defendants' breach of the implied covenant of good faith and fair dealing, Plaintiffs and Class Members have suffered damages.

## SEVENTH CAUSE OF ACTION
### *Quantum Meruit*

213.     Plaintiffs and Class Members reallege the above paragraphs as if fully restated herein.

214.     Defendants willfully violated their obligations by failing to pay Plaintiffs and Class Members for the reasonable value of the services performed by Plaintiffs and Class Members and are liable to Plaintiffs and Class Members under quantum meruit.

215.     As a direct and proximate cause of defendants' failure to pay Plaintiffs and Class Members for the reasonable value of services performed by Plaintiffs and Class Members for defendants, Plaintiffs and Class Members suffered damages.

## EIGHTH CAUSE OF ACTION
### *Unjust Enrichment/Restitution*

216.     Plaintiffs and Class Members reallege the above paragraphs as if fully restated herein.

217.     As a result of defendants' conduct, the common laws and state laws of New

York imply a contract obligating defendants to make restitution to Plaintiffs and Class Members, in the amount by which, in equity and good conscience, defendants have been unjustly enriched.

218.    As a direct and proximate cause of defendants' actions, Plaintiffs and Class Members have suffered damages.

## NINTH CAUSE OF ACTION
### *Fraud*

219.    Plaintiffs and Class Members reallege the above paragraphs as if fully restated herein.

220.    Defendants willfully violated their obligations by committing fraud against Plaintiffs and Class Members under the common laws and the state laws of New York and are liable to Plaintiffs and Class Members.

221.    As a direct and proximate cause of the fraud committed by defendants, Plaintiffs and Class Members did not receive the statutorily mandated wages and suffered damages.

## TENTH CAUSE OF ACTION
### *Negligent Misrepresentation*

222.    Plaintiffs and Class Members reallege the above paragraphs as if fully restated herein.

223.    Defendants willfully violated their obligations under the common laws and the state laws of New York by misrepresenting to Plaintiffs and Class Members that they would be fully compensated for all services performed and are liable to Plaintiffs and Class Members.

224.    As a direct and proximate result of defendants' negligent misrepresentation,

Plaintiffs and Class Members suffered damages.

## ELEVENTH CAUSE OF ACTION
### *Conversion*

225.   Plaintiffs and Class Members reallege the above paragraphs as if fully restated herein.

226.   Defendants willfully violated their obligations under the common laws and state laws of New York by committing conversion.

227.   As a result of defendants' actions, Plaintiffs and Class Members were damaged and are entitled to all funds converted by defendants with interest thereon, all profits resulting from such conversion, and punitive or exemplary damages.

## TWELFTH CAUSE OF ACTION
### *Estoppel*

228.   Plaintiffs and Class Members reallege the above paragraphs as if fully restated herein.

229.   Defendants are estopped from asserting statute of limitations defenses against plaintiffs.

**WHEREFORE**, Plaintiffs and Class Members demand judgment against defendants in their favor and that they be given the following relief:

(a)   an order preliminarily and permanently restraining defendants from engaging in the aforementioned pay violations;

(b)   an award crediting Plaintiffs and Class Members for all hours worked;

(c)   an award of the value of Plaintiffs' and Class Members' unpaid wages and overtime;

(d)     liquidated damages under the FLSA equal to the sum of the amount of wages and overtime which were not properly paid to Plaintiffs and Class Members;

(e)     under N.Y. LAB. LAW § 198, an additional amount as liquidated damages equal to twenty-five percent of the total amount of wages found to be due;

(f)     an award of reasonable attorneys' fees, expenses, expert fees and costs incurred in vindicating Plaintiffs' and Class Members' rights;

(f)     an award of pre- and post-judgment interest;

(g)     the amount equal to the value which would make Plaintiffs and Class Members whole for the violations; and

(h)     such other and further legal or equitable relief as this Court deems to be just and appropriate.

## <u>JURY DEMAND</u>

Plaintiffs demand a jury to hear and decide all issues of fact in accordance with Federal Rule of Civil Procedure 38(b).

Dated: June 16, 2010

THOMAS & SOLOMON LLP

By: _____
Justin M. Cordello
*Attorneys for Plaintiffs and Class Members*
693 East Avenue
Rochester, New York 14607
Telephone: (585) 272-0540
jcordello@theemploymentattorneys.com