# VERDI DECLARATION EXHIBIT C

Memorandum of Agreement
December 1, 2009

This agreement is between MEDISYS Network -Jamaica &Flushing Hospitals ("Employer") and Local 74 ('Union" Medical Center).
The terms and conditions of the agreement that expired 6/30/09 shall remain in effect except as modified below:

1. Duration: -July 1, 2009-until December 31, 2012   *Effect 1/10/2010 ER*
2. Welfare Fund: effective 1/01/10 - $762 per month composite rate.
    effective 08/01/10 - $775. per month composite rate
    effective 08/01/11 -$851. per month composite rate
3. Pension Fund contributions will remain as indicated in the expired agreement except that the hospital will pay any additional requirements as determined by the trustees to comply with the Pension Protection Act of 2006.
4. Vacation: Effective 1/1/10  Security Officers will begin to accrue 4 weeks of vacation after five (5) complete years of service (i.e., beginning the 6th working year).
5. Wages: New hire-Minimum rate for duration of agreement $14.50 per hour
    12/01/2009 – 3% Increase on November 30 base rate
    01/01/2011- 2.5% Increase on 12/31/10 base rate
    01/01/2012 – 2.5% Increase on 12/31/11 base rate
6. Shift differential for incumbents on 9/30/09 payroll-10 %
   Shift differential for New Hires $1.00 per hour.
7. Training and Scholarship Fund: Union to provide fund statements and show that funds are utilized for Medisys employees for Medisys continued participation.
8. Temporary Employees:
    Will become member of Local 74 after 90 days of employment. Will be covered for health and pension benefits commencing the first day following 6 months of employment. Will accrue sick time after 3 months of employment
    Vacation entitlements commence after one full year of employment.

The above is subject to ratification by the Security officers and the trustees of Jamaica and Flushing Hospitals.

_____ 1/12/2010
Vice President Human Resources

_____ 1/12/2010
Director of Human Resources
Flushing Hospital

_____ 1/12/09
Assistant Director of Human Resources
Jamaica Hospital

_____ 1/14/10
Local 74, President

_____
Local 74

_____
Local 74

# AGREEMENT
# BY AND BETWEEN
# MEDISYS HEALTH NETWORK
(JAMAICA HOSPITAL MEDICAL CENTER and
FLUSHING HOSPITAL MEDICAL CENTER)
# AND
# LOCAL 74
JANUARY 1, 2006 THROUGH JUNE 30, 2009

# WITNESETH

**AGREEMENT** made and entered into as of January 1, 2006, by and between Medisys Health Network ( Jamaica Hospital Medical Center & Flushing Hospital Medical Center), (hereinafter referred to as the " EMPLOYER"), located at 8900 Van Wyck Expressway, Jamaica, New York, 11418 & 45th Ave. & Parsons Blvd. Flushing, NY 11355 and all other locations and Local 74, ( hereinafter called the " UNION").

**WHEREAS** the Union has been designated by a majority of the employees of the employer in the bargaining unit as their sole collective bargaining agent with respect to wages, hours, and other conditions of employment, and

**WHEREAS** it is recognized that the efficient and orderly method of establishing and maintaining peaceful and harmonious labor relations and of dealing with problems and controversies arising out of employment is through negotiations and agreement, rather than through strikes and lockouts;

**NOW**, therefore, in consideration of the mutual promises herein contained, the parties agree as follows:

1. **BARGAINING UNIT:**

   A- The Employer recognizes the Union as the sole and exclusive bargaining agent for all Employees employed as Security Officers, for the purpose of security, excluding all managerial, supervisory and confidential employees.

2. **UNION SHOP:**

   A- It shall be a condition of employment that all employees of the Employer covered by this agreement who are members of the Union in good standing on the execution or effective date of this agreement, whichever is later, shall remain members in good standing and those who are not members on the execution or effective date of this agreement, whichever is later, become and remain members in good standing in the Union. It shall also be a condition of employment that all employees covered by this agreement and hired on or after its execution or effective date, whichever is later, shall on the thirtieth (30th) day following the beginning of such employment become and remain members in good standing in the Union.

