# TAB C

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 09-11722-GAO

ASHLEIGH PRUELL, AMY GORDON,
and all others similarly situated,
Plaintiffs,

v.

CARITAS CHRISTI, CARITAS CHRISTI NETWORK SERVICES, INC., CARITAS CARNEY HOSPITAL, INC., CARITAS GOOD SAMARITAN MEDICAL CENTER, INC., CARITAS HOLY FAMILY HOSPITAL, INC., CARITAS NORWOOD HOSPITAL, INC., CARITAS SOUTHWOOD HOSPITAL, INC., CARITAS ST. ELIZABETH'S MEDICAL CENTER OF BOSTON, INC., CARITAS ST. JOHN OF GOD HOSPITAL, INC., NORWOOD HOSPITAL, SAINT ANNE'S HOSPITAL CORPORATION, RALPH DE LA TORRE, M.D., and RICHARD KROPP,
Defendants.

OPINION AND ORDER
September 27, 2010

O'TOOLE, D.J.

**I.     Background**

The plaintiffs, Ashleigh Pruell and Amy Gordon, initiated this putative class action against their employer, the Caritas Christi hospital network, and two of its senior executives (all collectively "Caritas"). Class members (and perhaps the named plaintiffs) are represented by the Massachusetts Nurses Association, 1199 SEIU United Healthcare Workers East, and the International Union of Operating Engineers, Local 877 under various collective bargaining agreements ("CBAs"). Each CBA contains detailed provisions governing regular and overtime compensation.

The plaintiffs allege that Caritas maintains three policies that deprive its employees of regular and overtime compensation they are properly due: the "Meal Break Policy," by which

Caritas automatically deducts half-an-hour for a meal break, but fails to ensure that employees actually receive that break; the "Unpaid Preliminary and Postliminary Work Policy," by which Caritas fails to pay employees for work performed before and after shifts; and the "Unpaid Training Policy," by which Caritas fails to pay employees for time spent attending training sessions.

The plaintiffs filed suit in the Massachusetts Superior Court Department for Suffolk County alleging violation of the Massachusetts Payment of Wages Act, Mass. Gen. Laws ch. 149, § 148 (Count I), violation of the overtime provision of the Massachusetts Fair Minimum Wage Act, Mass. Gen. Laws ch. 151, § 1A (Count II), breach of contract (Counts III and IV), breach of an implied contract (Count V), money had and received (Count VI), *quantum meruit*/unjust enrichment (Count VII), fraud (Count VIII), negligent misrepresentation (Count IX), equitable estoppel (Count X), promissory estoppel (Count XI), conversion (Count XII), and failure to keep accurate records (Count XIII).[1]

Caritas removed the case to this Court, arguing that federal question jurisdiction exists because section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, preempts the plaintiffs' state-law claims. Caritas thereafter moved to dismiss all state-law claims. The plaintiffs filed a motion to remand the case to state court.

## II.     Section 301 Preemption

Preemption by section 301 justifies not only removal of state-law claims, but also dismissal of those same state-law claims. O'Donnell v. Boggs, 611 F.3d 50, 53 (1st Cir. 2010). When section 301 preempts a state-law claim, it "converts an ordinary state common law

---

[1] The parties agree that Count XIII must be dismissed because Massachusetts General Laws chapter 151, § 15 does not create a private right of action. To the extent the plaintiffs recast Count XIII as a claim for negligence based on Caritas's breach of its duty to maintain accurate records in their opposition brief, "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." See Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984).

2

complaint into one stating a federal question" for purposes of federal question jurisdiction under 28 U.S.C. § 1331. Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 65 (1987). Moreover, when section 301 preempts a state-law claim, the claim "must be dismissed as preempted by federal labor-contract law."[2] Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220 (1985). Both pending motions—the plaintiffs' motion to remand and Caritas's motion to dismiss—can therefore be resolved by answering a single question: does section 301 preempt the plaintiffs' state-law claims?[3]

Section 301 may preempt state law as to legal issues involving CBAs. Id. Specifically, section 301 preempts state-law claims "founded directly on rights created by" a CBA, Caterpillar, Inc. v. Williams, 482 U.S. 386, 393 (1987), or state-law claims whose resolution "depend[] upon the meaning of" a CBA, Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 405-06 (1988). State-law claims "depend[] upon the meaning of" a CBA if their resolution "arguably hinges upon interpretation" of a CBA, Flibotte v. Penn. Truck Lines, Inc., 131 F.3d 21, 26 (1st Cir. 1997), but not if their resolution can be achieved without reference to or merely by consulting the terms of a CBA, Lydon v. Boston Sand & Gravel Co., 175 F.3d 6, 10 (1st Cir. 1999).

