UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

NELLIE SAMPSON, *on behalf of herself and all other employees similarly situated,*

                               Plaintiff,

          v.

MEDISYS HEALTH NETWORK INC., THE JAMAICA HOSPITAL, THE BROOKDALE HOSPITAL MEDICAL CENTER, FLUSHING HOSPITAL AND MEDICAL CENTER, PENINSULA HOSPITAL CENTER, DAVID P. ROSEN and MAX SCLAIR,

                             Defendants.

CV-10-1342 (SJF-ARL)

---

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S
## <u>MOTION FOR EXPEDITED NOTICE TO AFFECTED EMPLOYEES</u>

Dated: New York, New York
       December 10, 2010

Lorie E. Almon
Anjanette Cabrera
Jeremi L. Chylinski
SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York 10018
(212) 218-5500

Kristin G. McGurn
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 300
Boston, Massachusetts 02210
(617) 946-4800

Attorneys for Defendants

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................ ii

I. PRELIMINARY STATEMENT ................................................................................ 1

II. PROCEDURAL BACKGROUND/WAIVER OF OTHER FLSA CLASS CLAIMS ................. 2

III. FACTUAL BACKGROUND ................................................................................ 3

    A.    The Defendant Medical Facilities ................................................................ 3

    B.    The Named Plaintiff, the Declarants, and Other Opt-In Plaintiffs .......................... 5

    C.    Sampson Has No Evidence of an Actual "Meal and Break Deduction Policy," and the Evidence Submitted Herewith Shows that the True Policies are Lawful .......................................................................................... 7

        1.    MediSys Has an Official Policy of Compliance with the FLSA .................... 7

        2.    MediSys Facilities Implement Their Policies in Individualized Ways ............ 8

IV. ARGUMENT ........................................................................................................ 11

    A.    Legal Standard ........................................................................................ 11

        1.    Plaintiff Fails to Demonstrate the Existence of an Unlawful Policy. ............ 15

        2.    Sampson Fails to Establish That She Is Similarly Situated To The Putative Class Members She Seeks to Represent ........................................ 18

    B.    Any Failure to Compensate a MediSys Employee for a Missed or Interrupted Break Is a Departure from Policy, Does Not Demonstrate a Common Scheme, and Require an Individualized Inquiry Incompatible with Conditional Certification .......................................................................... 21

    C.    Sampson's Meal Break Claim is Unsuitable for Certification Due to the Network Hospitals' Various Collective Bargaining Agreements ............................ 25

    D.    If Notice Issues, it Must be Limited to RNs and LPNs at Schulman, and Sampson's Proposed Notice Should Not be Used. ........................................ 27

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adams v. Inter-Con Sec. Sys., Inc.,*
    242 F.R.D. 530 (N.D. Cal. 2007) ................................................................... 15

*Anyere v. Wells Fargo Co.,*
    No. 09-C 2769, 2010 U.S. Dist. LEXIS 35599 (N.D. Ill. Apr. 12, 2010) ............................. 28

*Barfield v. New York City Health & Hosp. Corp.,*
    No. 05-CV-6319 (JSR), 2005 WL 3098730 (S.D.N.Y. Nov. 18, 2005) ......................... *passim*

*Barron v. Henry County Sch. Sys.,*
    242 F. Supp. 2d 1096 (M.D. Ala. 2003) ................................................................ 15

*Basco v. Wal-Mart Stores Inc.,*
    No. Civ. 00-3184, 2004 U.S. Dist. LEXIS 12441 (E.D. La. July 2, 2004) ............................ 20

*Bayles v. Am. Med. Response,*
    950 F. Supp. 1053 (D. Colo. 1996) ...................................................................... 24

*Belcher v. Shoney's, Inc.,*
    927 F. Supp. 249 (M.D. Tenn. 1996) .................................................................... 20

*Bernard v. Household Int'l Inc.,*
    231 F. Supp. 2d 433 (E.D. Va. 2002) ............................................................... 17, 20

*Bernard v. IBP, Inc.,*
    154 F.3d 259 (5th Cir. 1998) ............................................................................. 24

*Bissessur v. Ind. Univ. Bd. of Trustees,*
    581 F.3d 599 (7th Cir. 2009) ............................................................................. 12

*Camper v. Home Quality Mgmt. Inc.,*
    200 F.R.D. 516 (D. Md. 2000) ....................................................................... 13, 20

*Castle v. Wells Fargo Fin., Inc.,*
    No. C 06-4347, 2008 U.S. Dist. LEXIS 106703 (N.D. Cal. Feb. 20, 2008) ......................... 23

*Castro v. Spice Place, Inc.,*
    No. 07-CV-4657, 2009 WL 229952 (S.D.N.Y. Jan. 30, 2009) ...................................... 16

*Colozzi v. St. Joseph's Hosp. Health Ctr.,*
    595 F. Supp. 2d 200 (N.D.N.Y. 2009) .................................................................. 27

*D'Anna v. M/A-Com, Inc.,*
    903 F. Supp. 889 (D. Md. 1995) ........................................................................ 14

### TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Damassia v. Duane Reade, Inc.*,
No. 04 Civ. 8819, 2006 U.S. Dist. LEXIS 73090 (S.D.N.Y. Oct. 5, 2006) .......................29

*Davis v. Charoen Pokphand (USA), Inc.*,
303 F. Supp. 2d 1272 (M.D. Ala. 2004) ........................................................................... 22

*DeKeyser v. Thyssenkrupp Waupaca, Inc.*,
No. 08-C-488, 2008 U.S. Dist. LEXIS 102318 (E.D. Wis. Dec. 17, 2008) ........................... 28

*Diaz v. Elec. Boutique of Am., Inc.*,
No. 04-CV-0840E(SR), 2005 WL 2654270 ............................................................... 16, 22, 25

*Dudley v. Texas Waste*,
No. SA 05 CA 0078, 2005 U.S. Dist. LEXIS 9168 (W.D. Tex. May 16, 2005) .............. 18, 24

*England v. New Century Fin. Corp.*,
370 F. Supp. 2d 504 (M.D. La. 2005) ................................................................................. 17

*Evancho v. Sanofis-Aventis U.S. Inc.*,
No. 07-CV-2266 (MLC), 2007 U.S. Dist. LEXIS 93215 (D.N.J. Dec. 18, 2007) .............. 13

*Fasanelli v. Heartland Brewery, Inc.*,
516 F. Supp. 2d 317 (S.D.N.Y. 2007) ................................................................................ 28

*Fengler v. Crouse Health Found., Inc.*,
595 F. Supp. 2d 189 (N.D.N.Y. 2009) ..........................................................................27, 29

*Flores v. Lifeway Foods, Inc.*,
289 F. Supp. 2d 1042 (N.D. Ill. 2003) ............................................................................... 17

*Flores v. Osaka Health Spa, Inc.*
No. 05-CV-962, 2006 WL 695675 ..................................................................................... 17

*Francis v. A&E Stores, Inc.*,
No. 06 Civ. 1638, 2008 U.S. Dist. LEXIS 49971 (S.D.N.Y. Jun. 26, 2008) ....................29

*Freeman v. Wal-Mart*,
256 F. Supp. 2d 941 (W.D. Ark. 2003) ..................................................................12, 20, 25

*Gieseke v. First Horizon Home Loan Corp.*,
No. 04-CV-2511, 2006 WL 2919076 (D. Kan. Oct. 11, 2006) ............................................. 27

*Gjurovich v. Emmanuel's Marketplace, Inc.*,
282 F. Supp. 2d 101 (S.D.N.Y. 2003) ................................................................................28

*Gordon v. Kaleida Health*,
No. 08-CV-378S, 2009 WL 3334784 (W.D.N.Y. Oct. 14, 2009) ..........................................27, 28

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Guzman v. VLM, Inc.,*
   No. 07-CV-1126, 2007 U.S. Dist. LEXIS 75817 (E.D.N.Y. Oct. 11, 2007)....................28

*Hackett v. Montefiore Health Sys., Inc.,*
   No. 10-CV-2682 (S.D.N.Y. 2010) .................................................................................... 29

*Hall v. Burk,*
   No. 3:01 CV 2487H, 2002 WL 413901 (N.D. Tex. Mar. 11, 2002)................................ 14, 20

*Hamelin v. Faxton-St. Luke's Healthcare,*
   No. 08-CV-1219.................................................................................................................. 28

*Hamelin v. Faxton-St. Luke's Healthcare,*
   No. 6:08-CV-1219, 2009 WL 211512 (N.D.N.Y. Jan 26, 2009)..................................... 27

*Harrison v. McDonald's Corp.,*
   411 F. Supp. 2d 862 (S.D. Ohio 2005) ............................................................................. 19

*Heitmann v. City of Chicago,*
   CaseNo. 04-cv-3304, 2004 WL 1718420, at *3 (N.D. Ill. Jul. 30, 2004)........................ 27

*Hens v. ClientLogic,*
   2006 U.S. Dist. LEXIS 69021 (W.D.N.Y. Sept. 22, 2006).............................................. 13

*Henson v. Pulaski County Sheriff Dep't,*
   6 F.3d 531 (8th Cir. 1994).................................................................................................. 24

*Hinojos v. Home Depot, Inc.,*
   No. 2:06-CV-00108, 2006 U.S. Dist. LEXIS 95434 (D. Nev. Dec. 1, 2006) ................. 23, 24

*Hinterberger v. Catholic Health Sys.,*
   No. 08-CV-3 80S, 2009 WL 3464134 (W.D.N.Y. Oct. 21, 2009).........................................27, 29

*Hoffman- LaRoche, Inc. v. Sperling,*
   493 U.S. 165 (1989) .......................................................................................................... 29

*Hoffmann v. Sbarro, Inc.,*
   982 F. Supp. 249 (S.D.N.Y. 1997).................................................................................... 12

*Holt v. Rite Aid Corp.,*
   333 F. Supp. 2d 1265 (M.D. Ala. 2004) ...................................................................... 13, 22, 26

