UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X
NELLIE SAMPSON, on behalf of herself and all
other employees similarly situated,

                  Plaintiffs,

                                                                                            **ORDER**

                -against-                                                      10-CV-1342 (SJF) (ARL)

MEDISYS HEALTH NETWORK INC., THE JAMAICA
HOSPITAL, THE BROOKDALE HOSPITAL MEDICAL
CENTER, FLUSHING HOSPITAL AND MEDICAL
CENTER, PENINSULA HOSPITAL CENTER, DAVID
P. ROSEN, and MAX SCLAIR,

                  Defendants.
------------------------------------------------------------X
FEUERSTEIN, J.

On March 24, 2010, Claudette Fraser commenced this action on behalf of others similarly situated against Medisys Health Network, Inc., the Jamaica Hospital, the Brookdale Hopsital Medical Center, Flushing Hospital and Medical Center, Peninsula Hospital Medical Center, David P. Rosen and Max Sclair (collectively "defendants") alleging violations of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA"), and the Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. § 1961, *et seq.* ("RICO"). Prior to serving the complaint upon defendants, plaintiff's counsel filed "Consent to Become a Party Plaintiff" forms signed by twelve (12) employees of defendants, and, on June 16, 2010, filed an amended complaint (the "complaint") substituting Nellie Sampson as the named plaintiff and adding related state law claims. To date, plaintiff's counsel has filed twenty (20) consent forms on

1

behalf of employees of defendants (collectively "plaintiffs") and has voluntarily dismissed the claims of several plaintiffs.

On September 30, 2010, defendants filed a motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. DE 68. On October 4, 2010, plaintiffs filed a motion "to strike inappropriately submitted evidence," arguing that the court should not consider several collective bargaining agreements ("CBAs") submitted by defendants when deciding the motion. DE 79. On December 21, 2010, plaintiffs filed a "motion for expedited notice to affected employees" wherein plaintiffs request that the Court issue an order (1) "requiring the issuance of an expedited notice to" relevant employees; (2) "requiring defendants to provide . . . a list . . . of all current and former employees" subject to the policies in question; (3) "requiring defendants to post notices and opt-in forms . . . at defendants' locations"; (4) "requiring defendants to email such notices and opt-in forms to employees"; (5) "requiring defendants to publish such notice . . . in defendants' newsletter[s]"; and requesting an expedited hearing upon plaintiffs' motion for expedited notice. DE 98, 103.

I. Factual Background

Plaintiffs allege that Medisys Health Network, Inc. and the other named defendant medical centers belong to "a single, integrated enterprise" ("Medisys"), compl. ¶ 36, related through "common membership, governing bodies and trustees and/or officers," *id.* ¶ 18, and that defendants David P. Rosen and Max Sclair are the President and Chief Executive Officer and the Vice President of Human Resources of Medisys respectively. *Id.* ¶¶ 40, 52. The named

plaintiff belongs to a group of proposed plaintiffs who were employees of Medisys paid hourly, *id.* ¶ 10, and "were suffered or permitted to work by defendants and not paid their regular or statutorily required rate of pay for all hours worked." *Id.* ¶ 65.

Plaintiffs challenge several "policies" of Medisys which they allege violated the aforementioned laws:

(1) "Meal and Break Deduction Policy." Plaintiffs allege that defendants' "timekeeping system automatically deducts time from [plaintiffs'] paychecks each day for meals, breaks and other reasons," but that plaintiffs "do in fact perform work during those breaks and are not paid for that time." *Id.* ¶¶ 68, 70. Therefore, plaintiffs argue, they "are not fully compensated for work they perform during breaks." *Id.* ¶ 85;

(2) "Pre- and Post- Schedule Work Policy." Plaintiffs allege that defendants "suffered or permitted" them to "perform work before and/or after the end of their scheduled shifts" but did not pay them "for all of the time spent performing such work as a result of defendants' policies, practices and/or time recording system" *Id.* ¶¶ 89-90. Therefore, plaintiffs allege, they should have been paid for work performed "before and/or after their shifts." *Id.* ¶ 91;

(3) "Training Policy." Plaintiffs allege that defendants "suffered or permitted [plaintiffs] to attend compensable training programs" but "fail[ed] to pay [them] for all time spent attending such training sessions." *Id.* ¶¶ 93-94.

