UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| NELLIE SAMPSON AND TIMOTHY GILL, *on behalf of themselves and all other employees similarly situated,*<br><br>*Plaintiffs,*<br><br>v.<br><br>MEDISYS HEALTH NETWORK INC., THE JAMAICA HOSPITAL, THE BROOKDALE HOSPITAL MEDICAL CENTER, FLUSHING HOSPITAL AND MEDICAL CENTER, PENINSULA HOSPITAL CENTER, DAVID P. ROSEN, AND MAX SCLAIR,<br><br>*Defendants.* | SECOND AMENDED COMPLAINT- CLASS ACTION AND DEMAND FOR JURY TRIAL<br><br><br>Civil Action No. 10-cv-1342 (SJF)(ARL) |

## NATURE OF CLAIM

1.  This is a proceeding for injunctive and declaratory relief and monetary damages to redress the deprivation of rights secured to plaintiffs, Nellie Sampson and Timothy Gill, individually, as well as all other employees similarly situated ("Class Members"), under the Fair Labor Standards Act of 1938 ("FLSA"), the New York Labor Law ("NYLL"), and under the common law and various laws of the State of New York.

## JURISDICTION AND VENUE

2.  The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343 (3) and (4) conferring original jurisdiction upon this Court of any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights; under 28 U.S.C. § 1337 conferring jurisdiction of any civil action arising under any Act of Congress regulating interstate commerce; under the Declaratory Judgment Statute, 28 U.S.C. § 2201; under 29 U.S.C. § 216(b); and under 18 U.S.C. §

1964(a) and (c).

3.   This Court's supplemental jurisdiction of claims arising under New York State law is also invoked.

4.   Venue is appropriate in the Eastern District of New York since the allegations arose in this District and at least one of the Named Plaintiffs reside in this District.

## CLASS ACTION ALLEGATIONS

5.   The claims arising under New York State law are properly maintainable as a class action under Federal Rule of Civil Procedure 23 ("Rule 23").

6.   The class action is maintainable under subsections (1), (2) and (3) of Rule 23(b).

7.   Common questions of law and fact predominate in this action because the claims of all class members are based on whether defendants' practice of not paying nonexempt employees for all hours worked and/or overtime for hours worked over forty per week violates the law.

8.   The class consists of current and former employees who worked for defendants, were paid hourly, and were not paid for all the time they worked including applicable premium pay.

9.   The class size is believed to be over 11,000 employees.

10.   The Named Plaintiffs will adequately represent the interests of the Class Members because they are similarly situated to the Class Members and their claims are typical of, and concurrent to, the claims of the other Class Members.

11.   There are no known conflicts of interest between the Plaintiffs and the other Class Members.

12.    Class Counsel, Thomas & Solomon LLP, is qualified and able to litigate the Plaintiffs' and Class Members' claims.

13.    Class Counsel concentrates its practice in employment litigation, and its attorneys are experienced in class action litigation, including class actions arising under federal wage and hour laws.

14.    The class action is maintainable under subsections (2) and (3) of Rule 23(b) because the Plaintiffs and Class Members seek injunctive relief, common questions of law and fact predominate among the Plaintiffs and Class Members, and the class action is superior to other available methods for the fair and efficient adjudication of the controversy.

**PARTIES**

**A.    Defendants**

15.    Collectively, MediSys Health Network Inc., the Brookdale Hospital Medical Center, Flushing Hospital and Medical Center, the Jamaica Hospital, Peninsula Hospital Center, David P. Rosen, and Max Sclair (collectively, "defendants" or "MediSys Health Network") are liable to the Plaintiffs and Class Members as their employers.

16.    The FLSA defines "employer" to include any person acting directly or indirectly in the interest of an employer in relation to an employee and an employee is anyone who is suffered or permitted to work.  As a result, including as further described below, all of the defendants are liable as employers under the FLSA.

17.    Defendants are also jointly and severally liable as joint employers under 29 C.F.R. § 791.2 for the violations complained of herein.

18.    In particular, the regulations allow for joint and several liability if employers are not acting entirely independently of each other or if employers are not completely

disassociated from each other, including when one employer controls, is controlled by, or is under common control with the other employer.  Commonly, this arrangement of employers is referred to as a "joint employer" or "single employer."

19.    Courts look to the economic realities of the enterprise and the totality of the circumstances to determine whether there is a joint or single employer relationship.

20.    Here, defendants are jointly and severally liable under these theories due to the fact that they act directly or indirectly in the interest of an employer and because they are not acting entirely independently and/or are not completely disassociated from each other, including due to the following.

21.    Collectively, MediSys Health Network Inc. comprises a single, integrated enterprise, as they perform related activities through common control for a common business purpose.

22.    In fact, MediSys Health Network Inc. admits that it is one of the largest employers in New York City, consisting of an integrated network.  Medisys Health Network Inc. is an integrated network engaged in the operation of hospitals and/or the care of the sick.

23.    Specifically, the Brookdale Hospital Medical Center, Flushing Hospital and Medical Center, the Jamaica Hospital, and Peninsula Hospital Center are each hospitals that are part of the integrated MediSys Health Network, Inc.

24.    Defendants operations also include over 40 health care facilities and centers and employ approximately 11,000 individuals at their various locations.

25.    Further, the MediSys Health Network, Inc. is controlled and operated through centralized management.  For example, centralized management includes David P. Rosen, President and Chief Executive Officer ("CEO"), Max Sclair, the Vice President of Human

Resources, for the entire system and oversight by a senior executive team and board of directors.

26.    Defendants also publish one newsletter, "MediSys Pulse," for the entire hospital system.

27.    Further, defendants' labor relations and human resources are centrally organized and controlled.  For example, MediSys Health Network Inc. has a Vice President of Human Resources for the entire network and maintains system-wide policies and certain employee benefit plans.

28.    Defendants also have centralized supply chain management, and financial, computer, payroll and health records systems that are integrated throughout their locations.

