UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

NELLIE SAMPSON, *on behalf of herself and all other employees similarly situated,*

                                        Plaintiff,

                    v.                                                    No. 10-cv-1342 (SJF-ARL)

MEDISYS HEALTH NETWORK INC., THE JAMAICA HOSPITAL, THE BROOKDALE HOSPITAL MEDICAL CENTER, FLUSHING HOSPITAL AND MEDICAL CENTER, PENINSULA HOSPITAL CENTER, DAVID P. ROSEN and MAX SCLAIR,

                                        Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT AND STAY DISCOVERY

Dated: New York, New York
        April 14, 2011

Lorie E. Almon
Mary E. Ahrens
SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York 10018
(212) 218-5500

Kristin G. McGurn
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 300
Boston, Massachusetts 02210
(617) 946-4800

Attorneys for Defendants

# TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................................. ii

Background ........................................................................................................... 3

Argument .............................................................................................................. 4

I. The SAC Should Be Dismissed With Prejudice for Plaintiffs' Failure to Comply With the Court's Order and to Properly Re-plead as Instructed .............................. 4

II. Plaintiffs' FLSA Claim Is Still Insufficiently Pled and Should Be Dismissed ........ 6

    A. Plaintiffs Fail to Plead Facts Demonstrating That Defendants' Policies Are Unlawful ................................................................................... 7

    B. Plaintiffs Fail to Plead Plausible Facts Showing Compensability .............. 9

    C. Plaintiffs Fail to Provide Sufficient Factual Support for Their Individual FLSA Claims ............................................................... 12

    D. Even If Plaintiffs' Individual FLSA Claims Could Survive, Their Class Claims Fail ........................................................................... 15

    E. Plaintiffs Fail to Show the Defendants Are Employers or That Plaintiffs Have Standing to Sue Defendants ............................................ 16

III. Plaintiffs' Missed Meal Break and Unpaid Work Claims Should Be Pursued Through Grievance and Arbitration ........................................................................ 18

IV. Plaintiffs' State Law Claims Should Be Dismissed ............................................... 19

    A. Plaintiffs' State Law Claims Fail as to Union Employees ........................ 19

    B. Plaintiffs' State Law Claims for Unionized and Non-unionized Employees Fail .................................................................................... 23

    C. Plaintiffs' Claims Against Individual Defendants Remain Insufficiently Pled and Should Be Dismissed .......................................... 31

V. The Court Should Dismiss Plaintiffs' SAC with Prejudice and Should Hold Plaintiffs and Their Counsel Accountable for Squandering Public and Private Resources .............................................................................................. 33

VI. The Court Should Stay Discovery During The Pendency Of This Motion ......... 35

Conclusion ........................................................................................................... 36

i

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*767 Third Ave., LLC v. Greble & Finger, LLP,*
    8 A.D.3d 75 (1st Dep't 2004) ..........................................................29

*Abbasi v. Herzfeld & Rubin, P.C.,*
    1995 U.S. Dist. LEXIS 6629 (S.D.N.Y. May 17, 1995)........................................26

*Adirondack Transit Lines, Inc. v. United Transp. Union, Local 1582,*
    305 F.3d 82 (2d Cir. 2002)..........................................................20

*Angel v. Bank of Tokyo-Mitsubishi, Ltd.,*
    39 A.D.3d 368 (1st Dep't 2007) ..........................................................29

*Ashcroft v. Iqbal,*
    129 S. Ct. 1937 (2009) .......................................................... *passim*

*Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.,*
    2003 U.S. Dist. LEXIS 23062 (S.D.N.Y. Dec. 22, 2003) ....................................28

*Barfield v. N.Y. City Health & Hosp. Corp.,*
    537 F.3d 132 (2d Cir. 2008)..........................................................18

*Barrentine v. Arkansas-Best Freight Sys., Inc.,*
    450 U.S. 728 (1981)..........................................................20

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007).......................................................... *passim*

*Bemben v. Fuji Photo Film U.S.A., Inc.,*
    2004 WL 1052973 (S.D.N.Y. May 10, 2004) ..........................................7, 34

*Bhd. of Locomotive Eng'rs Div. 269 v. Long Island R.R.,*
    85 F.3d 35 (2d Cir. 1996)..........................................................24

*Bjornson v. Daido Metal U.S.A.,*
    12 F. Supp. 2d 837 (N.D. Ill. 1998) ..........................................................10

*Boccardi Capital Sys. v. D.E. Shaw Laminar Portfolios, L.L.C.,*
    355 Fed. Appx. 516 (2d Cir. 2009) (summary order)..........................................23

*Bongat v. Fairview Nursing Care Ctr., Inc.,*
    341 F. Supp. 2d 181 (E.D.N.Y. 2004) ..........................................27, 28

*Brady v. Livingood*,
    360 F. Supp. 2d 94 (D.D.C. 2004) ........................................................................8

*Brokaw v. Qualcomm, Inc.*,
    2002 U.S. Dist. LEXIS 27809 (S.D. Cal. Feb. 27, 2002) ........................................8

*Cannon v. Douglas Elliman, LLC*,
    2007 WL 4358456 (S.D.N.Y. Dec. 10, 2007) ......................................................18

*Cavallaro v. UMass Mem'l Healthcare, Inc.*,
    No. 09-40181, Dkt. 65 (D. Mass. filed Dec. 20, 2010)..........................................20

*Cavallaro v. UMass Mem'l Healthcare, Inc.*,
    No. 09-cv-40181, Dkt. 33 (D. Mass. filed July 2, 2010) ...................................6, 23

*Chao v. Gotham Registry, Inc.*,
    514 F.3d 280 (2d Cir. 2008)..................................................................................10

*Chen v. Domino's Pizza, Inc.*,
    2009 WL 3379946 (D.N.J. Oct. 16, 2009).............................................................18

*Chen v. St. Beat Sportswear, Inc.*,
    364 F. Supp. 2d 269 (E.D.N.Y. 2005) ...................................................................24

*Coakley v. Jaffe*,
    49 F. Supp. 2d 615 (S.D.N.Y. 1999) .....................................................................34

*Colodney v. Continuum Health Partners, Inc.*,
    2004 U.S. Dist. LEXIS 6606 (S.D.N.Y. Apr. 15, 2004)........................................26

*Comprehensive Habilitation Servs., Inc. v. Commerce Funding Corp.*,
    2009 WL 935665 (S.D.N.Y. Apr. 7, 2009).............................................................28

*Curran v. FedEx Ground Package Sys., Inc.*,
    593 F. Supp. 2d 341 (D. Mass. 2009) ....................................................................35

*DeSilva v. N. Shore-Long Isl. Jewish Health Sys.*,
    2011 WL 899296 (E.D.N.Y. Mar. 16, 2011) .....................................................9, 24

*Diaz v. Consortium for Worker Educ.*,
    2010 WL 3910280 (S.D.N.Y. Sept. 28, 2010).................................................17, 18

*Dougherty v. AT&T*,
    902 F.2d 201 (2d Cir. 1990)...................................................................................22

*Enright v. CGH Med. Ctr.*,
    1999 WL 24683 (N.D. Ill. Jan. 12, 1999) ...............................................................8

*Fasolino Foods Co. v. Banca Nazionale Del Lavoro*,
    961 F.2d 1052 (2d Cir. 1992)..............................................................26

*First Capital Asset Mgmt. v. Satinwood, Inc.*,
    385 F.3d 159 (2d Cir. 2004)................................................................24

*Gaind v. Pierot*,
    2006 U.S. Dist. LEXIS 14963 (S.D.N.Y. Mar. 30, 2006) ......................32

*Gorman v. Consol. Edison Corp.*,
    488 F.3d 586 (2d Cir. 2007)................................................................11

*Haggerty v. Ciarelli & Dempsey*,
    2010 WL 1170352 (2d Cir. Mar. 25, 2010) (summary order)...............29

*Haszard v. Am. Med. Response Nw., Inc.*,
    237 F. Supp. 2d 1151 (D. Or. 2001) ...................................................13

*Hoffmann v. Sbarro, Inc.*,
    982 F. Supp. 249 (S.D.N.Y. 1997) .....................................................36

*Holzapfel v. Town of Newburgh*,
    145 F.3d 516 (2d Cir. 1998)................................................................10

*Hudson River Club v. Consol. Edison Co.*,
    275 A.D.2d 218 (1st Dep't 2000) .......................................................30

*Hydro Investors, Inc. v. Trafalgar Power, Inc.*,
    227 F.3d 8 (2d Cir. 2000)....................................................................31

*Integrated Sys. & Power, Inc., v. Honeywell Int'l, Inc.*,
    2009 WL 2777076 (S.D.N.Y. Sept. 1, 2009).......................................36

*Jonites v. Exelon Corp.*,
    2007 U.S. Dist. LEXIS 55400 (N.D. Ill. July 30, 2007) .......................20

*Jordan v. Verizon Corp.*,
    2008 WL 5209989 (S.D.N.Y. Dec. 10, 2008) ................................26, 27

*JP Morgan Chase v. J.H. Elec. of NY, Inc.*,
    69 A.D.3d 802 (2d Dep't 2010) ..........................................................26

*Kavowras v. N.Y. Times Co.*,
    328 F.3d 50 (2d Cir. 2003)..................................................................32

*Kosakow v. New Rochelle Radiology Assocs., P.C.*,
    274 F.3d 706 (2d Cir. 2001).............................................................9, 12

*Kuebel v. Black & Decker (U.S.) Inc.*,
    2010 U.S. Dist. LEXIS 46533 (W.D.N.Y. May 12, 2010) ...................................................10

*Landry v. Peter Pan Bus Lines, Inc.*,
    2009 U.S. Dist. LEXIS 129873 (D. Mass. Nov. 20, 2009).................................................16

*Laplante v. Terraces of Lake Worth Rehab. & Health Ctr.*,
    725 F. Supp. 2d 1358 (S.D. Fla. 2010) ....................................................................................9

*Leahy v. City of Chicago*,
    96 F.3d 228 (7th Cir. 1996) ............................................................................................19, 20

*Ledbetter v. Pruitt Corp.*,
    2007 U.S. Dist. LEXIS 10243 (M.D. Ga. Feb. 12, 2007)...................................................8

*Lopez v. Flight Servs. & Sys., Inc.*,
    2008 U.S. Dist. LEXIS 4744 (W.D.N.Y. Jan. 22, 2008)..................................................24

*Lucas v. BMS Enters., Inc.*,
    2010 WL 2671305 (N.D. Tex. July 1, 2010) ......................................................................17

*Manning v. Boston Med. Ctr. Corp.*,
    2011 WL 796505 (D. Mass. Feb. 28, 2011) .......................................................................12

*Martin v. Lake County Sewer Co.*,
    269 F.3d 673 (6th Cir. 2001) ..............................................................................................20

*McGee v. UMass Corr. Health*,
    2010 WL 3464282 (D. Mass Sept. 1, 2010) .........................................................................7

*McKnight v. Kimberly Clark Corp.*,
    149 F.3d 1125 (10th Cir. 1998) ..........................................................................................10

*Mell v. GNC, Inc.*,
    2010 WL 4668966 (W.D. Pa. Nov. 9, 2010) ......................................................................16

*Mills v. Polar Molecular Corp.*,
    12 F.3d 1170 (2d Cir. 1993).........................................................................................29, 31

