UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

NELLIE SAMPSON, *on behalf of herself and all other employees similarly situated,*

Plaintiff,

v.

MEDISYS HEALTH NETWORK INC., THE JAMAICA HOSPITAL, THE BROOKDALE HOSPITAL MEDICAL CENTER, FLUSHING HOSPITAL AND MEDICAL CENTER, PENINSULA HOSPITAL CENTER, DAVID P. ROSEN and MAX SCLAIR,

Defendants.

CV-10-1342 (SJF-ARL)

---

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT AND TO STAY

Dated: New York, New York
          June 14, 2011

Lorie E. Almon
Mary E. Ahrens
SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York 10018
(212) 218-5500

Kristin G. McGurn
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 300
Boston, Massachusetts 02210
(617) 946-4800

Attorneys for Defendants

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I.      The Opposition Reveals Plaintiffs' Unabashed Flouting of This Court's Order ................3

II.     Plaintiffs Fail to Plead Facts Showing That The Defendants Are Their Employers
        or That Plaintiffs Have Standing to Sue Any Defendants ....................................................3

III.    Plaintiffs Failed to Plead Viable Claims Against the Individual Defendants ....................5

IV.     Plaintiffs Fail to Plead Plausible Wage Claims Under the FLSA ........................................6

V.      The Court's Order on Section 301 Warrants Preclusion of the FLSA Claims ................10

VI.     Plaintiffs' State Law Claims Should Be Dismissed ............................................................12

        A.      Plaintiffs' NYLL Claims Are Preempted by Section 301 of the LMRA ..............12

        B.      Plaintiffs' Remaining Common Law Claims Are Also Preempted by
                Section 301 ...............................................................................................................15

        C.      The Court Should Disregard Plaintiffs' Misstatements of Law ...........................15

        D.      Plaintiffs' State Law Claims Are Duplicative of, Interferes with, and Are
                Precluded by the FLSA ...........................................................................................16

        E.      Plaintiffs Do Not Allege Viable Common Law Claims .......................................17

                1.      Plaintiffs Fail to Plead Plausible Contract Claims ....................................17

                2.      Plaintiffs Neither Plead Plausible Fraud or Misrepresentation
                        Claims Nor Satisfy Rule 9(b)'s Heightened Standard ..............................19

                3.      Plaintiffs Fail to Plead Plausible Claims for Unjust Enrichment and
                        Quantum Meruit ........................................................................................19

                4.      Plaintiffs Fail to Plead a Plausible Claim for Conversion .........................20

                5.      Plaintiffs Fail to Plead a Plausible Claim for Estoppel ............................20

VII.    Plaintiffs Fail to Adequately Plead Class Allegations ......................................................21

VIII.   The SAC Should Be Dismissed with Prejudice .................................................................22

IX.     The Court Should Issue a Stay During the Pendency of the Motion ...............................22

CONCLUSION .......................................................................................................................23

## TABLE OF AUTHORITIES

**Page(s)**

C<small>ASES</small>

*14 Penn Plaza LLC v. Pyett,*
   129 S. Ct. 1456 (2009) ........................................................................................10, 11

*Adames v. Exec. Airlines, Inc.,*
   258 F.3d 7 (1st Cir. 2001) ....................................................................................13, 14

*Ashcroft v. Iqbal,*
   129 S. Ct. 1937 (2009) ....................................................................................1, 5, 6, 19

*Astra Media Group, LLC v. Clear Channel Taxi Media, LLC,*
   2011 U.S. App. LEXIS 2949 (2d Cir. Feb. 15, 2011) ...........................................6

*Barfield v. N.Y. City Health & Hosps. Corp.,*
   537 F.3d 132 (2d Cir. 2008) ...................................................................................5

*Barrentine v. Arkansas-Best Freight Sys., Inc.,*
   450 U.S. 728 (1981) ...........................................................................................11, 12

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) .......................................................................................20, 21, 23

*Berger v. Cleveland Clinic Found.,*
   2007 U.S. Dist. LEXIS 76593 (N.D. Ohio Sept. 29, 2007) ...................................8

*Bravo v. Eastpoint Int'l, Inc.,*
   2001 WL 314622 (S.D.N.Y. Mar. 30, 2001) ........................................................6

*Castiglione v. Papa,*
   2011 U.S. App. LEXIS 10517 (2d Cir. May 23, 2011) .........................................6

*Cavallaro v. UMass Mem'l Health Care Inc.,*
   No. 09-40181, Dkt. 106 (D. Mass. filed June 8, 2011)................................1, 4, 5, 6

*Cavallaro v. UMass Mem'l Health Care Inc.,*
   2010 WL 3609535 (D. Mass July 2, 2010)...........................................................6

*Cavallaro v. UMass Mem'l Health Care Inc.,*
   No. 09-40181, Dkt. No. 33 (D. Mass. filed July 2, 2010) .....................................6

*Chao v. Gotham Registry, Inc.,*
   514 F.3d 280 (2d Cir. 2008)...................................................................................7

*Colodney v. Continuum Health Partners, Inc.*,
    2004 U.S. Dist. LEXIS 6606 (S.D.N.Y. 2004) ....................................................................18

*Cox v. Allstate Ins. Co.*,
    2009 WL 2591673 (W.D. Okla. 2009) ................................................................................21

*Cuoco v. Moritsugu*,
    222 F.3d 99 (2d Cir. 2000)..................................................................................................22

*DeSilva v. N. Shore-Long Isl. Jewish Health Sys.*,
    2011 WL 899296 (E.D.N.Y. Mar. 16, 2011) ....................................................6, 16, 17, 18

*Edwards v. Great N. Ins. Co.*,
    2006 U.S. Dist. LEXIS 50683 (E.D.N.Y. July 18, 2006) ...................................................18

*Ellis v. Harpercollins Publ'rs, Inc.*,
    2000 WL 802900 (S.D.N.Y. June 21, 2000) .....................................................................14

*Fasolino Foods Co. v. Banca Nazionale Del Lavoro*,
    961 F.2d 1052 (2d Cir. 1992)..............................................................................................18

*Fellows v. CitiMortg., Inc.*,
    710 F. Supp. 2d 385 (S.D.N.Y. 2010)................................................................................18

*Forman v. Davis*,
    371 U.S. 178 (1962)............................................................................................................22

*Forrester v. Roth's I.G.A. Foodliner, Inc.*,
    646 F.2d 413 (9th Cir. 1981) ................................................................................................8

*Frye v. Baptist Mem'l Hosp., Inc.*,
    2010 WL 3862591 (W.D. Tenn. Sept. 27, 2010)................................................................9

*Gaind v. Pierot*,
    2006 U.S. Dist. LEXIS 14963 (S.D.N.Y. Mar. 30, 2006) ..................................................21

*Gordon v. Kaleida Health*,
    2008 U.S. Dist. LEXIS 96144 (W.D.N.Y. Nov. 25, 2008) .................................................11

*Gould Paper Corp. v. Madisen Corp.*,
    614 F. Supp. 2d 485 (S.D.N.Y. 2009)................................................................................20

*Gross v Empire Healthchoice Assurance, Inc.*,
    847 N.Y.S.2d 896, 16 Misc.3d 1112A (Sup. Ct. N.Y. County 2007) ...................................18

*Hart v. Rick's Cabaret Int'l Inc.*,
    2010 U.S. Dist. LEXIS 137129 (S.D.N.Y. Dec. 17, 2010) ..................................................8

*Hertz v. Woodbury County*,
566 F.3d 775 (8th Cir. 2009) ................................................................7

*Hinterberger v. Catholic Health*,
2008 U.S. Dist. LEXIS 96105 (W.D.N.Y. Nov. 24, 2008) .......................11

*Hodczak v. Latrobe Specialty Steel Co.*,
2009 WL 911311 (W.D. Pa. Mar. 31, 2009) ...........................................21

*Holzapfel v. Town of Newburgh*,
145 F.3d 516 (2d Cir. 1998).................................................................8

*Hoops v. Keyspan Energy*,
2011 U.S. Dist. LEXIS 23117 (E.D.N.Y. Mar. 8, 2011) .........................12

*ICD Holdings S.A. v. Frankel*,
976 F. Supp. 234 (S.D.N.Y. 1997) .......................................................19

*Kosakow v. New Rochelle Radiology Assocs.*,
274 F.3d 706 (2d Cir. 2011).............................................................7, 8

*Krichman v. JP Morgan*,
2008 WL 5148769 (S.D.N.Y. Dec. 8, 2008) ..........................................18

*Kuebel v. Black & Decker Inc.*,
2011 U.S. App. LEXIS 9448 (2d Cir. May 5, 2011) .................................7

*Landry v. Peter Pan Bus Lines, Inc.*,
No. 09-11012, Dkt. 18 (D. Mass. filed Nov. 20, 2009) .......................7, 22

*Lavian*,
884 F. Supp. at 675 ...........................................................................19

*Leahy v. City of Chicago, Illinois*,
96 F.3d 228 (7th Cir. 1996) ................................................................11

*LeTouzel v. Kodak*,
2006 WL 1455478 (W.D.N.Y. May 25, 2006)........................................18

*Levy v. Verizon Info. Servs.*,
498 F. Supp. 2d 586 (E.D.N.Y. 2007) ..................................................14

*Lifrak v. N.Y. City Council*,
389 F. Supp. 2d 500 (S.D.N.Y. 2005)....................................................4

