D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
NELLIE SAMPSON and TIMOTHY GILL,
on behalf of themselves and all other
employees similarly situated,

                              Plaintiffs,

           -against-

MEDISYS HEALTH NETWORK, INC., THE
JAMAICA HOSPITAL, THE BROOKDALE
HOSPITAL MEDICAL CENTER, FLUSHING
HOSPITAL AND MEDICAL CENTER,
PENINSULA HOSPITAL CENTER, DAVID
P. ROSEN, and MAX SCLAIR,

                              Defendants.
------------------------------------------------------------X

**ORDER**

10-CV-1342 (SJF)(ARL)

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★   JUL 2 4 2012   ★

**LONG ISLAND OFFICE**

FEUERSTEIN, District Judge:

I.      Introduction

         On March 24, 2010, former plaintiff Claudette Fraser commenced this action against

defendants MediSys Health Network, Inc. ("MediSys"), the Jamaica Hospital ("Jamaica"), the

Brookdale Hospital Medical Center ("Brookdale"), Flushing Hospital and Medical Center

("Flushing"), Peninsula Hospital Center ("Peninsula"), David Rosen, President and CEO of

MediSys ("Rosen"), and Max Sclair, Vice-President of Human Resources for MediSys

("Sclair"), alleging violations of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §

201 et seq. and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §

1961 et seq. [Docket Entry No. 1].  Plaintiffs subsequently served an amended complaint,

1

substituting Nellie Sampson ("Sampson") as the named plaintiff and adding a variety of state law claims. [Docket Entry No. 16]. By order dated February 8, 2011, the Court dismissed plaintiffs' claims for gap time compensation, RICO claims, and certain state law claims with prejudice. [Docket Entry No. 124]. The Court dismissed the remainder of the claims without prejudice, and plaintiffs were granted leave to file a second amended complaint. Id.

On March 10, 2011, plaintiffs filed the second amended complaint, which adds Timothy Gill ("Gill") as a named plaintiff. [Docket Entry No. 125]. In brief, the Second Amended Complaint alleges that plaintiffs were not fully compensated for all hours worked, including time worked during meals and breaks, time worked before and after shifts, and time spent in training programs. Defendants have once again moved to dismiss. Before the Court is the Report and Recommendation ("Report" or "R & R") of Magistrate Judge Arlene R. Lindsay, which recommends that all claims in plaintiffs' second amended complaint be dismissed with prejudice. [Docket Entry No. 154]. For the reasons that follow, the Report is adopted in part and modified in part.

II.     Discussion

A.      Review of the Report and Recommendation

Any portion of a report and recommendation on dispositive matters to which a timely objection has been made is reviewed de novo. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The Court is not required to review the factual findings or legal conclusions of the magistrate judge as to which no proper objections are interposed. See Thomas v. Arn, 474 U.S. 140, 150, 106 S.Ct.

466, 88 L.Ed.2d 435 (1985).  To accept the report and recommendation of a magistrate judge on a dispositive matter to which no timely objection has been made, the district judge need only be satisfied that there is no clear error on the face of the record.  See Fed. R. Civ. P. 72(b); Johnson v. Goord, 487 F.Supp.2d 377, 379 (S.D.N.Y. 2007), aff'd, 305 Fed. Appx. 815 (2d Cir. Jan. 9, 2009); Baptichon v. Nevada State Bank, 304 F.Supp.2d 451, 453 (E.D.N.Y. 2004), aff'd, 125 Fed. Appx. 374 (2d Cir. Apr. 13, 2005).  Whether or not proper objections have been filed, the district judge may, after review, accept, reject, or modify any of the magistrate judge's findings or recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

#### B.    Motion to Dismiss Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  "A pleading that offers 'labels and conclusions' or 'a 'formulaic recitation of the elements of a cause of action will not do.'"  Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 557).

In deciding a motion pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Matson v. Bd. of Educ. of the City Sch. Dist. of N.Y., 631 F.3d 57, 63 (2d Cir. 2011); see also Ruston v. Town Bd. for the Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010) ("When there

are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S.Ct. at 1949. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 1950. "While a complaint need not contain detailed factual allegations, it requires more than an unadorned, the defendant-unlawfully-harmed-me accusation." Matson, 631 F.3d at 63 (internal quotation marks and citation omitted).

### C.     Plaintiff's Objections

Plaintiff argues that the R & R erred in: (1) finding that plaintiffs failed to adequately allege that they were employed by Brookdale and Jamaica; (2) finding that plaintiffs failed to adequately allege that they were employed by the remaining defendants; (3) recommending that the second amended complaint be dismissed with prejudice and without leave to amend; (4) determining, on the face of the second amended complaint, that plaintiffs could not proceed on a collective or class basis; (5) determining that the statute of limitations should not be equitably tolled; (6) determining that Gill failed to adequately allege that he was not properly compensated for work performed during meal breaks; and (7) recommending that the Court decline to exercise supplemental jurisdiction over the state law claims. Plaintiff's Objections ("Pl. Obj.") [Docket Entry No. 156].