   The Employer shall promptly upon hiring new employees notify them of the existence of the Union Agreement and Union Security Provision thereof. Upon notice by the Union to the Employer that an employee has not complied with the

2

Union Security requirements, the Employer shall forthwith discharge said employee and forthwith advise the Union thereof in writing.

The Union agrees to indemnify and hold the Employer harmless against any and all damages or expenses incurred by reason of discharge effectuated at the Union's request or in the performances of this agreement.

B. The Employer shall forthwith give the Union a list containing the names, social security numbers, and home addresses of employees covered by this agreement, their wages, and dates of hire, and shall thereafter promptly furnish each month the names, home addresses, dates of hire, categories and wages, of all new employees in the bargaining unit, and dates of termination of any current employees.

### 3. PROBATIONARY PERIOD:

A. Newly hired Full Time Employees shall be considered probationary for a period of ninety (90) calendar days from the date of employment, excluding time lost for sickness and other leaves of absence.

B. During the probationary period, the Employer may discharge any such Employee at will and such discharge shall not be subject to the grievance and arbitration provisions of this Agreement. No employee employed beyond ninety (90) days foe full time employees shall be discharged without just cause. If the Union does not agree to discharge, the matter shall be submitted to the grievance and arbitration procedure as provided herein.

C. Part Time Employees (defined as employees who work at least 1,000 hours per year or 21 hours per week) shall be deemed part time and shall serve one hundred twenty (120) calendar day probation. Occasional and on call employees who work less than 21 hours a week shall be excluded from the bargaining unit. **All current Security Officers employed at either Jamaica Hospital Medical Center or Flushing Hospital Medical Center and are currently Union Members and work less than (21) twenty hours shall remain Union Members.**

3

## 4. NO DISCRIMINATION:

A. Neither the Employer nor the Union shall discriminate against or in favor of any Employee. The Employer agrees that the opportunity to give and obtain Equal Employment Opportunity to mean: "the treatment of all employees and applicants for employment without unlawful discrimination as to race, creed, color, national origin, sex, age disability, marital status, sexual orientation or marital status, religion, sexual orientation or citizenship status in all employment decisions, including but not limited to recruitment, hiring, compensation, training and apprenticeship, promotion, upgrading, demotion, downgrading, transfer, lay-off and termination, and all other terms and conditions of employment". The Employer shall not discriminate against any employee because of Union activities.

## 5. VISITATION:

The Union Business Representatives or the Union's designees shall not be denied admission upon reasonable notice to the Employer to all properties covered by this agreement to discharge their duties as representatives of the Union. Requests shall not be limited as to times when the Union Business Representative can visit the members. Such visits will not interfere with the operation of the Employer.

The Employer shall make available to the Union a bulletin board in the establishment for Union notices. The Union shall be permitted to conduct Union meetings on the Employer's premises, upon notice and approval by the administration and held after working hours for each shift or department. Such time spent shall not constitute worked or paid hours.

## 6. SENIORTY:

A. The Employer has the right to layoff any employees. Seniority shall prevail in the case of layoff and rehiring of employees, with stewards having top seniority. Two (2) weeks advance written notice shall be given to the affected employee and the Union of the layoffs. Unit seniority shall be computed from the date of hire with the Employer. Seniority shall also accrue during paid leaves and during the period in which the employee receives disability benefits or Worker's Compensation. For the purpose of this agreement seniority is understood to mean institution specific seniority.

B. Any open positions within the institution shall be posted and all post probationary employees shall be entitled to request the available position. Assignment to the open job shall be based upon seniority, ability, and job evaluation as documented in the periodic review forms in the employee's personnel files.