---

[2] A preempted claim can alternatively be treated as a section 301 claim. Allis-Chalmers Corp., 471 U.S. at 220. That alternative is not viable here because there are no allegations that the plaintiffs exhausted their administrative grievance process, a prerequisite to suit under section 301. See DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 163 (1983).

[3] Caritas moved to dismiss for failure to state a claim under Massachusetts law. Because section 301 preempts the plaintiffs' state-law claims, whether the claims are adequately pled under Massachusetts law is immaterial. See Allis-Chalmers Corp., 471 U.S. at 220. Caritas's motion is construed as a motion to dismiss based on section 301 preemption. See Cordero-Hernandez v. Hernandez-Ballesteros, 449 F.3d 240, 243 n.2 (1st Cir. 2006) (noting that while courts cannot dismiss claims *sua sponte*, "there is some difference between dismissal of a claim that has never been challenged and dismissal where, as here, the court acts in response to a defendant's motion but on grounds not fully briefed by the movant"). This construction should not surprise the parties as the Court raised this issue at oral argument and gave the parties a chance to respond. (Hr'g Tr. 25, Feb. 23, 2010.)

A.  Statutory Wage Claims

Caritas maintains that section 301 preempts the statutory wage claims, thereby establishing federal question jurisdiction and justifying dismissal of the claims, because resolution of those claims will require <u>interpretation</u> of the CBAs. The plaintiffs counter that, as in <u>Livadas v. Bradshaw</u>, 512 U.S. 107 (1994), resolution of their claims will require only mere <u>consultation</u> of the CBAs.[4]

<u>Livadas</u> is distinguishable on its facts. There, the plaintiff sought penalties for late payment under a California statute requiring employers to pay wages owed immediately upon an employee's discharge and imposing a penalty equal to the employee's wages for each day of delay. <u>Id.</u> at 111 n.3, 112 n.4. The parties did not dispute the amount owed to the plaintiff because her wage rate was clearly established in the CBA, but only disputed whether the defendant failed to pay wages upon discharge. <u>See id.</u> at 124-25. The Supreme Court held that section 301 did not preempt the claim because "the simple need to refer to bargained-for wage rates in computing the penalty" did not amount to interpretation of the CBA. <u>Id.</u> at 125; <u>see also</u> <u>Fant v. New Eng. Power Serv. Co.</u>, 239 F.3d 8, 15 (1st Cir. 2001) (noting that interpretation does not occur if the court merely "check[s] wage rates set forth in the CBA").

Unlike <u>Livadas</u>, there is no wage rate in the CBAs between Caritas and its employees to refer to when computing the penalty in this case. That difference renders this case akin to <u>Adames v. Executive Airlines, Inc.</u>, 258 F.3d 7 (1st Cir. 2001). In <u>Adames</u>, a flight attendant asserted claims under Puerto Rico's wage and hour law. <u>Id.</u> at 13-15. The CBA between the flight attendant and the airline did not clearly define her wage rate, but provided for payment

---

[4] The plaintiffs also contend that section 301 cannot preempt their statutory wage claims because the claims involve non-negotiable rights guaranteed under state law. Even non-negotiable state law rights, however, are preempted by section 301 if interpretation of a CBA is required. <u>Lingle</u>, 486 U.S. at 407 n.7.

4

based on three different pay rate categories, "flight time," "duty time," and "reserve time." Id. at 13-14. In finding the flight attendant's claims preempted,[5] the First Circuit explained that interpretation of the CBA was necessary because to assess the remedy, twice her regular rate, the court had to apply multiple CBA provisions "to establish what the 'regular' rate would be." See id. at 15; see also Carter v. Tyson Foods, Inc., No. 08-209, 2009 WL 4790761, at *8 (N.D. Ill. Dec. 3, 2009) (stating that application of the "CBA's extensive provisions regarding the calculation of compensable time" was interpretation); Padilla-Gonzalez v. Local 1575, 635 F. Supp. 2d 105, 112 (D.P.R. 2009) (suggesting that the need for "complicated calculations" amounts to interpretation).