*Holzapfel v. Town of Newburgh,*
   145 F.3d 516 (2d Cir. 1998)............................................................................................... 23

*Johnson v. TGF Precision Haircutters, Inc.,*
   No. Civ. A. H-03-3641, 2005 WL 1994286 (S.D. Tex. Aug. 17, 2005) ................................. 20

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Karvaly v. eBay, Inc.,*
    245 F.R.D. 71 (E.D.N.Y. 2007) ................................................................... 28

*LaPlante v. Terraces of Lake Worth Rehab. & Health Ctr., LLC,*
    No. 08-CV-81089, 2010 U.S. Dist. LEXIS 36198 (S.D. Fla. Apr. 13, 2010) ......... 24

*Ledbetter v. Pruitt Corp.,*
    No. 05-CV-329, 2007 WL 496451 (M.D. Ga. Feb. 12, 2007) ............................. 15

*Levinson v. Primedia Inc.,*
    No. 02-CV-2222 (CBM), 2003 U.S. Dist. LEXIS 20010 (S.D.N.Y. Nov. 6, 2003) ............. 13

*Martinez v. Cargill Meat Solutions,*
    265 F.R.D. 490 (D. Neb. 2009) ................................................................. 28

*McElmurry v. US Bank Nat'l Ass'n,*
    No. CV-04-642-HU, 2004 WL 1675925 (D. Or. July 27, 2004) ......................... 22

*Mendoza v. Casa de Cambio Delgado Inc.,*
    No. 07-CV-2579, 2008 WL 938584 (S.D.N.Y. Apr. 7, 2008) ....................... 14, 17

*Mike v. Safeco Ins. Co. of Am.,*
    274 F. Supp. 2d 216 (D. Conn. 2003) ......................................................... 13

*Moeck v. Gray Supply Corp.,*
    No. 03-1950 (WGB), 2006 WL 42368 (D.N.J. Jan. 6, 2006) ............................. 25

*Morales v. Plantworks, Inc.,*
    No. 05-CV-2349, 2006 WL 278154 (S.D.N.Y. Feb. 2, 2006 ) ........................... 17

*Morisky v. Pub. Serv. Elec. & Gas Co.,*
    111 F. Supp. 2d 493 (D.N.J. 2000) ............................................................. 14

*Pabst v. Okla. Gas. & Elec. Co.,*
    228 F.3d 1128 (10th Cir. 2000) ................................................................. 24

*Patton v. Thompson Corp.,*
    364 F. Supp. 2d 263 (E.D.N.Y. 2005) ......................................................... 12

*Pfaahler v. Consultants for Architects, Inc.,*
    No. 99-C-6700, 2000 U.S. Dist. LEXIS 1772 (N.D. Ill. Feb. 11, 2000) ......... 22, 26

*Prizmic v. Armour, Inc.,*
    No. 05-CV-2503, 2006 WL 1662614 (E.D.N.Y. June 12, 2006) ................... 12, 14

*Reed v. Mobile County Sch. Sys.,*
    246 F. Supp. 2d 1227 (S.D. Ala. 2003) .............................................. 12, 20, 22, 26

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Reich v. S. New Eng. Tel. Commc'ns Corp.*,
    121 F.3d 58 (2d Cir. 1997) ..................................................................................... 23

*Rhodes v. Cracker Barrel Old Country Store*,
    213 F.R.D. 619 (N.D. Ga. 2003) ............................................................................ 21

*Richards v. Computer Sci. Corp.*,
    No. 3-03-CV-00630, 2004 WL 2211691 (D. Conn. Sept. 28, 2004) ..................... 19

*Rodgers v. CVS Pharm., Inc.*,
    No. 8:05-CV-770T, 2006 WL 752831 (M.D. Fla. Mar. 23, 2006) ........................ 19

*Rodolico v. Unisys Corp.*,
    199 F.R.D. 468 (E.D.N.Y. 2001) ........................................................................... 12

*Ruggles v. WellPoint, Inc.*,
    591 F. Supp. 2d 150 (N.D.N.Y 2008) .................................................................... 29

*Saleen v. Waste Mgmt.*,
    649 F. Supp. 2d 937 (D. Minn. 2009) .................................................................... 15

*Singh v. City of N.Y.*,
    418 F. Supp. 2d 390 (S.D.N.Y. 2005) .................................................................... 23

*Tracy v. Dean Witter Reynolds Inc.*,
    185 F.R.D. 303 (D. Colo. 1998) ............................................................................ 22

*Tyler v. Payless Shoe Source, Inc.*,
    No. 2:05-cv-33-F, 2005 U.S. Dist. LEXIS 31682 (M.D. Ala. Nov. 22, 2005) ...... 22

*Wells v. Gen. Elec. Co.*,
    78 F.R.D. 433 (E.D. Pa. 1978) .............................................................................. 22

*West v. Border Foods, Inc.*,
    No. 05-CV-2525 (DWF), 2006 U.S. Dist. LEXIS 96963 (D. Minn. June 12, 2006) ............. 13

*Williams v. Long*,
    585 F. Supp. 2d 679 (D. Md. 2008) ....................................................................... 28

**STATUTES**

29 U.S.C. § 255(a) ....................................................................................................... 6

29 C.F.R. § 785.19 ...................................................................................................... 26

# I. PRELIMINARY STATEMENT

Based on five carbon-copy declarations – one of which is undated, the second of which relates only to time periods not covered by the Fair Labor Standards Act ("FLSA") and the third of which is signed by an individual who seeks to withdraw from the case[1] – Plaintiff Nellie Sampson ("Sampson") implausibly seeks an order directing that notice be issued to *all* current and former non-exempt employees of the various defendant healthcare facilities who allegedly were subject to what Sampson dubs the "Meal and Break Deduction Policy," although they do not and cannot establish that such a policy actually exists. The remaining declarations, all but one of which come from nurses employed by only one of the defendant facilities, are grossly deficient of requisite detail, and make clear that the declarants lack personal knowledge of the job duties, working conditions, dates worked, hours worked or compensation of other identifiable employees. The declarations also evidence Sampson's lack of knowledge of most hospitals, departments or units of MediSys, and her complete unfamiliarity with *hundreds* of jobs within the putative class, rendering her motion for system-wide notice without adequate evidentiary support. The motion should be denied.

Contrary to her speculation, Sampson is not "similarly situated" to the persons she seeks to represent. As a former Registered Nurse ("RN") at the Schulman and Schachne Institute for Nursing and Rehabilitation at Brookdale University Hospital Medical Center ("BUHMC" or "Brookdale") in Brooklyn – which is only one of many units within one of the four enormous hospital systems comprising the MediSys Health Network – Sampson is not remotely similarly situated to a putative class that would include maintenance workers at Flushing Hospital and Medical Center ("FHMC" or "Flushing"), kitchen employees at Peninsula Hospital Center ("PHC"

---

[1] Plaintiff's counsel made clear on October 31, 2010 that Julius Foronda sought to withdraw from this action, but to date they have not honored his wishes. (*See* Declaration of Lorie Almon ("Almon Dec."), Exhibit A.)

or "Peninsula") or transporters at Jamaica Hospital Medical Center ("JHMC" or "Jamaica").

Moreover, Sampson has proffered no evidence of an actual common, unlawful policy – to the

contrary, the various hospitals and departments within the MediSys system have formal policies and

procedures to pay employees for all compensable hours worked – including missed and interrupted

meal breaks – and such policies are followed in practice.  Indeed, the evidence makes clear that

affiants Claudette Fraser ("Fraser") and Cynthia Simms ("Simms"), for example, were

compensated for missed meal breaks.  (*See* Declaration of Max Sclair ("Sclair Dec."), ¶ 29.)  The

record shows that Sampson also received missed meal payments, and had "lead nurse"

responsibility for ensuring that other Schulman nurses took lunch breaks or were paid for missing

them, thus placing her in *direct conflict* with members of the putative class she now seeks to

conditionally certify.  *Id.*

      To the extent Sampson or any of the other putative plaintiffs worked through a meal break

and were not compensated (which Defendants deny), their entitlement to any such compensation

necessarily will depend on a highly individualized and fact-specific inquiry.  Collective action

treatment therefore is improper and notice should not issue.

## II. PROCEDURAL BACKGROUND/WAIVER OF OTHER FLSA CLASS CLAIMS

      Plaintiff's "Motion for Expedited Notice to Affected Employees," dated September 29, 2010

(hereinafter, the "Motion"), seeks an Order directing Defendants to issue notice to all current and

former hourly employees "whose pay was subject to an automatic deduction even when employees

performed compensable work," regardless of whether they are exempt from the FLSA's overtime

premium pay requirements.  In effect, Plaintiff appears to be seeking an order for issuance of notice

and conditional certification on only one of the potential FLSA violations alleged in her Amended

Complaint – *i.e.* that she and others performed compensable work during meal breaks for which

they were not paid.  Plaintiff's Motion neither addresses the Amended Complaint's preliminary and

postliminary work and training time allegations, nor seeks to issue notice to any putative class about them. At the parties' Status Conference on October 29, 2010 before this Court, Defendants noted that Plaintiff's Motion sought issuance of notice/conditional certification only of this "meal break claim," to which Plaintiff's counsel responded that Plaintiffs wished to reserve the right to move later on other FLSA claims pled on behalf of a putative class. This Court made clear, however, that it would entertain only one request for issuance of an FLSA notice in this lawsuit, and ordered Plaintiff to notify the Court within two weeks if she intended to seek notice on any other FLSA claim. Plaintiff notified the Court on November 15, 2010 that she would not expand her Motion. In so doing, Sampson has waived her right to seek classwide treatment of any other FLSA claim, including the allegations related to purportedly uncompensated preliminary and postliminary work and unpaid training time. Such class allegations should therefore be stricken and dismissed from the Amended Complaint.