Furthermore, plaintiffs allege that these policies, and Medisys' practice of mailing payroll checks to plaintiffs which deceptively underpaid them pursuant to these policies, constituted a "scheme" consisting of "illegally, willfully and systematically withholding or refusing to pay [plaintiffs] their regular or statutorily required rate of pay for all hours worked." *Id.* ¶¶ 108-112.

3

II. Analysis

   A. Rule 12(b)(6) Motion to Dismiss

      1. Standard of Review

The standard of review on a motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure requires that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A complaint must give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007). See also Boykin v. KeyCorp, 521 F.3d 202, 214 (2d Cir. 2008). However, a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, --- U.S. ----, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of further factual enhancement.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555. The plausibility standard requires "more than a sheer possibility that defendant has acted unlawfully." Iqbal, 129 S. Ct. at 1949.

In deciding a motion to dismiss, the Court must liberally construe the claims, accept all

factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008), *cert. denied*, 128 S. Ct. 2964, 171 L. Ed. 2d 906 (2008) (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002)). However, this standard "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 1950. When determining a motion to dismiss pursuant to Rule 12(b)(6), the Court must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. Chambers, 282 F.3d at

2.  FLSA Claims

Plaintiffs' allegation of a purported violation of FLSA consists of a reference without citation at the beginning of the complaint, *id.* ¶ 1, a jurisdictional reference to 29 U.S.C. § 216(b), *id.* ¶ 2, and a general incorporation of the first one hundred and ninety six (196) paragraphs of the complaint by reference. *Id.* ¶ 197. The complaint references "illegal pay policies," *id.* ¶ 67, and alleges that "compensable work time was being excluded from the [plaintiffs'] pay." *Id.* ¶ 83. Although it describes the specific policies, the complaint does not articulate which part of the FLSA plaintiffs contend was violated.

An employee who works fewer than forty (40) hours in a week, and is paid for those hours at a rate of at least minimum wage, cannot state a claim pursuant to the wage and hour provisions of the FLSA. See United States v. Klinghoffer Bros. Realty Corp., 285 F.2d 487, 494 (2d Cir. 1961); Wolman v Catholic Health Sys. of Long Island, No. 10-CV-1326, 2010 WL 5491182 (E.D.N.Y. December 30, 2010). Insofar as plaintiffs challenge defendants' failure to compensate them for working during meals and breaks, the Court interprets plaintiffs to be seeking overtime and "gap time" compensation pursuant to the FLSA based upon the totality of the allegations in the complaint and the moving papers. Conzo v. City of New York, 667 F.Supp.2d 279, 283 (S.D.N.Y. 2009) (defining "gap time" compensation as "compensation for hours worked 'in the gap' between non-overtime hours compensated for by their salary and hours above [forty] 40 which are compensated for with overtime pay"); see also Wolman v Catholic Health Sys. of Long Island, No. 10-CV-1326, 2010 WL 5491182 (E.D.N.Y. December 30, 2010) (construing a similar complaint to purport to allege theses claims).

### A. Overtime Claims

The FLSA states that "no employer shall employ any of his employees . . . for a workweek longer than forty [40] hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half [1½] times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Although the Second Circuit has not defined the elements of a FLSA overtime claim, the statute explicitly requires that for an eligible employee to be qualified for heightened compensation, he or she must work, see

Chao v. Gotham Registry, Inc., 514 F.3d 280 (2d Cir. 2008) (when an employee is 'working' for the purposes of overtime compensation), and that the hours worked be in excess of forty (40) hours per week. Once this is established, the court may turn to an employment contract, case law, CBAs and the FLSA to establish the rate at which an employee should be paid. See, e.g., Gorman v. Consolidated Edison Corp., 488 F.3d 586, 595-97 (2d Cir. 2007).