29.    Defendants have common ownership.

30.    Therefore, defendants constitute an integrated, comprehensive, consolidated health care delivery system, offering a wide range of services.

31.    These facts also support liability of the defendants based on principal/agency liability and as alter egos.

32.    Defendants are also liable to Plaintiffs and Class Members under a theory of joint venture.  Defendants engage in a joint venture of operational control for providing healthcare services by entering an agreement, established through their conduct in sharing the profits and losses.

33.    Defendants jointly managed and controlled this venture as well as its employees and assets.  For example, MediSys Health Network Inc.'s 990 form describes the organization's mission as supporting the operations of the Jamaica Hospital Medical Center, Brookdale Hospital Medical Center, Flushing Medical Center, and Peninsula Hospital

Center.  Further, a MediSys Health Network Inc. 990 identifies defendants as controlled entities, which the Internal Revenue Service defines as an entity that is owned, directly or indirectly by MediSys Health Network Inc.  Additionally, defendants have a centralized approach to management and human resources, including having a Vice President of Human Resources for the entire system, a senior executive board for the MediSys Health System, system-wide policies, including those claimed herein, and a centralized payroll system.

34.     Defendants are jointly and severally liable to the Plaintiffs and Class Members for the damages arising out of this joint venture.

35.     Based in part on the foregoing, defendants are also jointly and severally liable for the violations occurring at their other health care facilities and centers: MediSys-Astoria Ambulatory Care Center, MediSys-East New York Ambulatory Care Center, MediSys-Hollis Ambulatory Care Center, MediSys Hollis Tudors Ambulatory Care Center, MediSys-Howard Beach Ambulatory Care Center, MediSys-Jamaica Ambulatory Care Center, MediSys Ozone Park Ambulatory Care Center, MediSys-Richmond Hill Family Practice, MediSys-Senior Health Center, MediSys-Women's Health, Senior Health Center, MediSys-St. Albans Ambulatory Care Center, Jamaica Hospital's Dental Center, Jamaica Hospital Chest Pain Center, Lupus Center at Jamaica Hospital, Trump Pavilion for Nursing and Rehabilitation, The Brady Institute, Arlene and David Schlang Pavilion, Schulman and Schachne Institute, Schulman and Schachne Adult Day Health Care, Community Health Center, Brookdale Family Care Center Flatbush at Brookdale University and Medical Center, Brookdale Family Care Center Bristol at Brookdale University and Medical Center, Brookdale Family Care Center Pennsylvania at Brookdale University Hospital and Medical Center, Brookdale Family Care Center New Lots at Brookdale University Hospital and Medical Center, Brookdale

Family Care Center at Linden at Brookdale University Hospital and Medical Center, Brookdale Family Care Urban Strategies at Brookdale University Hospital and Medical Center, Bruner Developmental Disabilities Center, Pediatric Pulmonary Division and Sleep Center, Brookdale Digestive Health Center, Treatment for Life Center at Brookdale University Hospital and Medical Center, Child and Adolescent Psychopharmacology Clinic, Ambulatory Dialysis Clinic, the Blood Conservation Program, Comprehensive Pediatric Sickle Cell Center, the Hyperbaric Medicine and Wound Healing Center, Chernow Urological Research Center, Sanford Avenue Clinic, Geriatric Clinic, Memory Disorders Clinic, Ambulatory Clinic at Flushing House, Pain Management Clinic at Flushing Medical Center, Eisenstadt Hospice Center at Peninsula, Peninsula Center for Extended Care and Rehabilitation and Wound Care Center at Flushing Hospital Medical Center (collectively "Health Centers").

36.     Additionally, based in part on the foregoing, defendants are jointly and severally liable for the violations at their affiliated health care facilities and centers: The Brookdale Hospital Center Hegeman Avenue Housing Company, Inc., The Schulman and Schachne Institute for Nursing and Rehabilitation, Inc., Linroc Community Service Corporation, The Brookdale Residence Housing Development Fund Corporation, Rockreal Corporation, Amboy Properties Corporation, VWE Properties Corporation, MediSys Ambulance Service, Inc., International Association of Medical Bike Units, Inc., NHP Holdings LLC, Royal Health Care of Long Island, LCSC Holdings, Inc., MediSys Ventures, Inc., FRR Recovery, Inc., MediSys Management, LLC, Jamaica Hospital Nursing Home, Inc., MediSys Service Corporation, Flushing Manor Care Center, Inc., Advanced Center for Psychotherapy, Inc., Brookdale Family Care Centers, Inc., and Albert Einstein College of

Medicine of Yeshiva University (collectively, "Affiliates").

37.     For the same reasons, defendants are jointly and severally liable to Plaintiffs and Class Members under New York State laws.

### *David P. Rosen*

38.     Under the FLSA, individuals can also be held individually liable for violations of its provisions.

39.     As the President and CEO of MediSys Health Network Inc., Mr. Rosen has operational control over the System.   For example, Mr. Rosen has been involved in the acquisition of Peninsula Hospital Center into the MediSys Health Network Inc.   Such an acquisition provides Mr. Rosen further bargaining power in the marketplace on behalf of the MediSys Health Network Inc.

40.     As President and CEO, Mr. Rosen is listed as the Principal Officer of the MediSys Health Network Inc. on tax documentation.

41.     In 2006, Mr. Rosen testified before the New York State Assembly Committee on Health Insurance, on behalf of MediSys Health Network Inc., regarding the role of HMOs in New York State healthcare.

42.     In concert with others, Mr. Rosen has the authority to, and does, make decisions that concern defendants' operations and significant functions, including functions related to employment, human resources, training and payroll.

43.     For example, as President and CEO, Mr. Rosen has participated in employee recognition programs.

44.     In his role as President and CEO of MediSys Health Network Inc., Mr. Rosen serves on the boards of the Greater New York Hospital Association, New York State

Coalition of Financially Distressed Hospitals, and New York City Primary Care Development Corporation, as well as the Greater Jamaica Development Corporation.

45.     Due in part to his role, Mr. Rosen, has the authority to, and does, make decisions concerning the policies defendants adopt and the implementation of those policies.