*Mongo v. The Home Depot, Inc.*,
    2003 U.S. Dist. LEXIS 17557 (N.D. Tex. Sept. 26, 2003)..................................................8

*Nakahata v. New York-Presbyterian Healthcare Sys.*,
    2011 WL 321186 (S.D.N.Y. Jan. 28, 2011) ......................................................4, 10, 12, 32

*Nichols v. Mahoney*,
    608 F. Supp. 2d 526 (S.D.N.Y. 2009)................................................................................13

*Parr v. Ronkonkoma Realty Venture I, LLC,*
  65 A.D.3d 1199 (2d Dep't 2009) ........................................................32

*Patel v. Wargo¸*
  803 F.2d 632 (11th Cir. 1986) .............................................................18

*Petras v. Johnson,*
  1993 U.S. Dist. LEXIS 8464 (S.D.N.Y. June 16, 1992)......................24

*Port Wash. Teachers' Ass'n v. Bd. of Educ.,*
  478 F.3d 494 (2d Cir. 2007)................................................................17

*Pruell v. Caritas Christi,*
  2010 U.S. Dist. LEXIS 101770 (D. Mass. Sept. 27, 2010) .............21, 23

*Pruell v. Caritas Christi,*
  2010 WL 3789318 (D. Mass. Sept. 27, 2010) ......................................6

*Reich v. N.Y. City Transit Auth.,*
  45 F.3d 646 (2d Cir. 1995)..................................................................11

*Reich v. S. New Eng. Telcoms. Corp.,*
  121 F.3d 58 (2d Cir. 1997)....................................................................9

*Republic Steel Corp. v. Maddox,*
  379 U.S. 650 (1965)............................................................................20

*Revson v. Cinque & Cinque, P.C.,*
  221 F.3d 59 (2d Cir. 2000)..................................................................28

*Rich v. Assoc. Brands, Inc.,*
  379 Fed. Appx. 78 (2d Cir. 2010) (summary order)............................32

*Riel v. Morgan Stanley,*
  2007 U.S. Dist. LEXIS 11153 (S.D.N.Y. Feb. 16, 2007) ....................30

*Ross v. Bank of Am., N.A. (USA),*
  2006 WL 36909 (S.D.N.Y. Jan. 6, 2006) ............................................36

*Salamea v. Macy's East, Inc.,*
  426 F. Supp. 2d 149 (S.D.N.Y. 2006)..................................................23

*Saleen v. Waste Mgmt.,*
  649 F. Supp. 2d 937 (D. Minn. 2009)....................................................8

*San Diego Bldg. Trades Council v. Garmon,*
  359 U.S. 236 (1959)........................................................................20, 23

*Seever v. Carrols Corp.*,
    528 F. Supp. 2d 159 (W.D.N.Y. 2007) ...............................................................12

*Simon v. Castello*,
    172 F.R.D. 103 (S.D.N.Y. 1997) ........................................................................31

*Singh v. City of N.Y.*,
    524 F.3d 361 (2d Cir. 2008)................................................................................11

*Skidmore v. Swift & Co.*,
    323 U.S. 134 (1944)............................................................................................19

*Slattery v. HCA Wesley Rehab Hosp.*,
    83 F. Supp. 2d 1224 (D. Kan. 2000) ..................................................................10

*Soviero v. Carroll Group Int'l., Inc.*,
    27 A.D.3d 276 (1st Dep't 2006) .........................................................................30

*Suez Equity Investors, L.P. v. Toronto-Dominion Bank*,
    250 F.3d 87 (2d Cir. 2001)..................................................................................30

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.*,
    531 F.3d 190 (2d Cir. 2008)................................................................................29

*Temple of Lost Sheep, Inc. v. Abrams*,
    1990 WL 156139 (E.D.N.Y. Sept. 26, 1990) .....................................................36

*Tenn. C., I & R. Co. v. Muscoda*,
    321 U.S. 590 (1944)............................................................................................19

*Tracy v. NVR, Inc.*,
    2009 WL 3153150 (W.D.N.Y. Sept. 30, 2009) ..................................................33

*Transunion Corp. v. PepsiCo, Inc.*,
    811 F.2d 127 (2d Cir. 19871)..............................................................................36

*Tucker v. Gonzales*,
    2005 U.S. Dist. LEXIS 21616 (S.D.N.Y. Sept. 27, 2005)....................................8

*United States v. Melrose-Wakefield Hosp.*,
    360 F.3d 220 (1st Cir. 2004)..................................................................................7

*Vadino v. A. Valey Eng'rs*,
    903 F.2d 253 (3d Cir. 1990)................................................................................20

*Whalen v. J.P. Morgan Chase & Co.*,
    569 F. Supp. 2d 327 (W.D.N.Y. 2008) ..............................................................22

*Winer Family Trust v. Queen*,
    503 F.3d 319 (3d Cir. 2007)....................................................................17

*Wis. Cent. Ltd. v. Shannon*,
    516 F. Supp. 2d 917 (N.D. Ill. 2007) ....................................................22

*Wolman v. Catholic Health Sys. of Long Isl.*,
    No. 10-cv-1326 ..................................................................................2, 6

*Wyly v. CA, Inc.*,
    2009 U.S. Dist. LEXIS 90037 (E.D.N.Y. Sept. 2, 2009).......................27

*Zhong v. August August Corp.*,
    498 F. Supp. 2d 625 (S.D.N.Y. 2007)..........................12, 13, 14, 15

## STATUTES

29 U.S.C. § 206(a) ..........................................................................................19

29 U.S.C. § 207(a)(1)........................................................................................9

29 U.S.C. § 216(b) ............................................................................................5

29 U.S.C. § 254(a)(2)......................................................................................11

28 U.S.C. § 1367(c)(3)....................................................................................24

29 C.F.R. § 785.11 ............................................................................................9

29 C.F.R. § 785.27 ..........................................................................................12

## RULES

Fed. R. Civ. P. 9(b) ...........................................................................28, 31, 32

Fed. R. Civ. P. 26(c) .......................................................................................35

Fed. R. Civ. P. 8(a)(2).......................................................................................6

## OTHER AUTHORITIES

*Factsheet No. 53, The Health Care Industry and Hours Worked* (DOL 2008) .............................8

*FLSA Opinion Ltr. 2007-1NA* (DOL May 14, 2007)......................................8

*FLSA Opinion Letter*, 1997 WL 998038 (DOL Sept. 15, 1997).....................12

*FLSA Opinion Letter*, 1996 WL 1031798 (DOL Sept. 9, 1996) ....................12

Plaintiffs' Second Amended Complaint – containing only a few additional vaguely pled and still inadequate factual allegations – should be dismissed in its entirety for failing to satisfy applicable pleading standards or to state valid causes of action.  Plaintiffs failed to comply with the Court's February 8, 2010 Order ("Order") (Dkt. 124), most egregiously by re-pleading claims that the Court dismissed with prejudice.  Pursuant to the Order, because Plaintiffs failed to properly re-plead within the time permitted, the Second Amended Complaint ("SAC") should be dismissed in its entirety with prejudice.

In its Order, this Court dismissed all twelve counts of Nellie Sampson's ("Sampson's") first Amended Complaint ("FAC").  In doing so, the Court dismissed with prejudice Sampson's Fair Labor Standards Act ("FLSA") claim with respect to "gap time" or straight compensation, her Racketeer Influenced and Corrupt Organizations Act ("RICO") claim, and all state law claims that arose from or required interpretation of the applicable collective bargaining agreements ("CBAs").  The Court permitted Sampson to re-plead only her FLSA overtime claim and only state law claims not preempted by federal law.

The second Amended Complaint ("SAC") flouts the Court's Order by reiterating the same allegations regarding the state law claims, essentially unchanged.  Plaintiffs also continue to assert claims for compensation for "all hours worked," despite the Court's dismissal with prejudice of Plaintiffs' "gap time" claim.

The SAC does not represent a serious attempt to cure the defects identified in the Court's ruling.  Only two of the new paragraphs contain any substantive factual allegations relating to Plaintiffs' purported FLSA claim.  And because their state law claims are virtually unaltered, each of those claims continues to suffer the same substantive infirmities that Defendants noted in

1

their original motion to dismiss (Dkt. 69).[1]  Like the FAC and every other complaint in

Plaintiffs' counsel's hospitalovertime.com campaign, the SAC is severely lacking in specific

facts regarding Plaintiffs' overtime allegations against the two hospitals with whom Plaintiffs

allege to have worked, and completely lacking as to all other Defendants.

Plaintiffs persist in attempting to survive a motion to dismiss by "prattling on" as they

have been warned not to do,[2] pleading general, conclusory allegations, even after dismissal of the

FAC, about the seven named defendants (and scores of others whom they call "defendants" but

did not serve - and as to whom they allege no employment relationship); and the dozens of job

positions that no Plaintiff held.  Even their individual overtime claims are non-viable.  Timothy

Gill's ("Gill") claim is necessarily barred by the FLSA statute of limitations, and Sampson fails

to allege plausible facts regarding overtime worked within the statute of limitations.  Although

they attempt to allege hours worked over their standard 35- to 37.5-hour workweek (despite the

fact that their gap time claim unambiguously was dismissed with prejudice), they describe how

much they allegedly "typically" and "occasionally" worked without even <u>one</u> reference to a

specific incident where they were not compensated for a missed meal break, compensable

preliminary/postliminary work, or compensable training.  Their allegations are so vague that it is

not surprising that their own overtime calculations do not harmonize with their allegations.

In light of Plaintiffs' failure to rectify the deficiencies of the FAC, their claims should be

dismissed immediately in their entirety, with prejudice, and without leave to further amend.

Plaintiffs also should be sanctioned for blatantly ignoring the Court's Order regarding dismissed

---

[1]  Given that Sampson failed to state a federal claim, the Court declined pendent jurisdiction as to the remaining state law claims.  Order at 17.

[2]  "The Court will not be impressed if the Third Amended Complaint prattles on for another 217 paragraphs, solely for the sake of repeating various conclusory allegations many times over."  *Wolman v. Catholic Health Sys. of Long Isl.*, No. 10-cv-1326, Dkt. 164, at *19 (E.D.N.Y. filed Dec. 30, 2010).

claims, failing to make any effort to add sufficient factual allegations to the FAC, and forcing both the Court and Defendants, who are not-for-profit, union hospitals providing critical care to the poorest, most underserved patients, to waste scarce resources unnecessarily.

## BACKGROUND

On or about March 24, 2010, Claudette Fraser ("Fraser") filed, but did not serve, the original complaint in this action.  On or about June 16, 2010, Sampson replaced Fraser as the named plaintiff and filed the FAC, asserting twelve causes of action on behalf of herself and others to whom she claimed she was similarly situated.  Each claim derived from Defendants' alleged failure to pay Sampson and putative class members for all hours worked.

On July 22, 2010, Defendants moved to dismiss Sampson's FAC on various grounds.  On February 8, 2011, the Court dismissed Sampson's FAC in its entirety.  *See* Order at 19.  The Court granted Sampson's request for leave to re-plead **only** as to her FLSA overtime claim and remaining state law claims **only** to the extent that such claims do not require interpretation of the parties' robust collective bargaining.  *Id.*  Sampson and Gill filed the SAC on March 10, 2011.