*Lingle v. Norge Div. of Magic Chef*,
486 U.S. 399 (1988).....................................................................12, 13

*Livadas v. Bradshaw*,
   512 U.S. 107 (1994) ..................................................................................................12, 14

*Lopez v. Flight Services & Syst., Inc.*,
   2008 WL 203028, at *7 (W.D.N.Y. Jan. 23, 2008) ................................................17

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ....................................................................................................4

*Manning v. Boston Med. Ctr. Corp.*,
   2011 U.S. Dist. LEXIS 29165 (D. Mass. Mar. 10, 2011) ......................................15

*Manning v. Boston Med. Ctr. Corp.*,
   2011 WL 796505 (D. Mass. Feb. 28, 2011) .............................................................6

*Martin v. Lake County Sewer Co., Inc.*,
   269 F.3d 673 (6th Cir. 2001) ..................................................................................11

*Md. Cas. Co. v. W.R. Grace & Co.*,
   218 F.3d 204, 212 (2d Cir. 2000)............................................................................20

*Nakahata v. N.Y.-Presbyterian Healthcare Sys.*,
   2011 WL 321186 (S.D.N.Y. Jan. 28, 2011) ..................................................... *passim*

*Nicholas v. CMRE Fin. Servs., Inc.*,
   2009 WL 1652275 (D.N.J. June 11, 2009) ..............................................................21

*Nichols v. Mahoney*,
   608 F. Supp. 2d 526 (S.D.N.Y. 2009)........................................................................9

*O'Shea v. Littleton*,
   414 U.S. 488 (1974)......................................................................................................4

*Pereira v. United Jersey Bank, N.A.*,
   201 B.R. 644 (S.D.N.Y. 1996)..................................................................................20

*Perez v. Jasper Trading, Inc.*,
   2007 WL 4441062 (E.D.N.Y. Dec. 17, 2007) ........................................................17

*Pettis Moving Co., Inc. v. Roberts*,
   784 F.2d 439 (2nd Cir. 1986)....................................................................................17

*Port Wash. Teachers' Ass'n v. Bd. of Educ.*,
   478 F.3d 494 (2d Cir. 2007)........................................................................................4

*Pruell v. Caritas Christi*,
   2010 WL 3789318 (D. Mass. Sept. 27, 2010) ......................................................6, 8

*Pruell v. Caritas Christi*,
    2010 U.S. Dist. LEXIS 101770 (D. Mass. Sept. 27, 2010) .............................................14, 15

*R&R Rec. Prods., Inc. v. Joan Cook, Inc.*,
    1992 U.S. Dist. LEXIS 5176 (S.D.N.Y. Apr. 14, 1992)......................................................20

*Rabin v. MONY Life Ins. Co.*,
    387 Fed. Appx. 36 (2d Cir. 2010) ........................................................................................20

*Reich v. S. New Eng. Telecomm. Corp.*,
    121 F.3d 58 (2d Cir. 1997)....................................................................................................10

*Reprosystem, B.V. v. SCM Corp.*,
    727 F.2d 257 (2d Cir. 1984)..................................................................................................20

*Ruotolo v. City of N.Y.*,
    514 F.3d 184 (2d Cir 1998)...................................................................................................22

*Sirohi v. Tr. of Columbia Univ.*,
    1988 WL 642463 (2d Cir. 1998)...........................................................................................18

*Smith v. Lyons, Doughty & Veldhuius, P.C.*,
    2008 WL 2885887 (D.N.J. July 23, 2008)...........................................................................21

*Sosna v. Iowa*,
    419 U.S. 393 (1975)................................................................................................................4

*Teamsters Allied Benefit Funds v. McGraw-Hill Cos.*,
    2010 U.S. Dist. LEXIS 23052 (S.D.N.Y. Mar. 10, 2010) ...................................................19

*Tracy v. NVR, Inc.*,
    667 F. Supp. 2d 244 (W.D.N.Y. 2009) ..................................................................................6

*Tracy v. NVR, Inc.*,
    2009 WL 3153150, at *5 (W.D.N.Y. Sept. 30, 2009) ...........................................................5

*Tylicki v. Schwartz*,
    401 Fed. Appx. 603 (2d Cir. 2010)......................................................................................22

*Vadino v. A. Valey Engineers*,
    903 F.2d 253 (3d Cir. 1990).................................................................................................11

*Villegas v. J.P. Morgan Chase & Co.*,
    2009 WL 605833 (N.D. Cal. Mar. 9, 2009)...........................................................................9

*Vineole v. Countrywide*,
    571 F.3d 935 (9th Cor. 2009)...............................................................................................18

*Warth v. Seldin,*
    422 U.S. 490 (1975)..................................................................................................4

*Webb v. Robert Lewis Rosen Assocs.,*
    2004 U.S. Dist. LEXIS 12024 (S.D.N.Y. June 29, 2004).......................................20

*White v. Wash. Gas,*
    2005 U.S. Dist. LEXIS 3461 (D. Md. Mar. 4, 2005)................................................8

*Wolman v. Catholic Health Sys. of Long Isl.,*
    No. 10-cv-1326, Dkt. 182 (E.D.N.Y. filed May 5, 2011)....................................1, 9

*Wolman v. Catholic Health Sys. of Long Isl.,*
    No. 10-cv-1326, Dkt. 164 (E.D.N.Y. filed December 30, 2010)...............................6

*Wood v. Mid-Am. Mgmt. Corp.,*
    192 Fed. Appx. 378 (6th Cir. 2006)........................................................................8

*Xue Lian Lin v. Comprehensive Health Mgmt., Inc.,*
    2009 WL 976835 (S.D.N.Y. Apr. 9, 2009)..............................................................6

*Zhong v. August August Corp.,*
    498 F. Supp. 2d 625 (S.D.N.Y. 2007)................................................................8, 21

*Zivali v. AT&T Mobility, LLC,*
    2011 WL 1815391 (S.D.N.Y. May 12, 2011) ........................................................2

## STATUTES

29 C.F.R. § 785.27 ...................................................................................................10

29 C.F.R. § 785.30 ...................................................................................................10

Plaintiffs' Opposition mischaracterizes this Court's February 8, 2011 Order ("Order") in an attempt to excuse their decision not to comply with it or cure their pleadings, and it gives no basis for permitting the Second Amended Complaint ("SAC") to stand.  Plaintiffs continue to assert essentially the same conclusory paragraphs as the basis for their statutory and duplicative common law claims – and describe them in the Opposition as new theories for recovery because their original theories faltered – but Plaintiffs do not plead sufficient facts to cross the line from merely theoretical to plausible claims for relief against the Defendants they have sued here.

Despite an opportunity to replead and a warning from this Court (among many others) that the SAC "should contain significantly more factual detail," Order at 18-19, Plaintiffs persisted in regurgitating the same conclusory statements they have reasserted in virtually all of their duplicative complaints.  Instead of finally pleading adequate facts tailored to this case, Plaintiffs again recite threadbare legal conclusions.  As another judge recently found in dismissing – with prejudice and without leave to replead – yet another complaint filed by Plaintiffs' counsel against hospitals, asserting duplicative FLSA claims, "plaintiffs have already filed two amended complaints – the second of which was filed several months after defendants filed motions for judgment on the pleadings pointing out the [pleading's] defects.  The clear inference is that plaintiffs have made a deliberate choice not to cure the problem."  *Cavallaro v. UMass Mem'l Health Care Inc.*, No. 09-40181, Dkt. 106, at *13 (D. Mass. filed June 8, 2011).[1] Likewise here, Plaintiffs have been on notice of legitimate challenges to their boilerplate complaint for many months, have had every opportunity to cure, but inexplicably choose to continue to "hid[e] the ball."  *Wolman v. Catholic Health Sys. of Long Isl.*, No. 10-cv-1326, Dkt. 182, at *8 (E.D.N.Y. filed May 5, 2011).

Plaintiffs do appear to recognize that their effort to build a class action on the premise that automatic meal break deductions are unlawful is futile, as the law expressly provides

---

[1] The court in *Cavallaro* found several conclusory allegations in a similar complaint to be not entitled to an assumption of truth under *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) because they lacked supporting facts:  (1) that defendants are the employer (single, joint or otherwise) of the plaintiffs and class members and/or "alter egos of each other"; (2) that the individual defendants were liable to plaintiffs because of an unspecified "active role in operating the business"; and (3) that "[a]t all relevant times, [plaintiffs] were employees under the FLSA."  *Cavallaro*, at *6-7.  Further, it found that the complaint (which did not name a place of work) did not "contain a single factual allegation connecting plaintiffs with any of the corporate defendants."  *Id.* at *8.  Copies of unreported decisions cited herein are attached to the accompanying Compendium of Unreported Decisions Cited in Defendants' Reply Memorandum of Law.

otherwise. Instead, Plaintiffs now argue that this lawful timekeeping function instead may have resulted in employees working hours without compensation because an unidentified putative class member may not have reported a missed meal break on an unspecified date.[2] Moreover, the named Plaintiffs admit that they worked for one entity each (Hi-Tech Home Care ("Hi-Tech") and Schulman and Schachne Institute for Nursing and Rehabilitation ("Schulman")), respectively, but continue to attempt to assert claims on behalf of a far-flung class of many thousands holding over fifty positions, against the named Defendants, forty-four Health Centers and twenty-one Affiliates. Although Plaintiffs assert in their Opposition that these entities are joint employers, the SAC fails to allege sufficient facts under any valid legal theory to support such a grandiose allegation, and does not establish their standing to sue. The few new statements regarding the named Plaintiffs' alleged work time – which are summarily described in the SAC in terms of hours they "typically" or "occasionally" worked – remain devoid of the requisite specificity.