4

D.     Analysis

The Court adopts the Report's conclusions (1) that Sampson has alleged a plausible overtime claim; (2) that Sampson's meal and break deduction allegations are sufficient;[1] (3) that Sampson has alleged sufficient facts to state a claim regarding the alleged unpaid pre- and post-schedule policy; and (4) that Sampson has pleaded sufficient facts regarding the alleged unpaid training policy. See Report at 10-17. The Court also agrees that defendants have not demonstrated that plaintiffs' FLSA claims must be resolved through the grievance and arbitration provisions of the collective bargaining agreement. Id. at 17-18. However, as the R & R concludes, and as discussed below, plaintiffs have not adequately alleged that all defendants are their "joint employers." See id. at 18-29.

1.     Allegations Concerning Plaintiffs' "Employers"

a.     "Joint Employer" Relationship

"To be held liable under the FLSA, a person must be an 'employer,' which § 3(d) of the statute defines broadly as 'any person acting directly or indirectly in the interest of an employer in relation to an employee.'" Herman v. RSR Sec. Svcs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999) (quoting 29 U.S.C. § 203(d) (1994)). "The Supreme Court has emphasized the 'expansiveness' of the FLSA's definition of employer." Id. (citing Falk v. Brennan, 414 U.S. 190, 195, 94 S.Ct. 427, 38 L.Ed.2d 406 (1973)). "The regulations promulgated under the FLSA expressly recognize that a worker may be employed by more than one entity at the same time." Zheng v. Liberty Apparel Co., Inc., 355 F.3d 61, 66 (2d Cir. 2003).

---

[1] At this stage, Gill's meal and break deduction allegations are also sufficient.

"Because the statute defines employer in such broad terms, it offers little guidance on whether a given individual is or is not an employer." <u>Herman</u>, 172 F.3d at 139. "In answering that question, the overarching concern is whether the alleged employer possessed the power to control the workers in question, with an eye to the 'economic reality' presented by the facts of each case." <u>Id.</u> (citations omitted).[2] "Under the 'economic reality' test, the relevant factors include 'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" <u>Id.</u> (quoting <u>Carter v. Dutchess Cmty. Coll.</u>, 735 F.2d 8, 12 (2d Cir. 1984)); <u>see also</u> <u>Barfield v. N.Y. City Health & Hosps. Corp.</u>, 537 F.3d 132, 142 (2d Cir. 2008). This test is "useful largely in cases involving claims of joint employment, because, when an entity exercises those four prerogatives, that entity, in addition to any primary employer, must be considered a joint employer." <u>Zheng</u>, 355 F.3d at 67 (internal quotation marks and citation omitted). However, "a court cannot use the <u>Carter</u> factors as an 'exclusive four-factor test' to determine whether an entity is an employer under the FLSA," <u>Copantitla v. Fiskardo Estiatorio, Inc.</u>, 788 F.Supp.2d 253, 309 (S.D.N.Y. 2011) (quoting <u>Zheng</u>, 355 F.3d at 71), and "the <u>Carter</u> factors are most helpful 'for determining when an entity exercises sufficient formal control over a worker to be that worker's employer under the FLSA,'" <u>id.</u> (quoting <u>Barfield</u>, 537 F.3d at 144). But "the broad language of the FLSA . . . demands that a district court look beyond an entity's formal right to control the physical

---

[2] "Because the FLSA and New York Labor Law employ similar standards with respect to employment status, [the economic reality] test has been used to analyze both federal and state wage claims." <u>Cannon v. Douglas Elliman, LLC</u>, No. 06 Civ. 7092, 2007 WL 4358456, at *4 (S.D.N.Y. Dec. 10, 2007) (citing cases).

performance of another's work before declaring that the entity is not an employer under the FLSA." Zheng, 355 F.3d at 69.

Thus, in Zheng, the Second Circuit set forth an additional six-factor test to assist in determining whether "an entity that lacked formal control nevertheless exercised functional control over a worker," Barfield, 537 F.3d at 143:

> (1) whether [the alleged employer's] premises and equipment were used for the plaintiffs' work; (2) whether [plaintiff's employer] had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line-job that was integral to [the alleged employer's] process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which [the alleged employer] or [its] agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominately for [the alleged employer].