## 7. NO STRIKE - NO LOCKOUT:

During the terms of this agreement, the Union shall not call or authorize any strike against the Employer at the establishment covered by this agreement and the Employer shall not affect any lockouts. Should the Employer notify the Union of such action, a representative of the Union shall, as promptly as possible, instruct such employees to forthwith cease such action and to promptly as possible return to their respective jobs and to comply with the applicable provision of this agreement.

## 8. GRIEVANCE AND ARBITRATION PROCEDURE:

A. A grievance shall be defined as a dispute or complaint arising between the parties hereto under or out of this Agreement or the interpretation application, performance, termination, or any alleged breach thereof, and shall be processed and disposed of in the following matter:

Step 1: The Union representative or shop delegate shall take the matter up directly with the employee's supervisor within ten (10) days after cause of the complaint arises except in the case of wage claims in which the notice may be given within ninety (90) days after the alleged defect in payment. The supervisor shall give his/her answer within five (5) days thereafter.

Step 2: If no satisfactory settlement is reached in the first step, then the Union shall reduce the grievance to writing and either a Union representative or a shop delegate shall present it to the Director of Human Resources or his/her designee within five (5) working days after the supervisor has given his/her answer in the First Step. The Director of Human Resources or his/her designee shall give his/her answer within five (5) days thereafter.

Step 3: If any timely grievance of the Union or the Employee that involves the interpretation, application, or performance of the expressed terms of this agreement is not disposed of in the foregoing grievance procedure, the Union may, within ten (10) working days after the receipt of the answer in writing at the second step, give the Employer a written notice of it's desire that the matter be submitted to arbitration.

Within twenty (20) working days after the receipt of said written notice, the Union may request Elliot D. Shrifmann or Howard Edelmann, whoever is available first, to serve as Arbitrator. If neither is available any other mutually agreed upon arbitrator may be substituted.

5

Failure to submit any matter to arbitration within the time limits set forth above shall be deemed a waiver of the right to further process the grievance.

The arbitrator's authority shall be strictly limited to applying and interpreting the express terms and conditions of this Agreement. He/she will not have the authority to deal with any matter that is reserved to Management by the Article entitled Management Rights (except to the extent that this agreement expressly limits said rights) or to add to, subtract from or otherwise amend or modify the terms of this agreement. The arbitrator's award on matters properly before him/her shall be final and binding on the parties. The interpretation and application of the article entitled Management Rights is within the authority of the Arbitrator. The parties shall bear equally the fees and expenses of the arbitrator. Nothing in this agreement shall prevent the Employer from filing arbitration.

## 9. WORK WEEK:

The regular workweek shall not exceed thirty-seven and one half hours (37 ½), consisting of five (5) days in any week; the workday shall not exceed seven and a half (7 ½) consecutive hours per day, excluding sixty (60) minutes for meals. All hours worked (including all hours paid except vacation and sick time) in excess of thirty-seven (37 ½) in any week shall be paid for at a rate of time and one half (1 ½) the regular hourly base rate of pay. The workweek shall commence on Sunday and end on Saturday. Overtime shall be offered on the basis of seniority. Security Officers who are required to attend role call twelve (12) minutes per shrift, five (5) days per week, shall be compensated for one (1) hour's pay each week inclusive of paid vacation, holidays, sick days, compensation days, and personal days. The employer shall determine necessity of security officers to attend role call. Each employee shall receive two (2) 15-mintue breaks per shift. Pre- 1998 employees who work at thirty-five (35) or thirty-six (36) hour work week shall receive a one (1) hour lunch. Employees hired after 1998 who work thirty-seven and an half hours (37 ½) hour work week shall receive a forty-five (45) minute lunch.

## 10. DIFFERENTIAL:

Shift differential commences after 7:00p.m. Officers who work the 4:00 p.m. to 12:00 a.m., and 12:00a.m. to 8:00a.m. shifts shall receive shift differential for the entire shift. Any Officers entitled to shift differential shall receive ten (10%) percent on the base rate of pay, which shall be included in determining all benefits due to the employee. Anyone working outside of the above mentioned shifts will receive overtime, not shift differential. If the day shift works into the night they shall receive overtime pay only.