The same is true here. To compute the remedy, the Court would need to apply multiple CBA provisions to establish what the plaintiffs' wage rates would be. Using the CBA between Caritas Good Samaritan Medical Center and the Massachusetts Nurses Association as an example, a nurse's "regular base rate" appears in Appendix A of that CBA. (Aff. of Stephen Enright Ex. C § 6.1.) That rate must be augmented if a nurse is eligible for a shift or weekend differential. (Id. §§ 8.1, 8.2.) If eligible for a shift or weekend differential, the nurse's "total base rate" is the sum of her regular base rate and the differential. (Id. § 6.3.) The same provisions must be applied to determine a nurse's "total overtime rate," which is her regular base rate plus the shift or weekend differential times one-and-one-half. (Id. § 6.4.) Overtime pay also turns on the length of a nurse's shift because the CBA provides for overtime pay for hours worked in excess of a scheduled shift. (Id. § 6.2.)[6]

---

[5] Adames dealt with preemption under the Railway Labor Act, but the preemption analysis under that Act and the LMRA are identical. Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 264 (1994).

[6] All other CBAs contain similar shift and weekend differentials. (Aff. of Stephen Enright Ex. A § 3.6; Ex. B art. II(2); Ex. D § 4.5; Ex. E art. IV(F) and (G); Ex. F § 8.2; Ex. G § 5.4.)

5

Although other provisions must also be applied to establish the plaintiffs' wage rates, we need go no further. The plaintiffs do not dispute that multiple CBA provisions must be applied to establish their wage rates; they argue only that because the meaning of these provisions is not disputed, applying the provisions to establish their wage rates is not interpretation. That argument runs contrary to Adames, where interpretation was required even though the provisions establishing the flight attendant's wage rate, "flight time," "duty time," and "reserve time," were defined in the CBA and not contested by the parties. See 258 F.3d at 13-14. Adames makes clear that it is the application of these provisions that constitutes interpretation. See id.; see also Carter, 2009 WL 4790761, at *7 ("[T]he plaintiffs rely entirely on the thin argument that, because the CBA's terms are not disputed, applying the CBA's terms to the facts in this case would be purely ministerial. This Court disagrees with the Plaintiffs on this point as well.").

Because multiple CBA provisions must be consulted and applied to establish the plaintiffs' wage rates, and because consulting and applying multiple provisions amounts to "interpretation" of the CBAs, section 301 preempts the plaintiffs' statutory wage claims.

B.  Common Law Claims

Section 301 likewise preempts the plaintiffs' common law claims, which are all variations on a common theme. Whether framed as a breach of contract, money had and received, *quantum meruit*/unjust enrichment, fraud, misrepresentation, estoppel, or conversion, the common law claims allege that Caritas promised, but failed, to "compensate Plaintiffs and Class Members for 'all hours worked' during their employment period." (E.g., Compl. ¶ 109.) The remedy for each common law claim is the loss suffered as a result of reliance on that promise, that is, any underpayment of wages. See 17 Richard W. Bishop, Massachusetts Practice, Prima Facie Case § 2.22 (2005) (breach of contract/estoppel); id. § 5.1 (money had and

6

received); 37 Joseph R. Nolan & Laurie J. Sartorio, Massachusetts Practice, Tort Law § 4.10 (2005) (conversion); id. § 8.6 (fraud/misrepresentation); 43 Harry P. Carroll, Massachusetts Practice, Trial Practice § 18.26 (2005) (*quantum meruit*). Interpretation of the CBAs, for the reasons discussed above, will be required to compute that remedy.

### III. Conclusion

Because section 301 preempts the plaintiffs' state-law claims, federal question jurisdiction exists and remand is inappropriate. Dismissal of all claims is also warranted.

The plaintiffs' Motion to Remand (dkt. no. 12) is DENIED. The defendants' Motion to Dismiss Plaintiffs' State Law Claims (dkt. no. 10) is GRANTED and the complaint is DISMISSED.

It is SO ORDERED.

    /s/ George A. O'Toole, Jr.
United States District Judge