## III.  FACTUAL BACKGROUND

### A.      The Defendant Medical Facilities

MediSys is a New York not-for-profit corporation. It is a supporting organization to JHMC, BUHMC, and FHMC, and also recently became a sponsor to PHC. (*See* Sclair Dec., ¶¶ 1, 5.) The employees of these facilities hold thousands of different jobs, and perform a huge range of duties in support of the diverse and comprehensive range of healthcare services the Network offers to patients throughout scores of communities in New York City. (Sclair Dec., ¶¶ 7-12.)

JHMC offers a full array of acute inpatient, diagnostic, ambulatory, rehabilitation and mental health services, one of the largest voluntary hospital ambulance fleet serving the New York City 911 system, a Level I trauma center, and home health services. (*See* Declaration of Marguerite Verdi ("Verdi Dec."), ¶ 3.) Jamaica employs roughly 3,000 employees, a significant majority of whom are classified as non-exempt. (Sclair Dec., ¶ 7; Verdi Dec., ¶ 3.) Approximately 2,200 of

Jamaica's non-exempt employees are unionized and approximately 200 of its exempt employees are unionized. As a result, any one of a number of collective bargaining agreements ("CBAs") govern their wages, hours and breaks. (Sclair Dec., ¶ 7; Verdi Dec., ¶¶ 14-24.) Jamaica Hospital Nursing Home's approximately 240 employees are paid through the Nursing Home's payroll, and not Jamaica Hospital's payroll.   (Sclair Dec., ¶ 8.)

BUHMC consists of 530 certified acute-care beds, 448 skilled nursing beds in the affiliated Schulman and Schachne Institute for Nursing and Rehabilitation ("Schulman"), 87 units of assisted living and independent living housing in the separate Arlene and David Schlang Pavilion, emergency and ambulatory care departments, and dozens of home health, specialty and community health clinics in outlying communities. (*See* Declaration of Judy Selman ("Selman Dec."), ¶ 3.) Brookdale employs more than 3,000 employees, a significant majority of whom are classified as non-exempt. (Sclair Dec., ¶ 9.) Roughly 2,400 of Brookdale's non-exempt employees are unionized and roughly 275 of its exempt employees are unionized. Their wages, hours and breaks are governed by various different CBAs. (*Id.*)

FHMC operates Pediatric, OB/GYN, and Psychiatry Departments, Ambulatory Care and Geriatric Medical Units, a Wound Care Center, Chemical Dependency units and clinics, a full service Emergency Department, and several independent ambulatory clinics. (*See* Declaration of John Mangani ("Mangani Dec."), ¶ 4.) FHMC currently employs more than 1,400 employees, a significant majority of whom are classified as non-exempt. (Sclair Dec., ¶ 10.) Roughly 1,300 of Flushing's non-exempt employees are unionized and 110 of its exempt employees are union members whose wages, hours and breaks are governed by various CBAs. (*Id.*)

PHC operates a 173-bed acute care community teaching hospital and a 200-bed long-term care and rehabilitation center (Peninsula Center for Extended Care and Rehabilitation) offering a full continuum of care including Traumatic Brain Injury and Pediatric Units, Family Health and

Diabetes Treatment Centers, Advanced Imaging Services, Podiatry, Dental, Orthopedics and Eye Care Centers. (*See* Declaration of Ron Musselwhite ("Musselwhite Dec."), ¶ 3.) Notably, Peninsula was an independent non-profit community hospital unaffiliated with the MediSys network until March 2009. (*Id.* ¶¶ 4, 5; Sclair Dec., ¶ 5.) Since that time, MediSys has provided certain services to Peninsula, but *does not manage* Peninsula's operations. (*Id.*) Peninsula has its own human resources department, employee handbook, and maintains control over certain policies and practices concerning timekeeping, breaks and payroll. (*Id.*)

**B.      The Named Plaintiff, the Declarants, and Other Opt-In Plaintiffs**

The Amended Complaint asserts classwide claims based upon the alleged practices of approximately 70 different facilities, and purports to include employees in hundreds of different positions. (Am. Compl. ¶¶ 19, 20.) The only arguably relevant declarations offered in support of this motion, however, were proffered by a small handful of nurses responsible for providing direct patient care in one department, Schulman, affiliated with one hospital, Brookdale, and that of Case Manager, Julius Foronda ("Foronda"), who works in a single unit at Jamaica. The declarants are as follows:

- Sampson worked as an Registered Nurse ("RN") at Schulman until July 2, 2008. MediSys records evidence that Sampson never worked in any other position or at any other MediSys facility. (Sclair Dec., ¶ 28.)

- Claudette Fraser ("Fraser") is an RN at Schulman. (Sclair Dec., ¶ 28.)

- Cynthia Simms ("Simms") is a Licensed Practical Nurse ("LPN") at Schulman. (Sclair Dec., ¶ 28.)

- Timothy Gill ("Gill"), a former respiratory therapist, ended his MediSys employment September 1, 2005. His employment took place entirely outside the time period covered by the FLSA claims herein, and thus is *irrelevant for purposes of the pending motion.*[2] (Sclair Dec., ¶ 31.)

- Foronda is a Case Manager at Jamaica. In October 2010, Thomas & Solomon LLP ("T&S"), notified Defendants that Foronda wanted to withdraw from this case, although it has not yet abided by the apparent direction of its client.

nights in the same location (Sclair Dec., ¶ 29.) These Plaintiff-declarants, therefore, worked in *one* patient-care area at only *one* of the 70 facilities at issue. Foronda is the sole Plaintiff-declarant who works outside of Schulman, and has, in any event, already indicated his desire to withdraw from this case. Thus, Plaintiff has not offered admissible evidence of the job duties, work hours, compensation, meal break or time-keeping policies and practices at any of the other 68 facilities.

T&S have filed various opt-in forms from other putative FLSA plaintiffs, but at least sixteen of the individuals who filed such forms ended their employment with MediSys prior to the applicable FLSA limitations period: Elizabeth Armstrong, Ramute Cesnavicius, Camelle Charles, Rolande Damis, Glory Ezemma, Edith Gant, Danna Hall, Diane Hall, Norma Johnson, Kerry Kirby, Cheryl Mackey, John Penner, Christine Pickel, Hency Saitt, Mollie Sutton, and Helen Tynan. (Sclair Dec., ¶ 30.) MediSys has no record of four others. (*Id.*, ¶ 26.) At least eight of the putative opt-ins are classified as exempt from the FLSA and two are paid per diem, and are thus not part of the putative class even by Sampson's own proposed definition. (*Id.*, ¶ 31.)

In addition, *every single one* of the non-exempt individuals employed during the relevant time period who purports to consent to opt-in to this litigation is a member of a union whose CBA

---

[2] The statute of limitations for an FLSA claim is two years, or three years for a "willful" violation. 29 U.S.C. § 255(a). Any FLSA claim by Gill thus expired, at the very latest, on September 1, 2008 – three years after he left his employment with MediSys. Gill filed his opt-in form on June 11, 2010, at least two years too late. (Docket No. 14.)

governs hours worked, pay and breaks. (Sclair Dec., ¶ 32.) Each of them provides direct patient care.

### C.   Sampson Has No Evidence of an Actual "Meal and Break Deduction Policy," and the Evidence Submitted Herewith Shows that the True Policies are Lawful

#### 1.   MediSys has an official policy of compliance with the FLSA

Sampson concludes, solely in reliance on the declarants' "understanding" and statements made without adequate foundation, that MediSys' "policy" is to violate its employees rights under the FLSA. Ample admissible evidence submitted herewith shows otherwise. The core compensation principle of MediSys Network members, including Jamaica, Brookdale, Flushing and Peninsula, is to pay employees in accordance with pertinent CBAs, New York state law and the FLSA, including record-keeping, hours worked and overtime. Specifically, the policy is to pay employees for all compensable hours worked. Further, MediSys' policy during the relevant period, *i.e.* since at least March 24, 2007, has been that non-exempt hourly employees who work a "full shift" of at least 5 hours are entitled and expected to take a full 30-minute uninterrupted meal break. (Sclair Dec. ¶ 15; Selman Dec., ¶ 29; Verdi Dec., ¶ 35; Mangani Dec., ¶ 26; Musselwhite Dec., ¶ 21; Declaration of Catherine Ferrari ("Ferrari Dec."), ¶ 21.) Employees are not to perform work during their meal break but managers are instructed, in turn, to pay for compensable hours worked, including for such work performed during missed or interrupted meal periods. (Sclair Dec., ¶ 16.) The length of the meal break is determined department-by-department based on CBAs and operational needs, but is to be neither less than 30 minutes nor greater than 1 hour. (Selman Dec., ¶ 15; Verdi Dec., ¶¶ 31-32; Mangani Dec., ¶¶ 26-27; Musselwhite Dec., ¶¶ 25, 29.) If an employee does not take a full, uninterrupted 30-minute meal period at the scheduled or expected time, s/he may reschedule the break later in the shift (*see, e.g.*, Declaration of Leah Thomas-Gianakos ("Thomas-Gianakos"), ¶¶ 10, 11), or must cancel the lunch by reporting it missed so that s/he can be paid for any compensable work performed during the meal period. (*Id.*; Declaration of Luciana

Caputo ("Caputo Dec."), ¶ 10.)  In certain departments, in contrast and by contract, meal breaks are expected to be taken and are always paid.  (*Id.*; Selman Dec., ¶ 5; Sclair Dec., ¶ 8.)

### 2.    MediSys Facilities Implement Their Policies in Individualized Ways

There are numerous methods employed in MediSys departments and units for an employee to cancel or report a missed lunch.  For example, an employee may report the missed or interrupted lunch to his or her timekeeper, HR or a manager or supervisor.  (Sclair Dec., ¶ 22.)  Individual Departments or units also use their own policies and procedures for reporting and canceling missed lunches.  For example, some Departments or units use logbooks to track missed or interrupted lunches (Declaration of Elmer Ariza ("Ariza Dec."), ¶ 18.); in others employees email their managers to report changed schedules or missed meal breaks (Declaration of Nicholas Pantaleo ("Pantaleo Dec."), ¶ 23.); and in still others, the missed or interrupted lunch is reported to an employee other than a manager such as a timekeeper.  (Declaration of John Rudden ("Rudden Dec."), ¶ 13.)  Nevertheless, in all instances where a missed or interrupted lunch is reported (or MediSys otherwise becomes aware of it), before or after the end of a pay period, it is MediSys' policy and practice that the meal period will be canceled or credited and that the employee will be paid for compensable work.  (Sclair Dec., ¶¶ 14-16.)