Plaintiffs have alleged that they have worked on their meal and break time, worked before and after their shift, and attended training without pay, but without specificity allege only that they have worked "both under and in excess of forty [40] hours per week. Compl. ¶ 177, 187. These conclusory allegations are not sufficient to plead a violation of the overtime provision. See Zhong v. August August Corp.,498 F.Supp.2d 625, (S.D.N.Y. 2007) ("simply stating that a plaintiff was not paid for overtime work does not sufficiently allege a violation of Section 7 of the FLSA.") (citing Acosta v. The Yale Club, No. 94-CV-0888, 1995 WL 600873 (S.D.N.Y. Oct. 12, 1995); but see Hinterberger v. Catholic Health, No. 08-CV-380S, 2008 WL 5114258 (W.D.N.Y. November 25, 2008). Plaintiffs contend that their FLSA overtime claim is made out by the allegation that the hours, properly calculated, "often would have included work that should have been calculated at applicable premium pay rates." Compl. ¶¶ 87, 91, 95. However, plaintiffs do not allege any facts to support the general conclusion that by working during the challenged periods they would have been working in excess of forty hours in one week period.[1] Without alleging facts that support the claim that by working during the challenged periods

---

[1] It is not even clear whether the challenged periods would constitute compensable time pursuant to the FLSA based upon the allegations. See Wolman, 2010 WL 5491182 *2-3 (not all training periods, or work performed immediately prior to or after a shift is compensable, and plainitffs' complaint does not sufficiently allege that the work performed during these periods was compensable).

7

plaintiffs, or the named plaintiff at a minimum, would be working compensable overtime hours, plaintiffs have not given defendants fair notice of the basis of the FLSA overtime claim as is required by Twombly and Iqbal. See Nichols v. Mahoney, 608 F.Supp.2d 526, 547 (S.D.N.Y. 2009) (an overtime claim is sufficiently pled where "plaintiffs have specified the approximate time period they were employed by defendants . . . and the approximate number of overtime hours they each worked per week without receiving overtime pay."). As a result, plaintiffs' claim for overtime compensation is dismissed without prejudice.

B. Gap Time Claims

The hours an employee works beyond those contracted for, yet fewer than forty (40) which would require overtime pay by the FLSA, are frequently referred to as "gap time." Wolman, 2010 WL 5491182 *4; Conzo, 667 F.Supp.2d at 283; Parker v. City of New York, No. 04 cv 4476, 2008 WL 2066443 *3 (S.D.N.Y. May 13, 2008). So long as an employee works fewer than forty (40) hours in a week, and is paid for those hours at a rate of at least minimum wage, an employee cannot state a gap time claim under the FLSA. See United States v. Klinghoffer Bros. Realty Corp., 285 F.2d 487, 494 (2d Cir. 1961).

As noted in Wolman, to the extent courts have reached a consensus with respect to gap time claims, they have held that there can be no FLSA gap time claim when an employment contract provides that an employee be compensated for all non-overtime hours, and the employee has been properly compensated for overtime hours. See Conzo, 667 F.Supp.2d at 286-7 (collecting cases); see also Monahan v. County of Chesterfield, Virginia., 95 F.3d 1263, 1273 (4th

Cir. 1996) ("if the mutually agreed upon terms of an employment agreement do not violate the FLSA's minimum wage/maximum hour mandates and provide compensation for all nonovertime hours up to the overtime threshold, there can be no viable claim for straight gap time under the FLSA if all hours worked above the threshold have been properly compensated at a proper overtime rate"). Plaintiffs have alleged that defendants "entered into express oral contacts with [plaintiffs] that were explicitly intended to order and govern the employment relationship between defendants and [plaintiffs]" and provided that plaintiffs would "provide services and labor" in exchange for "compensation under the provisions of the contract" for "all hours worked." Compl. ¶¶ 143-47. Therefore, plaintiff's allegations cannot support a FLSA gap time claim and is dismissed with prejudice.

3. RICO Claim

To state a RICO claim pursuant to 18 U.S.C. §§ 1962 and 1964(c), a plaintiff must, *inter alia*, allege a defendant participated or conspired to participate in a "pattern of racketeering activity." 18 U.S.C. § 1962(a), (b), (c) and (d). Plaintiffs purport that this requirement is met by the allegations that defendants committed mail fraud by mailing plaintiffs payroll checks that were "false and deceptive because they misled [plaintiffs] about the amount of wages to which they were entitled, the number of hours which they had worked, and whether defendants had included all compensable work time." Compl. ¶ 112. Plaintiffs allege that the defendants "deliberately concealed from [plaintiffs] that they did not receive compensation for all compensable work that they performed and misled them into believing they were begin payed

9

properly." Compl. ¶ 101.