46.     Further, Mr. Rosen in concert with others, is involved in the creation and/or maintenance of the illegal policies complained of in this case.

47.     Mr. Rosen has authority to hire or fire employees, provide and direct support regarding human resources issues, including the hiring and firing of employees, and control the drafting and enforcement of the policies which govern the hiring and firing of employees.

48.     Because Mr. Rosen, in concert with others, provides day-to-day support regarding human resources issues, including employees' work schedules and/or conditions of employment and controls the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, he is affirmatively, directly, and actively involved in operations of the defendants' business functions, particularly in regards to the employment of employees.

49.     Based upon the foregoing, Mr. Rosen is liable to Plaintiffs and Class Members because of his operational control over the corporation, his role in the violations complained of in this action, his status as an employer, and/or according to law.

50.     For the same reasons, Mr. Rosen is liable under New York State laws.

    *Max Sclair*

51.     As Vice President of Human Resources of MediSys Health Network Inc., Mr. Sclair has operational control over the human resource functions across MediSys Health Network Inc.

52.     As Vice President of Human Resources, Mr. Sclair has hosted employee recognition programs.

53.     Mr. Sclair, in concert with others, has the authority to, and does, make decisions that concern defendants' operations and controls significant functions of MediSys Health Network Inc., including functions related to employment, human resources, training, payroll and benefits.

54.     As Vice President of Human Resources, Mr. Sclair is actively involved in payroll functions across MediSys Health Network Inc.

55.     In his role, Mr. Sclair controls significant functions of MediSys Health Network Inc.   For example, in the concert with others, Mr. Sclair, created and/or implemented human resource policies for MediSys Health Network Inc.

56.     Mr. Sclair, in concert with others, is actively involved in the determination and drafting of human resources policies, the resolution of issues and disputes regarding policies and their application, the counseling locations receive regarding human resources issues, and communications with employees about human resources issues and policies.

57.     As Vice President of Human Resources, Mr. Sclair, in concert with others, is involved in the creation and/or maintenance of the illegal policies complained of in this case.

58.     In his role as Vice President of Human Resources, Mr. Sclair is actively involved in defendants' employment and human resources records, including the systems for keeping and maintaining those records.

59.     Further, Mr. Sclair, is actively involved in reviewing and counseling defendants regarding employment decisions, including the hiring and firing of Plaintiffs and Class Members.

-10-

60.     Mr. Sclair has authority to hire or fire employees, provide and direct support regarding human resources issues, including the hiring and firing of employees, and control the drafting and enforcement of the policies which govern the hiring and firing of employees.

61.     Based upon the foregoing, Mr. Sclair is liable to employees because of his operational control over the corporation, his role in the violations complained of in this action, his status as an employer, and/or according to law.

62.     For the same reasons, Mr. Sclair is liable under New York State laws.

**B.     Plaintiffs**

*Named Plaintiffs*

63.     At all relevant times, Nellie Sampson and Timothy Gill ("Plaintiffs") were employees of defendants and were employed within this district.

64.     At all relevant times, as set forth in ¶¶ 16-62, the defendants employed Named Plaintiff Nellie Sampson, and she worked at the defendants' Brookdale location in the Schulman and Schachne Institute for Nursing and Rehabilitation from approximately November 30, 2001 until June 1, 2008 as a registered nurse.  As a registered nurse for defendants, Named Plaintiff Sampson was typically scheduled from 3 pm until 11:15 pm approximately five days a week, totaling 37.5 hours, excluding time for which Ms. Sampson did not receive compensation. However, occasionally, Ms. Sampson picked up an additional 11 pm until 7:15 am shift resulting in a workweek of at least 45 hours, excluding time for which Ms. Sampson did not receive compensation.  In addition to the scheduled hours listed above, Ms. Sampson worked time for which she did not receive compensation, including during her meal breaks which were typically missed or which were interrupted as discussed below; before her scheduled start time in order to meet with outgoing staff, receive report and

make rounds, typically resulting in an additional 10 minutes a week; after her scheduled end time in order to give report or take inventory of the narcotics, typically resulting in an additional 15 minutes of time each shift or as long as 30 minutes of time if she was tending to an emergency or dealing with an ongoing patient issue; and for training such as CPR training which was approximately two hours every two years, and in-service classes on topics such as new treatments, wound care, medication administration, IV training, and HIV training which would typically be approximately eight hours twice a year.  As a result, Ms. Sampson experienced uncompensated time of at least 5 hours and 10 minutes in weeks without training time and up to 15 hours and 10 minutes in weeks with training time.  Given that Ms. Sampson typically worked at least 37.5 hours per week for which she received compensation, at least part of the uncompensated time she worked should have been paid at overtime rates (*e.g.,* the first 2.5 hours should have been paid at straight time rates and all additional hours should have been paid at overtime rates), and when her scheduled hours exceeded forty hours, all of such uncompensated time should have been paid at overtime rates.  Named Plaintiff Sampson was subject to the 1199 SEIU collective bargaining agreement ("CBA").

65.     At all relevant times, as set forth in ¶¶ 16-62, the defendants employed Named Plaintiff Timothy Gill, and he worked at the defendants' Hi-Tech Home Care at Jamaica Hospital Medical Center's location from approximately February 2004 until February 2005 as a respiratory therapist.  As a respiratory therapist for defendants, Named Plaintiff Gill was typically scheduled from 8 am until 5 pm approximately five days a week totaling 35 hours, excluding time for which Mr. Gill did not receive compensation.  In addition to the scheduled hours listed above, Mr. Gill worked time for which he did not receive compensation,

including during his meal breaks which he typically missed or which were interrupted, as further discussed below; before his scheduled start time in order to retrieve his equipment from defendants and subsequently drop off the equipment to other locations, typically resulting in an additional two hours every week; and after his scheduled end time in order to finish patient visits and check equipment functionality, typically resulting in an additional hour and a half each shift.  Given that Mr. Gill typically worked 35 hours per week for which he received compensation, this additional uncompensated time of at least 14 hours and 30 minutes, would have resulted in his total hours exceeding 40 hours per week therefore requiring all hours over 40 to be paid at overtime rates (*e.g*, the first five hours of uncompensated time should have been paid at straight time rates and all additional hours should have been paid at overtime rates).  Named Plaintiff Gill was not subject to a CBA while employed by defendants.