As in the FAC, Plaintiffs contend in the SAC that they were wrongfully deprived of remuneration in three ways.  First, they claim that Defendants automatically deducted time from their total hours worked for meal breaks even when they performed compensable work during a meal period.  SAC ¶¶ 71-87.  Second, they claim that unnamed "policies, practices and/or [aspects of Defendants'] time recording system" prevented them from recording preliminary and postliminary work performed at the start and conclusion of each shift.  SAC ¶¶ 88-96.  Third, they claim that Defendants failed to pay them for time spent attending unspecified "compensable training programs."  SAC ¶¶ 97-104.

Plaintiffs claim that this alleged failure to pay wages constitutes a violation of the overtime provisions of the FLSA and New York Labor Law ("NYLL") (Causes of Action I and

3

II).  SAC ¶¶ 173-74.  They further assert, as a result of the same alleged conduct, common law claims for breach of contract (Causes of Action III and IV), breach of the implied covenant of good faith and fair dealing (Cause of Action V), *quantum meruit* (Cause of Action VI), unjust enrichment/restitution (Cause of Action VII), fraud (Cause of Action VIII), negligent misrepresentation (Cause of Action IX), and conversion (Cause of Action X).  And, as in the FAC, Plaintiffs assert with absolutely no facts supporting their "claim" that Defendants should be estopped from asserting the statute of limitations as a defense (Cause of Action XI).  As discussed below, Plaintiffs' SAC is practically identical to the FAC, which has been described as a "vivid demonstrative of how not to plead,"[3] and which this Court previously dismissed as inadequate.  The FAC likewise fails to satisfy the applicable pleading standards and Plaintiffs' claims should now be dismissed with prejudice.

## ARGUMENT

### I.   THE SAC SHOULD BE DISMISSED WITH PREJUDICE FOR PLAINTIFFS' FAILURE TO COMPLY WITH THE COURT'S ORDER AND TO PROPERLY RE-PLEAD AS INSTRUCTED

The SAC should be dismissed with prejudice in its entirety – and Plaintiffs should be denied yet another bite at the apple – because Plaintiffs have failed to comply with the Court's February 8, 2011 order to re-plead properly as instructed.  First, they continue to plead their state claims as to union-represented employees, even going so far as to add subclasses without pleading any facts to justify them, despite the fact that the Court ordered their state law claims preempted and dismissed with prejudice to the extent that they arise from or require interpretation of CBAs.

---

[3] *Nakahata v. New York-Presbyterian Healthcare Sys.*, 2011 WL 321186, at *6 (S.D.N.Y. Jan. 28, 2011).  Copies of unreported cases cited are attached to the Compendium of Unreported Decisions Cited in Defendants' Memorandum of Law in Support of Their Motion to Dismiss Plaintiffs' Second Amended Complaint and Stay Discovery.

Second, Plaintiffs flout the Court's Order by continuing to plead their FLSA "gap time" claim, even though the Court dismissed it with prejudice. Plaintiffs fail to articulate which FLSA provision allegedly was violated and instead simply include (i) the same imprecise reference to the FLSA without a citation at the beginning of the complaint; (ii) the same jurisdictional reference to 29 U.S.C. § 216(b); and (iii) the same incorporation of all the preceding paragraphs in FAC. Order at 5. By doing so, they have effectively reasserted their dismissed FLSA claims for compensation for "all hours worked," *e.g.* SAC ¶¶ 7-8, 69-71, even though the Court explicitly denied leave to do so.

Third, Plaintiffs generally have disregarded instructions from this Court, as well as other judges within the district, to cease pleading as to the industry as a whole, but rather to plead specific allegations regarding the particular hospitals and plaintiffs at issue in each case. Order at 18-19. Plaintiffs failed, as ordered by the Court, to heed repeated orders to: "plead enough *factual detail* concerning this unpaid time and training to render their allegations [of compensability] plausible." Order at 19. As the Court instructed, an overtime claim is adequately pleaded only where plaintiffs "have specified . . . the approximate number of overtime hours they each worked per week without receiving overtime pay." Order at 8. Plaintiffs still fail to allege facts to support plausible allegations that by working during missed or interrupted meal breaks, performing preliminary/postliminary work and/or attending trainings, they worked more than forty hours during any *particular one week period* and that such work was *compensable. See* Order at 7 ("[P]laintiffs do not allege any facts to support the general conclusion that by working during the challenged periods they would have been working in excess of forty hours in one week period."). Both Plaintiffs persist in failing to allege their hourly rates of pay. *Pruell v. Caritas Christi*, 2010 WL 3789318, at *2 (D. Mass. Sept. 27,

2010) (finding that to state a plausible wage claim, complaint must approximate weekly wage and hours worked per week).

## II. PLAINTIFFS' FLSA CLAIM IS STILL INSUFFICIENTLY PLED AND SHOULD BE DISMISSED.

Plaintiffs' SAC again fails to meet the pleading standard established in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).  Even having an opportunity to re-plead their claims,[4] Plaintiffs' SAC is nothing but another copy pressed from the mold of Plaintiffs' counsels' hospitalovertime.com campaign – indeed it is essentially identical to the Third Amended Complaint filed by Plaintiffs' counsel in *Wolman v. Catholic Health System of Long Island Inc*., No. 10-cv-1326, Dkt. 167 (E.D.N.Y. filed Jan. 29, 2011) – and remains devoid of substance.  Even with the addition of a couple of paragraphs setting forth some meager and inconsistent factual allegations, Plaintiffs' SAC fails to assert facts sufficient to give rise to a plausible claim for relief.[5]

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  As this Court has recognized, the Supreme Court in *Twombly* and *Iqbal* made clear that to comply with this rule, "[f]actual allegations must be enough to raise a right to relief above the speculative level," Order at 4 (quoting *Twombly*, 550 U.S. at 557), and that "[t]he plausibility standard requires 'more than a sheer possibility that defendant has acted unlawfully.'"  *Id.* (quoting *Iqbal*, 129 S. Ct. at 1949).  While "detailed factual allegations" are not necessary for a complaint to survive a motion to dismiss, a complaint must present "more than an unadorned, the-defendant-unlawfully-harmed-

---

[4] Indeed, Plaintiffs have been on notice of the deficiency in their style of pleading for many months, since virtually identical complaints have been dismissed on *Twombley* grounds by other courts.  *See, e.g. Pruell*, 2010 WL 3789318, at *2.

[5] In a ruse to make the SAC appear more distinct from the FAC, Plaintiffs rearranged paragraphs (*e.g.* FAC ¶ 98 is now SAC ¶106).

me accusation." *Iqbal*, 129 S. Ct. at 1949.  Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and thus legal conclusions couched as factual allegations are not to be given any credence.  *Iqbal*, 129 S. Ct. at 1940; *see also* Order at 4 ("[A] 'pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.'") (quoting *Iqbal*, 129 S. Ct. at 1949).

The Court already has determined that the conclusory allegations in Sampson's FAC failed to satisfy these requirements, and the few additional facts that Plaintiffs have pled do not support a different outcome.  Dismissal with prejudice is appropriate when a plaintiff is given the opportunity to "sharpen pleadings," but fails.  *Bemben v. Fuji Photo Film U.S.A., Inc.*, 2004 WL 1052973, at *7 (S.D.N.Y. May 10, 2004) (dismissing claims with prejudice, where plaintiff "was given the opportunity to plead the details of any alleged [claim] and has nonetheless failed to do so"); *United States v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 242 (1st Cir. 2004); *McGee v. UMass Corr. Health*, 2010 WL 3464282, at *6 n.7 (D. Mass Sept. 1, 2010) (denying leave where plaintiff made no real attempt to address court's concerns, as providing further opportunity would reward the lack of diligence).  By continuing to rely on the same generic complaint that Plaintiffs' counsel has filed against numerous hospital systems, as outlined in Defendants' initial motion to dismiss, Plaintiffs and their counsel have demonstrated that they are unable or unwilling to plead sufficient factual allegations specific to this action.  The Court should not allow Plaintiffs to proceed with their claims against Defendants based on nothing more than a blunt attack on the hospital industry at large.

### A.  Plaintiffs Fail to Plead Facts Demonstrating That Defendants' Policies Are Unlawful

Although Plaintiffs identify their allegations by name in an attempt to portray them as unlawful policies, *i.e.*, "Unpaid Work Policies," "Unpaid Preliminary and Postliminary Schedule

Work Policy" and "Unpaid Training Policy," they state no plausible allegations of a policy by

Defendants not to pay its employees. *See, e.g.*, SAC ¶¶ 88, 98, 105.  At a minimum, Plaintiffs

must identify a policy that violates the FLSA. *See Saleen v. Waste Mgmt.*, 649 F. Supp. 2d 937,

940-41 (D. Minn. 2009) ("Plaintiffs allege . . . that [Defendant] maintains an (unwritten) policy

to violate its (written) policy. . . . Of course, the mere fact that some employees of a large

corporation were not properly compensated under the FLSA does not provide a "colorable basis"

to infer the existence of an unlawful companywide policy.")  Here, Plaintiffs fail to even

adequately identify the policies that they claim are unlawful, which is a barrier to proceeding

with the claim.  *See, e.g.*, *Tucker v. Gonzales*, 2005 U.S. Dist. LEXIS 21616, at *16 (S.D.N.Y.

Sept. 27, 2005); *Brady v. Livingood*, 360 F. Supp. 2d 94, 100 (D.D.C. 2004); *Mongo v. The

Home Depot, Inc.*, 2003 U.S. Dist. LEXIS 17557, at *6-7 (N.D. Tex. Sept. 26, 2003); *Brokaw v.

Qualcomm, Inc.*, 2002 U.S. Dist. LEXIS 27809, at *12 (S.D. Cal. Feb. 27, 2002).  Plaintiffs have

not made any plausible allegations identifying a policy not to compensate employees for

compensable training time or compensable preliminary/postliminary work.  And though

Plaintiffs seem to contend that automatic meal deductions are *per se* unlawful, automatic

deductions do not violate the FLSA *per se*.  In fact, automatic deduction policies are expressly

authorized by the U.S. Department of Labor and are lawfully used by millions of employers

nationwide. *Ledbetter v. Pruitt Corp.*, 2007 U.S. Dist. LEXIS 10243, at *13 (M.D. Ga.  Feb. 12,

2007) ("A policy of automatic meal deductions does not *per se* violate the FLSA."); *Enright v.

CGH Med. Ctr.*, 1999 WL 24683, at *6 (N.D. Ill. Jan. 12, 1999); *Factsheet No. 53, The Health

Care Industry and Hours Worked* (DOL 2008) (employers may choose to deduct automatically

the 30 minutes); *FLSA Opinion Ltr. 2007-1NA* (DOL May 14, 2007) (automatic 30-minute

deduction for meal breaks is acceptable and in accordance with FLSA); *see also Laplante v.

*Terraces of Lake Worth Rehab. & Health Ctr.*, 725 F. Supp. 2d 1358 (S.D. Fla. 2010) (holding procedure where employees obtained compensation for missed breaks by advising management via a form lawful).