Perhaps knowing that they have again failed to meet their burden, Plaintiffs request yet another bite at the already chewed apple. Opp. at 3, 15, 31 & 34. Plaintiffs should not be allowed to replead, and once again drain the resources of a financially limited not-for-profit community hospital system. If they were willing or able to conduct the necessary investigation and uncover facts to support their recycled allegations against *these* Defendants, they should have done so in one of their first three complaints. This Court advised the Plaintiffs that if they did not properly and timely amend the complaint, it would be dismissed with prejudice for failure to prosecute. Order at 19-20. That dismissal is warranted now.

---

[2] We observe that the SAC is demonstrably not amenable to class treatment and that the class allegations should be dismissed on their face. Plaintiffs themselves refer to the "contextual nature of the inquiry" (Opp. at 8) by which they now challenge "defendants'" practices, SAC ¶ 7, which illustrates why class treatment is inappropriate; the plaintiffs plead no facts that establish that they are similarly situated to those they seek to represent; and a trial on the SAC would be totally unmanageable. Plaintiffs' theory would require individualized inquiry of every putative class member as to the particular circumstances that allegedly led that putative class member to miss a meal break, attend training or perform pre- or post-liminary work without compensation in each challenged workweek. *See Zivali v. AT&T Mobility, LLC*, 2011 WL 1815391, at *3-4 (S.D.N.Y. May 12, 2011).

## I.      The Opposition Reveals Plaintiffs' Unabashed Flouting of This Court's Order

First, in defiance of the Court's Order dismissing the following claims with prejudice, and despite Plaintiffs' acknowledgement of such dismissal in their Opposition, Opp. at 1 & 4, Plaintiffs' SAC still pleads: (1) contract-based claims on behalf of union employees based on alleged agreements independent of CBAs, *e.g.*, SAC ¶¶ 132-46, 177-85; (2) claims that are premised on RICO-related allegations, *e.g.*, *id.* ¶¶ 2, 109-21; and (3) "gap time" under the FLSA, *e.g.*, *id.* ¶¶ 7, 65-66, 70, 106, 111, 119, 152, 162-64 and the prayer for relief).[3]  In addition, Plaintiffs assert these claims on behalf of newly alleged subclasses, without including any factual allegations to support them.[4]

Second, although Plaintiffs argue that the SAC "provided the other details required by the Order," Opp. at 7, it does not.  Despite the Court's instructions, the SAC does not articulate which part of the FLSA allegedly was violated, (*compare* Order at 5; SAC ¶¶ 1, 2, 173-74); omits sufficient specificity regarding the alleged hours worked, (*compare* Order at 7; SAC ¶¶ 64-65 ("occasionally" and "typically," which do not support the "approximate" conclusions); fails to plead facts regarding the number of hours Plaintiffs each worked in a week without receiving pay, (*compare* Order at 8; SAC ¶¶ 64-65); and thereby fails to plead enough factual detail to render their claims for unpaid time plausible, (*compare* Order at 19; SAC ¶¶ 64-65).  Plaintiffs continue to assert the same general legal conclusions that the Court criticized as insufficient to show "that by working during the challenged periods they would have been working in excess of forty hours in one week period."  Order at 7 ("These conclusory allegations are not sufficient to plead a violation of the overtime provision.") (citations omitted).  SAC ¶¶ 111, 164.

## II.     Plaintiffs Fail to Plead Facts Showing That Defendants Are Their Employers or That Plaintiffs Have Standing to Sue Any Defendants

Plaintiffs argue that they have pled adequate facts to establish employment relationships between Plaintiffs and Defendants and to establish standing to sue all Defendants based on the allegedly broad definition of "employer" under the FLSA.  Opp. at 16.  The issue at the pleading

---

[3] Plaintiffs continue to plead against an industry, SAC ¶ 69, and the same allegations that resulted in dismissal of the FLSA gap time claim appear, unchanged, in the SAC.  *See, e.g.*, SAC ¶¶ 133-34.

[4] For example, no facts are pled to support a subclass of union employees "for workweeks during which they were not subject to a [CBA]."  *See* SAC ¶¶ 87(b), 96(b), and 104(b).

stage is not merely the governing legal standard, but whether Plaintiffs have alleged sufficient case-specific facts to render their allegations regarding standing and employment relationship plausible as to each Defendant.  Here, they have not.  In a putative class action, including under the FLSA, named plaintiffs must individually meet the standing requirement at the time of filing, as a legal and jurisdictional matter.  *Sosna v. Iowa*, 419 U.S. 393, 402 (1975).  Therefore, a plaintiff must allege that she suffered an injury in fact *fairly traceable* to the challenged action of each defendant she sues; she is not relieved from doing so by simply including class allegations.  *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992); *Warth v. Seldin,* 422 U.S. 490, 502 (1975) ("Unless [plaintiffs] can . . . demonstrate the requisite case or controversy between themselves personally and [defendants], 'none may seek relief on behalf of himself or any other member of the class.'" (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)).  Plaintiffs now assert that Sampson and Gill worked at Schulman and Hi-Tech, respectively, but still fail to plead sufficient facts establishing standing to sue Defendants.[5]

To establish standing, Plaintiffs must allege facts establishing an injury in fact and a causal connection between the injury and a defendant's alleged misconduct.  *Port Wash. Teachers' Ass'n v. Bd. of Educ.*, 478 F.3d 494, 498 (2d Cir. 2007).  Not only have Plaintiffs failed to allege a factual allegation about any entities other than Schulman and Hi-Tech, they also fail to plead sufficient allegations against those entities where the named Plaintiffs (finally) allege they performed work.  Plaintiffs fail to allege facts relating to how any particular named Defendant, let alone the Health Centers or Affiliates, caused Plaintiffs' purported injuries and they thus fail to establish plausible standing.  *Cavallaro*, Dkt. 106, at *12 ("Without more specific factual allegations connecting the entity that employed plaintiffs to the entity for which the officers made employee compensation decisions, plaintiffs cannot establish that [either defendant] was their employer under the FLSA.").

Plaintiffs also fail to allege facts establishing that each Defendant had formal and/or functional control over Plaintiffs and the putative class.  Under the formal control analysis, the

---

[5] Plaintiffs argue that Defendants waived this argument by failing to raise it in their first motion to dismiss.  Opp. at 15 n.16.  This argument makes little sense, as Plaintiffs have served a new complaint that Defendants have every right to challenge as pled.  Moreover, Defendants did in fact note in their initial motion that Plaintiffs failed to allege a specific relationship with defendants (*e.g.* Dkt. 69, at *8), and "[i]t is beyond cavil that constitutional standing imposes a jurisdictional prerequisite to suit." *Lifrak v. N.Y. City Council*, 389 F. Supp. 2d 500, 503 (S.D.N.Y. 2005).

employer must (1) have the power to hire and fire the employee; (2) supervise and control the employee's work schedules or conditions of employment; (3) determine the employee's rate and method of payment; and (4) maintain the employee's employment records.  The factors of the functional control analysis are:  (1) whether an employee shifted from one alleged employer's business premises to another's; (2) the degree to which the defendants' agents supervise the work; and (3) whether the employee worked exclusively for one defendant.  *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 142-43 (2d Cir. 2008).

Although Plaintiffs concede that the economic realities test is used to analyze whether employer/employee relationships exist, Opp. at 16, Plaintiffs fail to allege facts establishing the above factors.  Instead, Plaintiffs' assert conclusions:  "[d]efendants are . . . joint employers," "they are not acting entirely independently and/or are not completely disassociated from each other," and they are an "enterprise" and an "integrated . . . health care delivery system."  SAC ¶¶ 17, 20, 21, 30.  This is not enough.  *Cavallaro*, Dkt. 106, at *13 ("The clear inference is that plaintiffs have made a deliberate choice not to cure [this] problem.").  Given that Plaintiffs still fail to plead facts necessary to show formal or functional control, Plaintiffs fail to plausibly plead "employment" even as to Schulman and Hi-Tech, let alone the other "defendants," and their claims should be dismissed.