Zheng, 355 F.3d at 72; see also Wolman v. Catholic Health Sys. of Long Island, Inc., --- F.Supp.2d ----, 2012 WL 566255, at *4 (E.D.N.Y. Feb. 16, 2012). "These particular factors are relevant because, when they weigh in plaintiffs' favor, they indicate that an entity has functional control over workers even in the absence of the formal control measured by the Carter factors." Zheng, 355 F.3d at 72. Ultimately, however, "the various factors relied upon by [the Second Circuit] . . . state no rigid rule for the identification of an FLSA employer." Barfield, 537 F.3d at 143. "To the contrary . . . they provide 'a nonexclusive and overlapping set of factors' to ensure that the economic realities test mandated by the Supreme Court is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA." Id. (quoting Zheng, 355 F.3d at 75-76).

The Court agrees with Magistrate Judge Lindsay that plaintiffs have not adequately alleged they were employed by *all* defendants. See Report at 19-29. In the Second Amended

7

Complaint, plaintiffs allege, <u>inter alia,</u> that they have a "joint employer" relationship with all defendants and that "[d]efendants engage in a joint venture of operational control for providing healthcare services . . . ." Second Amended Complaint ("Sec. Am. Compl.") at ¶¶ 23, 32. The Court need not accept these conclusory allegations as true. <u>See generally</u> <u>Attanasio v. Cmty. Health Sys., Inc.,</u> --- F.Supp.2d ----, 2012 WL 1038718, at *6 (M.D. Pa. Mar. 27, 2012) (allegations that defendants exerted "operational control" over other defendants are "squarely on the conclusory side of the spectrum").

Nor do plaintiffs' more specific allegations adequately allege that *all* defendants exercised formal or functional control over their employment. The second amended complaint alleges that MediSys "maintains system-wide policies and certain employee benefit plans," Sec. Am. Compl. at ¶ 27, that defendants have "centralized supply chain management," <u>id.</u> at ¶ 28, as well as "a centralized approach to management and human resources" and "centralized payroll system," <u>id.</u> at ¶ 33, and that defendants "publish one newsletter," <u>id.</u> at ¶ 26. However, as the Report accurately points out, "[t]here are no facts that indicate that MediSys had any direct role in hiring or firing the plaintiffs or that it supervised or controlled their work schedules." Report at 23. Furthermore, "[t]he complaint also contains no facts that indicate that MediSys had any direct role in controlling the plaintiffs' conditions of employment or in determining their rate and method of payment." <u>Id.</u>

The facts alleged may suggest some kind of affiliation among the defendants, but the Court does not believe that they are sufficient to allege a joint employer relationship or that all defendants meet the definition of "employer" under the FLSA. In short, plaintiffs have failed to include factual allegations sufficient to "raise a right to relief above the speculative level." <u>See</u>

Twombly, 550 U.S. at 555; see also Wolman, 2012 WL 566255, at *4 n. 5 ("[T]he factual

allegations in the Amended Complaint must be sufficient to show that the proposed defendants

meet the FLSA's definition of 'employer.'").

Plaintiffs' claims against Rosen, MediSys President and CEO, and Sclair, MediSys Vice-

President of Human Resources, must also be dismissed. Plaintiffs object that Rosen and Sclair

"centrally control the entire MediSys Health System," and that they have adequately alleged that

these individuals exercise the "requisite control" over employees of the entire network. Pl. Obj.

at 15.

"Courts have consistently held that 'a corporate officer with operational control of a

corporation's covered enterprise is an employer along with the corporation, jointly and severally

liable under the FLSA for unpaid wages.'" Hernandez v. La Cazuela de Mari Restaurant, Inc.,

538 F.Supp.2d 528, 534 (E.D.N.Y. 2007) (quoting Moon v. Kwon, 248 F.Supp.2d 201, 237

(S.D.N.Y. 2002)). The question of whether a corporate officer or director is a "joint employer"

"depends on whether [that individual] exercised sufficient control over [p]laintiffs to be

considered their employer." Wolman, 2012 WL 566255, at *6 (citing Barfield, 537 F.3d at 143).

Although the second amended complaint alleges that Rosen and Sclair were high-ranking officers

in MediSys, plaintiffs do not allege that these individuals had "operational control" over the

employees at Brookdale Hospital Medical Center or Jamaica Hospital, plaintiffs' alleged places

of employment. Id. (allegations that corporate officers were involved in setting pay policies did

not adequately allege "power to control" workers in question). Nor do plaintiffs allege that

Rosen and Sclair ever had any direct contact with them. See id. ("[C]ourts will not find

individual liability when the relationship between plaintiff-employees and the putative employer

9

is too attenuated, especially when the entity has a significant number of employees.") (citing Tracy v. NVR, Inc., No. 04-CV-6541L, 2009 WL 3153150, at *4 (W.D.N.Y. Sept. 30, 2009)).