## 11. HOLIDAYS:

All full time employees currently employed as of the date of the signing of this agreement shall receive the following holidays with pay (part-time employees pro-rated):

1) Thanksgiving Day
2) Christmas Day
3) New Year's Day
4) Martin Luther King Jr.'s Birthday
5) Washington's Birthday
6) Memorial Day
7) Independence Day
8) Labor Day
9) Four (4) Personal Days Per Year

If required to work on any of the above Holidays, the employee shall be paid at the rate of time and one-half (1 ½) the hourly rate. An employee employed as of the signing of this agreement required to work any Holiday will receive another day off at the regular compensation rate.

Employees shall be notified by their employer five (5) working days in advance in the event the said employee requires such employees to work on the Holiday.

## 12. VACATION/SICK DAYS:

Vacation days will be accrued as follows:

After one (1) year ...............Two (2) weeks

After five (5) years .............. Three (3) weeks

After ten (10) years .............. Four (4) weeks

* If Local 144 now part of Local 1199 receive five (5) weeks of vacation in the future, then Local 74 members shall be granted the same amount of time.

Regular full time employees shall accrue twelve (12) sick days per year banking a maximum of sixty (60) days (Jamaica Hospital), eighty (80) days (Flushing Hospital). There is no pay for unused sick time.

7

### 13. LEAVES OF ABSENCE:

A. Leaves of absence shall be granted at the sole discretion of the Employer and will be given in compliance with current legislation. Leaves will not be unreasonably denied. Any employees with five (5) years of service injured on the job shall be reinstated upon recovery within eighteen (18) months without loss of union seniority.
B. Military Leave- In the event an employee is drafted or enlists in the armed services, said employee, upon honorable discharge, shall be reinstatement to the position held at the time of joining the armed services, and shall receive such rate of pay, as shall at the time of reinstatement represent the current rate of pay for that position in the employer's establishment. Employees on military leave must apply for reinstatement within ninety (90) days of discharge.
C. Paternity Leave- All employees may take one (1) day paid leave or a compensated absence day in the event of the birth of a child.
D. Marriage Leave- in the event an employee marries, the employee may take three (3) days paid leave or take three (3) compensated absence days.
E. Maternity Leave- Leaves of absence shall be granted for pregnancy for a period of up to twelve (12) months, commencing as of the time the pregnant employee leaves her employment and the said employee shall be entitled to reinstatement at the conclusion of such leave without loss of seniority. The Employer shall pay for all benefits for the first three (3) months of said leave for full time employees having been employed at least one (1) year prior to the commencement.
F. Bereavement Leave- An employee may take three (3) days paid leave or use three (3) compensated absence days for the purpose of bereavement in the event of the death of anyone in the immediate family of the employee such as mother, father, child, sister, brother or grandparent. In the event of the death of an in-law, which shall include mother, father, sister or brother, employees may take one (1) day paid leave or a compensated absence day.
G. Leave for Jury Duty- Post probationary employees called (not volunteered) for jury duty shall be paid their regular rate less their pay as juror for each workday while on jury duty, not including "on call" jury when the employees are able to work.

### 14. UNIFORM ALLOWANCE:

Security officers will receive seven (7) shirts, four (4) pants, plus winter gear and will receive a two-hundred $200.00 per year uniform allowance payable in December of each year. Allowances will be pro-rated for anyone out on Leave of Absence and for

part-timers. Should a uniform be damaged in the course of work, the hospital will replace the uniform. Security officers must be neatly attired with clean ironed shirts, pants and ties. Shoes are to be black and polished.