MediSys' multiple separate facilities have HR staff on site, distribute their own handbooks and policy manuals, conduct their own hiring, make their own decisions about employees, and provide their own employee orientations, including training on time-keeping and meal breaks.  (Selman Dec., ¶¶ 7-8; Verdi Dec., ¶¶ 7, 9-11; Mangani Dec., ¶¶ 5, 7-8; Musselwhite Dec., ¶¶ 7-10; Sclair Dec., ¶ 5.)  Facilities conduct department and unit-specific orientations.  (Selman Dec., ¶ 7; Verdi Dec., ¶ 7; Mangani Dec., ¶ 7; Musselwhite Dec., ¶¶ 11-22.)  Across the network, individual units have the discretion to, and do, set their own policies and practices with respect to timekeeping and breaks, within the confines of New York state law, the FLSA, and the many CBAs that govern

the employment relationships of the vast majority of non-exempt employees.  (Selman Dec., ¶ 26; Verdi Dec., ¶ 31; Mangani Dec., ¶ 26; Musselwhite Dec., ¶¶ 11-22.)

### a.    MediSys facilities have different premium pay policies.

Employees of various MediSys facilities work different schedules.  (Selman Dec., ¶ 24; Verdi Dec., ¶ 29; Mangani Dec., ¶ 14; Musselwhite Dec., ¶ 24.)  At Jamaica, for example, the workweek for full-time employees depends on job classification and varies from 35 to 37.5 to 40 hours per week.  (Verdi Dec., ¶ 12; Declaration of Helen Tarantino ("Tarantino Dec."), ¶¶ 4, 5.) Similarly, at Brookdale and Flushing, many employees are assigned a workweek of 37.5 hours. (Selman Dec., ¶¶ 16, 25; Mangani Dec., ¶¶ 14, 18.)  Premium pay policies, including pursuant to collective bargaining agreements, entitle such employees to 1.5 times their regular rate of pay after working more than the assigned workweek.  However, for persons assigned to under-40 hour weekly work schedules, even if the employee worked through every single meal break without pay in a given week - and thus worked 2.5 hours in excess of her full-time workweek [37.5 + 2.5 = 40] - she would not have worked more than 40 hours in a workweek and would thus not be entitled to overtime pursuant to the FLSA.  29 U.S.C. 207(a).

### b.    The facilities did not employ the same timekeeping system

The MediSys facilities have not used the same timekeeping system across the network or throughout the applicable limitations period.  (Selman Dec., ¶ 6; DiOrio Dec., ¶ 30.)  Certain MediSys facilities employed Kronos, a computerized system that allows employers to track attendance and hours worked, throughout the applicable time period.  Stating it generally and very simplistically, and solely for purposes of this motion, Kronos assumes that employees work a certain schedule and take certain breaks, and then adjusts its assumptions when "exceptions" are entered into the system.  (Sclair Dec., ¶ 24.)  Yet Peninsula, only recently sponsored by MediSys, first started using Kronos just this year.  (Musselwhite Dec., ¶ 8.)  Previously, Peninsula used a

unique time-keeping system for its nurses and, for all others, a hand-scan system preceded by a manual time card system pursuant to which employees completed their own handwritten time cards to record their hours; managers approved the card based on the time worked during the period; and employees reviewed the card and confirmed its accuracy before it was delivered to payroll. (Musselwhite Dec., ¶ 7).

### c.     MediSys facilities have different meal break practices and procedures

MediSys meal break policies entitle and expect employees to take regular meal breaks, but they also vary in the process to be followed when operational demands lead to missed breaks.  For example, some departments simply shut down entirely for the lunch break.  (Verdi Dec., ¶ 36; Selman Dec., ¶ 26.)  Others schedule and stagger meal breaks or provide relief coverage. (Declaration of Albert Dekki ("Dekki Dec.), ¶ 6, 13-25; Thomas-Gianakos Dec., ¶ 5; Tarantino Dec., ¶ 10.)  Jamaica's meal break policy, for example, *requires* employees working a full shift to take a meal break, but expressly permits overtime to be paid in the event an employee must work during a meal period.  (Verdi Dec., ¶¶ 31, 35.)  Each Jamaica department has authority to determine the length of the meal break, which may neither be less than 30-minutes nor greater than 1 hour. (Verdi Dec., ¶ 31.)  At Jamaica, the standard meal break lasts one full hour.  (Sclair Dec., ¶ 15.)  By contrast, at Flushing, nurses' meal breaks are typically 45 minutes, whereas non-nurses typically have 30 minute meal periods.  *Id.*  At Brookdale, most employees' meal breaks last one hour but in some departments they are 30 or 45 minutes.  *Id.*  Bearing out the policy language, the length of meal breaks varies widely by department.  MediSys employees are told that they should take their meal and rest breaks in order to rest and to maximize their performance.  (Sclair Dec., ¶ 15.) MediSys directs its employees to accurately record all hours worked each day.  (*Id.*)

Each Department and unit also is permitted to develop appropriate practices to track and monitor meal breaks.  For example, in the Pathology Lab at Jamaica, the Technologists working in

the Blood Bank record missed breaks in the Blood Bank's Log Book, and they are paid for such time. (Ariza Dec. ¶ 18.) If the Technologist works through their meal break in one of the other five Laboratory sections, he/she informs the Executive Secretary (who is the timekeeper for the Department) either verbally or by leaving a note. (*Id.*) The Executive Secretary maintains a log of all of the missed meal breaks or other reasons for overtime. (*Id.*) She enters all of the extra time in Kronos and then forwards it to the department manager for review and authorization. (*Id.*) However, in the Laundry Department at Jamaica, all of the employees take a meal break between 11:00 a.m. and 12:00 p.m., every day. (Rudden Dec., ¶ 14; Declaration of Joseph Varrone ("Varrone Dec."), ¶ 11.) The department shuts down during the meal break. (*Id.*) The employees leave the department, and the door to the Department is locked. Likewise, the Wound Care Center at Flushing closes for an hour lunch break. (Declaration of Jeaniqua Stevenson ("Stevenson Dec."), ¶ 11.) On the other hand, employees working in the Pharmacy at Jamaica have scheduled, staggered meal breaks which are determined by the employee's shift, (Pantaleo Dec., ¶ 17), while in the Patient Financial Services department, employees never miss a meal break because the department is basically shut down for that hour. (Dekki Dec., ¶¶ 12, 13.) In stark contrast, EMTs and Paramedics working in the Pre-Hospital Care Department are *always* paid for their breaks because they are the only employees in the Department who have direct patient contact, because these employees must be available to respond to 911 calls at all times, and because the New York City Fire Department answers and directs the 911 calls to the ambulances. (Declaration Peter DiOrio ("DiOrio Dec."), ¶ 10.)

## IV.  ARGUMENT

### A.  Legal Standard

Sampson has failed to show she is entitled to issuance of notice/conditional certification of her meal break claim under § 216(b) of the FLSA. A collective action may not be conditionally

certified and notice may not be authorized unless a named plaintiff provides sufficient admissible

evidence of a *systemwide* unlawful policy, practice, and scheme to violate the FLSA and establishes

the existence of "similarly-situated" individuals who wish to join the action. *See Barfield v. New*

*York City Health & Hosp. Corp.*, No. 05-CV-6319 (JSR), 2005 WL 3098730, at *1 (S.D.N.Y. Nov.

18, 2005) (plaintiff must make "at least a modest factual showing sufficient to demonstrate that

[she] and potential plaintiffs together were victims of a common policy or plan that violated the

law" and "anecdotal hearsay" of a widespread practice did not satisfy her burden) (citation

omitted)[3], *aff'd*, 537 F.3d 132 (2d Cir. 2008); *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261

(S.D.N.Y. 1997) ("The question . . . is not whether the Court has the power to authorize the

notice, but whether the "appropriate" circumstances exist for the Court to exercise its

discretion in this matter."); *Reed v. Mobile County Sch. Sys.*, 246 F. Supp. 2d 1227, 1232 (S.D.

Ala. 2003) ("[T]he burden is on the plaintiffs to make an evidentiary showing that they and the

proposed class are similarly situated, not on the defendants to disprove such similarity.").[4]

      The threshold issue for certification and authorization of class notice in an FLSA action

is whether plaintiffs have demonstrated that potential class members are "similarly situated."

*Prizmic v. Armour, Inc.*, No. 05-CV-2503, 2006 WL 1662614, at *2 (E.D.N.Y. June 12, 2006);

*Patton v. Thompson Corp.*, 364 F. Supp. 2d 263, 266 (E.D.N.Y. 2005); *Rodolico v. Unisys Corp.*,

199 F.R.D. 468, 480 (E.D.N.Y. 2001). Unsupported allegations of widespread FLSA violations,

---

[3] Copies of unpublished decisions cited herein are annexed to the accompanying Compendium of Unpublished Decisions Cited in Defendants' Opposition to Plaintiff's Motion Expedited Notice to Affected Employees.