The elements of a mail fraud violation are "(1) use of the mails to further (2) a scheme to defraud with (3) money or property as the object of the scheme." Porcelli v. United States, 404 F.3d 157, 162 (2d Cir. 2005) (citing United States v. Gole, 158 F.3d 166, 167 (2d Cir. 1998). The elements of a "scheme to defraud" are "(i) the existence of a scheme to defraud, (ii) the requisite scienter (or fraudulent intent) on the part of the defendant, and (iii) the materiality of the misrepresentations" United States v. Autuori, 212 F.3d 105, 115 (2d Cir. 2000) (internal citations omitted). To successfully plead a RICO claim, "the circumstances constituting the alleged fraud must be pled with particularity." Fed. R. Civ. P. 9(b); Fresh Meadow Food Services, LLC v. RB 175 Corp., 282 Fed.Appx. 94, 97 (2d Cir. 2008).

The Second Circuit has been unwilling to find a fraud claim when the claim is merely a restatement of a breach of contract claim. See TVT Records v. Island Def Jam Music Group, 412 F.3d 82 (2d Cir. 2005) (fraudulent concealment); Bridgestone/Firestone v. Recovery Credit Servs., Inc., 98 F.3d 13, 19-20 (2d Cir. 1996) (citing cases) (facts demonstrating "intentionally-false statements by [defendant] indicating his intent to perform under the contract [are] not sufficient to support a claim of fraud under New York law"). Plaintiffs may maintain a claim of fraud in this circumstance where they "(i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." Bridgestone/Firestone, 98 F.3d at 20 (internal citations omitted). Although plaintiffs allege fraud as a cause of action, the allegations of fraud are based upon defendants' failure to pay plaintiffs pursuant to the employment contract. As all of

10

plaintiffs' claims rely upon the existence of a contract requiring defendants to pay plaintiffs for "all hours worked," compl. ¶ 147, and plaintiffs have not adequately alleged the Bridgestone/Firestone elements, they cannot make out a claim for fraud or mail fraud.

In any event, if plaintiffs were repeatedly not paid for time worked in violation of the contract, as plaintiffs allege, the conclusory allegation that the payroll checks constituted a fraudulent scheme to conceal that fact will not support the RICO claim. If plaintiffs are aware of their hours worked, the payroll check would put plaintiffs on notice of any fraudulent scheme, not conceal it. See Wolman, 2010 WL 5491182 *5-6; Cavallaro v. UMass Memorial Health Care Inc., 09-CV-40152, 2010 WL 3609535, at *3 (D. Mass. July 2, 2010); cf. United States v. Maze, 414 U.S. 395, 403, 94 S. Ct. 645, 38 L. Ed.2d 603 (1974) (mailing of billing statements did not constitute a fraudulent scheme where "the successful completion of the mailings . . . increased the probability that respondent would be detected"). As the facts plaintiffs have alleged do not constitute a fraudulent scheme, and amendment will not remedy the cure the deficiency, plaintiffs' RICO claims are dismissed with prejudice.

Plaintiffs cite Bankers Trust Co. v. Rhoades, 859 F.2d 1096 (2d Cir. 1988) and Bingham v. Zolt, 66 F.3d 553, 560 (2d Cir. 1995) as precedent in support of the proposition that "allegations like those in this case" state a RICO claim. See Memorandum in Opposition at 16. However, the fraudulent scheme in these cases consist of a "sham document which defendants later claimed was a valid shareholders' agreement" made in order to swindle creditors and the bankruptcy court, Bankers Trust, 859 F.2d at 1099, and several schemes involving pre-dating share transfers, illegally diverting royalty payments, and undervaluing the assets in an estate. Bingham v. Zolt, 66 F.3d at 557. These cases are inapposite to the instant matter as they

evidence a clearly fraudulent scheme.