### Class Members

66.    The Class Members are those employees of defendants who were suffered or permitted to work by defendants and not paid their regular or statutorily required rate of pay for all hours worked.

## FACTUAL BACKGROUND

67.    MediSys Health Network Inc. is a large health care provider in New York.

68.    Across the United States, pay practices throughout the health care industry are being investigated for failure to properly pay hourly employees for all time worked, including overtime to those employees working over 40 hours in a week.  *See* New York Times Article "Pay Practices in Health Care Are Investigated," attached hereto as Exhibit A.

69.    Class Counsel's investigation has confirmed that indeed there is a common

practice in the healthcare industry that results in hourly employees not being compensated for all time worked, including overtime compensation.

70.     As discussed below, defendants here maintained several illegal pay policies that denied Plaintiffs and Class Members compensation for all hours worked, including applicable premium pay rates.

### Meal and Break Deduction Policy

71.     One of the policies resulting in Plaintiffs and Class Members not receiving compensation for all time worked was defendants' "Meal and Break Deduction Policy." Defendants maintain the Meal and Break Deduction Policy throughout their facilities and centers.

72.     Under this policy, defendants' timekeeping system automatically deducts time from employees' paychecks each day for meals, breaks and other reasons.

73.     Plaintiffs and Class Members are deducted at least thirty minutes from their pay each shift they work long enough shifts for a meal break.  This deduction occurs on every shift to every Plaintiff and Class Members, regardless of their position, unit or location.

74.     Defendants operate on a 24/7 basis, and in doing so, defendants do not ensure that Plaintiffs and Class Members perform no work during the breaks. Further, defendants actually expect Plaintiffs and Class Members to be available to work throughout their shifts and consistently require their employees to work during their unpaid breaks.

75.     Plaintiffs and Class Members do in fact perform work during those breaks and are not paid for that time.   During this time, employees were performing tasks such as continuing regular job duties, answering/returning phone calls, equipment maintenance, completing documentation, and tending to emergency situations.

76.     Moreover, defendants know or should have known that the Plaintiffs and Class Members perform work during these meal and other unpaid breaks, but still do not pay them for this time pursuant to their Meal and Break Deduction Policy.

77.     One of the ways defendants are aware of such work being performed is because the defendants permit, and often request, that such work be done by the employees during their unpaid meal breaks.  This work is done on defendants' premises during operational hours, and in full view of the defendants' managers and supervisors.  Thus defendants permit that such work be done, and have actual and constructive knowledge it is being performed.

78.     Plaintiffs and Class Members also had conversations with defendants' managers in which they discussed how they were working through their meals or unpaid breaks and were not getting paid for such work.

79.     When questioned by employees about the Meal and Break Deduction Policy, the defendants affirmatively stated that the employees were being fully paid for the work time for which they were entitled to be paid, even though defendants knew compensable work time was being excluded from the employees' pay.  Such conversations occurred with Plaintiffs and Class Members on a number of occasions.  These representations were part of a course of conduct (*see e.g.,* ¶¶ 109-123) to defraud Plaintiffs and Class Members from the pay they were owed, and to mislead them into believing they had been fully paid as required by law.

80.     Further, defendants do not prohibit Plaintiffs and Class Members from working during their unpaid breaks and do not have rules against such work.

81.     Defendants also know that employees are receiving assigned tasks that must be completed by the appointed deadline, which results in employees having to work through

their meal breaks even though they are not getting paid for the work.

82.    Plaintiffs and Class Members are also not relieved by another employee when their break comes, or asked to leave their work location. Further, given the demands of the health care industry and short staffing, defendants' management knew that to get the tasks done they assigned to Plaintiffs and Class Members, when they needed to get done, Plaintiffs and Class Members had to work through their meal breaks, even during times they were not paid for their meal breaks.

83.    Accordingly, defendants should have known that Plaintiffs and Class Members perform work during their unpaid breaks.  Even though defendants know or should have known their employees are performing such work, defendants fail to compensate their employees for such work.

84.    All Plaintiffs and Class Members, regardless of location, position, unit or shift, are subject to the Meal and Break Deduction Policy and are not fully compensated for work they perform during breaks, including, without limitation, hourly employees working at MediSys Health Network Inc.'s facilities and centers, such as secretaries, housekeepers, custodians, clerks, porters, registered nurses, licensed practical nurses, transport nurses, nurse aides, administrative assistants, anesthetists, clinicians, medical coders, medical underwriters, nurse case managers, nurse interns, nurse practitioners, nurse aides, practice supervisors, professional staff nurses, quality coordinators, resource pool nurses, respiratory therapists, senior research associates, operating room coordinators, surgical specialists, admissions officers, student nurse techs, trainers, transcriptionists, occupational therapists, occupational therapy assistants, physical therapists, physical therapy assistants, radiation therapists, staff therapists, angiotechnologists, x-ray technicians, CAT scan technicians, mammographers,

MRI technologists, sleep technologists, surgical technologists, radiographers, phlebotomists, respiratory technicians, respiratory care specialists, respiratory care practitioners, clinical coordinators, medical assistants, home care nurses, home health aides, clinical case managers, midwives and other health care workers.

85.    As a result of the uniform policy, all Plaintiffs and Class Members are entitled to compensation for all time they performed work for defendants, including during their unpaid breaks.

86.    As discussed more fully above, this additional uncompensated time should have been paid at overtime rates when Plaintiffs, as discussed above, and Class Members' scheduled shifts exceeded 40 hours in a week, or when the uncompensated time from missed or interrupted meal breaks, preliminary and postliminary schedule work, and training time, pushed their hours for the week over 40.