**B.      Plaintiffs Fail to Plead Plausible Facts Showing Compensability**

Plaintiffs also fail to plead plausible facts showing the compensability of the "extra" hours Plaintiffs allegedly worked.  As this Court observed, not all challenged periods necessarily constitute compensable time.  Order at 7 n.1; *see DeSilva v. N. Shore-Long Isl. Jewish Health Sys.*, 2011 WL 899296, at *6-7 (E.D.N.Y. Mar. 16, 2011) (dismissing FLSA claim where plaintiffs pled no factual allegations about when the alleged unpaid wages were earned or the number of hours allegedly worked without compensation, and pled only vague and unfounded conclusions regarding compensability of training and preliminary/postliminary work).  For example, meal breaks are only compensable "when employees during a meal break perform duties ***predominantly*** for the benefit of the employer." *Reich v. S. New Eng. Telcoms. Corp.,* 121 F.3d 58, 65 (2d Cir. 1997) (emphasis added).  Plaintiffs plead no plausible facts to support a finding that "meeting with" colleagues, (SAC ¶ 64), for example, is predominantly for their employers' benefit.

Further, to prevail on their off-the-clock work claims, Plaintiffs must establish that they were  "employed," as defined by the FLSA, during the alleged off-the-clock work.  29 U.S.C. § 207(a)(1).  The word "employ" is defined as "to suffer or permit to work," a phrase which has consistently been interpreted as requiring actual or constructive knowledge.  *Kosakow v. New Rochelle Radiology Assocs.*, *P.C.*, 274 F.3d 706, 718 (2d Cir. 2001) ("[A]n employee must be compensated for time she works outside of her scheduled shift . . . so long as the employer 'knows or has reason to believe that [the employee] is continuing to work' and that work was 'suffered or permitted' by the employer.") (quoting 29 C.F.R. § 785.11).  Thus, Plaintiffs must

establish that Defendants had actual or constructive knowledge that they performed work without compensation.  Plaintiffs fail to allege plausible facts regarding Defendants' knowledge and therefore their claims fail as a matter of law.  *See McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1130 (10th Cir. 1998) (holding that "failure to record claimed time is fatal to a later claim for such if the company has no reason to be aware of the overtime"); *Slattery v. HCA Wesley Rehab Hosp.*, 83 F. Supp. 2d 1224 (D. Kan. 2000) (finding FLSA claim untenable where plaintiff never informed her employer of her alleged overtime work and never recorded it on her timesheet).[6]  For example, Plaintiffs plead no facts to nudge the allegation from conceivable to plausible that missed breaks were not later rescheduled or paid, nor do they allege why employees (including themselves) did not follow Defendants' procedures for reporting missed or interrupted breaks.  (SAC ¶¶ 71-87.)

In addition, work must be "integral and indispensable" to an employee's principal activity to be compensable.  *Nakahata*, 2011 WL 321186, at *4 (holding that such "broad, generic, unspecific" characterizations of the alleged pre- and post-liminary activities do not adequately demonstrate that such activities were "integral and indispensable" to the principal activity so as to render them compensable without looking to a collective bargaining agreement).  *See also Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 593 (2d Cir. 2007) (finding that plaintiffs were not entitled to compensation for alleged preliminary and post-liminary activities because the activities were not integral to the employees' principal activities).

---

[6] *Holzapfel v. Town of Newburgh,* 145 F.3d 516, 524 (2d Cir. 1998) ("For compensation to be awarded, plaintiff's activities must . . . be performed with the employer's knowledge."); *Chao v. Gotham Registry, Inc*., 514 F.3d 280, 287 (2d Cir. 2008) ("It is clear an employer's actual or imputed knowledge that an employee is working is a necessary condition to finding the employer suffers or permits that work."); *Kuebel v. Black & Decker (U.S.) Inc.*, 2010 U.S. Dist. LEXIS 46533, at *45 (W.D.N.Y. May 12, 2010) (granting summary judgment where the plaintiff failed to meet his burden of proving the employer had "actual or constructive knowledge of the hours he worked off-the-clock").

Conversely, there is no obligation to compensate employees for activities that are preliminary/postliminary to principal activity. 29 U.S.C. § 254(a)(2). In fact, even time spent on an employee's principal activity is not compensable if it is *de minimus*. *Singh v. City of N.Y.*, 524 F.3d 361, 371 (2d Cir. 2008) ("It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved."); *Reich v. N.Y. City Transit Auth.*, 45 F.3d 646, 653 (2d Cir. 1995) (holding that preliminary/postliminary work was *de minimus* and should not be compensated); *Gorman*, 488 F.3d at 594 ("[E]ven if [preliminary/postliminary work was] 'integral and indispensable' to plaintiffs' principal activities, we would be required to consider whether the time so spent was *de minimis*.").

Plaintiffs fail to plausibly plead facts showing that their alleged work time is compensable. Conspicuously absent from the SAC are necessary factual allegations such as when the alleged unpaid wages were earned (*i.e.*, which lunches and breaks were worked through without proper compensation) and why that work is compensable. Order at 7-8 ("Without alleging facts that support the claim that by working during the challenged periods plaintiffs . . . would be working compensable overtime hours, plaintiffs have not given defendants fair notice.") Plaintiffs provide no indication of the actual or estimated number and length of unpaid breaks or how frequently they performed unpaid work during them. Plaintiffs did not plead any actual dates, time frames or frequency of allegedly missed or interrupted meal breaks, preliminary/postliminary work or training; and they continue not to plead actual weeks in which they worked overtime. *Zhong v. August August Corp.*, 498 F. Supp. 2d 625, 630 (S.D.N.Y. 2007); *see also Manning v. Boston Med. Ctr. Corp.*, 2011 WL 796505, at *1-2 (D. Mass. Feb. 28, 2011) (regarding a complaint similar to the FAC, dismissing plaintiffs' FLSA claim where plaintiffs failed to state, *inter alia*, the dates on which each of the named plaintiffs

11

worked during lunch breaks, the aggregate time of those lunch breaks or the amount of unpaid

wages); *Nakahata*, 2011 WL 321186, at *4 (dismissing overtime claims where "[t]here are no

factual allegations about when the alleged unpaid wages were earned (*i.e.*, which lunch periods

and breaks were worked without proper compensation), or the number of hours allegedly worked

without compensation - the heart of the claim").

The few new factual allegations that Plaintiffs offer are inadequate.  For example,

Sampson's claims, such as that she worked before her shift in order to "meet with outgoing

staff," SAC ¶ 64, is not facially compensable or necessarily integral to her principal activities.[7]

Plaintiffs also do not allege that the training was mandatory versus voluntary, on or off-shift, or

that they completed productive work during that time.  29 C.F.R. § 785.27; *Seever v. Carrols*

*Corp.*, 528 F. Supp. 2d 159, 167 (W.D.N.Y. 2007); *Kosakow*, 274 F.3d at 720-22; *FLSA Opinion*

*Letter*, 1997 WL 998038 (DOL Sept. 15, 1997); *FLSA Opinion Letter*, 1996 WL 1031798 (DOL

Sept. 9, 1996).  Plaintiffs conspicuously fail to plead that the training was required by

Defendants or integral to their jobs, rather than, for example, merely an agency licensure

requirement and thus non-compensable.  *Haszard v. Am. Med. Response Nw., Inc.*, 237 F. Supp.

2d 1151, 1153 (D. Or. 2001).

### C.   Plaintiffs Fail to Provide Sufficient Factual Support for Their Individual FLSA Claims

Even the few additional allegations regarding the Plaintiffs' individual claims are not

more sufficiently pled than those in the FAC to nudge the claims across the line from merely

---

[7] Plaintiffs purport to act on behalf of employees ranging from direct care workers to those performing janitorial services.  While one might envision that some employees in some classifications were called upon to give "reports" to those who relieved them, or to prepare "assignments" for others to carry out, there is no basis to conclude that the named Plaintiffs, themselves, let alone ***all*** of the absent members of the putative collective action, engaged in that activity.  *Nakahata*, 2011 WL 321186, at *4.  Plaintiffs do not provide any basis for their alleged knowledge of the duties of persons holding different titles in different facilities, highlighting the speculative nature of their claims.

conceivable to plausible.  At a minimum, an employee must allege an estimate of the number of overtime hours worked without adequate compensation.  *See Nichols v. Mahoney*, 608 F. Supp. 2d 526, 547 (S.D.N.Y. 2009) ("As to the overtime claims, plaintiffs have specified the approximate time period they were employed by defendants . . . and the approximate number of overtime hours they each worked per week without receiving overtime pay."); *Zhong*, 498 F. Supp. 2d at 630 (dismissing overtime claim where plaintiff "merely alleged that he worked 'beyond 40 hours per week'")  Despite having facially complied with this standard, Plaintiffs have persisted in their failure to provide a plausible estimate of the hours they claim to have worked.[8]

As a preliminary matter, named Plaintiff Gill cannot state a valid FLSA overtime claim, and thus could not serve as an adequate class representative.  Even taking Plaintiffs' allegations as true for purposes of this Motion, he worked at Hi-Tech Home Care at Jamaica Hospital Medical Center from February 2004 until February 2005.  (SAC ¶ 65.)  His employment thus falls outside of the statute of limitations period for the FLSA, and his claims warrant dismissal. (*Id.*)

If Plaintiffs had been subject to any identifiable legal wrong, they might have shared with Defendants and the Court some specifics about their own experiences as employees of Shulman and Schachne Institute for Nursing and Rehabilitation, or Hi-Tech Home Care, respectively, which they claim entitles them to the relief they seek.  Yet they fail to allege even one specific incident where they were not compensated for a missed or interrupted meal break, compensable preliminary/postliminary work or compensable training.

---

[8] Under *Twombly* and *Iqbal*, the touchstone for adequate pleading is "plausibility."  *Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 555.  Thus, even if particular facts such as the precise number of hours that an employee works or her rate of pay are not required for adequate pleading, she must plead sufficient facts as a whole to make an entitlement to overtime pay under the FLSA plausible.

In fact, the meager facts that Sampson alleges with regard to her alleged overtime hours imply that she typically worked LESS than forty hours a week.  In setting the foundation for her estimate of the number of alleged hours she worked for which she was not compensated, Sampson only provides the most general description of the time, using qualifiers such as "typically," "occasionally" and "approximately" throughout.

According to the SAC, Sampson "typically" worked from 3 p.m. to 11:15 p.m. "approximately" five days a week, totaling 37.5 hours.  SAC ¶ 64.  She claims that her meal breaks were "typically" missed or interrupted; that she "typically" worked an additional ten minutes of preliminary work a week; and that she "typically" worked an additional fifteen minutes or "as long as 30 minutes" of postliminary work each shift.  Id.  Depending on the definition of "typically," there are many iterations of Sampson's description under which she would not have worked over forty hours in any given week within the statute of limitations.

Despite her apparent inability to even estimate the dates, frequency and/or number of missed meal breaks, preliminary and postliminary work, or training time, she illogically concludes that she has worked at least five hours and ten minutes and up to fifteen hours and 10 minutes a week for which she was not compensated, including both alleged gap time and overtime.  To reach even this minimum number, one has to read "typically" as "always" and note that in the FAC Sampson alleged that she worked "both under and in excess of forty [40] hours per week," so the allegations are internally inconsistent in Plaintiff's own pleadings and thus necessarily implausible.  FAC ¶¶ 177, 187.  Next, Sampson claims to have "occasionally" worked a sixth shift.  SAC ¶ 64.  In those weeks only, Sampson's gap/overtime hours would be 6 hours and 10 minutes (which includes a sixth missed meal break and thirty more minutes of postliminary work).  Finally, Sampson alleges that she trained for two hours every two years plus

eight hours <u>twice a year</u>, but again does not allege when this training occurred (*e.g.*, all in one week, once a week, etc.). *Id.* Plaintiff does not assert when these hours were worked or whether they were ever in overtime weeks.