### III.   Plaintiffs Fail to Plead Viable Claims Against the Individual Defendants

Plaintiffs seek to avoid their pleading burden by arguing that individual liability under the FLSA depends on the facts of a case.  Of course, Defendants do not assert that the Court should make such a determination at this time.  Rather, Defendants contend that Plaintiffs once again failed to plead sufficient facts to state a plausible claim against either of the individuals they sued.  Plaintiffs assert the elements of the economic realities test, but do not provide specific facts relating to this case.  For example, Plaintiffs allege that the individual defendants are "involved in the creation and/or maintenance of the illegal policies complained of in this case," SAC ¶¶ 46, 57, yet they do not provide any facts to support this assertion.  *See Iqbal*, 129 S. Ct. at 1952.  In an attempt to rehabilitate these claims, Plaintiffs strive to distinguish another one of their own cases in which the individual defendants were dismissed – *Tracy v. NVR, Inc.*, 2009 WL 3153150, at *5 (W.D.N.Y. Sept. 30, 2009), *adopting report & recommendation*, 667 F. Supp. 2d 244 (W.D.N.Y. 2009) – by arguing that the plaintiffs in *Tracy* alleged "[u]pon information and belief."  Opp. at 20.  This distinction is immaterial.  As in *Tracy,* Plaintiffs' SAC

asserts "boilerplate allegations that [the individual defendants met] the various prongs of the [FLSA's] economic reality test stated . . . without any supporting details." *Tracy*, 667 F. Supp. 2d at 247; *Xue Lian Lin v. Comprehensive Health Mgmt., Inc.*, 2009 WL 976835 (S.D.N.Y. Apr. 9, 2009) (dismissing claims against individuals where facts regarding control over hours, wages, or other terms and conditions of employment were lacking); *Bravo v. Eastpoint Int'l, Inc.*, 2001 WL 314622, at *2 (S.D.N.Y. Mar. 30, 2001) (dismissing individual defendants because allegation that she was "the principle [sic] owner and chairperson" did not "tend to establish her power to control the plaintiff workers"). The few individualized statements about the individual defendants, such as that one testified regarding the role of HMOs in healthcare, SAC ¶ 41, and that MediSys is "large," SAC ¶ 22, and publishes "MediSys Pulse", SAC ¶¶ 26, are insufficient and irrelevant to the "employer" analysis in respect of the named Plaintiffs and the facilities they now identify. SAC ¶¶ 39-40, 44, 47, 51-52, 60. *See Cavallaro*, Dkt. 106, at *11-12 (dismissing claims). The individual defendants should be dismissed from this action.

## IV.    **Plaintiffs Fail to Plead Plausible Wage Claims Under the FLSA**

Plaintiffs argue that "motions to dismiss are rarely granted." (Opp. at 3.) Even assuming *arguendo* that Plaintiffs could cite general support and statistics, dismissal of complaints *filed by Plaintiffs' counsel* are anything but rare, because they persist in filing inadequate pleadings.[6]

A plaintiff's factual allegations against each named defendant must be plausible. *Iqbal*, 129 S. Ct. at 1949-50; *Astra Media Group, LLC v. Clear Channel Taxi Media, LLC*, 2011 U.S. App. LEXIS 2949 (2d Cir. Feb. 15, 2011). To be plausible, the allegations must have "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Castiglione v. Papa*, 2011 U.S. App. LEXIS 10517, at *5 (2d Cir. May 23, 2011). Pleadings "that offer labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 129 S. Ct. at 1949. Like Plaintiffs' FAC, the SAC is yet another "boilerplate complaint . . . with identically vague and conclusory allegations . . . [that is]

---

[6] *E.g.*, *Cavallaro*, Dkt. 106 (dismissing with prejudice); *Nakahata v. N.Y.-Presbyterian Healthcare Sys.*, 2011 WL 321186 (S.D.N.Y. Jan. 28, 2011); *Wolman v. Catholic Health Sys. of Long Isl.*, No. 10-cv-1326, Dkt. 164 (E.D.N.Y. filed December 30, 2010); *DeSilva v. N. Shore-Long Isl. Jewish Health Sys.*, 2011 WL 899296 (E.D.N.Y. Mar. 16, 2011); *Pruell v. Caritas Christi*, 2010 WL 3789318 (D. Mass. Sept. 27, 2010); *Cavallaro v. UMass Mem'l Health Care Inc.*, 2010 WL 3609535 (D. Mass July 2, 2010) (federal claims); *Cavallaro v. UMass Mem'l Health Care Inc.*, No. 09-40181, Dkt. No. 33 (D. Mass. filed July 2, 2010) (state claims); *Manning v. Boston Med. Ctr. Corp.*, 2011 WL 796505 (D. Mass. Feb. 28, 2011).

a vivid demonstrative of how not to plead." *Nakahata*, 2011 WL 321186, at *6.

Plaintiffs blatantly ignore the Court's Order, Opp. at 14, by failing to allege – even as to the named Plaintiffs – such facts from which the Court can determine plausible allegations of compensable work that is more than *de minimis* activity and resulted in hours worked over forty in a week for which they were not paid. *Kosakow v. New Rochelle Radiology Assocs.*, 274 F.3d 706, 721 (2d Cir. 2011); *see also Nakahata*, 2011 WL 321186, at *3 ("To avoid dismissal, the complaint must contain enough facts to state a claim to relief that is plausible on its face, that is to say, facts that nudge the plaintiff's claims across the line from conceivable to plausible.") (quotations omitted); *Landry v. Peter Pan Bus Lines, Inc.*, No. 09-11012, Dkt. 18, at *3 (D. Mass. filed Nov. 20, 2009) (dismissing FLSA class allegations where the complaint made only "generic factual allegations . . . and state[d] the bare legal elements of an FLSA claim").

Plaintiffs contend that they worked challenged periods without compensation, but they do not allege facts showing that they missed even one specific meal break in one specific week in which they worked over forty hours, and they plead not a single plausible fact to support their new theory that Defendants interfered with approval or plaintiffs' reporting of off the clock work,[7] or told them not to report it. Vaguely referencing unnamed "management," plaintiffs do not identify a single individual who allegedly expected or asked a plaintiff to work through a meal break knowing it would not be paid. SAC ¶¶ 74, 77. Accordingly, they do not plausibly plead facts demonstrating that Defendants were or should have been aware that Plaintiffs would not be compensated if they performed challenged work. *E.g.*, SAC ¶¶ 77, 151. More is required in this Circuit. *Kuebel v. Black & Decker Inc.*, 2011 U.S. App. LEXIS 9448, at *22, 26 (2d Cir. May 5, 2011) (where plaintiff alleged that his supervisors instructed him not to record in excess of 40 hours per week, the court stated, "[t]o establish liability under the FLSA on a claim for unpaid overtime, a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work"); *Chao*

---

[7] Rebutting Plaintiffs' newly espoused theory that the unlawful "policy" about which they sue pertains to Defendants' "shifting the burden" of timekeeping to employees, courts have noted that employees properly bear the burden of showing that mealtimes are compensable, and that plaintiffs are "in the best position to prove that their actions during their scheduled mealtimes were for the benefit of the employer… To require the [employer] to prove a negative – that an employee was not performing "work" during a time reserved for meals – would perversely incentivize employers to keep closer tabs on employees during their off-duty time." *Hertz v. Woodbury County,* 566 F.3d 775, 784 (8th Cir. 2009).

*v. Gotham Registry, Inc.*, 514 F.3d 280, 287 (2d Cir. 2008) ("It is clear an employer's actual or imputed knowledge that an employee is working is a necessary condition to finding the employer suffers or permits that work."); *Kosakow*, 274 F.3d 706, 720 (2d Cir. 2001) (same) (citation omitted); *Holzapfel v. Town of Newburgh*, 145 F.3d 516, 524 (2d Cir. 1998) ("[A]n employer cannot suffer or permit an employee to perform services about which the employer knows nothing."); *White v. Wash. Gas*, 2005 U.S. Dist. LEXIS 3461, at *13 (D. Md. Mar. 4, 2005) (dismissing plaintiffs' claims for time worked during unpaid meal breaks where employee "never reported those hours on his timesheets, nor did he ever ask to be paid for those hours until this lawsuit"); *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981) (explaining that knowledge affords an employer the opportunity to comply, and noting "where the acts of an employee prevent an employer from acquiring knowledge, here of alleged uncompensated overtime hours, the employer cannot be said to have suffered or permitted the employee to work").[8]

In addition, Plaintiffs again fail to plead even their own wage rates. *See Zhong v. August August Corp.*, 498 F. Supp. 2d 625, 639 (S.D.N.Y. 2007) (" [C]laim under the FLSA to recover unpaid minimum or overtime wages should indicate the applicable rate of pay and the amount of unpaid minimum or overtime wages due."); *Nakahata*, 2011 WL 321186, at *4 (dismissing FLSA claim where, among other things, plaintiff failed to "allege any specific facts about the plaintiffs' . . . pay"); *Hart v. Rick's Cabaret Int'l Inc.*, 2010 U.S. Dist. LEXIS 137129, at *12-13 (S.D.N.Y. Dec. 17, 2010) ("It is true that *Zhong* and the cases that rely on it say that 'a claim under the FLSA to recover unpaid minimum . . . wages should indicate the applicable rate of pay and the amount of unpaid minimum . . . wages due.' [T]his statement stems … from the requirement that the Court be able to determine whether the Complaint alleges wages below those required by the FLSA - as the Complaint must do to survive a motion to dismiss.") (citation omitted); *Pruell*, 2010 WL 3789318, at *3 ("[The plaintiffs] have failed to allege facts, namely their approximate weekly wages and hours worked, that would nudge their minimum

---

[8] *See also Berger v. Cleveland Clinic Found.*, 2007 U.S. Dist. LEXIS 76593, at *37-38 (N.D. Ohio Sept. 29, 2007) (granting defendant-hospital's motion for summary judgment, finding that it was "undisputed that defendant maintained a logbook in which employees were told to mark when they missed [meal periods]," and the failure to pay was "due to plaintiff's own failure to mark them in the logbook"); *Wood v. Mid-Am. Mgmt. Corp.*, 192 Fed. Appx. 378, 381 (6th Cir. 2006).

wage claim over the line from speculative to plausible.  Accordingly, the minimum wage claim is insufficiently pled and must be dismissed.").