Finally, the second amended complaint contains no allegations whatsoever to support plaintiffs' claim that Flushing Hospital Medical Center and Peninsula Hospital Center functioned as their "employers." At most, plaintiffs allege that these entities are other members of the "MediSys network." These allegations, standing alone, are insufficient. See id., at *5. Accordingly, the claims against those defendants are also dismissed.

Accordingly, the Court overrules plaintiffs' objection and adopts the recommendation that plaintiffs' claims against Medisys, Flushing Hospital Medical Center, Peninsula Hospital Center, Max Sclair and David Rosen be dismissed with prejudice. See, e.g., Wolman, 2012 WL 566255, at *5 ("These facts, while perhaps establishing some general commonalities between Defendants, do not touch on the central issue: whether Defendants exercised sufficient control over Plaintiffs to be considered their joint employers under the FLSA."); Severin v. Project OHR, Inc., No. 10 Civ. 9696, 2011 WL 3902994, at *6-7 (S.D.N.Y. Sept. 2, 2011) (plaintiffs alleged one defendant's "oversight" of another, but failed to adequately allege that defendant had role in other's personnel decisions); Diaz v. Consortium for Worker Educ., Inc., No. 10-Civ-01848, 2010 WL 3910280, at *4 (S.D.N.Y. Sept. 28, 2010) (complaint "contain[ed] no facts that indicate that [defendant] had any direct role in managing the plaintiffs, hiring or firing the plaintiffs, determining their working hours, or maintaining employment records."); Xue Lian Lin v. Comprehensive Health Mgmt., Inc., No. 08 Civ. 6519, 2009 WL 976835, at *2 (S.D.N.Y. Apr. 9, 2009); Cannon, 2007 WL 4358456, at *3-5.

Plaintiffs will not be permitted to further amend their complaint with respect to these

10

claims.  Plaintiffs have now had three (3) opportunities to properly plead their "joint employment" claims, and defendants have filed two (2) partially successful motions to dismiss. Nonetheless, plaintiffs' allegations as to MediSys, Flushing, Peninsula, Rosen, and Sclair remain deficient in meaningful and significant ways.  As a result, the Court is left without any basis for concluding that any defendants other than Brookdale or Jamaica served as plaintiffs' "employers."  Under the circumstances, the Court can only conclude that further amendment would be futile, and agrees that "three bites at the apple is enough."  <u>See</u> Report at 34 (citing <u>Official Committee of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand LLP</u>, 322 F.3d 147 (2d Cir. 2003)); <u>see also</u> <u>Wolman</u>, 2012 WL 566255, at *12-13 (denying leave to amend as against alleged joint employers).

b.    Employment by Brookdale Hospital Medical Center and Jamaica Hospital

However, the Court believes that Sampson and Gill come much closer to adequately alleging that they were employed by Brookdale and Jamaica.  The second amended complaint alleges that Sampson "worked" as a registered nurse at Brookdale's Schulman and Schachne Institute for Nursing and Rehabilitation from approximately November 30, 2001 until June 1, 2008, and that Gill "worked" as a respiratory therapist at "Hi-Tech Home Care," located at Jamaica, from approximately February 2004 until February 2005.  Sec. Am. Compl. at ¶¶ 64-65. Taking these allegations as true, it is more reasonable to infer that Brookdale and Jamaica possessed the power to control plaintiffs' employment, and that plaintiffs were "employed" by these entities for purposes of the FLSA.  <u>See</u> <u>Cleveland v. Caplaw Enters.</u>, 448 F.3d 518, 521 (2d

Cir. 2006) (on motion to dismiss, the Court must accept the complaint's allegations as true and draw all reasonable inferences in plaintiff's favor).  Even the allegations against Brookdale and Jamaica, however, are spare.  Plaintiffs must add, in a third amended complaint, additional information to their pleading to adequately allege that these particular defendants exercised control over the terms and conditions of their employment, including their compensation.

Accordingly, plaintiffs' claims against Brookdale and Jamaica are dismissed without prejudice.  If plaintiffs wish to file a third amended complaint, they must do so in accordance with these instructions and within twenty (20) days from the date of entry of this order.