## 15. CHECK OFF AUTHORIZATION:

The employer agrees to deduct, no later than the first payroll day of each month, from the wages of employees, their membership dues, assessments, and initiation fees; and shall, at the same time, remit immediately said monies to the union together with a list of employees names for whom such deductions have been made and the amounts thereof; provided that the employer has received from each employee, on whose account such deductions are made, a written assignment which shall not be irrevocable for a period of more than one (1) year, or beyond the termination date of this agreement, whichever occurs sooner. All funds deducted by the employer shall be held as trust funds, and shall not be commingled with other funds of the employer. In the event the employer fails to promptly remit such monies within thirty (30) days from the required remittance date, the arbitrator may, upon application, assess interest at the legal rate, reasonable attorney's fees, and all costs of collection against the employer.
It is specifically agreed that the Employer assumes no obligation, financial or otherwise, arising out of the provisions of this Article and the Union hereby agrees that it will indemnify demands, actions, proceedings, damages, or expenses that may arise out of the Employer's deducting monies as the Union dues hereunder. Once the funds are remitted to the Union their disposition thereafter shall be the sole and exclusive responsibility and obligation of the Union.

## 16. SAVINGS CLAUSE:

In the event that any portion of this agreement is invalidated by the passage of legislation or a final decision of a court or government agency having jurisdiction, such invalidation shall apply only to that portion thus invalidated and all remaining portions of this agreement not invalidated shall remain in full force and effect. Any substitution for the invalidated portion, which is mutually agreed upon between the parties, shall be reduced to writing and shall thereupon become a part of this agreement.

## 17. SUCCESSORS:

This agreement shall be binding upon the parties hereto, their successors, administrators, executors and assigns. The employer shall give any prospective purchaser, transferee, lessee, assignee, etc, a copy of this agreement before the employer executes or enters into any contract or transaction selling, leasing, assigning

or otherwise transferring any operations covered by this agreement. The employer shall also notify the union, by Certified Mail, Return Receipt Requested, of any such transaction within thirty (30) days of its effective date.

## 18. CONTINUATION OF OTHER TERMS OF EMPLOYMENT:

The terms and conditions of employment as set forth in this agreement shall govern the relations between the employer and his respective employees, and no deviation from or modification of said terms and conditions of employment shall be permitted.

## 19. Duration:

This agreement shall be effective from January 1, 2006 and shall remain operative and binding upon the parties hereto, through June 30, 2009. If, for any reason, the employer shall change its name or status, or the union shall change its name, affiliation or status, it is agreed that such change shall in no manner modify or affect the binding obligations of this agreement.
This agreement shall not be changed, altered, modified, or amended, unless in writing, and signed by the authorized representative of the parties.

## 20. COMPENSATION:

All employees shall receive their full salary for time spent in court on behalf of the employer.

## 21. WELFARE:

The rates of contributions to the Local 74 & Welfare Fund shall be as follows for all full time and part time employees hired prior to June 30, 2006.

Effective July 1, 2006, the employer shall pay four hundred fifty dollars ($450.00) per month, per employee.

Effective January 1, 2008 the employer shall pay five hundred dollars ($500.00) per month, per employee.

Effective January 1, 2009 the employer shall pay five hundred fifty dollars ($550.00) per month, per employee.

Effective June 30, 2009 the employer shall pay six hundred dollars ($600.00) per month, per employee.

10

The Employer further agrees to pay up to six hundred forty dollars ($640.00) per month, per employee as prescribed by the trustees in the successor agreement. Effective dates will be negotiated in the successor agreement.

Benefits for newly hired part-timers (hired after July 1, 2006) individual coverage only.

Effective July 1, 2006 the employer shall pay two hundred forty-seven dollars ($247.00) per month, per newly hired part timer.

Effective January 1, 2008 the employer shall pay two hundred sixty-three dollars ($263.00) per month, per newly hired part timer.

Effective January 1, 2009 the employer shall pay two hundred ninety-four dollars ($294.00) per month, per newly hired part timer.

Effective June 30, 2009 the employer shall pay three hundred three dollars ($303.00) per month, per newly hired part timer.