[4] Plaintiff's argument that Defendants may later move to dismiss those opt-ins who are discovered not to be similarly situated, after notice and discovery, wholly disregards her burden to proffer admissible factual evidence when moving for conditional certification, and seeks to blow open the doors to class-wide discovery prematurely, and too easily. *Bissessur v. Ind. Univ. Bd. of Trustees*, 581 F.3d 599, 604 (7th Cir. 2009) ("[T]o proceed absent factual allegations that match the bare-bones recitation of the claims' elements would sanction a fishing expedition costing both parties, and the court, valuable time and resources." ); *Freeman v. Wal-Mart*, 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003) (it "would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated").

such as those in the declarations filed in this case, do not establish a basis for conditional certification. *See Evancho v. Sanofis-Aventis U.S. Inc.,* No. 07-CV-2266 (MLC), 2007 U.S. Dist. LEXIS 93215, at *7 (D.N.J. Dec. 18, 2007) ("[u]nsupported assertions of widespread violations" are insufficient to satisfy this evidentiary requirement); *Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265, 1270 (M.D. Ala. 2004) (plaintiffs "must make some rudimentary showing of commonality between the basis for [their] claims and that of the potential claims of the proposed class, [beyond the mere facts of job duties and pay provisions ]"); *Levinson v. Primedia Inc.*, No. 02-CV-2222 (CBM), 2003 U.S. Dist. LEXIS 20010, at *5 (S.D.N.Y. Nov. 6, 2003) (denying motion to notify class where plaintiffs "failed to make a sufficient showing" of specific improper treatment of others).

Along the same line, Sampson's mere allegations of potentially similarly situated individuals are not enough. *Hens v. ClientLogic,* 2006 U.S. Dist. LEXIS 69021, at *9-10 (W.D.N.Y. Sept. 22, 2006) (the Court must "determine based on the pleadings, affidavits and declarations, if the named plaintiff has demonstrated that the proposed class members are 'similarly' situated to him or her"); *Camper v. Home Quality Mgmt. Inc.*, 200 F.R.D. 516, 519-20 (D. Md. 2000) (plaintiffs are required to make preliminary factual showing that similarly-situated group of potential plaintiffs exists). To the contrary, prior to subjecting an employer to the significant and costly burdens of a collective action, even at the preliminary notice stage, there must be some specific evidentiary basis to conclude that questions common to a potential group of plaintiffs would predominate. *See Mike v. Safeco Ins. Co. of Am.,* 274 F. Supp. 2d 216, 220 (D. Conn. 2003); *see also West v. Border Foods, Inc.*, No. 05-CV-2525 (DWF), 2006 U.S. Dist. LEXIS 96963, at *28 (D. Minn. June 12, 2006) (same). Here, Sampson fails to make the requisite evidentiary showing.

This preliminary evidentiary requirement is premised on the principles of "sound case management . . . to avoid the 'stirring up' of litigation through unwarranted solicitation, [and because] an employer should not be unduly burdened [and prejudiced] by a frivolous fishing expedition conducted by plaintiff at the employer's expense." *D'Anna v. M/A-Com, Inc.,* 903 F. Supp. 889, 894 (D. Md. 1995); *see also Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 496-977 (D.N.J. 2000) (denying notice and conditional certification where named plaintiffs were not similarly situated to the opt-in plaintiffs such that the case could proceed as a collective action). Although a court need not reach a conclusive determination with respect to whether a class of similarly-situated plaintiffs exists at this stage, the court must nevertheless have, *at a minimum,* sufficient evidence to make a meaningful decision that the potential members are similarly situated.

Because Sampson fails to present a credible factual nexus between herself and putative class members, the court should deny conditional certification and notice under § 216(b). *See Mendoza v. Casa de Cambio Delgado Inc.*, No. 07-CV-2579, 2008 WL 938584, at *2 (S.D.N.Y. Apr. 7, 2008) (finding lack of a proper factual nexus as the "principal defect" with certification request); *Prizmic*, 2006 WL 1662614, at *3 (denying conditional certification where plaintiff made "only general allegations in his complaint" and failed to submit "any evidence by affidavit or otherwise to demonstrate that he and other potential plaintiffs were victims of a common policy or plan that violated the law"); *Hall v. Burk*, No. 3:01 CV 2487H, 2002 WL 413901, at *3 (N.D. Tex. Mar. 11, 2002) (finding "[u]nsupported assertions of widespread violations" insufficient to meet plaintiff's burden of demonstrating potentially "similarly situated" plaintiffs; "the Court cannot approve even conditional certification without more of a showing"). Sampson has not established any such factual nexus, and her motion should be denied.

1.    **Plaintiff fails to demonstrate the existence of an unlawful policy.**

Sampson may not base collective action certification on Defendants' lawful policies by claiming they had the unintended *uniform* effect of causing all putative class members to perform compensable work during their meal periods without compensation.  (Pl. Mem. at 3-5.)  To achieve conditional certification, Sampson must identify a single, common unlawful policy and not a facially lawful policy or plan that might be unlawful if applied in a certain way by a certain manager. *See, e.g., Saleen v. Waste Mgmt.*, 649 F. Supp. 2d 937, 941 (D. Minn. 2009) (affirming denial of conditional certification, noting that the mere fact that some employees of a large corporation were not properly compensated pursuant to the FLSA, does not provide legitimate grounds for inferring an illegal, companywide policy); *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 536 (N.D. Cal. 2007) (movants must "make substantial allegations that the putative class members were subject to *a single illegal policy, plan, or decision*") (emphasis added). Sampson fails to make this factual showing.

Boilerplate allegations that FLSA violations occurred from a handful of persons – similar to Sampson's allegation that some hourly employees "performed work for the Hospital System during [their] meal period, even though under the Hospital System's auto deduct policy it did not pay us for that time" (*see* Sampson, Fraser, Simms and Foronda Affs. ¶ 7) – are also insufficient to establish a network-wide unlawful policy to fail to pay all employees for all the time they worked. *See Barron v. Henry County Sch. Sys.*, 242 F. Supp. 2d 1096, 1104 (M.D. Ala. 2003) ("[T]he mere fact that violations occurred cannot be enough to establish similarity, as that would not ultimately be sufficient to establish a pattern and practice without a showing that the violations were more than sporadic occurrences."); *Barfield*, 2005 WL 3098730, at *1 (collective action certification denied at the outset of the litigation because anecdotal evidence suggesting a widespread practice of employees working in excess of forty hours per week without overtime pay is insufficient to

establish a common policy or plan in violation of the FLSA); *Ledbetter v. Pruitt Corp.*, No. 05-CV-329, 2007 WL 496451, at *5 (M.D. Ga. Feb. 12, 2007) (same).

Moreover, Sampson asks the Court to assume that Defendants *required* employees to work through their meal periods and that Defendants, in turn, failed to compensate them for such time. The evidence shows, however, that Defendants' policy explicitly forbade such "off the clock" work. (Sclair Dec. ¶ 15; Declaration of Edith Rene ("Rene Dec.") ¶ 6; Declaration of Marie Beaubrun ("Beaubrun Dec.") ¶ 13.) Further, many Departments explicitly schedule employees' meal breaks to confirm that they can take them, and also check that the employees in fact took their meal breaks or left early to compensate for the same. (Dekki Dec. ¶ 18; Rudden Dec. ¶ 13; Declaration of Edward Ozechowski ("Ozechowski Dec.") ¶ 23; Verdi Dec. ¶ 32; Ferrari Dec. ¶ 11.) As importantly, on the infrequent occasions when certain employees miss some or all of their meal break, managers offer them the choice of rescheduling or receiving compensation for their missed meal period. (Verdi Dec. ¶ 32; Caputo Dec. ¶ 10; Musselwhite Dec. ¶ 31; Thomas-Gianakos Dec. ¶ 10; Selmon Dec. ¶ 31; Ozechowski Dec. ¶ 17; Mangani Dec. ¶ 31; ) No reasonable inference of a company-wide policy to deprive employees of compensation possibly can be inferred from this record.

The uncontroverted evidence presented by Defendants also demonstrates significant, dispositive dissimilarities among putative class members in their job functions, shifts, geographical settings, and the supervisory practices to which they were subject. (Verdi Dec., ¶ 30; Sclair Dec. ¶ 12.) It conclusively establishes that Defendants instructed and properly relied upon employees to report any violation of policy or discrepancy in their pay and the employees routinely do so. (Sclair Dec., ¶ 22-24; Selman Dec., ¶¶ 9-10; Rene Dec. ¶ 10; Beaubrun Dec. ¶ 11.)

Where, as is the case here, conclusory allegations of network-wide policies are without legitimate evidentiary support, courts consistently deny conditional certification in off-the-clock

cases. *See Diaz v. Elec. Boutique of Am., Inc.*, No. 04-CV-0840E(SR), 2005 WL 2654270, at *3-4

(denying certification where plaintiff made conclusory allegations of "company-wide plan" to fail

to pay "employees overtime . . . for work performed"); *Barfield,* 2005 WL 3098730, at *1 (rejecting

allegation of widespread practice and denying certification based on "anecdotal hearsay"); *Castro v.*

*Spice Place, Inc.*, No. 07-CV-4657, 2009 WL 229952, at *3-4 (S.D.N.Y. Jan. 30, 2009) (affidavits

alleging "common policy" rejected where defendants disputed that they operate as a single entity);

*Flores v. Osaka Health Spa, Inc.* No. 05-CV-962, 2006 WL 695675, at *3 (S.D.N.Y. Mar. 16, 2006)

(denying conditional certification and rejecting "broad conclusory allegations" in affidavit);

*Mendoza,* 2008 WL 938584, at *2-3 (denying conditional certification based on broad, contradicted

affidavit); *Morales v. Plantworks, Inc.*, No. 05-CV-2349, 2006 WL 278154, at *3 (S.D.N.Y. Feb. 2,

2006 ) (having offered "nothing of evidentiary value" but only a "conclusory allegation" plaintiff

not entitled to conditional certification); *Bernard v. Household Int'l Inc.*, 231 F. Supp. 2d 433, 435-

36 (E.D. Va. 2002) (company-wide notice not justified by declaration stating: "[f]rom my

experience . . . working closely with collection representatives throughout the country and through

socializing with them, it is apparent to me that [defendant] controls the various positions throughout

the company, including collection representatives, through the same general policies, practices and

procedures") (quotations omitted); *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 511

(M.D. La. 2005) (same); *Osaka Health Spa, Inc.*, 2006 WL 695675, at *3 (denying conditional

certification and rejecting "broad conclusory allegations" in affidavit); *Mendoza,* 2008 WL 938584,

at *2-3 (denying conditional certification based on broad, contradicted affidavit).[5]  Because

---

[5] In *Flores v. Lifeway Foods, Inc.,* 289 F. Supp. 2d 1042, 1046 (N.D. Ill. 2003), four plaintiffs sought conditional
certification in an FLSA action alleging failure to pay overtime and for off-the-clock work, declaring that they worked
specific overtime hours during a particular payroll period and were paid only straight-time wages.  After defendant
rebutted two declarations, plaintiffs submitted two new declarations asserting generalizations.  The submission did not
persuade the court, which stated: "this is not the type of 'factual' showing that would establish a colorable common
policy or plan by Lifeway that violated the FLSA." *Id.*  The court analyzed the two unrebutted declarations and held:
"a demonstration of Lifeway's payment practice concerning two out of fifty employees (four percent of Defendant's
workforce) does not rise to the level of a common policy or plan by Lifeway that violated the FLSA. This is not even a

Sampson has similarly fallen far short of her burden to establish a common policy or plan to violate the FLSA, her motion for conditional class certification should be denied.