    4.    Preemption of State Law Claims

        a.    Section 301 Preemption

Defendants move to dismiss plaintiffs' state law claims arguing that they are precluded by Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185(a) ("section 301") and by San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S. Ct. 773, 3 L. Ed.2d 775 (1959). In support, defendants have submitted several CBAs which they claim are relevant to the proposed members of the collective action.[2] Plaintiffs argue that their claims are not preempted

---

[2] Defendants have submitted a CBA between Jamaica Hospital Medical Center, Flushing Hospital Medical Center and Brookdale University Hospital and Medical Center and the Committee of Interns and Residents/SEIU, between Brookdale University Hospital and Medical Center and the Brotherhood of Security Personnel, Officers and Guards International Union, and between the Brookdale University Hospital and Medical Center / Schulman and Schachne Institute for Nursing and Rehabilitation and 1199SEIU United Healthcare Workers East Registered Nurse Division. *See* Declaration of Brenda Lee and attached exhibits.

Defendants have submitted a CBA between Jamaica Hospital Medical Center / Jamaica Hospital Nursing Home - Trump Pavilion and 199SEIU United Healthcare Workers East Registered Nurse Division and a memorandum of Agreement between the Medisys Network and the Local 74 Union. *See* Declaration of Marguerite Verdi and attached exhibits.

Defendants have submitted a CBA between the Flushing Hospital Medical Center and the New York State Nurses Association, between the "League of Voluntary Hospitals and Homes of New York" and 1199SEIU United Healthcare Workers East. *See* Declaration of John Mangani and attached exhibits.

Defendants have submitted a CBA between Peninsual Hospital Center and the New York State Nurses Association, between Peninsula Hospital Center and the Special and Superior Officers Benevolent Association and an outline of Agreement extending the agreement between

and that the attached CBAs may not be considered upon a motion to dismiss because they were not attached to the complaint, incorporated by reference or are integral to the complaint. *See* Memorandum of Law in Support of Motion to Strike Inappropriately Submitted Evidence.

Insofar as the terms of plaintiffs' employment, especially definitions of compensable work periods and pay rates, are covered by CBAs, the existence of these CBAs are integral to the complaint, especially with respect to this Court's determination as to whether the state law claims are preempted by federal labor law.

Section 301 preemption "converts an ordinary state common law complaint into one stating a federal question." Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 65, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). When section 301 preempts a state-law claim, "that claim must either be treated as a § 301 claim or dismissed as pre-empted by federal labor-contract law." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220, 105 S. Ct. 1904, 85 L. Ed.2d 206 (1985) (internal citations omitted). "[W]here the resolution of a state-law claim depends on an interpretation of the collective-bargaining agreement, the claim is pre-empted." Foy v. Pratt & Whitney Group, 127 F.3d 229, 233 (2d Cir. 1997) (citing Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 260-62, 114 S. Ct. 2239, 2248, 129 L. Ed.2d 203 (1994); Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 405-06, 108 S. Ct. 1877, 1881, 100 L .Ed.2d 410 (1988). "However, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." Foy, 127 F.3d at 233 (citing Livadas v. Bradshaw, 512 U.S. 107, 124, 114 S. Ct. 2068, 2078, 129 L. Ed.2d 93 (1994); Lingle, 486 U.S. at

---

the League of Voluntary Hospitals and Homes of New York and 1199SEIU United Healthcare Workers East. See Declaration of Ronald Musselwhite and attached exhibits.

413 n. 12, 108 S. Ct. at 1885 n. 12.).

Section 301 preempts a claim to enforce a current CBA by state law. Derrico v. Sheehan Emergency Hosp., 844 F.2d 22, 25 (2d Cir. 1988), and although a plaintiff may have substantial rights arising from a CBA, a plaintiff may choose not to bring a claim pursuant to section 301. See Caterpillar Inc. v. Williams, 482 U.S. 386, 394 , 107 S. Ct. 2425, 2430-31, 96 L. Ed.2d 318 (1987) (plaintiff may claim breach of the individual contract even where plaintiff may have rights arising in a CBA, and the state law claim is not preempted).