87.    Plaintiffs and Class Members subject to the Meal and Break Deduction Policy are members of Subclass 1.

a.    Subclass 1A includes any Class Members who are or were subject to a collective bargaining agreement, only for the workweeks they were subject to the terms of such an agreement.

b.    Subclass 1B includes all Class Members for workweeks during which they were not subject to a collective bargaining agreement.

### Unpaid Pre- and Post Schedule Work Policy

88.    Another policy resulting in uncompensated time for Plaintiffs and Class Members is defendants' "Unpaid Preliminary and Postliminary Schedule Work Policy."

89.     Under this policy, defendants suffered or permitted Plaintiffs and Class Members to perform work before and/or after the end of their scheduled shifts.

90.    However, defendants failed to pay Plaintiffs and Class Members for all time

spent performing such work as a result of defendants' policies, practices and/or time recording system.

91.     For example, employees were not allowed to record all of their work performed before or after scheduled shifts.

92.     Additionally, even if time was recorded before or after scheduled shifts, it was not compensated properly.

93.     For example, employees often had to complete their regular shift responsibilities before and/or after their scheduled shift ended.   During this time, for example, employees charted, completed inventory, met with a supervisor, provided reports to relief, received reports, attended to urgent situations and completed general patient care duties. This time spent working was uncompensated.

94.     Although defendants, including managers, were aware employees performed this work beyond their scheduled work shifts, employees continued to perform work for which they were not compensated.

95.     As discussed more fully above, this additional uncompensated time should have been paid at overtime rates when Plaintiffs, as discussed above, and Class Members' scheduled shifts exceeded 40 hours in a week, or when the uncompensated time from missed or interrupted meal breaks, preliminary and postliminary schedule work, and training time, pushed their hours for the week over 40.

96.     Plaintiffs and Class Members subject to the Unpaid Preliminary and Postliminary Schedule Work Policy are members of Subclass 2.

       a.   Subclass 2A includes any Class Members who are or were subject to a collective bargaining agreement, only for the workweeks they were subject to the terms of such an agreement.

   b.  Subclass 2B includes all Class Members for workweeks during which they were not subject to a collective bargaining agreement.

*Unpaid Training Policy*

97.    Defendants also suffered or permitted Plaintiffs and Class Members to attend compensable training programs.

98.    However, defendants fail to pay employees for all time spent attending such training sessions (the "Unpaid Training Policy").

99.    Often these training activities occurred during regular working hours; were required by defendants; and were directly related to their position with defendants.  Further, Plaintiffs and Class Members were often required to actively participate in the training.

100.   For example, employees attended mandatory in-services and training sessions covering topics such as CPR, new treatments, wound care, medication administration, IV training, and HIV training.   Such training related to employees' jobs by, for example providing instruction on techniques to be used by employees when performing their jobs and regularly occurred during working hours.

101.   Although defendants, including managers, were aware employees performed this training, employees continued to perform work for which they were not compensated.

102.   For example, defendants scheduled and led the required training sessions attended by employees.

103.   As discussed more fully above, this additional uncompensated time should have been paid at overtime rates when Plaintiffs, as discussed above, and Class Members' scheduled shifts exceeded 40 hours in a week, or when the uncompensated time from missed or interrupted meal breaks, preliminary and postliminary schedule work, and training time, pushed their hours for the week over 40.

104.    All Plaintiffs and Class Members subject to the Unpaid Training Policy are members of Subclass 3.

      a.    Subclass 3A includes any Class Members who are or were subject to a collective bargaining agreement, only for the workweeks they were subject to the terms of such an agreement.

      b.    Subclass 3B includes all Class Members for workweeks during which they were not subject to a collective bargaining agreement.

105.    Collectively, the Meal and Break Deduction Policy, the Unpaid Preliminary and Postliminary Schedule Work Policy, and the Unpaid Training Policy, are referred to herein as the "Unpaid Work Policies."

### Additional Allegations

106.    Plaintiffs and Class Members were subject to defendants' timekeeping policies which fail to ensure that employees are compensated for all hours worked, including pursuant to the Unpaid Work Policies.

107.    Even though defendants know their employees are performing such work, defendants still fail to compensate its employees for this time.

108.    Defendants' practice is to be deliberately indifferent to these violations of the statutory wage and overtime requirements.

109.    For example, through the paystubs and payroll information it provided to employees, MediSys Health Network Inc. deliberately concealed from its employees that they did not receive compensation for all compensable work that they performed and misled them into believing they were being paid properly.

110.    Indeed, defendants, through their corporate publications and through statements of their agents, represented that wages would be paid legally and in accordance with defendants' obligations pursuant to applicable state laws.

111.   Defendants misrepresented in their employee manuals and policy manuals to Plaintiffs and Class Members that they would be paid for all hours worked including those worked both under and in excess of forty in a work week.

112.   Defendants intended for Plaintiffs and Class Members to rely upon defendants' misrepresentations that they would be paid for all the time worked, including applicable premium pay.

113.   However, at all times, defendants intended to violate applicable state laws by failing to pay Plaintiffs and Class Members for all the time worked, including applicable premium pay.

114.   Further, by maintaining and propagating the illegal Unpaid Work Policies, defendants deliberately misrepresented to Plaintiffs and Class Members that they were being properly paid for all compensable time, even though Plaintiffs and Class Members were not receiving pay for all time worked including applicable premium pay.

115.   The Plaintiffs and Class Members are not experts in proper payment under labor laws, and more specifically are not aware of what time is compensable for interrupted and missed meal breaks, nor how the defendants' internal computer systems were determining the amount they were being paid.

116.   Further, when questioned, the defendants falsely assured Plaintiffs and Class Members that the defendants understood federal and state labor laws and that based on that knowledge, the defendants were ensuring that they were properly paying the Plaintiffs and Class Members.

117.   The defendants made this representation despite the fact that such claims were false, fully knowing that Plaintiffs and Class Members were relying on the defendants'

"expertise" and assurances.