### D. Even If Plaintiffs' Individual FLSA Claims Could Survive, Their Class Claims Fail

Plaintiffs persist in their effort to plead vague allegations, apparently in hopes of sweeping as many disparate putative class members within the scope of their putative class as possible. It is for this reason that they attempt to use the artifice of capitalization and quotation marks to define into existence three fictional "policies" as the foundation of all their claims in this matter, rather than pleading factual information that would give rise to a plausible inference that they are owed some unpaid compensation. Where, as here, Plaintiffs assert their claims on behalf of a massive and heterogeneous putative class, courts require <u>more</u> factual information in order to permit a complaint to proceed than would be necessary in a single-plaintiff action. *Mell v. GNC, Inc.*, 2010 WL 4668966, at *7 (W.D. Pa. Nov. 9, 2010); *Landry v. Peter Pan Bus Lines, Inc.*, 2009 U.S. Dist. LEXIS 129873, at *3 (D. Mass. Nov. 20, 2009) (permitting individual claim to survive based on minimal factual pleading relating to named plaintiff, but dismissing class claims as insufficiently plead).

In refining the Rule 8 pleading standard, the Supreme Court explained that its purpose was to prevent claims of marginal merit from squandering the resources of defendants and the courts. *Twombly*, 550 U.S. at 558 (pleading standard intended to prevent "a plaintiff with a largely groundless claim [from] be[ing] allowed to take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value") (citations & quotations omitted). Certainly, a putative class action such as this one, which is purportedly asserted on behalf of 11,000 employees of four not-for-profit hospitals and twenty affiliates in

15

over fifty disparate job classifications threatens Defendants and the Court with having to expend

substantial resources in orders of magnitude beyond what would be expended with respect to any

individual employee's claim.  For that reason, the Court should dismiss Plaintiffs' class and

collective action allegations in this matter, even if the Court were to find that Plaintiffs' meager

addition to prior pleadings had somehow pushed individual claims over the *Twombly* threshold.

      **E.**      **Plaintiffs Fail to Show the Defendants Are Employers or That Plaintiffs Have Standing to Sue Defendants**

In the SAC, Sampson contends that she was employed by Schulman, and Gill contends

he was employed by Hi-Tech Home Care; they do not adequately allege an employer-employee

relationship with any other Defendants.  Order at 18-19.  In cases like this one, in which multiple

entities are named as defendants, more information is required to show that a plaintiff is in fact

an employee of a defendant.  *See Diaz v. Consortium for Worker Educ.*, 2010 WL 3910280, at

*3-4 (S.D.N.Y. Sept. 28, 2010) (conclusory allegation that they were "'employees' of the

defendants" failed to adequately allege employee-employer relationship where two companies

were alleged to be joint employers); *see also Stark*, 2010 WL 3789572, at *4 (stating that in

FLSA cases, "the plaintiff has the burden of proving that he or she is an employee and is covered

by the Act" and dismissing claim for failure to adequately allege FLSA coverage).  Here,

Plaintiffs have sued multiple entities, attached the label "defendants" to them, and alleged that

they worked for the labeled amalgam.

Lead plaintiffs in a class or collective action must plead individual standing by

establishing an "injury in fact" and a causal connection "between the injury and the conduct"

about which the plaintiffs complain.  *Port Wash. Teachers' Ass'n v. Bd. of Educ.*, 478 F.3d 494,

498 (2d Cir. 2007); *Winer Family Trust v. Queen*, 503 F.3d 319, 325-26 (3d Cir. 2007).  Here,

Plaintiffs do not allege *any* specific injury by *any* defendant other than the entities at which they

worked, Schulman and Hi-Tech Home Care, respectively.  Courts do not hesitate to dismiss claims against defendants in the absence of standing, *Lucas v. BMS Enters., Inc.*, 2010 WL 2671305, at \*3 (N.D. Tex. July 1, 2010) ("[A] named plaintiff in a collective action has adequately pleaded standing against a particular defendant only if the plaintiff has alleged an injury that the defendant caused to him."), and should do so here.

Along similar lines, the SAC asserts without foundation that the many "defendants" identified in the complaint are joint employers.  (SAC ¶¶ 15-37, referencing "common control," shared "profit and loss," and integration).  The pleading falls far short of demonstrating plausible joint employment among these scores of entities.  "[T]he determination of whether an employer-employee relationship exists for purposes of the FLSA [or NYLL] should be grounded in 'economic reality.'"  *Barfield v. N.Y. City Health & Hosp. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008) (citation omitted).  Aside from (finally) naming the entity at which each worked, Plaintiffs offer no allegations regarding who had the power to hire or fire them, set the schedules and conditions of their employment or determine and pay their rate of compensation.[9]  Courts routinely dismiss complaints containing conclusory joint employment allegations, like this one. *Diaz*, 2010 WL 3910280, at \*4 ("The complaint contains no facts that indicate that [defendant] had any direct role in managing the plaintiffs, hiring or firing [them], determining their working hours, or maintaining employment records."); *Chen v. Domino's Pizza, Inc.*, 2009 WL 3379946, at \*4 (D.N.J. Oct. 16, 2009) (holding joint employer legal conclusions, not factual allegations, to be insufficient).

---

[9] Plaintiffs likewise fail to plead relevant facts to support a finding that Defendants are engaged in an integrated enterprise or joint venture, and even if they had, it would not ground FLSA liability in the absence of joint employment, which Plaintiffs fail to adequately plead.  *Patel v. Wargo*, 803 F.2d 632, 635 (11th Cir. 1986); *Cannon v. Douglas Elliman, LLC*, 2007 WL 4358456, at \*4 n.3 (S.D.N.Y. Dec. 10, 2007) (dismissing defendants and noting that "it is possible for joint venturers to separately employ different people" without assuming wage and hour liability).

III.    **PLAINTIFFS' MISSED MEAL BREAK AND UNPAID WORK CLAIMS SHOULD BE PURSUED THROUGH GRIEVANCE AND ARBITRATION**

Plaintiffs' FLSA claims also must be dismissed because they should be pursued through the grievance and arbitration provisions of the CBAs rather than through litigation in this Court. While the FLSA requires employers to pay at least the minimum wage for all "hours" worked, 29 U.S.C. § 206(a), the statute contains no definition of "work."  Accordingly, under the FLSA employers and employees may make "reasonable provisions of contract [to guide] the computation of work hours where precisely accurate computation is difficult or impossible." *Tenn. C., I & R. Co. v. Muscoda*, 321 U.S. 590, 603 (1944). *See also Skidmore v. Swift & Co.*, 323 U.S. 134, 136-37 (1944).  As long as the agreement is consistent with fundamental FLSA principles – minimum wage and overtime for more than forty hours per week – "employers and employees may resolve whether certain activity is 'work' through a collective bargaining agreement."  *Leahy v. City of Chicago*, 96 F.3d 228, 232 (7th Cir. 1996).  Thus, where a CBA defines "work" and is not inconsistent with FLSA rules, a plaintiff is required to resort to the grievance and arbitration provisions set forth in the CBA to litigate any alleged failure to pay wages for hours worked.  *Id.*

Here, as in *Leahy*, Plaintiffs' unpaid work claims must be resolved through the grievance and arbitration provisions of the CBAs.  Plaintiffs claim that Defendants violated the FLSA by not paying them for all hours worked.  But, as in *Leahy*, the terms and conditions of Plaintiffs' employment are governed by the terms of the respective CBAs between each Defendant and the unions representing that Defendant.  Also like *Leahy*, all of the CBAs define "work" by stipulating the circumstances for which employees will be paid and define meal periods as non-working time.  And, again like *Leahy*, the CBAs require Defendants to pay employees for time spent working during breaks, in some cases requiring Defendants to pay time-and-a-half for such

time.  All of the CBAs provide for grievance and arbitration.  Finally, all of the CBAs on their

face comport with the FLSA, requiring Defendants to pay their employees more than the

minimum wage in straight-time pay and one-and-a-half times their "regular rate" to employees

who work more than forty hours in a week.   In short, there is no appreciable difference between

this case and *Leahy*, and the grievance and arbitration provisions of the CBAs bar Plaintiffs'

FLSA claims.[10]  *Jonites v. Exelon Corp.*, 2007 U.S. Dist. LEXIS 55400 (N.D. Ill. July 30, 2007),

*aff'd*, 522 F.3d 721 (7th Cir. 2008); *Martin v. Lake County Sewer Co.*, 269 F.3d 673 (6th Cir.

2001); *see also Vadino v. A. Valey Eng'rs*, 903 F.2d 253, 266 (3d Cir. 1990) ("[W]hile claims

resting on the language of section 7(a) [of the FLSA] are clearly cognizable under that section,

we believe that claims which rest on interpretations of the underlying collective bargaining

agreement must be resolved pursuant to the procedures contemplated under the LMRA,

specifically grievance, arbitration, and, when permissible, suit in federal court under section

301.").

## IV.   PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DISMISSED

### A.   Plaintiffs' State Law Claims Fail as to Union Employees

In its Order, the Court dismissed with prejudice Plaintiffs' state law contract-based

claims as preempted by LMRA section 301 to the extent they arise from the CBAs.  As this

Court previously recognized, Plaintiffs' claims are extinguished by operation of *San Diego Bldg.*

*Trades Council v. Garmon*, 359 U.S. 236 (1959).[11]  Although claims preempted by Section 301

could be treated by the Court as actual Section 301 claims, Plaintiffs have not alleged that they

have exhausted their administrative grievance process (nor could they) and therefore they are

---

[10] Defendants recognize that their argument is limited to the adjudication of claims under contracts that do not
purport to waive rights secured by the FLSA.  For this reason, *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450
U.S. 728 (1981), does not require a different result.

[11] See also, for example, the "complete settlement" provision at Musselwhite Dec. Ex. C at Article XXVII..

precluded from pursuing any such claims through the SAC.  *Republic Steel Corp. v. Maddox*, 379 U.S. 650 (1965).  As stated in *Adirondack Transit Lines, Inc. v. United Transp. Union, Local 1582*, 305 F.3d 82, 86 (2d Cir. 2002), "[i]t has long been the law that before a plaintiff may file a claim in federal court under Section 301, it first must exhaust the grievance and arbitration procedures found within the CBA to which the litigants are parties."  *See Cavallaro v. UMass Mem'l Healthcare, Inc.*, No. 09-40181, Dkt. 65 (D. Mass. filed Dec. 20, 2010) (same); *Pruell v. Caritas Christi*, 2010 U.S. Dist. LEXIS 101770, at *5 (D. Mass. Sept. 27, 2010) (same).