Plaintiffs also must plausibly estimate the hours worked without compensation to substantiate a claim under the FLSA.  *Nichols v. Mahoney*, 608 F. Supp. 2d 526, 546 (S.D.N.Y. 2009).  This Court criticized the FAC because Plaintiffs had "without specificity allege[d] only that they have worked 'both under and in excess of forty [40] hours per week'," Order at 7, yet they repeated their omission again.  Plaintiffs describe the number of hours that they "typically" and "occasionally" worked, which is tantamount to again stating that they sometimes worked more than forty hours a week.  A bare allegation that a plaintiff sometimes worked more than forty hours in a week is "not much more informative than an allegation that she was not paid for overtime work in general" because an individual <u>must</u> work in excess of forty hours a week to be entitled to overtime pay.  *Villegas v. J.P. Morgan Chase & Co.*, 2009 WL 605833, at *5 (N.D. Cal. Mar. 9, 2009).  Likewise, the SAC does not plead any facts about when Plaintiffs allegedly missed meal breaks or participated in compensable trainings or worked overtime; in what time period they worked these alleged hours; or how often they did so.  *See Nakahata*, 2011 WL 321186, at *4 (dismissing substantially similar claims because there were "no factual allegations about . . . .which lunches and breaks were worked through without proper compensation").

Plaintiffs assert that Defendants "improperly argue," on the merits, that automatic meal period deduction policies are not *per se* unlawful, Opp. at 7, while simultaneously conceding that to be true.  They now claim that their SAC is based on the theory that an automatic deduction system might shift the burden of recording work to the employees.  Opp. at 10.  Again, this theory is not a factual showing sufficient to support a viable FLSA claim.  Courts repeatedly have held that:

> A natural consequence of any employer's adopting an automatic deduction policy is that employees will be required to cancel the deduction if they work through meal breaks.  In this sense, any automatic deduction policy 'shifts the burden' to employees.  Because the FLSA permits automatic deduction policies, standing alone, this so-called 'burden shift' cannot form the basis of an alleged FLSA violation.

*Frye v. Baptist Mem'l Hosp., Inc.*, 2010 WL 3862591, at *7 (W.D. Tenn. Sept. 27, 2010).  In *Wolman*, Dkt. 182, at *2-3, the Court expressly recognized that an automatic deduction policy for meal breaks does not *per se* violate the FLSA and held that the plaintiffs did not establish a viable cause of action under the FLSA merely by raising a "possibility".  Similarly, although

Plaintiffs assert that Defendants must "ensure" that Plaintiffs are not working their meal breaks, the FLSA imposes no such duty. *Reich v. S. New Eng. Telecomm. Corp.*, 121 F.3d 58, 64-65 (2d Cir. 1997) (employer's duty is to ensure that employees are paid if the meal period is spent "predominantly for the benefit of the employer," not to ensure that employees take the break). Most importantly, the SAC fails to plead facts to plausibly support that Defendants employed any uniform policy to ignore compensable work performed during missed or interrupted meal breaks or to instruct Plaintiffs not to report the same.

With respect to their pre- and post-liminary work allegations, Plaintiffs again fail to specify when, where and why the alleged work was performed, why they did not record time, or how they contend their pay was miscalculated. SAC ¶¶ 64, 65, 91, 92. Pleading "as discussed above" and "as discussed below," Plaintiffs fail to allege when and how often the alleged work caused any Plaintiffs to work overtime. Having not pled their rates of pay, it remains impossible to determine whether Plaintiffs can state a plausible minimum wage violation.

Finally, although Plaintiffs inserted a few allegations regarding training, they do not allege when or how often this occurred, other than "two hours every two years" or "twice a year." SAC ¶ 64. Plaintiffs claim that Defendants' argument that they have not pleaded facts showing that the work was compensable "finds no support in the law." Yet, as this Court acknowledged: "It is not even clear whether the challenged periods would constitute compensable time pursuant to the FLSA based upon the allegations." *See* Order at 7 n.1. While Plaintiffs are correct that the SAC now conclusorily states that the training was "mandatory" and "related to" healthcare, SAC ¶ 99, 100, they fail to plausibly allege compensability by supporting this conclusion with facts regarding whether it was required merely for state licensure, whether productive work was performed, or whether it was conducted on or off-duty. 29 C.F.R. §§ 785.27, 785.30.

## V.   The Court's Order on Section 301 Warrants Preclusion of the FLSA Claims

Instead of addressing Defendants' arguments, Plaintiffs construct, and then deconstruct, their own. Defendants agree with Plaintiffs that Section 301 does not "preempt" their FLSA claims. Defendants also do not take issue with Plaintiffs' argument that the FLSA gives them substantive rights "independent" of their rights under the CBAs. Nor do Defendants quibble with the proposition that under *14 Penn Plaza LLC v. Pyett*, 129 S. Ct. 1456 (2009), Plaintiffs are not required to pursue their substantive FLSA rights in arbitration where the CBAs do not

contain a "clear and unmistakable" waiver of the right to pursue those claims in court.

Defendants do take issue, however, with the conclusion Plaintiffs draw from these principles; namely, that Plaintiffs have no obligation to have an arbitrator interpret the CBAs before bringing FLSA claims dependent on interpretations of the CBAs.  In fact, the Third, Sixth and Seventh Circuits have expressly rejected the position Plaintiffs now assert.  *Vadino v. A. Valey Engineers*, 903 F.2d 253 (3d Cir. 1990); *Martin v. Lake County Sewer Co., Inc.*, 269 F.3d 673 (6th Cir. 2001); *Leahy v. City of Chicago, Illinois*, 96 F.3d 228 (7th Cir. 1996).  Each court held that while FLSA rights are independent of CBA rights, an arbitrator and not a judge should resolve CBA interpretation issues before a plaintiff can file suit asserting an FLSA claim.

*Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728 (1981), does not require a different result.  *Barrentine* held that the submission of an employee's claim for violation of the FLSA's minimum wage provisions to contractual dispute resolution procedures pursuant to a CBA did not preclude a later lawsuit because "FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate" and, thus, "congressionally granted FLSA rights take precedence over conflicting provisions in a collectively bargained compensation agreement."  *Id.* at 740-41.  *Barrentine* did not hold that a claim that an employer failed to pay for all hours worked need not be arbitrated prior to commencement of a lawsuit.  Rather, it merely held that submission of an FLSA claim to arbitration does not preclude a later lawsuit.  Assuming that this principle survives *14 Penn Plaza LLC v. Pyett*, 129 S. Ct. 1456 (2009), it does not speak to the question of whether labor law principles require arbitration to precede litigation where it is necessary to interpret a CBA to resolve an FLSA claim.

*Gordon v. Kaleida Health*, 2008 U.S. Dist. LEXIS 96144 (W.D.N.Y. Nov. 25, 2008), and *Hinterberger v. Catholic Health*, 2008 U.S. Dist. LEXIS 96105 (W.D.N.Y. Nov. 24, 2008), are likewise distinguishable.  In *Gordon* and *Hinterberger*, Plaintiffs' only reference to the CBAs pertained to a withdrawn breach of contract claim.  Here, by contrast, the SAC asserts an FLSA claim on behalf of a sub-class of "any Class Members who are or were subject to a collective bargaining agreement."  SAC ¶¶ 87(a), 96(a), 104(a).  Unlike *Gordon* and *Hinterberger*, the Court in this case therefore would have to interpret the CBAs to resolve the FLSA claims of this sub-class of putative class members.

For these reasons, *Leahy*, *Vadino*, and *Martin* control.  The terms and conditions of

Plaintiffs' employment are governed by terms collectively bargained by Defendants and the unions representing their employees.  The CBAs on their face comply with the FLSA and define "work" by stipulating the circumstances for which employees will be paid as well as the rates at which employees must be paid.  Moreover, the CBAs will have to be interpreted to determine how much Plaintiffs should have been paid.  Accordingly, Plaintiffs' claims should first be pursued through the grievance and arbitration provisions of the CBAs.  Only then, after the CBAs have been interpreted, may Plaintiffs pursue their FLSA claims in court.  *See also Hoops v. Keyspan Energy*, 2011 U.S. Dist. LEXIS 23117, at *16 (E.D.N.Y. Mar. 8, 2011) ("Where, as here, 'the alleged violation hinges on the [CBAs'] definition of the terms of employment, they must be brought under the LMRA and in accordance with the agreement's grievance and arbitration provisions.") (quoting *Nakahata*, 2011 WL 321186, at *4).[9]  Until then, Plaintiffs' FLSA claims must be dismissed.

VI.     **Plaintiffs' State Law Claims Should Be Dismissed**

    A.     **Plaintiffs' NYLL Claims Are Preempted by Section 301 of the LMRA**

Plaintiffs' argument that their NYLL claims on behalf of unionized employees are not preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, stands only as a misreading of a single footnote in *Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399, 413 n.12 (1988), and a misunderstanding of the Supreme Court's decisions in *Livadas v. Bradshaw*, 512 U.S. 107 (1994).  First, Plaintiffs read the *Lingle* footnote to say that any time a court must look to the CBA to determine "damages," rather than "liability," preemption is not an issue.  Second, Plaintiffs claim that, to resolve their claims in this case, the Court need only count the number of hours Plaintiffs worked and see if they were paid for each of those hours.  Thus, Plaintiffs reason, the Court would only need to "consult" the CBAs to determine the applicable hourly rate to determine damages, and this is insufficient under the *Lingle* footnote for preemption.