### 2.    Equitable Tolling

"The FLSA has a statute of limitations of three years for willful violations and two years for non-willful violations."  Alvarez v. IBM Restaurants, Inc., 839 F.Supp.2d 580, 587 (E.D.N.Y. 2012); see also 29 U.S.C. § 255(a).[3]  Sampson, who claims to have been employed by defendants between November 30, 2001 until June 1, 2008, filed her notice to opt in as a party plaintiff on March 29, 2010. [Docket Entry No. 3].  Gill, who claims to have been employed by defendants between February 2004 and February 2005, filed his notice to opt in as a party plaintiff on June 11, 2010. [Docket Entry No. 14].  Thus, the statute of limitations expired with respect to all of Gill's FLSA claims in or around February 2008, long before this action was commenced.  The statute of limitations has also expired with respect to any of Sampson's FLSA claims originating

---

[3] As plaintiffs have alleged that defendants' violation was "willful," the Court assumes for purposes of this motion that the longer three (3)-year statute of limitations applies. See Alvarez, 839 F.Supp.2d at 587-88 ("Courts in this circuit have generally held that where willfulness is in dispute, a three year statute of limitations applies at the conditional certification stage.")

before March 29, 2007.  Plaintiffs do not dispute this, but argue that the Report erred in

concluding that the statute of limitations could not be equitably tolled.  See Pl. Obj. at 20-21.

      "Equitable tolling allows courts to extend the statute of limitations beyond the time of

expiration as necessary to avoid inequitable circumstances."  Johnson v. Nyack Hosp., 86 F.3d 8,

12 (2d Cir. 1996).  Application of the doctrine is appropriate only in "rare and exceptional

circumstances," Zerilli-Edelglass v. N.Y. City Transit Auth., 333 F.3d 74, 80 (2d Cir. 2003),

including "situations where the complainant has actively pursued his judicial remedies by filing a

defective pleading during the statutory period, or where the complainant has been induced or

tricked by his adversary's misconduct into allowing the filing deadline to pass," Ramirez v.

Rifkin, 568 F.Supp.2d 262, 269 (E.D.N.Y. 2008) (internal quotation marks and citations

omitted); see also Zerilli-Edelglass, 333 F.3d at 80 (equitable tolling may be appropriate where

"plaintiff was unaware of his or her cause of action due to misleading conduct of the defendant").

"When determining whether equitable tolling is applicable, a district court must consider whether

the person seeking application of the equitable tolling doctrine (1) has 'acted with reasonable

diligence during the time period she seeks to have tolled,' and (2) has proved that the

circumstances are so extraordinary that the doctrine should apply." Zerilli-Edelglass, 333 F.3d at

80-81 (quoting Chapman v. ChoiceCare Long Island Term Disability Plan, 288 F.3d 506, 512 (2d

Cir. 2002)).  "An extraordinary circumstance might exist if the employee shows that it would

have been impossible for a reasonably prudent person to learn of the cause of action, or if the

defendant concealed from the plaintiff the existence of the cause of action." Whitehorn v.

Wolfgang's Steakhouse, Inc., 767 F.Supp.2d 445, 449 (S.D.N.Y. 2011) (internal citations

omitted).

Plaintiffs allege that they and other employees questioned "defendants" about their Meal

and Break Deduction Policy, but that "defendants" affirmatively misrepresented "on a number of

occasions" that employees were being paid in accordance with the law. See, e.g., Sec. Am.

Compl. at ¶¶ 79, 116-117. While these allegations may not be a model of perfect clarity, the

Court does not conclude at this stage that equitable tolling is unwarranted as a matter of law. See

Sexton v. Franklin First Financial, Ltd., No. 08-CV-04950, 2009 WL 1706535, at *16 (E.D.N.Y.

June 16, 2009) ("[P]laintiff is not required to have alleged facts in the complaint that overcome

defendants' affirmative defense based on the statute of limitations."). If plaintiffs' employers

actively misrepresented facts in order to conceal a potential cause of action, equitable tolling may

be appropriate. See Whitehorn, 767 F.Supp.2d at 449.

Accordingly, a determination of whether plaintiffs are entitled to equitable tolling is

deferred to a later date. However, plaintiffs are cautioned that it is their burden to demonstrate

that they are entitled to the benefits of this doctrine. Upadhyay v. Sethi, --- F.Supp.2d ----, 2012

WL 260636, at *4 (S.D.N.Y. Jan. 25, 2012). If the evidence demonstrates that plaintiffs knew

(or should have known) about the existence of their cause of action before the statute of

limitations expired, or that there was no actual deception by the remaining defendants, equitable

tolling will be inappropriate.