## 22. C.O.P.E./CREDIT UNION:

All employees who wish to participate in the Local 74 Committee on Political Education (C.O.P.E.) or the Local 74 Credit Union may do so by signing a separate authorization for his/her employer and submission of same to the union.

## 23. PENSION:

The employer shall make contributions to The National Industry Pension Fund not to exceed one thousand, nine hundred and fifty hours (1,950) per year for the duration of this agreement. Contributions will be made for full time and part time employees who work over nine hundred sixty (960) hours per year. Contributions to the NIPF for eligible employees at all institutions shall be as follows:

One dollar and ten cents ($1.10) per hour for all eligible employees for the duration of this agreement.

## 24. PAYMENTS:

The full amount of the above contributions shall be remitted by the employer no later than thirty (30) days following the payroll month for which they are based. Together with such payments, there shall be remitted to each of the respective funds, statements showing the name for each employee for whom the contributions are

made. The employer shall be bound by and agrees to comply with all rules, regulations, and decisions issued, made, or promulgated by the Funds, including any and all amendments and changes therein. The parties hereto confirm and approve the composition and membership of the Board of Trustees of the Fund as now and hereafter constituted.

After reasonable notice has been given, the union and any authorized agents or representative of the funds shall have the right, at all reasonable times during business hours, to enter upon the premises of the employer and to examine, audit and copy such of the books and records of the employer, to permit the union and the funds to determine whether the employer is making full payments of the amounts required by the agreement.

## 25. MANAGEMENT RIGHTS:

The parties agree that the management of Medisys Health Network, (Jamaica Hospital Medical Center, Flushing Hospital Medical Center and all other locations) and the direction and control of its working forces shall remain vested exclusively and solely with the Employer. The Employer shall retain the exclusive right to hire, terminate, promote, assign, transfer, schedule, layoff, and discipline its employees, subject only to such limitations as may be specifically set forth in the express terms of the Agreement. Nothing in this agreement shall limit the Employer's right to enlarge, reduce, relocate or discontinue, in whole or in any part, any facility, department or operations, to introduce new or improved methods or the number of employees, if any, working in any classification. No provision of this agreement shall be construed to limit the Employer's right to transfer or discontinue any part of its facilities or acquire additional facilities. None of these rights will be carried out in an arbitrary or capricious manner.

## 26. 1992 SECURITY ACT:

Medisys Health Network, (Jamaica Hospital Medical Center, Flushing Hospital Medical Center and all other locations) shall pay all fees related to the 1992 Security Act for employees employed by the Employer effective January 1, 1994.

## 27. TRAINING AND SCHOLARSHIP FUND:

The parties agree that the Hospitals shall contribute on annual basis eleven thousand dollars ($11,000.00) into the Local 74 Training and Scholarship Fund, for both Jamaica Hospital Medical Center and Flushing Hospital Medical Center. The payment shall be due June 1, of each year of the agreement. A pro-rated check from Jamaica Hospital Medical Center and Flushing Hospital Medical Center will be

issued separately. The eleven thousand dollars ($11,000.00) represents the total for both hospitals.

Security Officers shall be paid at straight time (including night differential for those covered shifts) for training, which the Hospitals deems mandatory.

IN WITNESS WHEREOF, the Union and the Employer have executed this agreement this _____ day of _____, _____.

For Local 74

For Medisys Health Network

## SCHEDULE A

The minimum hiring rate for newly hired security officers will be $14.50 per hour as of July 1, 2006. Any newly hired security officers will receive the following increases if they are on the payroll on the appropriate effective date.
Any employee below the minimum hiring rate on the above dates shall be brought up to the appropriate minimum rate on July 1, 2006. Said employees shall receive contract raises listed below after being brought up to the minimum.

**WAGES:**

| July 1, 2006 | July 1, 2007 | July 1, 2008 |
|---|---|---|
| 3% | 3% | 3% |

13