### 2. Sampson Fails to Establish That She Is Similarly Situated To The Putative Class Members She Seeks to Represent

Nor can Sampson adequately describe how she is similarly situated to the enormous, dispersed putative class she seeks to represent. Instead, she asks the Court to conclude, based on her affirmation and the parroted affirmations submitted by Fraser, Simms and Foronda that she is similarly situated to *all* of Defendants' other non-exempt employees at *all* of Defendants' hospitals, nursing homes, home health centers and clinics, regardless of job title, duties, managers, shift worked or unit, merely because she says so. Conditional certification is not granted on such a flimsy foundation.

For example, Sampson states that she has "observed" RNs, LPNs and housekeepers – presumably in the unit she worked in at Schulman – working through their unpaid meal break and "knew" that RNs, LPNs and housekeepers "did not get paid when they worked through their meal break." (Sampson Aff. ¶¶ 14, 15.) Not only does this fail to satisfy Sampson's legal obligation to base this motion on personal knowledge and admissible, credible proof, but it also calls for preposterously unreasonable inferences. Indeed, other courts have held similar language to be insufficient to support conditional certification. *See, e.g., Barfield*, 2005 WL 3098730, at *1 (denying conditional class certification where plaintiff produced only "limited anecdotal hearsay" that the problem of which she and one witness complained was a widespread practice); *Dudley v. Texas Waste*, No. SA 05 CA 0078, 2005 U.S. Dist. LEXIS 9168, at *6-7 (W.D. Tex. May 16, 2005) (same).

---

'modest factual showing' of a common policy or plan, as that term has been used in other cases." *Id.* Sampson fares no better seeking to represent a putative class of tens of thousands of current and former employees in hundreds of positions

If Sampson is to be believed, the Court must infer that she personally witnessed other RNs, as well as LPNs and housekeepers in Schulman working through their meal periods, even where meal periods are relieved, scheduled, or staggered to allow for maximum coverage (*E.g.*, Ozechowski Dec. ¶ 13; Declaration of Nicolas Pantaleo ("Pantaleo Dec.") ¶ 15; Musselwhite Dec. ¶ 29; Ferrari Dec. ¶ 11), that she observed the personnel for the remainder of their shifts, and can attest that such personnel failed to take their breaks later in the same shift, that Sampson was then somehow made aware that the tasks being performed by these employees were legally compensable, and then that she has first-hand knowledge that these same RNs, LPNs and housekeepers were neither compensated for such time.  However, Sampson effectively has admitted that she has no personal knowledge of other locations, but states merely that her "impression" is that "almost all Hospital System employees had their meal breaks interrupted, regardless of which department or facility they worked in." (Sampson Aff. ¶ 13.)  This unattributed, imprecise and multi-level hearsay is undeniably inadmissible and cannot lawfully support collective treatment of this action or the issuance of notice to all hourly employees throughout the network. *Harrison v. McDonald's Corp.*, 411 F. Supp. 2d 862, 865 (S.D. Ohio 2005) ("[O]nly admissible evidence may be considered in connection with a [§] 216(b) motion.") (citing *Richards v. Computer Sci. Corp.*, No. 3-03-CV-00630, 2004 WL 2211691, at *1 (D. Conn. Sept. 28, 2004)); *Barfield*, 2005 WL 3098730, at *1 (denying conditional certification where plaintiff produced only "limited anecdotal hearsay" that the problem of which she and one witness complained was a widespread practice).  Simply put, Sampson and the other declarants lack personal knowledge to support her grandiose statements, and fail to entitle Plaintiff to the sweeping notice she seeks.

   a.   **Sampson Fails To Establish The Existence Of Similarly-Situated Individuals Within her Schulman Unit or Outside Of The Unit In Which She Worked.**

Because Sampson produces no admissible evidence concerning the unit she works in and Foronda's affirmation is plagued with the same ineffectual, multi-level hearsay, she has *ipso facto*

19

failed to offer any such evidence with respect to employees in other units and other facilities within

the MediSys Health Network.  Denial of conditional certification is therefore appropriate.  *See, e.g.,*

*Rodgers v. CVS Pharm., Inc.*, No. 8:05-CV-770T, 2006 WL 752831, at *5 (M.D. Fla. Mar. 23,

2006) ("Although Plaintiff [and the employees he alleged were similarly-situated] clocked in and

out on the company computer, the fact that their respective [work places] are located in three

different cities . . . and are run by different managers precludes a finding of similarity on this

basis."); *Johnson v. TGF Precision Haircutters, Inc.*, No. Civ. A. H-03-3641, 2005 WL 1994286, at

*4 (S.D. Tex. Aug. 17, 2005) (same); *Basco v. Wal-Mart Stores Inc.*, No. Civ. 00-3184, 2004 U.S.

Dist. LEXIS 12441, at *26 (E.D. La. July 2, 2004) (denying conditional certification where

potential opt-in plaintiffs performed different jobs at different geographic locations and were

subject to different managers); *Reed*, 246 F. Supp. 2d at 1233 (rejecting similarly-situated claim

where "denial of overtime compensation by one decisionmaker does not readily suggest similar

denials by other decisionmakers, *even those operating at the same location*") (emphasis added);

*Belcher v. Shoney's, Inc.*, 927 F. Supp. 249, 252 (M.D. Tenn. 1996) (denying certification where

none of the plaintiffs had worked at other restaurants); *Bernard*, 231 F. Supp. 2d at 436 (denying

nationwide notice of FLSA action because plaintiff's declarations were insufficient:  "There are no

declarations from employees in [other] offices. . . . There are not even any specific allegations

regarding practices in other offices – no names of employees or supervisors, and no indication that

the problems alleged through first-hand knowledge in the two . . . offices exist elsewhere");

*Freeman*, 256 F. Supp. 2d at 945 (although plaintiff's burden is "not heavy," "unsupported

assertions of widespread violations are not sufficient"); *see also Hall*, 2002 WL 413901, at *3;

*Camper*, 200 F.R.D. at 519.

        The sum total of the carbon-copy affirmations submitted in support of her motion is: (1)

Sampson and Fraser both worked as RNs at Schulman and allegedly witnessed RNs, LPNs and

housekeepers miss their scheduled meal breaks and not get paid for such time (Sampson Aff. ¶ 14;

Fraser Aff. ¶ 14); (2) Simms works as an LPN at Schulman and allegedly witnessed RNs and LPNs

miss their meal breaks and not get paid for such time (Simms Aff. ¶ 14); and (3) Foronda works as a

Case Manager at Jamaica and allegedly witnessed case managers, nurses, admissions clerks and

transporters miss their meal breaks and not get paid for such time. (Foronda Aff. ¶ 14.) There is no

admissible foundation laid for the suppositions about how others are paid. Thus, at best,

Sampson's, Fraser's, and Simms' affirmations encompass only their own titles in the units in which

they worked at Schulman, and Foronda's affirmation encompasses his own title and a handful of

others at Jamaica. She submits no evidence that housekeepers, billing clerks, maintenance workers

or cafeteria workers, for example, are impacted by similar patient-care demands.

Indeed, the conditions that may cause employees with direct patient care responsibilities, such

as Sampson, to work through their meal breaks are *not* present for other employees. (DiOrio Dec. ¶

11.) Non-patient care employees neither regularly respond to medical emergencies nor respond to

requests from patients. (*E. g.* Dekki Dec, ¶ 5, 14; DiOrio Dec., ¶ 11.) Plaintiff's conclusory,

unsupported statement that "all Hospital employees . . . always put the needs of the Hospital System

ahead of their meal breaks" cannot establish the necessary factual nexus for certification, and are,

in any event, flatly contradicted by Defendants' evidence. Thus, because Sampson bears the

burden of making at least a moderate factual showing that she is similarly situated to employees

without direct patient care duties, her motion must be denied, as a matter of law.

**B.** **Any Failure to Compensate a MediSys Employee for a Missed or Interrupted Break Is a Departure from Policy, Does Not Demonstrate a Common Scheme, and Require an Individualized Inquiry Incompatible with Conditional Certification**

Sampson's claim that she and others were not properly paid for meal breaks during which

they worked necessarily implicates practices and procedures across the MediSys system and how

numerous managers in different locations implemented them. Thus, whether employees were

actually forced to work through their meal period will necessitate individualized factual inquiries, on a unit-by-unit basis. *See Rhodes v. Cracker Barrel Old Country Store*, 213 F.R.D. 619, 676 (N.D. Ga. 2003) (collecting cases holding that decentralized decision-making undermines commonality and typicality); *Wright v. Circuit City Stores, Inc.*, 201 F.R.D. 526, 542 (N.D. Ala. 2001) ("[d]elving into the business practices of each . . . facility and conceivably into the individual decisions is precisely the type of individualized inquiry that class actions were designed to avoid."); *Tracy v. Dean Witter Reynolds Inc.*, 185 F.R.D. 303, 311 (D. Colo. 1998) ("[E]ven if it is true that some individuals failed to receive appropriate compensation . . . that fact alone does not lead me to conclude that there must be some unlawful [corporate] policy out there somewhere."); *Wells v. Gen. Elec. Co.*, 78 F.R.D. 433, 438 (E.D. Pa. 1978) (certification is inappropriate where challenged policies are implemented by the local facility manager). Liability for any allegedly improperly compensated missed meal breaks would therefore depend on the facts and circumstances of each missed break, including whether the employee reported the work, whether the employer otherwise knew about it, and whether the time was compensable. Such claims cannot be tried on a class basis, and conditional certification should therefore be denied because this case would not "partake of the economy of scale envisioned by the FLSA collective action procedure." *Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265, 1275 (M.D. Ala. 2004); *Tyler v. Payless Shoe Source, Inc.*, No. 2:05-cv-33-F, 2005 U.S. Dist. LEXIS 31682, at *19 (M.D. Ala. Nov. 22, 2005).