The complaint makes reference to "oral express contracts and/or implied contracts [which] from time to time . . . were memorialized in writing" and does not reference CBAs. Compl. ¶¶ 142, 143-147. Plaintiffs argue that the state law claims arise from independent employment contracts and the New York State Labor Law and not from violations of the CBA. *See* Memorandum in Opposition at 20-25. To the extent plaintiffs allege that defendants' failure to pay violates contracts independent of the CBAs, plaintiffs' state law claims are not preempted by section 301.

However, any claims arising from breach of a plaintiff's CBA are preempted by section 301 and are dismissed with prejudice. Although a preempted claim could be treated as a section 301 claim, Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 210, 105 S. Ct. 1904, 85 L. Ed.2d 206 (1985), the complaint fails to allege that the plaintiffs exhausted their administrative grievance process, a prerequisite to suit under section 301. See Republic Steel Corp. v. Maddox, 379 U.S. 650, 652, 85 S. Ct. 614, 13 L. Ed.2d 580 (1965); Adirondack Transit Lines, Inc. v. United Transp. Union, Local 1582, 305 F.3d 82, 86 (2d Cir. 2002).

b. <u>Garmon</u> Preemption

State laws attempting to regulate activity covered by sections seven and eight ("section 7 and 8") of the National Labor Relations Act, 29 U.S.C. §§ 157, 158 ("NLRA") are preempted. See <u>San Diego Building Trades Council v. Garmon</u>, 359 U.S. 236, 79 S. Ct. 773, 3 L. Ed.2d 775 (1959); see also <u>Healthcare Ass'n of New York State, Inc. v. Pataki</u>, 471 F.3d 87 (2d Cir. 2006). To establish <u>Garmon</u> preemption, defendants must first identify which portion of section 7 and 8 of the NLRA protects or prohibits the conduct regulated, demonstrate how the state law threatens the National Labor Relations Board's ("NLRB") primary jurisdiction and whether the law interferes with the NLRA. <u>Healthcare Ass'n</u>, 471 F.3d at 96-102.

"In order to fall under Section 8 of the NLRA, plaintiffs must be alleging that they were retaliated against on the basis of having engaged in 'concerted protected activity.'" <u>Domnister v. Exclusive Ambulette, Inc.</u>, 607 F.3d 84, 89 (2d Cir. 2010) Concerted protected activity, as defined by Section 7, requires "that an employee's action be taken for purposes of collective bargaining or other mutual aid or protection." <u>Id.</u> at 89 (citing <u>NLRB v. City Disposal Sys. Inc.</u>, 465 U.S. 822, 830, 104 S. Ct. 1505, 79 L. Ed.2d 839 (1984)). Plaintiffs argue that <u>Garmon</u> preemption applies because section 8 requires an employer "to bargain collectively with the representatives of his employees" with respect to "rates of pay, wages, hours of employment, or other conditions of employment." 29 U.S.C. §§ 158(a)(5), 158(d), 159(a). When "an exclusive representative has been selected, the individual employee is forbidden by federal law from negotiating directly with the employer absent the representative's consent." <u>Wood v. National Basketball Ass'n</u>, 809 F.2d 954, 959 (2d Cir. 1987) (citing <u>NLRB v. Allis-Chalmers Mfg. Co.</u>,

388 U.S. 175, 180, 87 S. Ct. 2001, 2006, 18 L. Ed.2d 1123 (1967).

To the extent that plaintiffs are represented by collective bargaining agents as members of their respective unions, sections 7 and 8 of the NLRA provide exclusive bargaining power to their elected agents, and defendants are prohibited from forming independent employment contracts with individual employees. For union member plaintiffs, decisions upon state law claims alleging violations of independent employment contracts would necessarily threaten the NLRB's primary jurisdiction to investigate and hear petitions "alleging that . . . [an] employer declines to recognize their representative as the representative defined in subsection (a) of this section." 29 U.S.C. § 159(c)(1)(A). Therefore, claims based upon independent employment contracts alleged by plaintiffs concurrently represented by collective bargaining agents, and subject to a CBA, are preempted by Garmon, and are dismissed with prejudice.