118.   Further, these assurances were not contradicted by the information in legal postings required by state or federal law to be displayed prominently at places of work to which Plaintiffs and Class Members had access.

119.   Prior to seeking legal advice from Class Counsel, the Plaintiffs were never alerted to the defendants' concealment of their violation of the law by failing to pay the Plaintiffs and Class Members properly.   Plaintiffs and Class Members are under no duty to inquire of defendants that they were paid for all hours worked including applicable premium pay.

120.   Further, not until the commencement of this action were Class Members made aware that the defendants' conduct in fact violated the law.

121.   The defendants engaged in such conduct and made such statements to conceal from the Plaintiffs and Class Members their rights and to frustrate the vindication of the employees' rights.   Such conduct by the defendants equitably tolls the statute of limitations covering Plaintiffs' and Class Members' claims and defendants are estopped from asserting statute of limitations defenses against Plaintiffs and Class Members.

122.   As a result, employees were unaware of their claims.

123.   Defendants' failure to pay overtime as required by the FLSA is willful.

124.   Among the relief sought, Plaintiffs and Class Members seek injunctive relief to prevent defendants from continuing the illegal policies and practices perpetuated pursuant to the Unpaid Work Policies.

125.   Additionally, as set forth in the allegations above, including ¶¶ 79, 109-123, the defendants fraudulently concealed from the Plaintiffs and Class Members the facts that

are the basis for their claims.

126.   Because of such conduct, the Plaintiffs and Class Members did not discover in the relevant statute of limitations period that the defendants were not paying them properly.

127.   The Plaintiffs and Class Members exercised due diligence, but still were unaware of their rights.

128.   Defendants failed to act in good faith by failing to pay wages and overtime as required by New York Labor Law and state common law.

129.   As a direct and proximate cause of defendants' failure to act in good faith, defendants violated the New York Labor Law and state common law.

130.   In addition to the loss of wages, Plaintiffs and Class Members have suffered non-economic harm as a result of defendants' policies.  These included, but are not limited to, the personal loss of break and rest time, personal suffering and emotional distress.

131.   Because defendants' Unpaid Work Policies involve an employer intentionally misleading and deceiving employees about their wages, and withholding wages legally and properly payable to employees, they are policies that are against the strong public policy of the State of New York with respect to employees' wages.

132.   By entering into an employment relationship, defendants and Plaintiffs and Class Members entered into a contract for employment, including implied contracts and express contracts.  While these contracts were generally oral express contracts and/or implied contracts, from time to time, these contracts were memorialized in writing.

133.   Defendants, often communicated through management, entered into express oral contracts with Plaintiffs and Class Members that were explicitly intended to order and govern the employment relationship between defendants and Plaintiffs and Class Members.

134.    These binding, express oral contracts provided that Plaintiffs and Class Members would provide services and labor to defendants in return for compensation under the provisions of the contract.

135.    This express oral contract also included defendants' explicit promise to compensate Plaintiffs and Class Members for "all hours worked" by them during their employment period.

136.    As alleged herein, Plaintiffs and Class Members regularly worked hours both under and in excess of forty per week and were not paid for all of those hours.

137.    The defendants failed to pay for time that Plaintiffs and Class Members worked including, but not limited to, during their meal breaks, time that Plaintiffs and Class Members spent in required, job related training, and time that Plaintiffs and Class Members spent before and after their regular work hours performing work-related tasks.

138.    Defendants also entered into implied contracts with Plaintiffs and Class Members as a result of their on-going dealings and course of conduct with Plaintiffs and Class Members.

139.    Pursuant to these implied contracts, Plaintiffs and Class Members agreed with defendants that, among other things, defendants would pay Plaintiffs and Class Members for all hours worked.

140.    Specifically, defendants contracted to hire Plaintiffs and Class Members at a set rate of pay, with a set work schedule for a particular position, and under set terms of employment.

141.    Defendants failed to compensate Plaintiffs and Class Members in compliance with this implied contract by failing to compensate Plaintiffs and Class Members for time

that they worked, including pursuant to the Unpaid Work Policies.

142.   As noted above, from time to time, the contracts between defendants, including MediSys Health Network Inc. and Plaintiffs and Class Members were memorialized in writing and were explicitly intended to order and govern the employment relationship between defendants and Plaintiffs and Class Members.

143.   Defendants failed to act in good faith and breached the express and/or implied contract terms by failing to pay Plaintiffs and Class Members for all of the time Plaintiffs and Class Members worked and by failing to pay Plaintiffs and Class Members for all time worked including applicable premium pay.  As a result of defendants' breach of express and implied contracts, Plaintiffs and Class Members have been harmed, and as a direct and proximate result have suffered damages including all amounts they should have been paid for all time worked including applicable premium pay.

144.   Both unwritten contracts and any written contracts between Plaintiffs and Class Members and defendants contained an implied covenant of good faith and fair dealing, which obligated defendants to perform the terms and conditions of the employment contract fairly and in good faith and to refrain from doing any act that would deprive Plaintiffs and Class Members of the benefits of the contract.

145.   As a result of defendants' breach of the duty of good faith and fair dealing, Plaintiffs and Class Members have been harmed and as a direct and proximate result have suffered damages including all amounts they should have been paid for all the time worked, including applicable premium pay.

146.   As detailed herein, Plaintiffs and Class Members had valid express and/or implied contracts with defendants.

147.   In the event that Plaintiffs and Class Members are found not to have a contract claim, in the alternative, Plaintiffs and Class Members allege that defendants are liable to Plaintiffs and Class Members because they have been unjustly enriched and/or are liable under the theory of quantum meruit for their treatment of Plaintiffs and Class Members under the Unpaid Work Policies.

148.   Defendants conferred a benefit from the work performed, without compensation, including premium overtime compensation, by Plaintiffs and Class Members.

149.   As detailed herein, rather than incur additional labor costs by paying non-exempt hourly-paid employees for all of the hours that they worked, defendants required Plaintiffs and Class Members to work hours under and in excess of forty hours per week without receiving any compensation for those hours.