Here, Plaintiffs' claims require interpretation of the CBAs to determine, among other things, employees' rates of pay and the definition of "work."  Order at 17.  All unionized putative class members are subject to the terms of CBAs which contain provisions governing the definitions of compensable work periods and rates of pay, breaks, overtime compensation, on-call pay, shift differentials, fulfilling staffing needs, and training.[12]  To assess their NYLL claims that Defendants' alleged "policy" of "automatically" deducting 30 minutes each day for a meal break violated the NYLL, the Court would have to interpret CBA provisions governing recognition to determine to whom the agreements apply, provisions concerning meal and rest breaks, shift, and float bonuses and differentials, "on call" and holiday pay, and provisions governing pay for time not actually worked (such as time spent attending meetings on behalf of

---

[12] *See* Dkt. 71 (Declaration of Brenda Lee ("Lee Dec."), Ex. A at Art. 6, Sec. 1; Lee Dec. Ex. B at Art. VI, Art. XI, Secs. 2 & 4, Art. XII, Sec. 1, Art. XIII, Sec. 1, Art. XIV, Sec. 1; Lee Dec. Ex. C at Art. IX, Sec. 11, Art. XI, Secs. 3 & 5, Art. XIII, Sec. 1, Art. XIV, Sec. 1, Art. XV, Sec. 1; Art. XXXVII); Dkt. 72 (Declaration of John Mangani ("Mangani Dec."), Ex. A at Art. 6, Sec. 1; Mangani Dec. Ex. B at Secs. 3.03, 5.01, 5.07, 5.08, 6.03, 7.03, 7.16, 8.01, 10.03, 10.10; Mangani Dec. Ex. C at Art. V, Secs. 6 & 7, Art. VIIIA, Art. XI, Secs. 2, 3, 4, & 5, Art. XIII, Art. XIV, Sec. 1, Art. XV, Sec. 1; Mangani Dec. Ex. D at Arts. 9, 10 & 11); Dkt. 73 (Declaration of Ronald Musselwhite ("Musselwhite Dec."), Ex. A at Secs. 3.05, 5.01, 5.02A, 5.02B, 6.02, 7.03 7.16, 8.01, & 10.08;  Musselwhite Dec. Ex. C at Art. VIII, Secs. 2 & 3, Art. IX, Sec. 1, Art. X, Sec. 1, Art. XII, Sec. 1 & Memorandum of Agreement, Sec. 3; Musselwhite Dec. Ex. D at Art. V, Secs. 6 & 7, Art. VIIIA, Art. XI, Secs. 2, 3, 4, & 5, Art. XIII, Sec. 1, Art. XIV, Sec. 1, Art. XV, Sec. 1); Dkt. 74 (Declaration of Marguerite Verdi ("Verdi Dec."), Ex. A at Art. 6, Sec. 1; Verdi Dec. Ex. B at Art. V, Sec. 6, Art. XI, Secs. 3, 4, & 5, Art. XIII, Art. XIV, Sec. 1, Art. XV, Sec. 1; Verdi Dec. Ex. C at Arts. 9, 10 & 11).

the union), pay for employees who have been temporarily assigned, overtime for hours worked in excess of a certain number in a particular day or hours worked in excess of forty in a given workweek.[13]   Only then can the Court understand how many hours Plaintiffs or each employee actually "worked" (as contrasted with how many hours for which employees were paid), and then determine whether and when each employee was entitled to a break, and, if so, the rates he or she should have been paid for working through her break and, finally, determine whether Defendants paid Sampson or each employee for all hours worked.  Such analysis requires interpretation of the CBAs.  *Wis. Cent. Ltd. v. Shannon*, 516 F. Supp. 2d 917, 924 (N.D. Ill. 2007) ("Determining whether Plaintiff's employees worked a particular number of hours and what pay they received is not a matter of simply looking at their pay stubs, but instead requires interpretation and application of various provisions contained in the CBAs."), *aff'd on other grounds*, 539 F.3d 751 (7th Cir. 2008).[14]

Plaintiffs' common law claims also require interpretation of the CBAs.  The Court must interpret the CBAs with respect to Plaintiffs' fraud, negligent misrepresentation and conversion claims because those claims depend on proof that Defendants breached those CBAs since, if Defendants complied with those CBAs, they misrepresented nothing and did not wrongly

---

[13]  *See* Dkt. 71 (Lee Dec. Ex. A at Art. 1, Art. 6, Sec. 1; Lee Dec. Ex. B at Art. I, Secs. 1-3, Art. VI, Art. XI, Secs. 2 & 4, Art. XII, Sec. 1, Art. XIII, Sec. 1, Art. XIV, Sec. 1; Lee Dec. Ex. C at Art. I, Art. IX, Sec. 11, Art. XI, Secs. 3 & 5, Art. XIII, Sec. 1, Art. XIV, Sec. 1, Art. XV, Sec. 1; Art. XXXVII); Dkt. 72 (Mangani Dec. Ex. A at Art. 1, Art. 6, Sec. 1; Mangani Dec. Ex. B at Secs. 1, 2.01,  3.03, 5.01, 5.07, 5.08, 6.03, 7.03, 7.16, 8.01, 10.03, 10.10; Mangani Dec. Ex. C at Art. I, Sec. 1, Art. V, Secs. 6 & 7, Art. VIIIA, Art. XI, Secs. 2, 4, & 5, Art. XIII, Art. XIV, Sec. 1, Art. XV, Sec. 1; Mangani Dec. Ex. D at Arts. 1, 9, 10 & 11); Dkt. 73 (Musselwhite Dec. Ex. A at Secs. 1, 2.01., 3.05, 5.02A, 5.02B, 6.02, 7.03 7.16, 8.01, & 10.08;  Musselwhite Dec. Ex. C at Art. I, Sec. 1, Art. VIII, Secs. 2 & 3, Art. IX, Sec. 1, Art. X, Sec. 1, Art. XII, Sec. 1 & Memorandum of Agreement, Sec. 3; Musselwhite Dec. Ex. D at Art. I, Sec. 1, Art. V, Secs. 6 & 7, Art. VIIIA, Art. XI, Secs. 2, 4, & 5, Art. XIII, Art. XIV, Sec. 1, Art. XV, Sec. 1); Dkt. 74 (Verdi Dec. Ex. A at Art. 1, Art. 6, Sec. 1; Verdi Dec. Ex. B at Art. I, Art. V, Sec. 6, Art. XI, Secs. 3, 4, & 5, Art. XIII, Art. XIV, Sec. 1, Art. XV, Sec. 1; Verdi Dec. Ex. C at Arts. 1, 9, 10 & 11).

[14]  For the same reasons that Plaintiffs' state common law claims do not diverge from the FLSA claims, Plaintiffs' NYLL claims are duplicative of and interfere with the enforcement of the FLSA claims and thus dismissal is warranted.  *Whalen v. J.P. Morgan Chase & Co.*, 569 F. Supp. 2d 327, 330 n.2 (W.D.N.Y. 2008), *rev'd on other grounds*, *Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529 (2d Cir. 2009).

"convert" Plaintiffs' wages. *Dougherty v. AT&T*, 902 F.2d 201, 204 (2d Cir. 1990) (fraud and negligent misrepresentation claims preempted by § 301 because "plaintiffs' state-law claims here are not independent of the collective bargaining agreement"); *Salamea v. Macy's East, Inc.*, 426 F. Supp. 2d 149, 153-54 (S.D.N.Y. 2006) (§ 301 preempted negligence claim).

Resolution of Plaintiffs' *quantum meruit* and unjust enrichment claims also requires analysis of the CBAs because these claims rest on the notion of a promise or implied contract, and the Court cannot imply a promise or contract where there is an express contract covering the same subject. *See Boccardi Capital Sys. v. D.E. Shaw Laminar Portfolios, L.L.C.*, 355 Fed. Appx. 516, 519 (2d Cir. 2009) (summary order) (quasi-contractual claim of unjust enrichment was precluded by existence of an express written agreement governing the subject matter at issue). Thus, the Court here cannot determine whether there is an express contract covering the same subject matter as any alleged implied contract without interpreting the CBAs. *See Cavallaro v. UMass Mem'l Health Care, Inc.*, No. 09-cv-40181, Dkt. 33, at *6-13 (D. Mass. filed July 2, 2010) (dismissing breach of contract, promissory estoppel, fraud, misrepresentation and wage claims). *See Pruell v. Caritas Christi*, 2010 U.S. Dist. LEXIS 101770, at *12 (regarding a complaint virtually identical to the SAC, holding that all of the state statutory and common law claims against hospital defendant and the individual defendants were preempted by Section 301 of the LMRA, denying plaintiffs' motion to remand, and dismissing the state law claims entirely and with prejudice). Thus, Plaintiffs' state law claims are preempted entirely and should be dismissed.

**B.      Plaintiffs' State Law Claims for Unionized and Non-unionized Employees Fail**

Should the Court find that any of Plaintiffs' state law claims are not preempted by Section 301 and *Garmon*, the claims nevertheless should be dismissed.  Plaintiffs still fail to plead viable state law claims for the following reasons.

**1.      Plaintiffs' State Law Claims Fail Because They Are Derivative and Duplicative of Plaintiffs' FLSA Claim and Interfere with the FLSA's Comprehensive Scheme**

First, as shown above, Plaintiffs have failed to state a viable FLSA claim, which is their sole remaining federal cause of action.  Given that they have failed to state a federal claim and that all of their state law claims are derivative of their overtime claim, the Court should once again decline supplemental jurisdiction.  28 U.S.C. § 1367(c)(3); *First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 182-83 (2d Cir. 2004); *Bhd. of Locomotive Eng'rs Div. 269 v. Long Island R.R.*, 85 F.3d 35, 29 (2d Cir. 1996) (declining to consider state law wage claim where the court dismissed the federal wage claim).

Further, any remaining state law claims are duplicative of and preempted by the FLSA and therefore should be dismissed on these grounds alone.  *See DeSilva*, 2011 WL 899296, at *26 (holding plaintiffs' state law claims are preempted by the FLSA and stating "It is clear from the Second Amended Complaint that, contrary to plaintiffs' contention, plaintiffs are using their state common law claims, in part, as a vehicle to enforce their FLSA right to overtime compensation for time worked in excess of forty hours per week").  To allow Plaintiffs to circumvent the remedial scheme contemplated by § 216 of the FLSA by bringing state claims based on the same alleged conduct, would thwart Congress's purpose in enacting the comprehensive statutory scheme.  Every single common law claim is derived from Plaintiffs' sole remaining FLSA claim for overtime.  As such, they are duplicative of Plaintiffs' federal

claim and should be dismissed.  *See Chen v. St. Beat Sportswear, Inc.*, 364 F. Supp. 2d 269, 293 (E.D.N.Y. 2005) (dismissing negligence causes of action "founded upon the same facts as and therefore duplicative of the FLSA claims"); *Lopez v. Flight Servs. & Sys., Inc.*, 2008 U.S. Dist. LEXIS 4744 (W.D.N.Y. Jan. 22, 2008) (dismissing fraud, breach of contract, and unjust enrichment claims as preempted by the FLSA); *Petras v. Johnson*, 1993 U.S. Dist. LEXIS 8464, at *8 (S.D.N.Y. June 16, 1992) (dismissing fraud claim alleging violation of the overtime laws as preempted by the FLSA).

      2.     <u>Plaintiffs Do Not Allege Viable Common Law Claims</u>

      a.     **Plaintiffs allege no facts to support their breach of contract claims**

The SAC asserts breach of an implied contract, breach of an unidentified express contract, and breach of the implied covenant of good faith and fair dealing.  These claims are not supported by factual allegations sufficient to meet the *Twombly/Iqbal* standard.  Plaintiffs do not allege any facts showing that they had any express or implied contract with Defendants and, instead, include a conclusory allegation that, "[b]y entering into an employment relationship, defendants and Plaintiff and Class Members entered into a contract for employment, including implied contracts and express contracts."  (SAC ¶ 132.)  Every employment relationship does not, of course, a contract make.  There are *still* no allegations describing the circumstances under which the contract allegedly was formed, the parties to this contract, who negotiated the alleged contract on behalf of the hospital(s) and when, whether the alleged contracts are individual agreements with Defendants[15] or some broader agreements,[16] whether the contract was verbal or written, or even the specific terms they claim were breached.