Both arguments fail.  The *Lingle* footnote posits that if liability can be established without interpretation of a CBA, then the fact that the CBA must be consulted to calculate

_____

[9] *Barrentine* supports this conclusion because, after remand, the court in *Barrentine* would have no reason to interpret the CBA since an arbitrator had already done so.

damages does not command preemption.  This footnote cannot be understood, however, without also reading an earlier footnote in the *Lingle* opinion, which states:

> While it may be true that most state laws that are not pre-empted by § 301 will grant nonnegotiable rights that are shared by all state workers, we note that neither condition ensures nonpre-emption.  It is conceivable that a State could create a <u>remedy</u> that, although nonnegotiable, nonetheless turned on the interpretation of a collective-bargaining agreement.

*Lingle*, 486 U.S. at 407 n.7 (emphasis added).  These two footnotes thus confirm that non-negotiable state law rights, including remedial rights, are preempted if they require CBA interpretation.  Plaintiffs simply cannot bring their NYLL claims until the CBA interpretation issue is first resolved.  *Lingle* thus did not lay down a rule of bifurcation of preemption, that interpretation of a claim requiring a CBA to be interpreted to calculate damages is not preempted.  Rather, the Court simply held that checking the price on the menu does not require that the whole meal be preempted.

Moreover, in calculating "wages," the definition of work, the number of hours worked, and the rate of pay all impact a determination of potential liability.  If liability were found to exist, damages would be the difference between what Defendants should have paid Plaintiffs and in fact paid them.  As Defendants already demonstrated, the CBAs contain numerous, overlapping provisions governing what counts as an hour "worked" and the amount employees should be paid for each of those hours.  In some circumstances, the CBAs even require Defendants to pay employees for hours that were not actually "worked."  *See* Defendant's Memorandum in Support of Motion to Dismiss SAC, at 20 n.12 & 21 n.13.  To determine whether "wages" were paid properly the Court would have to analyze the terms of the CBAs to decide both the number of hours Plaintiffs worked and the applicable rate of pay for each of those hours.  "Such analysis . . . is interpretation."  *Adames v. Exec. Airlines, Inc.*, 258 F.3d 7, 13 (1st Cir. 2001) (interpreting claims under the Railway Labor Act, parallel to the LMRA).

Perhaps to avoid this conclusion, Plaintiffs attempt to shift the focus of how much they should have been paid from an issue of liability to an issue solely relevant to damages.  While Plaintiffs are correct that a CBA may be "consulted" to determine damages and that "mere consultation" does not result in preemption, the line between liability and damages in a wage and hour case is not as neat as Plaintiffs contend.  Plaintiffs' liability question is:  were Plaintiffs paid all wages they should have been paid?  The damages question, if Plaintiffs were not, is:  what is

the difference between the amount they should have been paid and the amount they were in fact paid?  In short, liability and damages are intertwined in a wage and hour case.  It is necessary to know how much Plaintiffs should have been paid before the Court can determine liability, first.  For that reason, evaluating claims virtually identical to those Plaintiffs assert against Defendants, the *Pruell* court held that state statutory wage claims were preempted by Section 301 because "multiple CBA provisions must be consulted and applied to establish the plaintiffs' wage rates, and because consulting and applying multiple provisions amounts to 'interpretation' of the CBAs."  *Pruell v. Caritas Christi*, 2010 U.S. Dist. LEXIS 101770, at *11 (D. Mass. Sept. 27, 2010).

Plaintiffs' contention that the CBAs are irrelevant to the question of hours worked manifests a fundamental misunderstanding of *Livadas*.  Plaintiffs view as irrelevant what the CBAs say about when and how an employee is credited for an hour worked because if an hour under the CBA is different from an hour under state wage and hour law, then the CBA would have effectively waived a non-negotiable state law right, which under *Livadas* is impermissible.  But that is not what *Livadas* held.  In fact, *Livadas* held that when liability is governed by a non-negotiable state law right, and the meaning of the CBA is not in dispute, the fact that the CBA will have to be consulted is no reason to preempt the state law unless the CBA contains a "clear and unmistakable" waiver of the state law right.  *Livadas*, 512 U.S. at 124-25.  Plaintiffs' argument overlooks that, as *Livadas* recognized, even a claim based on non-negotiable state law rights is preempted if a court must interpret a CBA to resolve the claim.[10]  *See, e.g.*, *Adames*, 258 F.3d at 9-10; *Pruell*, 2010 U.S. Dist LEXIS 101770, at *7 n.4 ("Even non-negotiable state law rights, however, are preempted by section 301 if interpretation of a CBA is required."); *Levy v. Verizon Info. Servs.*, 498 F. Supp. 2d 586 (E.D.N.Y. 2007) (same); *Ellis v. Harpercollins Publ'rs, Inc.*, 2000 WL 802900 (S.D.N.Y. June 21, 2000) (same).  Defendants do not suggest that the CBAs waive Plaintiffs' state law wage and hour rights.  But, the Court cannot resolve whether Plaintiffs' non-negotiable state law rights were infringed without deciding what is considered an hour worked under the CBA and how much they should have been paid for each

---

[10] *Livadas* also is distinguishable on its facts, just as it was in *Pruell*, because there is no "clearly established" wage rate in the Medisys CBAs and overlapping provisions must therefore be interpreted. *Pruell*, 2010 U.S. Dist. LEXIS 101770, at *7-8.

hour.  Because the repled allegations necessarily require interpretation of CBAs, they should be dismissed as this Court already held the contract-based claims to be.  Order at 17.[11]

**B.      Plaintiffs' Remaining Common Law Claims Are Also Preempted by Section 301**

Plaintiffs' attempt to avoid having their claims for quasi-contract, quantum meruit, unjust enrichment, fraud, misrepresentation, and conversion held preempted as to unionized employees fails to bear fruit.  The fundamental flaw in their argument was highlighted in *Pruell*:  all of these claims are premised on the allegation that Defendants promised, but failed, to pay Plaintiffs for "all hours worked" during their employment and, accordingly, the remedy for each common law claim "is the loss suffered as a result of reliance on that promise, that is, any underpayment of wages."  2010 U.S. Dist. LEXIS 101770, at *11.  Thus, every one Plaintiffs' claims, statutory and common law alike, "are all variations on a common theme."  *Id.*  For this reason, Plaintiffs' common law claims are preempted by Section 301 for the same reasons as their NYLL claims. *Manning v. Boston Med. Ctr. Corp.*, 2011 U.S. Dist. LEXIS 29165, at *6 (D. Mass. Mar. 10, 2011) ("Misrepresentation, quasi-contract, or accounting causes of action, similarly assert a failure to pay wages due. . . and will thus require both interpretation of the CBA provisions categorizing hours and the associated wage and a determination of how those CBA terms integrate with other statements by the defendants.").

**C.      The Court Should Disregard Plaintiffs' Misstatements of Law**

Presumably in recognition of having neither facts to cite nor law on their side, Plaintiffs invent a novel standard for preemption and try to couch it in terms of this Court's prior Order. First, Plaintiffs maintain that Defendants must show the weeks that unionized putative class members were subject to CBAs and, having failed to do so, a "factual record" needs to be developed before this Court can decide whether their claims are preempted.  Second, Plaintiffs' make an estoppel-type argument that Defendants should not be permitted to argue preemption again since the Court has already ruled on its preemption arguments.  Neither of these arguments is worth much consideration.

---

[11] Plaintiffs' state statutory claims should be dismissed for several additional, independent reasons: the cited sections are non-substantive and definitional, dealing with timeliness of payment; they require exhaustion (which Plaintiffs do not plead); and they do not create substantive rights apart from the agreed upon wage. *Nakahata*, 2011 WL 321186, at *3.

There is no need to develop a factual record to decide whether Plaintiffs' claims are preempted.  The reason is simple:  the SAC pleads a sub-class of putative class members subject to the CBAs.  As a result, Plaintiffs' dubious argument that *Defendants* did not shoulder *their* burden of proving the weeks that members of that non-certified sub-class were subject to the CBAs is baseless because Plaintiffs concede that members of this sub-class were subject to CBAs.  Defendants do not contend that the claims of the other sub-class consisting of "Class Members for workweeks during which they were not subject to a collective bargaining agreement" are preempted by Section 301.  However, as discussed *supra*, Plaintiffs failed to plead plausible factual allegations as to which workweeks this subclass is meant to cover, and for whom, and dismissal is thus warranted.

Nor is there any reason for Defendants to be estopped from making their preemption arguments again in response to the SAC.  Plaintiffs' contention that the Court rejected Defendants' preemption arguments is simply wrong.  In the Order, this Court dismissed Plaintiffs' complaint in its entirety, finding some claims preempted and others failing on the merits, and declining to exercise supplemental jurisdiction over the rest.  Plaintiffs then repled the preempted claims as well as the claims over which the Court declined to exercise supplemental jurisdiction, but this time making explicit that there is a sub-class of putative class members who are subject to CBAs.  Since these repled claims (including the claims as to which the Court exercised its discretion under the supplemental jurisdiction statute) are preempted by Section 301, Defendants' preemption arguments are again properly before the Court and warrant dismissal.