     3.     State Law Claims

The Second Amended Complaint also includes the following state law claims: violations

of New York Labor Law §§ 190(8) and 191 et seq., breach of implied oral contract, breach of

express contract, breach of the implied covenant of good faith and fair dealing, quantum meruit,

14

unjust enrichment, fraud, negligent misrepresentation, conversion, and estoppel.  Although

Magistrate Judge Lindsay did not reach the merits of defendants' motion to dismiss the state law

claims, these state law claims, except those arising under the New York Labor Law, must be

dismissed with prejudice for several reasons.

        a.     New York Labor Law Claim

     Plaintiffs' New York Labor Law claim arises under Section 191.  "Labor Law § 191 by

its terms only involves the timeliness of wage payments, and does not appear to afford to

plaintiffs any substantive entitlement to a *particular* wage."  Myers v. Hertz Corp., 624 F.3d 537,

545 (2d Cir. 2010) (emphasis in original).  Thus, Section 191 does not appear to be the correct

vehicle for collecting allegedly unpaid overtime wages.  Id. at 545 n. 1 ("New York courts have

suggested that plaintiffs may not use Labor Law § 191 to seek unpaid wages to which they claim

to be entitled under a statute; rather § 191 guarantees only that the wages the employer and

employee have 'agreed' upon be paid in a 'timely' manner again according to the 'terms of [the

employee's] employment.'"); see Sec. Am. Compl. at ¶ 128 ("Defendants failed to act in good

faith by failing to pay wages and overtime as required by New York Labor Law and state

common law.").  Thus, this claim is dismissed insofar as it simply seeks unpaid overtime.  See

id. (noting that the court was "somewhat doubtful . . . that § 191 is the appropriate vehicle to seek

the overtime pay to which plaintiffs claim to be entitled").

     However, plaintiffs do appear to be raising a separate claim that they were not paid in a

"timely" manner in accordance with Section 191.  See Sec. Am. Compl. at ¶ 169 ("Defendants

failed to pay all wages due to Plaintiffs and Class Members on regular days designated in

advance pursuant to New York Labor Law."). As the Second Amended Complaint includes virtually no allegations in support of this claim, this claim is also dismissed without prejudice. If plaintiffs seek to bring an independent claim that they were not paid in a timely manner, they must amend their complaint to include allegations sufficient to state a claim under Section 191.

          b.      Preemption

Plaintiffs' remaining state common law claims, which allege that plaintiffs were not fully compensated for all overtime hours they worked, are preempted by the FLSA.

"[I]t is a 'well-established principle that, in most contexts, a precisely drawn, detailed statute pre-empts more general remedies.'" DeSilva v. North Shore-Long Island Jewish Health Sys., Inc., 770 F.Supp.2d 497, 512 (E.D.N.Y. 2011) (quoting Hinck v. United States, 550 U.S. 501, 506, 127 S.Ct. 2011, 167 L.Ed.2d 888 (2007)). As the court found in DeSilva, "the FLSA sets forth a [] detailed statutory scheme that provides for a careful blend of administrative and judicial enforcement powers, and that, accordingly, provides the exclusive remedy for wage and hour violations that fall within the FLSA's scope." Id. at 513 (internal quotation marks and citation omitted); see also Anderson v. Sara Lee Corp., 508 F.3d 181, 192-94 (4th Cir. 2007) (FLSA-based contract, negligence, and fraud claims preempted). "[A] number of courts have held that where a state common law claim is based upon the same facts as a FLSA cause of action, the duplicative state-law claim is preempted by the FLSA and must be dismissed." DeSilva, 770 F.Supp.2d at 530 (citing cases).[4]

---

[4] As the Court held in its February 8, 2011 order, any state claims arising from breach of a collective bargaining agreement are preempted by Section 301 of the Labor-Management Relations Act ("LMRA"). Furthermore, any claims arising from independent employment

By all appearances, plaintiffs' common law claims are premised on the same set of facts as their FLSA claims. In other words, much like the plaintiffs in DeSilva, plaintiffs in this case "are using their state common law claims, in part, as a vehicle to enforce their FLSA right to overtime compensation for time worked in excess of forty hours per week." DeSilva, 770 F.Supp.2d at 531. As there is no independent basis for the remaining state law claims, the Courts finds that these claims interfere with the FLSA's statutory scheme, and should therefore be dismissed.[5] See, e.g., Hinterberger v. Catholic Health System, No. 08-CV-948S, 2012 WL 125152, at *5 (W.D.N.Y. Jan. 17, 2012) ("circuit courts . . . have concluded that [common law-based overtime] claims are preempted where the relief sought is available under the FLSA"); Barrus v. Dick's Sporting Goods, Inc., 732 F.Supp.2d 243, 263 (W.D.N.Y. 2010); Chen v. Street Beat Sportswear, Inc., 364 F.Supp.2d 269, 293 (E.D.N.Y. 2005) (negligence cause of action "founded upon the same facts as and therefore duplicative of the FLSA claims"); Anderson, 508 F.3d 181. For this reason, plaintiffs' claims for breach of contract, breach of the implied covenant of good faith and fair dealing, quantum meruit, unjust enrichment, fraud, negligent misrepresentation, conversion, and estoppel are all dismissed with prejudice.

c.    Failure to State a Claim

A number of plaintiffs' common law claims also fail pursuant to Rule 12(b)(6).