Numerous courts have denied conditional certification where, as here, plaintiffs claimed that they performed off-the-clock work, because resolution of such claims necessarily required individualized inquiry and analysis. *See, e.g., Diaz*, 2005 U.S. Dist. LEXIS 300382, at *16; *Holt*, 333 F. Supp. 2d at 1271-72 (where court is required to conduct individualized analysis of multiple claims, a case is unsuitable for collective action treatment); *Pfaahler v. Consultants for Architects, Inc.*, No. 99-CV-6700, 2000 U.S. Dist. LEXIS 1772, at *9 (N.D. Ill. Feb. 11, 2000) (same); *Reed*,

246 F. Supp. 2d at 1232 (conditional certification denied where, proposed class was a "wide assortment encompass[ing] jobs with significantly different job duties and work schedules"); *Davis v. Charoen Pokphand (USA), Inc.*, 303 F. Supp. 2d 1272, 1278 (M.D. Ala. 2004) (same); *McElmurry v. US Bank Nat'l Ass'n*, No. 04-CV-642-HU, 2004 WL 1675925, at *16 (D. Or. July 27, 2004) (finding that "similarly-situated determination in terms of actual wage loss [would require] individual employee-by-employee, time sheet-by-time sheet inquiries which are inconsistent with a collective action's goal of promoting judicial efficiency"). The individualized inquiries that will be necessary to determine whether Plaintiff's off-the-clock allegations are viable include: (a) whether each plaintiff actually engaged in any off-the-clock activities during meal breaks; (b) whether such off-the-clock activities constitute "work" under the FLSA, *i.e.*, was spent predominantly for the benefit of the employer, (c) whether Defendants were aware that Plaintiffs were engaging in off-the-clock work; (d) whether the off-the-clock work falls into the *de minimus* exception to the FLSA, and (e) if not, how much work each opt-in performed for which Defendants are entitled to no offset, and (f) whether some of the claims are time-barred. The infusion of individualized determinations into an alleged FLSA collective action makes conditional certification inappropriate.

Likewise, where resolution of claims depend on specific employment conditions in each department in which each class member worked and would require testimony from individual supervisors and other employees about the circumstances allegedly giving rise to the claimed violations, conditional certification is improper. *Hinojos v. Home Depot, Inc.*, No. 2:06-

*Fargo Fin., Inc.*, No. 06-CV-4347, 2008 U.S. Dist. LEXIS 106703, at *15 (N.D. Cal. Feb. 20, 2008).[6]

As further support for a denial of conditional certification, a meal break is compensable only when "a worker performs activities ***predominantly*** for the benefit of the employer." *Reich v. S. New Eng. Tel. Commc'ns Corp.*, 121 F.3d 58, 64-65 (2d Cir. 1997) (emphasis added). To determine whether an employee performed activities for the benefit of the employer during a meal break, courts review numerous factors including (1) whether the employees are subject to real limitations on their personal freedom; (2) whether restrictions are placed on the employee's activities during those times; (3) whether the employee remains responsible for substantial work-related duties; and (4) how frequently the time is actually interrupted by work- related duties. *Bernard v. IBP, Inc.*, 154 F.3d 259, 265 (5th Cir. 1998) (citing *Henson v. Pulaski County Sheriff Dep't,* 6 F.3d 531, 534 (8th Cir. 1994)); *Dudley*, 2005 U.S. Dist. LEXIS 9168, at *6-7 (rejecting conditional certification of meal break claims because employer disseminated policy requiring employees to advise supervisor when they worked through meals and follow procedure to obtain compensation); *LaPlante v. Terraces of Lake Worth Rehab. & Health Ctr., LLC*, No. 08-CV-81089, 2010 U.S. Dist. LEXIS 36198, at *13-14 (S.D. Fla. Apr. 13, 2010) (holding that nursing home properly implemented form on which employees who were required to work during their meal breaks could obtain compensation for that missed break). This, too, is a "highly individualized and fact-based" inquiry which is unique for each employee and each Defendant. *Pabst v. Okla. Gas. & Elec. Co.,* 228 F.3d 1128, 1132 (10th Cir. 2000). Thus, a collective action

---

[6] Where an employer does not know or have reason to know that an employee has performed work off the clock, the employer cannot be liable for a failure to pay the employee. *Holzapfel v. Town of Newburgh*, 145 F.3d 516, 524 (2d Cir. 1998); *Barfield*, 432 F. Supp. 2d at 394-95 (same); *Singh v. City of N.Y.*, 418 F. Supp. 2d 390, 397 (S.D.N.Y. 2005) ("[A]n employee in the Second Circuit is only entitled to compensation for those hours of work performed of which the employer had actual or constructive knowledge."), *aff'd*, 524 F. 3d 361 (2d Cir. 2008). Courts dismiss FLSA claims where a plaintiff fails to record time for which he knows he could be compensated. *Seever v. Carrols Corp.*, 528 F. Supp. 2d 159, 170 (W.D.N.Y. 2007) (dismissing claims based on "bare recollections" where plaintiff failed to report work.)

in this case would necessitate a series of mini-trials based upon the need for individualized determinations to resolve the claims of each putative opt-in plaintiff and whether the work performed was predominately for the benefit of the employer. "Such a result is the antithesis of collective action treatment and would overwhelm the judicial system and eliminate any judicial efficiency that might be gained through a collective approach." *Hinojos*, 2006 U.S. Dist. LEXIS 95434, at *8; *Bayles v. Am. Med. Response,* 950 F. Supp. 1053, 1065 (D. Colo. 1996).

It is well-established that direction by only a handful of supervisors is insufficient to establish a common policy or plan that violates the FLSA. As illustrated by *Moeck v. Gray Supply Corp.*, a case alleging off-the-clock and overtime violations, just because a plaintiff establishes that his supervisor required off-the-clock work, it does not mean other supervisors imposed the same policies. Evidence of different practices and reporting requirements at different locations establishes that there are too "many potential distinctions of each putative class member's claim," rendering certification "even at [the] early stage in the action," inappropriate. *Moeck*, No. 03-1950 (WGB), 2006 WL 42368, at *5 (D.N.J. Jan. 6, 2006) (where plaintiffs established that one supervisor required his workers to work "free time" but failed to establish that other supervisors employed the same policies, plaintiff failed to meet his burden of showing that putative class members were victims of a single policy); *see also Diaz*, 2005 WL 2654270, at *4 (W.D.N.Y. Oct. 17, 2005) (allegations of one managers' practice insufficient to justify certification of collective action); *Freeman*, 256 F. Supp. 2d at 945 (same).

**C.    Sampson's Meal Break Claim is Unsuitable for Certification Due to the Network Hospitals' Various Collective Bargaining Agreements**

Sampson, like the vast majority of Defendants' current and former non-exempt hourly employees on whose behalf she seeks to proceed, is a member of a bargaining unit. The terms and conditions of employment for each bargaining unit are governed by a separate collective bargaining agreement ("CBA"). The CBAs contain comprehensive provisions governing recognition of the

union as the sole and exclusive collective bargaining representative of all the employees in the unit, meals and rest breaks, overtime compensation, on-call pay, shift differentials, fulfilling staffing needs, training, and record retention. (Verdi Dec. ¶ 14-24; Selman Dec. ¶ 11-20; Musslewhite Dec. ¶ 11-20; Mangani Dec. ¶ 10-18.) Accordingly, the thrust of Sampson's meal break claim can only be understood in the context of the long-standing and robust collective bargaining at Defendants' facilities. Indeed, the New York State Nursing Association recently issued a notice reminding its members that grievance options were available to members with concerns about break-related claims. (Almon Decl., Ex. B.)

The terms and conditions of employment for putative class members diverge significantly, based on the terms of their respective CBAs. The ability of many union members, for example, to combine paid and unpaid breaks into a single, longer meal break (Verdi Dec. ¶ 17; Selman Dec. ¶ 20; Mangani Dec. ¶ 14) is significant because the partial interruption of such a hybrid break may not violate the FLSA at all. *See* 29 C.F.R. § 785.19 ("Ordinarily 30 minutes or more is long enough for a bona fide meal period".) Further, the CBAs vary from institution to institution and from job title to job title. (Verdi Dec. ¶ 16; Mangani Dec. ¶ 13.) For example, RNs at Brookdale work flex or alternate work schedules of up to 12.5 hour shifts. (Selman Dec. ¶ 20.) On the other hand, some RNs at Flushing work on the 11.5 hour flex or alternate work schedules. (Mangani Dec. ¶14.) All of the collective bargaining agreements also include grievance procedures which culminate in final and binding impartial arbitration.

For the reasons stated in Defendants' pending Motion to Dismiss, it is in that forum that a unionized employee like Sampson should pursue any claim for unpaid wages or overtime, including missed meal breaks. Thus, Sampson's Motion should be denied because she pursues her claims in an improper forum, and the very existence of the CBAs render certification inappropriate because analysis of the CBAs' terms to resolve claims such as hers necessarily require the sort of individualized, job title

26

by job title, location by location, bargaining agreement by bargaining agreement analysis that is inappropriate for certification. *See Holt*, 333 F. Supp. 2d at 1271-72 (a case is unsuitable for collective action treatment where court is required to conduct individualized analysis of multiple claims); *Pfaahler*, 2000 U.S. Dist. LEXIS 1771, at *9 (same); *Reed*, 246 F. Supp. 2d at 1232 (conditional certification denied where, proposed class was a "wide assortment encompass[ing] jobs with significantly different job duties and work schedules").