However, Garmon preemption does not require employees to become members of a union. Plaintiffs make no reference in the complaint to CBAs or plaintiffs union status. Insofar as plaintiffs are not represented by collective bargaining agents and subject to CBAs, Garmon does not require federal preemption of their state law claims.

c. FLSA Preemption

Defendants contend that plaintiffs' state law claims are preempted by FLSA because they are based upon the same factual allegations. Memorandum in Support at 33-35. The remaining FLSA claim is plaintiffs' claim for unpaid overtime compensation. Where New York law requiring overtime payment "does not interfere with [FLSA] regulation" the state law claims are

16

not preempted. <u>Pettis Moving Co., Inc. v. Roberts</u>, 784 F.2d 439 (2d Cir. 1986). Defendants have not demonstrated in what way plaintiffs' state law claims interfere with FLSA regulation. Therefore, plaintiffs' state law claims are not preempted by the FLSA.

5. State Law Claims

Plaintiffs allege defendants violated New York Labor Law §§ 190(8) and 191, *et seq.*, as well as pendent common law claims of breach of express and implied contract, breach of implied covenant of good faith and fair dealing, quantum meruit, unjust enrichment, fraud, negligent misrepresentation, conversion and estoppel. As plaintiffs have failed to state a federal claim, the court declines pendent jurisdiction over the remaining state law claims, and they are dismissed without prejudice.

As noted above, state law claims arising from employment contracts independent from a relevant CBA are dismissed without prejudice. However, should "resolution of a [plaintiffs] state-law claim depend[] on an interpretation of the collective-bargaining agreement," <u>Foy</u>, 127 F.3d at 233; Lividas 512 U.S. at 124 (section 301 preemption depends upon whether the "meaning of contract terms" is the "subject of dispute"), the claim shall be dismissed with prejudice as preempted by section 301.

6. Plaintiffs' Remaining Motions

As defendants motion to dismiss is granted without reliance upon the substance of the

17

CBAs, the Court need not decide whether the CBAs are an integral part of the complaint at this time. Plaintiffs motion to strike the CBAs is denied as moot. As there are no pending claims, Plaintiffs motion for expedited notice is denied as moot.

C.  Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a party shall be given leave to amend "when justice so requires." "Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 1998) (citing Forman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed.2d 222 (1962)). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." Forman, 371 U.S. at 182. However, if amendment would be futile, *i.e.*, if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6), leave to amend may be denied. See Lucente v. International Business Machines Corp., 310 F.3d 243, 258 (2d Cir. 2002).

Insofar as plaintiffs seek to leave to amend the FLSA claims for overtime compensation, plaintiffs' motion is granted. Should plaintiffs decide to amend the complaint, the Court acknowledges Judge Seybert's note to plaintiffs' counsel on a remarkably similar complaint:

> any such ... Amended Complaint should contain significantly more factual

> detail concerning who the named Plaintiffs are, where they worked, in what capacity they worked, the types of schedules they typically or periodically worked, and any collective bargaining agreements they may have been subject to. Likewise, to the extent that Plaintiffs seek to rely upon the Unpaid Time or Unpaid Training Policies, Plaintiffs should - consistent with this opinion - plead enough factual detail concerning this unpaid time and training to render their allegations plausible. The Court will not be impressed if the ... Amended Complaint prattles on for another 217 paragraphs, solely for the sake of repeating various conclusory allegations many times over.

Wolson, 2010 WL 5491182 *7. Plaintiffs motion to amend the FLSA gap time claims and RICO claims are denied as amendment will not cure the deficiencies of the claims.

IV.    Conclusion

Based upon the foregoing, defendants' motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted in its entirety with prejudice with respect to the gap time compensation claim, the RICO claim, and state law claims preempted by federal labor law and without prejudice with respect to FLSA overtime compensation claim and the remaining state law claims. Plaintiffs' request to amend the remaining claims of the complaint is granted insofar as plaintiffs may file an amended complaint within thirty (30) days from the issuance of this order. In the event plaintiffs fail to amend the complaint in the proscribed period, the remaining claims will be dismissed with prejudice for

failure to prosecute, and the clerk of the court will be directed to close the case.

**SO ORDERED.**

_____
SANDRA J. FEUERSTEIN    2/6/11
United States District Judge

Dated: February 8, 2011
       Central Islip, New York