150.   Defendants failed to compensate Plaintiffs and Class Members for all time worked, including pursuant to the Unpaid Work Policies.

151.   Defendants had an appreciation or knowledge of the benefit conferred by these Plaintiffs and Class Members.  For example, defendants' management has: observed Plaintiffs and Class Members working through their unpaid meal breaks, directed Plaintiffs and Class Members to work during their unpaid meal breaks, and affirmatively told Plaintiffs and Class Members that they could not be paid for such time.

152.   Defendants have received financial gain at the expense of Plaintiffs and Class Members because they did not pay Plaintiffs and Class Members for all hours worked and defendants kept the monies owed to the Plaintiffs and Class Members.

153.   Defendants have received financial gain under such circumstances that, in equity and good conscience, defendants ought not to be allowed to profit at the expense of

Plaintiffs and Class Members.

154.    Defendants enjoyed the benefit of the monies rightfully belonging to the Plaintiffs and Class Members at the expense of the Plaintiffs and Class Members.

155.    Defendants failed to act in good faith by failing to pay for all the time worked including applicable premium pay, which has unjustly enriched defendants to the detriment of Plaintiffs and Class Members.

156.    Defendants failed to act in good faith and violated their obligations by failing to pay Plaintiffs and Class Members for the reasonable value of the services performed by Plaintiffs and Class Members for defendants.

157.    As a direct and proximate result of defendants' unjust enrichment, Plaintiffs and Class Members have suffered injuries and are entitled to reimbursement, restitution and disgorgement from defendants of the benefits conferred by Plaintiffs' and the Class Members' work without compensation.

158.    In the event that Plaintiffs and Class Members are found not to have a contract claim against defendants, in the alternative, Plaintiffs and Class Members allege that defendants are liable for having engaged in fraud and negligent misrepresentation in the course of maintaining their Unpaid Work Policies in their dealings with Plaintiffs and Class Members, for having converted property belonging to Plaintiffs and Class Members under the Unpaid Work Policies.

159.    These misrepresentations were material to the terms of Plaintiffs' and Class Members' employment contracts (express and implied), and Plaintiffs and Class Members relied on the misrepresentations in agreeing to accept and continue employment with defendants.  This reliance was reasonable, as Plaintiffs and Class Members had every right to

believe that defendants would abide by their obligations pursuant to applicable law.

160.    When defendants hired Plaintiffs and Class Members, they represented to Plaintiffs and Class Members that they would be fully compensated for all services performed.

161.    Defendants affirmatively misled Plaintiffs and Class Members regarding the fact that defendants failed to pay Plaintiffs and Class Members for all hours worked.

162.    Defendants induced Plaintiffs and Class Members to accept employment with defendants by misrepresenting to Plaintiffs and Class Members that they would be fully compensated for all hours worked.

163.    There was no reasonable basis for defendants to believe these representations because defendants had a continuing practice and policy of failing to pay their employees for all the time worked, including applicable premium pay.  Plaintiffs and Class Members relied upon defendants' representations by performing work and services for defendants.  This reliance was reasonable, as Plaintiffs and Class Members had every right to believe that defendants would abide by their obligations to pay for all hours worked pursuant to applicable law.

164.    As a direct and proximate cause of defendants' fraud and negligent misrepresentations, Plaintiffs and Class Members have suffered damages because they were not compensated for all hours that they worked both under and in excess of forty hours per week.

165.    At all relevant times, defendants had and continued to have a legal obligation to pay Plaintiffs and Class Members all earnings and overtime due.  The wages belong to Plaintiffs and Class Members as of the time the labor and services were provided to

defendants and, accordingly, the wages for services performed are the property of the Plaintiffs and Class Members.

166.    In refusing to pay wages and applicable premium pay to Plaintiffs and Class Members, defendants knowingly, unlawfully and intentionally took, appropriated and converted the wages and overtime earned by Plaintiffs and Class Members for defendants' own use, purpose and benefit.  At the time the conversion took place, Plaintiffs and Class Members were entitled to immediate possession of the amount of wages and overtime earned. As a result, Plaintiffs and Class Members have been denied the use and enjoyment of their property and have been otherwise damaged in an amount to be proven at trial.  This conversion was done in bad faith, oppressively, maliciously, and fraudulently and/or done with conscious disregard of the rights of the Plaintiffs and Class Members.  This conversion was concealed from Plaintiffs and Class Members.

167.    Defendants' failure to compensate Plaintiffs and Class Members for all the time they worked, including applicable premium pay, constitutes the conversion of the monies of Plaintiffs and the Class Members.

168.    As a direct and proximate result of the conversion by defendants of monies belonging to Plaintiffs and Class Members, Plaintiffs and Class Members have suffered damages including all amounts they should have been paid at regular or premium rates for time worked.

169.    Defendants failed to pay all wages due to Plaintiffs and Class Members on regular days designated in advance pursuant to New York Labor Law.

170.    Plaintiffs and Class Members also allege that defendants have engaged in a failure to keep accurate records in the course of maintaining their Unpaid Work Policies in

their dealings with Plaintiffs and Class Members.

171.   As such, defendants failed to make, keep and preserve true and accurate records of the hours worked by Plaintiffs and Class Members in violation of New York Labor Law.

172.   Plaintiffs and Class Members were not classified as exempt employees because hourly employees do not fall under one of the enumerated exemptions under the FLSA or NYLL.

## FIRST CAUSE OF ACTION
### *FLSA*

173.   Plaintiffs and Class Members reallege the above paragraphs as if fully restated herein.

174.   Defendants willfully violated their obligations under the FLSA and are liable to Plaintiffs and Class Members.

## SECOND CAUSE OF ACTION
### *New York Labor Law*

175.   Plaintiffs and Class Members reallege the above paragraphs as if fully restated herein.

176.   As a direct and proximate cause of defendants' acts, including defendants' failure to act in good faith, defendants willfully violated the New York Labor Law and Plaintiffs and Class Members have suffered damages pursuant to N.Y. LAB. LAW § 190(8) and N.Y. LAB. LAW § 191 *et seq.*

## THIRD CAUSE OF ACTION
### *Breach of Implied Oral Contract*

177.   Plaintiffs and Class Members reallege the above paragraphs as if fully restated herein.

178.    Defendants willfully violated their obligations under the oral contract by failing to pay Plaintiffs or Class Members for all of the work performed for defendants and are liable to Plaintiffs and Class Members for breach of their implied oral contract.