---

[15] Any such individualized agreement would require individualized proof and as such, would be inappropriate for class treatment.

Plaintiffs also fail to allege a factual basis for their implied contract claim.  While they assert that an implied contract arose from their "on-going dealings and course of conduct" with Defendants (SAC ¶ 138), they fail to describe that course of dealing or conduct, omitting any account of the type of conduct, the timing of the conduct, the resulting damage, or the individuals who allegedly engaged in the conduct at issue.  *Colodney v. Continuum Health Partners, Inc.*, 2004 U.S. Dist. LEXIS 6606, at *19 (S.D.N.Y. Apr. 15, 2004) (dismissing claim for break of implied contract where the "complaint fail[ed] to plead sufficient facts to identify any implied contract of employment"); *Abbasi v. Herzfeld & Rubin, P.C.*, 1995 U.S. Dist. LEXIS 6629, at *17 (S.D.N.Y. May 17, 1995) ("Since plaintiff has not pleaded facts sufficient to allege the existence of an implied contract of employment, this [breach of contract] claim must be dismissed."); *see also JP Morgan Chase v. J.H. Elec. of NY, Inc.,* 69 A.D.3d 802, 803 (2d Dep't 2010).

Likewise, Plaintiffs fail to set forth a factual basis for their breach of the covenant of good faith and fair dealing claim.  First, because there is no valid express or implied-in-fact agreement (outside the CBA), an implied covenant claim cannot lie.  *Fasolino Foods Co. v. Banca Nazionale Del Lavoro*, 961 F.2d 1052, 1056 (2d Cir. 1992) (denying claims for implied covenant of good faith regarding alleged express and implied contracts because "parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract") (quotations omitted); *Jordan v. Verizon Corp.*, 2008 WL 5209989, at *7 (S.D.N.Y. Dec. 10, 2008) ("The duty of good faith is thus an implied contractual term, and breach of that duty is merely a breach of the underlying contract") (quotations

---

[16] To the extent Plaintiffs contend that the purported contract exists separate and distinct from the various collective bargaining agreements in place at Defendants' facilities, they fail to so allege.  To the extent that their contract claims do refer to such collective bargaining agreements, those claims are preempted, as discussed above.

omitted).  Moreover, to the extent Plaintiffs' good faith and fair dealing claim rests on the alleged express or implied contracts, the SAC does nothing more than re-allege the same paltry and conclusory allegations set forth in the companion claims for breach of contract.  As such, the Court should dismiss the good faith and fair dealing claim as superfluous.  *Id.* ("[R]aising both claims in a single complaint is redundant, and courts confronted with such complaints . . . regularly dismiss any freestanding claim for breach of the covenant of fair dealing").  And, by asserting legal conclusions masquerading as factual allegations, Plaintiffs have failed to plead facts sufficient to give rise to a plausible inference that a contract existed, outside of the CBA, much less that Defendants breached such an agreement or the implied covenant of good faith and fair dealing.

Finally, Plaintiffs' contract claims fails insofar as the alleged contracts appear to be nothing more than a promise by Defendants to comply with the law.  Plaintiffs' allege that Defendants entered into "express and/or implied contracts" and that each contract "included defendants' explicit promise to compensate Plaintiffs and Class Members for 'all hours worked' by them during their employment period."  SAC ¶¶ 132-43.  They also allege that Defendants "failed to act in good faith and breached the express and/or implied contract terms."  *Id.* ¶ 143.  A pre-existing legal duty, however, cannot form the basis of a contract because, as a matter of law, such a contract lacks consideration.  *Wyly v. CA, Inc.*, 2009 U.S. Dist. LEXIS 90037, at *22 (E.D.N.Y. Sept. 2, 2009).

### b.  Plaintiffs fail to allege facts to support their *quantum meruit* and unjust enrichment claims

Plaintiffs also assert *quantum meruit* and unjust enrichment claims, maintaining that they are owed money under equity principles.  As a threshold matter, Plaintiffs cannot obtain an equitable remedy because they have an adequate remedy at law in the form of money damages.

*Bongat v. Fairview Nursing Care Ctr., Inc.*, 341 F. Supp. 2d 181, 188-89 (E.D.N.Y. 2004) (dismissing *quantum meruit* and unjust enrichment claims because monetary damages existed under the FLSA).[17]  Thus, their claims should be dismissed for this reason alone.

Further, Plaintiffs failed to plead a plausible *quantum meruit* claim, which requires proof that they conferred a measurable benefit upon Defendants, and that Defendants accepted the benefit amid circumstances in which a reasonable person would have expected to compensate them.[18]  *Id.* at 188.  Instead, Plaintiffs plead these equitable doctrines only in the most general and conclusory terms, merely reciting the legal elements of the claim: "Defendants have received financial gain under such circumstances that, in equity and good conscience, defendants ought not to be allowed to profit."  SAC ¶ 153.  The mere fact that the [plaintiffs'] activities bestowed a benefit on [defendants] is insufficient to establish a cause of action for unjust enrichment." *Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*, 2003 U.S. Dist. LEXIS 23062, at *17 (S.D.N.Y. Dec. 22, 2003).  Indeed, while Plaintiffs base their equitable claims on their assertions that Defendants failed to pay their wages, those allegations are themselves insufficiently pled as described above.  The Court should therefore dismiss Plaintiffs' claims for *quantum meruit* and unjust enrichment.

---

[17] "To prevail on a claim of unjust enrichment, a plaintiff must establish that: (1) the defendant was enriched; (2) the enrichment was at plaintiff's expense; and (3) the circumstances are such that equity and good conscience require restitution."  *Bongat*, 341 F. Supp. 2d at 188.

[18] Under New York law, a *quantum meruit* claim is a claim in quasi-contract.  *See Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 69 (2d Cir. 2000).  Neither *quantum meruit* nor implied contract can be invoked as a cause of action where an express contract governs the parties' relations.  *See Bongat*, 341 F. Supp. 2d at 188 (dismissing unjust enrichment and *quantum meruit* claims because FLSA and breach of contract claims provided an adequate remedy at law).  Here, Plaintiffs specifically assert that their employment relationship with Defendants is governed by an express contract.  (SAC ¶¶ 132-137.)

c.   **Plaintiffs' fraud and negligent misrepresentation claims fail to satisfy *Iqbal* and the heightened standard under Rule 9**

Plaintiffs' fraud and negligent misrepresentation claims should be dismissed because these claims are not plausible and, in any event, fail to satisfy Fed. R. Civ. P. 9(b).  Under New York law, statements regarding future conditions or occurrences are not actionable as fraud "unless there existed an intent not to perform at the time the promise was made." *Comprehensive Habilitation Servs., Inc. v. Commerce Funding Corp.*, 2009 WL 935665, at *21 (S.D.N.Y. Apr. 7, 2009).  Plaintiffs have not alleged that any employee of Defendant made any statement that would meet this requirement.  Thus, their fraud claim should be dismissed for this reason alone.  *Haggerty v. Ciarelli & Dempsey*, 2010 WL 1170352, at *2 (2d Cir. Mar. 25, 2010) (summary order) (intent is an element of common law fraud); *see also Iqbal*, 129 S. Ct. at 1952 (complaint fails to state a claim for such a cause of action if it does not "contain any factual allegation sufficient to plausibly suggest [the alleged] state of mind").  Where multiple defendants are alleged to have committed the fraud, the complaint must specifically allege the fraud perpetrated ***by each defendant*** in order to inform each defendant of the nature of its alleged participation in the fraud.  *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993).[19]

In addition, because the corporate Defendants are not natural persons, they can only be held liable for fraud where an agent responsible for the tortious action had the requisite state of mind.  *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.*, 531 F.3d 190, 195 (2d Cir. 2008) ("To prove liability against a corporation . . . a plaintiff must prove that an

---

[19] "[A] cause of action for fraud does not arise where the only fraud alleged merely relates to a party's alleged intent to breach a contractual obligation." *767 Third Ave., LLC v. Greble & Finger, LLP*, 8 A.D.3d 75, 76 (1st Dep't 2004) (affirming dismissal of fraud cause of action); *Angel v. Bank of Tokyo-Mitsubishi, Ltd.*, 39 A.D.3d 368, 369 (1st Dep't 2007) ("[P]laintiff cannot transform a breach of contract claim into a fraud claim in this manner.").

agent of the corporation committed a culpable act with the requisite scienter, and that the act

(and accompanying mental state) are attributable to the corporation.").  Here, Plaintiffs make

numerous naked assertions about the defendant health care providers.  For example, they allege

legal conclusions that Defendants' policies "involve an employer intentionally misleading and

deceiving employees about their wages," SAC ¶ 131, and "at all times, defendants intended to

violate applicable state laws by failing to pay Plaintiffs and Class Members for all the time

worked,"  (SAC ¶ 113), and that Defendants "affirmatively misled Plaintiffs and Class Members

regarding the fact that defendants failed to pay . . . for all hours worked."  SAC ¶ 161.  Yet they

do not include a single fact to support these bare declarations, and of course corporations lack

mental states.  The absence of such allegations is fatal to Plaintiffs' fraud claim.[20]

Similarly, Plaintiffs' negligent misrepresentation claim should be dismissed.  To establish

negligent misrepresentation, Plaintiffs had to allege:  (1) a special relationship between plaintiff

and defendant that creates a duty for defendant to impart correct information to plaintiff; (2) the

information given was false; and (3) that the plaintiff reasonably relied upon the information

given by defendant.  *Hudson River Club v. Consol. Edison Co.*, 275 A.D.2d 218 (1st Dep't

2000).  They failed to allege the existence of a "special relationship," which required allegations

that (1) the person making the representation held or appeared to hold unique or special expertise

or (2) a special relationship of trust or confidence existed between the parties.  *Suez Equity*

*Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 103 (2d Cir. 2001).  Mere allegations of

an employer-employee relationship do not satisfy the special relationship element.  *Riel v.*

---

[20] Plaintiffs' conversion claim also fails because conversion cannot be established where the property allegedly converted consists of funds that are owed pursuant to a contract.  *Soviero v. Carroll Group Int'l., Inc*., 27 A.D.3d 276, 277 (1st Dep't 2006) (denying conversion claim for unpaid wages in the form of commissions because "in order to assert a cause of action for conversion . . . a plaintiff must have exercised ownership, possession or control of the property in the first place").

*Morgan Stanley*, 2007 U.S. Dist. LEXIS 11153, at *36-37 (S.D.N.Y. Feb. 16, 2007), *aff'd*, 299 Fed. Appx. 91 (2d Cir. 2008).

Plaintiffs also have not pled sufficient facts to show reasonable reliance on any alleged representations.  Instead, they parrot the elements of their negligent misrepresentation claim with the hollow assertion that "Plaintiffs and Class Members allege that defendants are liable for having engaged in . . . negligent misrepresentation in the course of maintaining their Unpaid Work Policies in their dealings with Plaintiffs and Class Members" (SAC ¶ 158) and that "Plaintiff and Class Members relied on the misrepresentations" and "[t]his reliance was reasonable, as Plaintiffs and Class Members had every right to believe that defendants would abide by their obligations pursuant to applicable law."  (SAC ¶ 159.)  They do not allege who made the alleged representations, to whom they were made, or facts necessary to show that reliance upon the statements may have been reasonable.  *Hydro Investors, Inc. v. Trafalgar Power, Inc.*, 227 F.3d 8, 20 (2d Cir. 2000).  Given the conclusory nature of their allegations, their negligent misrepresentation claim fails to meet the *Twombly/Iqbal* standard.