**D.    Plaintiffs' State Law Claims Are Duplicative of, Interferes with, and Are Precluded by the FLSA**

State law claims that are duplicative of FLSA claims should be dismissed because they interfere with the FLSA's regulations.  In *DeSilva v. N. Shore-Long Island Jewish Health Sys.*, 2011 WL 899296, at *26, the court noted that "allow[ing] plaintiffs to pursue duplicative state-law claims . . . [would] circumvent the remedial scheme established by the FLSA" and held:

> Consequently, allowing state common law claims to proceed based on the same facts as a party's FLSA claims would present an obstacle to enforcement of the FLSA by allowing plaintiffs to thwart Congress' preference, as evidenced in Section 216(c), to have FLSA violations be prosecuted by the Department of Labor, if and when the Secretary determines that such action is appropriate.

*Id. See also*, *e.g.*, *Perez v. Jasper Trading, Inc.*, 2007 WL 4441062, at *4 (E.D.N.Y. Dec. 17, 2007) ("As the plaintiffs' negligence claims . . . are ultimately based on the same factual premises as their FLSA claims – i.e., the defendants' failure to pay overtime compensation – they are duplicative of and preempted by the FLSA."); *Lopez v. Flight Services & Syst., Inc.,* 2008 WL 203028, at *7 (W.D.N.Y. Jan. 23, 2008) (dismissing fraud, breach of contract, implied covenant and unjust enrichment claims as preempted). *Pettis Moving Co., Inc. v. Roberts*, 784 F.2d 439 (2nd Cir. 1986) does not require a different result, as it analyzed Interstate Commerce Commission safety regulations relating to employees exempt from the FLSA, and thus ran no risk of interfering with the FLSA's comprehensive scheme.

The SAC pleads common law claims that are duplicative of their FLSA claims, and each is premised on the exact same deficient facts as their FLSA claims. Therefore, Plaintiffs' common law claims should be dismissed.[12]

### E.   Plaintiffs Do Not Allege Viable Common Law Claims

In addition to those set forth in Defendants' initial Motion to Dismiss the First Amended Complaint, the following reasons command dismissal of the SAC's common law claims.

#### 1.   Plaintiffs Fail to Plead Plausible Contract Claims

Plaintiffs' arguments that they have met the Rule 8 pleading standard as applied to their common law claims remain deeply flawed for the same reasons that their FLSA claim must fail. The SAC again reflects mere legal conclusions and fails to allege any plausible allegations regarding the terms of, or any other facts relating to, any individual or class-wide contract existing outside the CBAs. *E.g.*, SAC ¶¶ 132-140; Opp. at 30. Plaintiffs merely recycle the statements that Plaintiffs and Defendants "enter[ed] into an employment relationship" and "a contract for employment" and fail to even define, among other things, whether it was written or

---

[12] In contending that Plaintiffs' state law claims are not preempted by the FLSA, Plaintiffs attempt to argue, on one hand, that they have added sufficient factual allegations to the SAC such that it should survive the instant Motion to Dismiss and, on the other hand, that Defendants should not be permitted to argue that Plaintiffs' state law claims are preempted because Plaintiffs have not added any "new allegations" that affect these arguments. Opp. at 28. Yet, Plaintiffs' Opposition is premised on their assertion that the SAC purportedly includes new allegations regarding Plaintiffs' claims, which enable the SAC to withstand this Motion. And, given that Plaintiffs' FLSA and state law claims are premised on the *exact same facts*, it is indisputable that those allegations apply to both their FLSA and state law claims. Therefore, Defendants' argument is entirely proper.

oral, SAC ¶ 132, or to identify the person(s) who supposedly entered into such contract(s), on which Defendants' behalf, when, or who among the putative class is a party to the alleged agreements.[13] The SAC fails to state an independent contract claim because it identifies "no specific consideration, contractual terms or obligations independent of the federal and state statutory obligations underlying [the] other statutory causes of action" and "the allegations . . . do not demonstrate the existence of an independent, enforceable agreement." *Krichman v. JP Morgan*, 2008 WL 5148769, at *4 (S.D.N.Y. Dec. 8, 2008). The SAC simply offers no facts from which this Court could infer that an enforceable contract was formed, or whether any damages resulted from an alleged breach. *See Colodney v. Continuum Health Partners, Inc.*, 2004 U.S. Dist. LEXIS 6606, at *19 (S.D.N.Y. 2004) (dismissing breach of implied contract claim where complaint lacked allegations supporting implied employment contract). For this reason alone, the claim should be denied. *DeSilva*, 2011 WL 899296, at *27 (citing *Sirohi v. Tr. of Columbia Univ.*, 1988 WL 642463, at *2 (2d Cir. 1998)); *see also Nakahata*, 2011 WL 321186, at *6.

　　　Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing fails for the independent reason that this cause of action is subject to dismissal if it is duplicative of a cause of action for breach of contract. *See Nakahata,* 2011 WL 321186, at *6; *DeSilva*, 2011 WL 899296, at *27 n.20; *Fasolino Foods Co. v. Banca Nazionale Del Lavoro,* 961 F.2d 1052, 1056 (2d Cir. 1992); *Edwards v. Great N. Ins. Co.*, 2006 U.S. Dist. LEXIS 50683, at *8 (E.D.N.Y. July 18, 2006). While Plaintiffs argue that *Gross v Empire Healthchoice Assurance, Inc.*, 847 N.Y.S.2d 896, 16 Misc.3d 1112A (Sup. Ct. N.Y. County 2007) stands for the proposition that they may assert both causes of action, that is not its holding. Rather, in *Gross*, the court permitted the plaintiff to recover for breach of the implied covenant as its basis "does not depend on a breach of the contract." *Id*. at *5. Accordingly where, as here, the Plaintiffs' good faith and fair dealing claim rests on the Plaintiffs' breach of contract claims, it is

---

[13] To the extent that Plaintiff's claim is based on a pre-existing duty to comply with the FLSA or the NYLL, such a duty cannot form the basis of a contract. *See Nakahata,* 2011 WL 321186, at *6 (claim fails for lack of consideration where a "pre-existing duty to comply with the FLSA and NYLL cannot form the basis of a contract.") Defendants also note that any such individualized agreement would require individualized proof, and would not be appropriate for class treatment. *See Vineole v. Countrywide,* 571 F.3d 935, 948 (9th Cor. 2009); *LeTouzel v. Kodak,* 2006 WL 1455478, at *2-4 (W.D.N.Y. May 25, 2006).

duplicative and should be dismissed.  *Fellows v. CitiMortg., Inc.*, 710 F. Supp. 2d 385, 407
(S.D.N.Y. 2010) ("New York law does not . . . recognize a separate cause of action for breach of
the implied covenant of good faith and a breach of contract on the same facts."); *ICD Holdings
S.A. v. Frankel*, 976 F. Supp. 234, 243-44 (S.D.N.Y. 1997) ("A claim for breach of the implied
covenant will be dismissed as redundant where the conduct allegedly violating the implied
covenant is also the predicate for breach of covenant of an express provision of the underlying
contract.") (quotations omitted).

**2.      Plaintiffs Neither Plead Plausible Fraud or Misrepresentation Claims
        Nor Satisfy Rule 9(b)'s Heightened Standard**

The SAC simply parrots the elements of a claim and fails to plead fraud or
misrepresentation facts that satisfy the *Twombly/Iqbal* standard, let alone the heightened standard
that Rule 9(b) requires.  Plaintiffs' Opposition attempts to combat Defendants' attack on their
conclusory pleading by reiterating those *same* allegations.  *See* Opp. at 32-33.  Reiterating the
same deficient paragraphs in the Opposition neither renders them more plausible nor remedies
the pleading's deficiencies.  *See Teamsters Allied Benefit Funds v. McGraw-Hill Cos.*, 2010 U.S.
Dist. LEXIS 23052, at *25 (S.D.N.Y. Mar. 10, 2010) ("In its opposition brief, Plaintiff attempts
to cure these defects. . . . [but it] is well-settled that a 'claim for relief may not be amended by
the briefs in opposition to a motion to dismiss.'") (citations omitted).  For example, Plaintiffs
again cite to a litany of conclusory allegations relating to reliance, but fail to state a single
individualized fact to support it, especially given the parties' robust (and now admitted) CBAs.
Opp. at 32; SAC ¶¶ 159.  As Defendants' opening brief noted, the SAC also lacks any facts
sufficient to meet the pleading standard regarding a special relationship, or Defendants' state of
mind.  *Iqbal*, 129 S. Ct. at 1952.  Plaintiffs cite to *Lavian,* 884 F. Supp. at 675, contending that
they are not required to identify the content, time, place or speaker of the alleged
misrepresentations.  Even if this were a proper recitation of the law, Plaintiffs acknowledge that
they must plead with "sufficient precision to apprise defendants of the claims," Opp. at 31, and
yet they fail to do so, referring instead to unidentified "corporate statements" and "managers".
Thus, the SAC again falls well short of Rule 9(b)'s specificity requirement.