---

contracts by plaintiffs represented by collective bargaining agents and subject to a CBA are preempted by San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). Docket Entry No. 124 at 15-16.

[5] In its ruling on defendants' first motion to dismiss, the Court noted that defendants had failed to demonstrate that plaintiffs' claims were preempted by the FLSA. Docket Entry No. 124 at 16-17. In this round of briefing, defendants have sufficiently done so.

17

The breach of contract claim is dismissed because plaintiffs have failed to allege the existence of any written or oral contract between any plaintiff and any defendant. "In order to state a claim of breach of contract, the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." Johnson v. Nextel Commc'ns., Inc., 660 F.3d 131, 142 (2d Cir. 2011). Defendants are correct that the second amended complaint lacks any allegations from which the Court could infer that an enforceable contract, written or oral, existed between the parties. Thus, this claim is dismissed for this additional reason. Furthermore, the breach of the implied covenant of good faith and fair dealing claim is dismissed as duplicative of the breach of contract claim. See, e.g., Blessing v. Sirius XM Radio, Inc., 756 F.Supp.2d 445, 460 (S.D.N.Y. 2010) ("Under New York law, a cause of action for breach of the implied covenant of good faith and fair dealing should be dismissed where it is duplicative of the insufficient breach of contract claim.") (internal quotation marks omitted); Matsumura v. Benihana Nat. Corp., No. 06 Civ. 7609, 2010 WL 882968, at *10 (S.D.N.Y. Mar. 5, 2010) (breach of implied covenant of good faith and fair dealing not recognized when based on same facts as breach of contract claim).

Nor do plaintiffs adequately allege a claim of fraud, particularly in light of Rule 9(b)'s heightened pleading standards. "To state a claim for common law fraud in New York, a plaintiff must allege '(1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff.'" Haggerty v. Ciarelli & Dempsey, 374 Fed. Appx. 92, 94 (2d Cir. 2010) (quoting Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 98 (2d Cir. 1997)). Moreover, "[c]ommon law fraud claims must be pled with particularity in accordance

18

with the requirements set forth in Rule 9(b)." King Cnty., Wash. v. IKB Deutsche Industriebank AG, --- F.Supp.2d ----, 2012 WL 1592193, at *5 (S.D.N.Y. May 4, 2012). "In pleading a claim of common law fraud, the plaintiffs must satisfy the requirements of Rule 9(b) and the elements of the applicable state or federal substantive law." Alnwick v. European Micro Holdings, Inc., 281 F.Supp.2d 629, 638 (E.D.N.Y. 2003).

Plaintiffs claim that "the defendants" misrepresented that "employees were being fully paid for the work time for which they were entitled to be paid," and that such misrepresentations occurred "on a number of occasions." Sec. Am. Compl. at ¶ 79. Plaintiffs further allege that "defendants" misled them by publishing corporate materials and employee manuals representing that they would be paid for hours worked. See id. at ¶¶ 109-123. These allegations do not adequately allege a cause of action for fraud; not only have plaintiffs failed to identify the specific time when or place where the alleged misrepresentations were made, but they have failed to identify the defendant who made the allegedly material misrepresentations. See, e.g., DeSilva, 770 F.Supp.2d at 527 ("[C]ourts have . . . found that complaints have failed to satisfy the particularity requirements of Rule 9(b) where, as here, they only vaguely attribute[d] the alleged fraudulent statements to 'defendants.'"); Alnwick, 281 F.Supp.2d at 641 (allegations insufficient when plaintiffs did "not particularize where and when the statement was made," providing only a "vague four-month period of time," and when complaint "lump[ed defendants] together and fail[ed] to specify what each said"); see also Decker v. Massey-Ferguson, Ltd., 681 F.2d 111, 114 (2d Cir. 1982) ("[C]onclusory allegations that defendant's conduct was fraudulent or deceptive are not enough.").

The negligent misrepresentation claim must also be dismissed pursuant to Rule 12(b)(6).