**D.**     **If Notice Issues, it Must be Limited to RNs and LPNs at Schulman, and Sampson's Proposed Notice Should Not be Used.**

Sampson's meal break claim should not survive Defendants' currently pending motion to dismiss. However, should any aspect of her meal break claim survive, Plaintiff's Motion produced no evidence warranting certification of a class of any size. Should the Court consider conditionally certifying Plaintiff's meal break claim, however, notice should issue only to RNs and LPNs at Schulman. *Every single* New York District Court to have granted conditional certification in meal break cases against hospital employers has significantly limited notice by directing it to non-exempt employees working in direct patient care and sharing a facility, or job title (or both), with Sampson.

Courts in this Circuit have not hesitated to limit notice even where the plaintiff submitted significantly more robust evidence than here, and have uniformly rejected notice of the sort Sampson proposes. *See, e.g., Colozzi v. St. Joseph's Hosp. Health Ctr.*, 595 F. Supp. 2d 200, 208 (N.D.N.Y. 2009) (limiting notice to employees responsible for patient care and treatment because "the same conditions . . . which would mandate their working through or during breaks" do not extend to non-patient care workers); *Fengler v. Crouse Health Found., Inc.*, 595 F. Supp. 2d 189, 197 (N.D.N.Y. 2009) (same); *Hamelin v. Faxton-St. Luke's Healthcare*, No. 6:08-CV-1219, 2009 WL 211512, at *7 (N.D.N.Y. Jan 26, 2009) (same); *Gordon v. Kaleida Health*, No. 08-CV-378S, 2009 WL 3334784, at *6 (W.D.N.Y. Oct. 14, 2009) (limiting notice to patient care providers who attend to patient needs

during their meal periods); *Hinterberger v. Catholic Health Sys.*, No. 08-CV-3 80S, 2009 WL

3464134, at *6 (W.D.N.Y. Oct. 21, 2009) (finding "no facts supporting the extension of conditional

class beyond the direct-patient-care titles")

      Sampson's proposed notice is impermissibly broad and defective and should be rejected.

*See Gieseke v. First Horizon Home Loan Corp.*, No. 04-CV-2511, 2006 WL 2919076, at *1 (D.

Kan. Oct. 11, 2006) (citing *Heitmann v. City of Chicago*, No. 04-CV-3304, 2004 WL 1718420, at

*3 (N.D. Ill. Jul. 30, 2004) ("The Court has both the power and the duty to ensure that the notice is

fair and accurate.")).  Plaintiff's proposed notice is factually and legally flawed for many reasons:

    (a)  it will mislead recipients and precludes informed consent because it improperly suggests court endorsement and does not (i) name the defendants, merely referring to the "MediSys Health Network" and "related entities, and refers to multiple nonexistent "policies", (ii) improperly seeks consent for "*any* lawsuit that is filed seeking payment of unpaid wages, including overtime wages, and related relief against my employer(s)." (emphasis added)[7], (iii) is boundless, specifying no date by which consents must be filed[8], and (iv) fails to advise putative plaintiffs of their obligations to participate in discovery.[9]

    (b)  it intentionally blurs the significant distinction between Rule 23 certification and §216(b) conditional certification, implying that by virtue of opting-in employees are *ipso facto* entitled to overtime pay and that by doing nothing and failing to opt-in they may jeopardize their rights, both of which are factually and legally inaccurate.

---

[7] Consent forms must be limited to the particular lawsuit and should, at minimum, identify this case by name. *Anyere v. Wells Fargo Co.*, No. 09-C 2769, 2010 U.S. Dist. LEXIS 35599 (N.D. Ill. Apr. 12, 2010).

[8] Due to T&S's widespread and coercive solicitations and improper pre-notice conduct in the New York metropolitan area, the opt-in period should be limited to 45 days, especially since there is no evidence that class members reside outside of the New York metropolitan area. *See Martinez v. Cargill Meat Solutions*, 265 F.R.D. 490, 501 (D. Neb. 2009) (to avoid "substantially delay[ing] the progress of this litigation," "plaintiffs' notice will set a forty-five day deadline for recipients to consider, complete and mail their 'opt-in consent forms'"); *see also DeKeyser v. Thyssenkrupp Waupaca, Inc.*, No. 08-C-488, 2008 U.S. Dist. LEXIS 102318, at *6 (E.D. Wis. Dec. 17, 2008) (45 days); *Williams v. Long*, 585 F. Supp. 2d 679, 691 (D. Md. 2008) (30 days). Here, it is especially important to mandate a 45-day deadline for potential opt-ins to mail in the Consent because Plaintiffs have had ample and ongoing access to Defendants' employees and have significantly abused this access as demonstrated by their website and solicitations.

[9] These requirements are essential here, as putative class members represented by Sampson's counsel have ignored their discovery obligations in other actions. *See Hamelin v. Faxton-St. Luke's Healthcare*, No. 08-CV-1219, slip op. (N.D.N.Y. 2008) (Docket No. 231) (dismissing 47 opt-ins due to failure to respond to interrogatories). Furthermore, the notice does not inform potential plaintiffs of possible consequences of joining the lawsuit, including liability for court costs and litigation expenses. *See, e.g., Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 324 (S.D.N.Y. 2007).

(c) it contemplates inappropriate delivery methods,[10] contains unbalanced contact information.[11] improperly seeks to advertise the litigation through postings on Defendants' premises, and links to similarly audacious, and demonstrably false and misleading, attorney advertising for which Plaintiff's counsel already have been reprimanded.[12]

(d) it seeks private information to which Plaintiff is not entitled including the last four digits of Defendants' employees' social security numbers, dates of birth, telephone numbers, and email addresses, but Defendants should not be required to provide more than the names and last known addresses of putative class members, in accordance with the direction of the Supreme Court. *See Hoffman- LaRoche, Inc. v. Sperling,* 493 U.S. 165, 170 (1989).[13]

The parties should be given thirty days to negotiate an appropriate, accurate notice - a practice widely used in FLSA collective actions, should notice be authorized (which it should not be). *See, e.g., Fengler v. Crouse Health Found., Inc.,* 595 F. Supp. 2d 189, 199 (N.D.N.Y. 2009).

Should these efforts fail, Defendants propose that opposing counsel cross-file proposed notice forms

---

[10] Notification by first class mail" provides a controlled method by which individual notification can be provided through a reliable process which ensures that proper notice is received by the potential class members." *Karvaly v. eBay, Inc.,* 245 F.R.D. 71, 91 (E.D.N.Y. 2007); *Gordon,* 2009 WL 3334784, at *11 ("first class mail is the best notice practicable"). *See Martinez,* 265 F.R.D. at 500-501 ("Notice by mailing is the only court-approved method for disseminating notice of plaintiffs' collective action to . . . employees.").

[11] *Gjurovich v. Emmanuel's Marketplace, Inc.,* 282 F. Supp. 2d 101, 108 (S.D.N.Y. 2003); *Guzman v. VLM, Inc.,* No. 07-CV-1126, 2007 U.S. Dist. LEXIS 75817 (E.D.N.Y. Oct. 11, 2007).

[12] As this Court noted during the parties' initial status conference on October 29, 2010, at a conference in *Hackett v. Montefiore Health Sys., Inc.,* No. 10-CV-2682 (S.D.N.Y. 2010), District Court Judge Paul J. Crotty sharply reprimanded Sampson's counsel for false website communications to putative class members. This portion of the notice is particularly distressing given the inability of the Court to continuously monitor the website and Sampson's counsel's previous "false and misleading" and "highly inaccurate" posting on its website. (*See* Docket N. 89.)

[13] Courts customarily deny requests for information such as social security and telephone numbers. *Ruggles v. WellPoint, Inc.,* 591 F. Supp. 2d 150, 163 (N.D.N.Y 2008); *Damassia v. Duane Reade, Inc.,* No. 04 Civ. 8819, 2006 U.S. Dist. LEXIS 73090, at *26 (S.D.N.Y. Oct. 5, 2006). Moreover, New York law specifically prohibits employers from making available an individual's social security number, N.Y. Gen. Bus. Law § 399-dd, and it is also commonly recognized that an individual's birth date must be protected and not disclosed. See Fed. R. Civ. P. 5.2; *see also Francis v. A&E Stores, Inc.,* No. 06 Civ. 1638, 2008 U.S. Dist. LEXIS 49971, at *8-9 (S.D.N.Y. Jun. 26, 2008) (approving the production of the names and addresses of individuals while rejecting plaintiffs' request for social security numbers, telephone numbers, and dates and location of employment); *Fengler v. Crouse Health Foundation, Inc.,* 595 F. Supp. 2d 189, 198 (N.D.N.Y. 2009) ("[W]here preliminary certification has been granted, defendants should be required to provide names and addresses of potential opt-in plaintiffs . . . however, given the present setting plaintiffs have no need for the additional, inherently private information sought, including e-mail addresses, telephone numbers, social security numbers, and dates of birth.")

from which the Court will determine an appropriate notice. *See, e.g., Hinterberger*, 2009 WL 3464134, at *11-12.

## CONCLUSION

For all the reasons discussed herein, the Court should deny Plaintiffs' Motion for Expedited Notice and Hearing.

Dated: New York, New York
       December 10, 2010

Respectfully submitted,

SEYFARTH SHAW LLP

By s/ Lorie E. Almon

Lorie E. Almon
Anjanette Cabrera
Jeremi L. Chylinski
620 Eighth Avenue, 32nd Floor
New York, New York 10018
(212) 218-5500

Kristin G. McGurn
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 300
Boston, Massachusetts 02210
(617) 946-4800
*Attorneys for Defendants*