179.    As a direct and proximate cause of defendants' breach of the implied contract, Plaintiffs and Class Members have suffered damages.

## FOURTH CAUSE OF ACTION
### *Breach of Express Contract*

180.    Plaintiffs and Class Members reallege the above paragraphs as if fully restated herein.

181.    Defendants willfully violated their obligations under the oral contract by failing to pay Plaintiffs and Class Members for all of the work performed for defendants and are liable to Plaintiffs and Class Members for breach of their express oral contract.

182.    As a direct and proximate cause of defendants' breach of this express contract, Plaintiffs and Class Members have suffered damages.

## FIFTH CAUSE OF ACTION
### *Breach of Implied Covenant of Good Faith and Fair Dealing*

183.    Plaintiffs and Class Members reallege the above paragraphs as if fully restated herein.

184.    Defendants willfully violated their obligations under the common laws and state laws of New York by breaching the implied covenant of good faith and fair dealing.

185.    As a direct and proximate cause of defendants' breach of the implied covenant of good faith and fair dealing, Plaintiffs and Class Members have suffered damages.

## SIXTH CAUSE OF ACTION
### *Quantum Meruit*

186.    Plaintiffs and Class Members reallege the above paragraphs as if fully restated

herein.

187.    Defendants willfully violated their obligations by failing to pay Plaintiffs and Class Members for the reasonable value of the services performed by Plaintiffs and Class Members and are liable to Plaintiffs and Class Members under quantum meruit.

188.    As a direct and proximate cause of defendants' failure to pay Plaintiffs and Class Members for the reasonable value of services performed by Plaintiffs and Class Members for defendants, Plaintiffs and Class Members suffered damages.

**SEVENTH CAUSE OF ACTION**
*Unjust Enrichment/Restitution*

189.    Plaintiffs and Class Members reallege the above paragraphs as if fully restated herein.

190.    As a result of defendants' conduct, the common laws and state laws of New York imply a contract obligating defendants to make restitution to Plaintiffs and Class Members, in the amount by which, in equity and good conscience, defendants have been unjustly enriched.

191.    As a direct and proximate cause of defendants' actions, Plaintiffs and Class Members have suffered damages.

**EIGHTH CAUSE OF ACTION**
*Fraud*

192.    Plaintiffs and Class Members reallege the above paragraphs as if fully restated herein.

193.    Defendants willfully violated their obligations by committing fraud against Plaintiffs and Class Members under the common laws and the state laws of New York and are liable to Plaintiffs and Class Members.

194.   As a direct and proximate cause of the fraud committed by defendants, Plaintiffs and Class Members did not receive the statutorily mandated wages and suffered damages.

### NINTH CAUSE OF ACTION
*Negligent Misrepresentation*

195.   Plaintiffs and Class Members reallege the above paragraphs as if fully restated herein.

196.   Defendants willfully violated their obligations under the common laws and the state laws of New York by misrepresenting to Plaintiffs and Class Members that they would be fully compensated for all services performed and are liable to Plaintiffs and Class Members.

197.   As a direct and proximate result of defendants' negligent misrepresentation, Plaintiffs and Class Members suffered damages.

### TENTH CAUSE OF ACTION
*Conversion*

198.   Plaintiffs and Class Members reallege the above paragraphs as if fully restated herein.

199.   Defendants willfully violated their obligations under the common laws and state laws of New York by committing conversion.

200.   As a result of defendants' actions, Plaintiffs and Class Members were damaged and are entitled to all funds converted by defendants with interest thereon, all profits resulting from such conversion, and punitive or exemplary damages.

### ELEVENTH CAUSE OF ACTION
*Estoppel*

201.   Plaintiffs and Class Members reallege the above paragraphs as if fully restated

herein.

202.    Defendants are estopped from asserting statute of limitations defenses against

plaintiffs.

**WHEREFORE**, Plaintiffs and Class Members demand judgment against defendants

in their favor and that they be given the following relief:

(a)    an order preliminarily and permanently restraining defendants from engaging in the aforementioned pay violations;

(b)    an award crediting Plaintiffs and Class Members for all hours worked;

(c)    an award of the value of Plaintiffs' and Class Members' unpaid wages and overtime;

(d)    liquidated damages under the FLSA equal to the sum of the amount of wages and overtime which were not properly paid to Plaintiffs and Class Members;

(e)    under N.Y. LAB. LAW § 198, an additional amount as liquidated damages equal to twenty-five percent of the total amount of wages found to be due;

(f)    an award of reasonable attorneys' fees, expenses, expert fees and costs incurred in vindicating Plaintiffs' and Class Members' rights;

(f)    an award of pre- and post-judgment interest;

(g)    the amount equal to the value which would make Plaintiffs and Class Members whole for the violations; and

(h)    such other and further legal or equitable relief as this Court deems to be just and appropriate.

## JURY DEMAND

Plaintiffs demand a jury to hear and decide all issues of fact in accordance with

Federal Rule of Civil Procedure 38(b).

Dated: March 10, 2011

**THOMAS & SOLOMON LLP**

By:    <u>   J. Nelson Thomas                          </u>
J. Nelson Thomas, Esq.
Michael J. Lingle, Esq.
Jessica L. Witenko, Esq.
*Attorneys for Plaintiffs and Class Members*
693 East Avenue
Rochester, New York 14607
Telephone:  (585) 272-0540
nthomas@theemploymentattorneys.com
mlingle@theemploymentattorneys.com
jwitenko@theemploymentattorneys.com