Moreover, Plaintiffs' fraud and negligent misrepresentation claims fall dramatically short of satisfying Rule 9(b), which requires that "a party must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  The particularity requirements of Rule 9(b) apply to negligent misrepresentation claims requiring plaintiffs to identify "the time, place, speaker, and content of the alleged statements and explain why the statements were fraudulent." *Simon v. Castello*, 172 F.R.D. 103, 105 (S.D.N.Y. 1997).  Rule 9(b) also requires a plaintiff to make specific and separate allegations against each defendant.  *Mills*, 12 F.3d at 1175 ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'").

Plaintiffs have not come close to satisfying their Rule 9(b) obligations.  Their SAC fails to identify the specific content of the representations alleged to be false, who committed the alleged fraud or misrepresentation, when it happened, or where it happened.  Plaintiffs fail to make specific and separate allegations against any defendant in this case.  Instead, these amended fraud and negligent misrepresentation allegations add nothing to the dismissed FAC, and are exactly the sort of bare, conclusory allegations that the federal courts routinely reject.[21]

### d.    Estoppel is not a cause of action

"There is no distinct equitable estoppel cause of action under New York law."  *Nakahata*, 2011 WL 321186, at *6; *Gaind v. Pierot*, 2006 U.S. Dist. LEXIS 14963, at *22-23 (S.D.N.Y. Mar. 30, 2006).  Estoppel cannot be used offensively, and cannot give rise to a cause of action. *Parr v. Ronkonkoma Realty Venture I, LLC*, 65 A.D.3d 1199, 1201 (2d Dep't 2009) ("[T]he plaintiff acknowledges that equitable estoppel is not a cause of action for affirmative relief, but rather is a defense.").[22]

### C.    Plaintiffs' Claims Against Individual Defendants Remain Insufficiently Pled and Should Be Dismissed

Plaintiffs' claims against the two individual defendants also are insufficient to survive a motion to dismiss.  Plaintiffs fail to plead plausible allegations demonstrating that these individuals were responsible for the creation and maintenance of an *unlawful* policy.  The SAC surmises that these individuals are liable to Plaintiffs and the class they purport to represent because these individuals – apparently by virtue of their job titles alone – allegedly have "the

---

[21] Even where the pleadings concern "conditions of a person's mind" that may be alleged "generally" pursuant to Rule 9(b), a plaintiff may not "plead the bare elements of his cause of action, affix the label 'general allegation' and expect his complaint to survive a motion to dismiss."  *Iqbal,* 129 S. Ct. at 1954.

[22] Plaintiffs also failed to allege facts to support reasonable reliance with respect to their estoppel claim.  *Rich v. Assoc. Brands, Inc.*, 379 Fed. Appx. 78, 81 (2d Cir. 2010) (summary order) (citing *Kavowras v. N.Y. Times Co.*, 328 F.3d 50, 56 (2d Cir. 2003)), *cert. denied*, 2011 WL 941021 (U.S. Mar. 21, 2011).  Their failure to do so independently warrants dismissal of the estoppel "claim."

authority to . . . make decisions that concern defendants' operations and significant functions, including functions related to employment, human resources, training and payroll," as well as authority to make decisions that concern the policies defendants adopt and the implementation of those policies. SAC ¶¶ 39-60. Plaintiffs disingenuously reason that because these individuals have "authority" to conduct these activities, they must have been "actively involved" in the decisions at issue in this case or with Schulman and Hi-Tech or otherwise. SAC ¶¶ 48, 54, 56, 58, 59. It is also insufficient to merely allege that they should have known the consequences of potentially liability-producing policies. These layered, conclusory allegations are not entitled to a presumption of truth, and the claims against the individual defendants cannot survive. *See Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 555.

In *Iqbal*, the Supreme Court dismissed claims against the government officials individually named in a complaint because the pleadings contained insufficient facts to tie them to the alleged wrongdoing attributed to the entities they oversaw. *See* 129 S. Ct. at 1952. Here, Plaintiffs similarly identify no facts that could tie the individual defendants to any alleged wrongdoing by Defendants; instead, they merely rely on their titles to infer culpability. Plaintiffs' counsel has unsuccessfully plied this tactic of making prolix but substanceless allegations against a corporate defendant's senior officers before.[23] *See Tracy v. NVR, Inc.*, 2009 WL 3153150, at *5 (W.D.N.Y. Sept. 30, 2009) (citing *Iqbal* and denying motion to amend complaint to add individual defendants as futile because "upon careful analysis, the complaint asserts little more than because [one] was Chairman and [another] was President of [the corporate defendant], then each must have had authority to take the actions that comprise the

---

[23] Indeed, Plaintiffs' factual allegations regarding the individual defendants in this action bear a striking resemblance to the factual allegations rejected as conclusory in the *Tracy* case, which concerns individuals working in an entirely different industry. *See Tracy*, 2009 WL 3153150, at *5-6.

[test for employer status under the FLSA], and that because each had the authority to take those actions, then each must have in fact taken those actions"), *aff'd*, 667 F. Supp. 2d 244 (W.D.N.Y. 2009).[24]  There is no reason for the result to be different here.  Plaintiffs make no allegation regarding how purportedly integrated labor relations and human resources functions were organized and controlled, or the roles of these individual Defendants in that process, they do not specifically allege facts regarding what system-wide policies were maintained and by whom, or how they impact Plaintiffs' claims.  Because Plaintiffs have not identified any conduct by either of these individuals that tie them to the issues raised in the Complaint, as *Iqbal* requires, the Court should dismiss the individual defendants from this action.

## V.  THE COURT SHOULD DISMISS PLAINTIFFS' SAC WITH PREJUDICE AND SHOULD HOLD PLAINTIFFS AND THEIR COUNSEL ACCOUNTABLE FOR SQUANDERING PUBLIC AND PRIVATE RESOURCES

Plaintiffs have had more than sufficient opportunity to cure the deficiencies of their claims and have failed to do so.  Defendants filed their original motion to dismiss pointing to many of the same pleading inadequacies and substantive deficiencies as are identified here, and after that motion was granted, Plaintiffs were permitted to amend their FAC.  Plaintiffs squandered that opportunity, and instead of making an effort to cure the substantial defects identified in Defendants' motion to dismiss and the Court's Order, Plaintiffs filed what is functionally the same form pleading, with a few additional but insufficient factual allegations.  In such circumstances, dismissal with prejudice is appropriate.  *See Bemben*, 2004 WL 1052973, at *7 (dismissing claims with prejudice, where plaintiff "was given the opportunity to plead the

---

[24] In *Tracy*, the District Court also rejected the plaintiffs' attempt to pursue claims against a senior human resources officer as an individual defendant.  The court held that the plaintiffs' "boilerplate allegations that [the officer met] the various prongs of the [FLSA's] economic reality test stated solely upon information and belief and without any supporting details" were "insufficient to raise plaintiffs' right to relief 'above a speculative level' with respect to that individual's liability as an employer under the FLSA."  667 F. Supp. 2d at 247.

details of any alleged [claim] and has nonetheless failed to do so"); *Coakley v. Jaffe*, 49 F. Supp. 2d 615, 629 n.14 (S.D.N.Y. 1999) ("Because the general deficiencies in plaintiffs' pleadings were called to their attention at the time their original Complaint was dismissed without prejudice, their failure to cure most of these deficiencies in their Amended Complaint, coupled with the futility of granting them leave to replead ... more than warrants dismissal with prejudice."), *aff'd*, 234 F.3d 1261 (2d Cir. 2000); *Curran v. FedEx Ground Package Sys., Inc.*, 593 F. Supp. 2d 341, 345 (D. Mass. 2009) ("[T]he plaintiffs have known of the defendants' objection to the adequacy of the pleading for several months, but have made no attempt to allege additional facts to satisfy the *Twombly* standard.  If the plaintiffs have information they could allege to satisfy the standard, but have held it back, they are guilty of undue delay.  If they do not have the information, giving them leave to amend is futile.  In either case, leave to amend should be denied.").

In addition, the Court should require Plaintiffs and their counsel to pay Defendants' reasonable costs, including attorneys' fees, for bringing the present motion.  Plaintiffs have imposed an unconscionable burden on institutions engaged in the care of the sick and diverted those institutions' severely limited resources to respond to yet another class action complaint premised on nothing but Plaintiffs' counsel's suppositions  By failing to comply with the Court's Order and continuing to plead claims that the Court already has dismissed, with prejudice, and by failing to make any effort to substantiate their claims in this matter, Plaintiffs have shown an intransigent refusal to accept the pleading standards imposed by the Supreme Court in *Twombly* and applied by this Court in its February 8, 2011 Order.  Under these circumstances, the Court should hold Plaintiffs and their counsel accountable for the considerable resources they have wasted.

## VI.     THE  COURT SHOULD STAY DISCOVERY  DURING THE PENDENCY OF THIS MOTION

In light of the well-settled case law supporting the grounds for Defendants' Fed. R. Civ. P. 12 (b)(6) motion, and the burden and expense associated with discovery as to Plaintiffs' claims, Defendants request that the Court exercise its discretion and stay discovery with respect to these claims pending resolution of the Fed. R. Civ. P. 12(b)(6) motion.  Fed. R. Civ. P. 26(c); *see*, *e.g.*, *Transunion Corp. v. PepsiCo, Inc.*, 811 F.2d 127, 130 (2d Cir. 19871) (granting motion to stay discovery pending determination on motion to dismiss for *forum non conveniens*); *Integrated Sys. & Power, Inc., v. Honeywell Int'l, Inc.*, 2009 WL 2777076 (S.D.N.Y. Sept. 1, 2009); *Ross v. Bank of Am., N.A. (USA)*, 2006 WL 36909 (S.D.N.Y. Jan. 6, 2006); *Temple of Lost Sheep, Inc. v. Abrams*, 1990 WL 156139, at *4 (E.D.N.Y. Sept. 26, 1990) (staying discovery pending motion to dismiss).  Defendants also request an order from the Court precluding Plaintiffs from filing a motion for expedited notice pending the Court's decision on the instant motion to dismiss to avoid the same dismissal for mootness that this Court ordered already.  *See Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 253 (S.D.N.Y. 1997) ("The Court will address defendant's [dispositive] motion first. Obviously, if the Court deems this action ripe for dismissal, it would be futile to send class notice to other potential plaintiffs, and plaintiffs' motion would be moot.").

<u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion to Dismiss should be granted in its entirety, fees and costs granted to Defendants, and the case should be closed, pursuant to the Order.

Dated:  New York, New York                    Respectfully submitted,
            April 14, 2011

                                                          SEYFARTH SHAW LLP

                                                          By <u>s/ Lorie E. Almon</u>
                                                          Lorie E. Almon
                                                          Mary E. Ahrens
                                                          620 Eighth Avenue, 32nd Floor
                                                          New York, New York 10018
                                                          (212) 218-5500

                                                          Kristin G. McGurn
                                                          SEYFARTH SHAW LLP
                                                          Two Seaport Lane, Suite 300
                                                          Boston, Massachusetts 02210
                                                          (617) 946-4800
                                                          *Attorneys for Defendants*