**3.      Plaintiffs Fail to Plead Plausible Claims for Unjust Enrichment and
        Quantum Meruit**

Likewise, the SAC merely reproduces the elements of Plaintiffs' purported equitable

claims.  Such statements are the sort of "formulaic recitation of the elements of a cause of action" that the Supreme Court has rejected.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Further, where the terms of an employment contract determine the compensation due and define an adequate remedy at law, equitable claims should be dismissed.  *Rabin v. MONY Life Ins. Co*., 387 Fed. Appx. 36 (2d Cir. 2010) (no cognizable claim for unjust enrichment where contracts exists); *Pereira v. United Jersey Bank, N.A.*, 201 B.R. 644, 677 (S.D.N.Y. 1996) ("Restitution for unjust enrichment is an equitable remedy, available only when there is no adequate remedy at law.") (citation omitted); *Md. Cas. Co. v. W.R. Grace & Co.*, 218 F.3d 204, 212 (2d Cir. 2000) ("The notion of unjust enrichment applies where there is no contract.").  In addition, as discussed above, Plaintiffs have not pled sufficient facts to render their allegations that time allegedly spent was legally compensable, or that Defendants knew or should have known about the alleged uncompensated work; without knowledge, Plaintiffs fail to plead facts to support a finding of <u>unjust</u> enrichment.  *Reprosystem, B.V. v. SCM Corp.*, 727 F.2d 257, 264 (2d Cir. 1984) (an award could not be based on unjust enrichment because plaintiff did not show it conferred a benefit on defendant); *R&R Rec. Prods., Inc. v. Joan Cook, Inc*., 1992 U.S. Dist. LEXIS 5176, at *14 (S.D.N.Y. Apr. 14, 1992) ("To establish an unjust enrichment claim one must show "(1) A benefit conferred upon the defendant by the plaintiff; (2) An appreciation or knowledge by the defendant of the benefit; and (3) The acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value."); *Webb v. Robert Lewis Rosen Assocs*., 2004 U.S. Dist. LEXIS 12024 (S.D.N.Y. June 29, 2004) (same).

### 4.      Plaintiffs Fail to Plead a Plausible Claim for Conversion

Conversion claims are dismissed as duplicative where, as here, they are based on the same underlying facts as a breach of contract claim.  *See Gould Paper Corp. v. Madisen Corp.*, 614 F. Supp. 2d 485, 493 (S.D.N.Y. 2009) ("A conversion claim, however, will not lie if it merely duplicates a breach of contract claim.").  Plaintiffs' conversion claim also fails because Plaintiffs have not alleged facts showing that they had ownership, possession, or control of the money before its alleged conversion.  *Nakahata,* 2011 WL 321186, at *6 ("The claim for conversion also fails because New York law requires the plaintiff to have ownership, possession, or control of the money before its conversion.").

### 5.      Plaintiffs Fail to Plead a Plausible Claim for Estoppel

20

In their Opposition, Plaintiffs do not refute the fact that their claim for estoppel must be dismissed because "[t]here is no distinct equitable estoppel cause of action under New York law." *Nakahata*, 2011 WL 321186, at *6; *Gaind v. Pierot*, 2006 U.S. Dist. LEXIS 14963, at *22-23 (S.D.N.Y. Mar. 30, 2006). The claim should therefore be dismissed.

## VII. <u>Plaintiffs Fail to Adequately Plead Class Allegations</u>

Even if the Court were to find that the SAC substantiates the individual claims of the named Plaintiffs, the sweeping class and collective action claims they seek to prosecute still necessarily fail. As the Supreme Court explained in *Twombly*, the Court's purpose in clarifying the Rule 8 standard was to prevent claims of marginal merit from squandering the resources of defendants and the courts. *Twombly*, 550 U.S. at 558. Class claims have a considerable potential to "up the ante" in litigation and in settlement negotiations, and thus this imperative is even stronger in putative class cases.

"After *Twombly*, courts . . . have found that class allegations must also comply with Rule 8(a) in order to proceed to class discovery." *Nicholas v. CMRE Fin. Servs., Inc.*, 2009 WL 1652275, at *4 (D.N.J. June 11, 2009); *see also Cox v. Allstate Ins. Co.*, 2009 WL 2591673, at *4 (W.D. Okla. 2009) (striking class allegations where plaintiffs' "bare assertions . . . amount to nothing more than a formulaic recitation of the elements necessary for class certification") (quotations omitted); *Hodczak v. Latrobe Specialty Steel Co.*, 2009 WL 911311, at *9 (W.D. Pa. Mar. 31, 2009) ("Having already found that plaintiffs have not pled any facts in the complaint to support a collective action claim, they have not demonstrated that they are entitled to the discovery they seek and those claims are properly dismissed."). These cases reason that the axiom that "[d]iscovery should not serve as a fishing expedition during which Plaintiff searches for evidence in support of facts he has not yet pleaded" applies also to class allegations. *Smith v. Lyons, Doughty & Veldhuius, P.C.*, 2008 WL 2885887, at *5 (D.N.J. July 23, 2008) (dismissing class allegations where plaintiff's complaint "allege[d] no facts suggesting that [defendant] had a[n unlawful] policy or practice" affecting the putative class).

Accordingly, courts have dismissed FLSA claims on behalf of putative class members in "unspecified jobs, at unspecified places" where, as here, their claims were based on nothing more than a bare "legal conclusion that employees were not paid overtime duly owed." *See Zhong v. August August Corp.*, 498 F. Supp. 2d 625, 628 ( S.D.N.Y. 2007) ("[W]here a plaintiff brings a [wage-and-hour] claim for and in behalf of himself and other employees similarly

situated, the complaint should indicate who those other employees are, and allege facts that would entitle them to relief.") (quotations omitted); *Landry*, Dkt. 18 (D. Mass. filed Nov. 20, 2009).

Plaintiffs' SAC provides a vivid example of an effort to exploit the *in terrorem* effect presented by class action claims.  This is especially so here where the only named Plaintiff who seeks to represent non-union class members, Gill, pleads no timely FLSA claim in his own right.  SAC ¶ 65.  Plaintiffs' attempt to use the prospect of a massive class action litigation, premised on nothing more than morphing theory about so-called "policies" that are unsupported by any substantive allegations, must not be countenanced.

## VIII.   <u>The SAC Should Be Dismissed with Prejudice</u>

Throughout their Opposition, Plaintiffs contend that they should be granted leave to replead yet again.  They should not.  Plaintiffs have been on notice of their pleadings' deficiencies for many months, in many forums.  They have had more than sufficient opportunity to cure the deficiencies, but chose not to do so.  *See Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir 1998) ("Leave to amend . . . may properly be denied for . . . repeated failure to cure deficiencies by amendments previously allowed  . . . [or] futility of amendment." (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)).  If Plaintiffs had sufficient facts and failed to plead them, they should not be given yet another opportunity to do so; and if they do not, then leave to amend would be futile.  *See Tylicki v. Schwartz*, 401 Fed. Appx. 603, 604 (2d Cir. 2010) ("[D]ismissal is appropriate where leave to amend would be futile."), *cert. denied*, 131 S. Ct. 1793 (2011); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [the plaintiff's] causes of action is substantive; better pleading will not cure it.  Repleading would thus be futile.  Such a futile request to replead should be denied.")  Plaintiffs have wasted the resources and the time of this Court and a not-for-profit community hospital to an unacceptable degree.  Dismissal with prejudice is warranted.

## IX.   <u>The Court Should Issue a Stay During the Pendency of the Motion</u>

By failing to oppose, Plaintiffs concede that Defendants' request for a discovery stay during the pendency of their motion is appropriate.  In the interest of judicial economy and to preserve the parties' resources, discovery should not proceed until this Court has determined whether plaintiffs have standing to sue any (let alone all) "defendants," which would be subject to discovery, and whose employees would be evaluated in the "similarly situated" analysis, and

what period discovery would cover, based on the statute of limitations of remaining claims, if any.  Once again, Plaintiffs' groundless and conclusory allegations should not expose multiple entities, as well as their current and former employees holding more than fifty job titles, to the unwarranted and significant burden of discovery and motion practice.  *See Twombly*, 550 U.S. at 560 n.6 (the problem of discovery abuse cannot be solved by case management or by careful scrutiny of evidence at the summary judgment stage).  Particularly given the economic and resource demands that premature discovery would place on a not-for-profit defendant, allowing proceedings now would be inequitable.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint and Stay Discovery should be granted in its entirety with prejudice and costs to Defendants.

Dated:  New York, New York
       June 14, 2011

Respectfully submitted,

SEYFARTH SHAW LLP

By:  s/ Lorie E. Almon

Lorie E. Almon
Mary E. Ahrens
620 Eighth Avenue, 32nd Floor
New York, New York 10018
(212) 218-5500

Kristin G. McGurn
Two Seaport Lane, Suite 300
Boston, Massachusetts 02210
(617) 946-4800

*Attorneys for Defendants*

23

## CERTIFICATE OF SERVICE

I hereby certify that on June 14, 2011, I filed the foregoing Defendants' Reply Memorandum of Law in Further Support of Their Motion to Dismiss Plaintiffs' Second Amended Complaint and To Stay Discovery and Compendium of Unreported Decisions Cited in Defendants' Reply Memorandum of Law in Further Support of Their Motion to Dismiss Plaintiffs' Second Amended Complaint and To Stay Discovery with the Clerk of the District Court electronically using the CM/ECF system, which sent email notification of such filing to the following:

> Justin M. Cordello, Esq.
> Thomas & Solomon
> 693 East Avenue
> Rochester, New York 14607
>
> Email:  jcordello@theemploymentattorneys.com

s/ Lorie E. Almon
Lorie E. Almon