19

"Under New York law, the elements for a negligent misrepresentation claim are that (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relief on it to his or her detriment." Hydro Investors, Inc. v. Trafalgar Power Inc., 227 F.3d 8, 20 (2d Cir. 2000) (citing cases). "[M]any courts . . . have concluded that a plaintiff must satisfy the heightened pleading standard for negligent misrepresentation claims premised on fraudulent conduct." Watson v. Riptide Worldwide, Inc., No. 11 Civ. 0874, 2012 WL 383946, at *3 n. 9 (S.D.N.Y. Feb. 7, 2012). As a threshold matter, plaintiffs have not alleged the existence of a "special relationship" that would give rise to a claim of negligent misrepresentation. Indeed, it is settled that an employer-employee relationship "is not fiduciary in nature and thus does not constitute a 'special relationship' for purposes of a negligent misrepresentation claim." Cohen v. Avanada, --- F.Supp.2d ----, 2012 WL 2198087, at *9 (S.D.N.Y. June 15, 2012). Thus, this claim is dismissed for this reason, as well.

Finally, defendants are correct that "estoppel" is not a cause of action under New York law. Nakahata v. New York-Presbyterian Healthcare Sys., Inc., Nos. 10 Civ. 2661, 10 Civ. 2662, 10 Civ. 2683, 10 Civ. 3247, 2011 WL 321186, at *6 (S.D.N.Y. Jan. 28, 2011) ("[T]here is no distinct equitable estoppel cause of action under New York law; rather, it is an affirmative defense."). This claim is also dismissed.

4.    Collective/Class Claims

"[A] party seeking conditional certification of a collective action [under Section 216] need not demonstrate the Rule 23 requirements of numerosity, commonality, typicality, and adequacy of representation." Jenkins v. TJX Companies Inc., --- F.Supp.2d ----, 2012 WL 1099964, at *2 (E.D.N.Y. Mar. 31, 2012). "Certification of a FLSA collective action generally proceeds in two steps. First, it must be determined, based on the pleadings and any accompanying affidavits, whether the employees in the class appear to be similarly situated . . . . Second, after the completion of discovery, the court makes factual findings regarding whether the plaintiffs who have opted in are actually similarly situated to the named plaintiffs." Poplawski v. Metroplex on the Atlantic, LLC, No. 11-CV-3765, 2012 WL 1107711, at *4 (E.D.N.Y. Apr. 2, 2012) (internal citations omitted).

The Court shares Magistrate Judge Lindsay's concerns about plaintiffs' collective/class action allegations. See Report at 30-32 (noting the wide variety of professionals that plaintiffs seek to include in class).[6] Plaintiffs have failed to include specific allegations as to how defendants' alleged meal, pre- and post-shift work, and training policies affected the wide variety of professionals, from nurses to medical coders to MRI technologists, who plaintiffs seek to include in this action. Nevertheless, it is too early at this stage to conclude that plaintiffs will be unable to proceed on a collective/class basis. To the extent plaintiffs' collective/class action claims survive this order, the Court will defer a decision on the issue of certification until a later

---

[6] While the FLSA claims may be able to proceed in a collective action, the NYLL claims may be able to proceed as a class action pursuant to Rule 23. Spicer v. Pier Sixty LLC, 269 F.R.D. 321, 338 (S.D.N.Y. 2010) ("Courts in this Circuit . . . have found that permitting New York Labor Law claims to proceed as Rule 23(b)(3) class actions, along with FLSA collective actions, is a superior method.").

21

date. See generally Parker v. Time Warner Entm't Co., L.P., 331 F.3d 13, 21 (2d Cir. 2003) (issue of class certification should be based upon "findings of fact," rather than "assumptions of fact"); see also Chenensky v. N.Y. Life Ins. Co., No. 07 Civ. 11504, 2011 WL 1795305, at *4 (S.D.N.Y. Apr. 27, 2011) (in Rule 23 context, denial of class certification "premature" notwithstanding court's concerns that plaintiff would be unable to demonstrate predominance).

Even though plaintiffs' burden at the conditional certification stage is "modest, it is not non-existent." Jenkins, 2012 WL 1099964, at *4. If plaintiffs do seek to proceed with their FLSA claims on a collective basis, they must make a "modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." Laroque v. Domino's Pizza LLC, 557 F.Supp.2d 346, 352 (E.D.N.Y. 2008). If they seek to proceed with their New York Labor Law claims on a class basis, they will be required to make a showing sufficient to satisfy Rule 23.

The Court has reviewed the remainder of the Report and finds that it is not clearly erroneous.


III.    Conclusion

For the foregoing reasons, the Report is adopted in part and modified in part. The Clerk of Court shall enter judgment in favor of all defendants except Brookdale Hospital Medical Center and Jamaica Hospital. Plaintiffs shall file a third amended complaint in accordance with this order within twenty (20) days of the date of entry of this order; in the event they fail to do so, this case will be closed.

**SO ORDERED.**

s/ Sandra J. Feuerstein

Sandra J. Feuerstein
United States District Judge

Dated:      July 24, 2012
            Central Islip, New York

23