**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **NELLIE SAMPSON** AND **TIMOTHY GILL,** *on behalf of themselves and all other employees similarly situated,* <br><br> *Plaintiffs,* <br><br> v. <br><br> **THE JAMAICA HOSPITAL MEDICAL CENTER** AND **THE BROOKDALE HOSPITAL MEDICAL CENTER D/B/A BROOKDALE UNIVERSITY HOSPITAL AND MEDICAL CENTER,** <br><br> *Defendants.* | **THIRD AMENDED COMPLAINT- CLASS ACTION AND DEMAND FOR JURY TRIAL** <br><br> **Civil Action No. 10-cv-1342 (SJF)(ARL)** |

## NATURE OF CLAIM

1.   This is a proceeding for injunctive and declaratory relief and monetary damages to redress the deprivation of rights secured to plaintiffs, Nellie Sampson and Timothy Gill, individually, as well as all other employees similarly situated, under the Fair Labor Standards Act of 1938 ("FLSA"), and the New York Labor Law ("NYLL").

## JURISDICTION AND VENUE

2.   The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343 (3) and (4) conferring original jurisdiction upon this Court of any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights; under 28 U.S.C. § 1337 conferring jurisdiction of any civil action arising under any Act of Congress regulating interstate commerce; under the Declaratory Judgment Statute, 28 U.S.C. § 2201; and under 29 U.S.C. § 216(b).

3.   This Court's supplemental jurisdiction of claims arising under New York State law is also invoked.

4.   Venue is appropriate in the Eastern District of New York since the allegations

arose in this District and at least one of the Named Plaintiffs reside in this District.

## CLASS ACTION ALLEGATIONS

5.  The claims arising under New York State law are properly maintainable as a class action under Federal Rule of Civil Procedure 23 ("Rule 23").

6.  The class action is maintainable under subsections (1), (2) and (3) of Rule 23(b).

7.  Common questions of law and fact predominate in this action because the claims of all class members are based on whether defendants' practice of not paying nonexempt employees for all hours worked and/or overtime for hours worked over forty per week violates the law.

8.  The class and collective action members consist of current and former employees who worked for defendants, were paid hourly, and were not paid for all the time they worked including applicable premium pay ("Class Members").

9.  The class size is believed to be over 50 employees.

10.  The Named Plaintiffs will adequately represent the interests of the Class Members because they are similarly situated to the Class Members and their claims are typical of, and concurrent to, the claims of the other Class Members.

11.  There are no known conflicts of interest between the Plaintiffs and the other Class Members.

12.  Class Counsel, Thomas & Solomon LLP, is qualified and able to litigate the Plaintiffs' and Class Members' claims.

13.  Class Counsel concentrates its practice in employment litigation, and its attorneys are experienced in class action litigation, including class actions arising under

federal wage and hour laws.

14.     The class action is maintainable under subsection (1) of Rule 23(b) because prosecuting separate actions by individual Class Members would create the risk of inconsistent adjudications, resulting in incompatible standards of conduct for defendants.

15.     The class action is maintainable under subsection (2) of Rule 23(b) because plaintiffs seek injunctive relief requiring defendants to properly pay Named Plaintiffs and Class Members for all hours worked in excess of 40 hours per week at the statutorily required premium rates.

16.     The class action is maintainable under subsection (3) of Rule 23(b) because common questions of law and fact predominate among the Class Members and because the class action is superior to other available methods for the fair and efficient adjudication of the controversy.

17.     The class is also maintainable under Rule 23(c)(4) with respect to particular legal and factual issues raised in this litigation.

<u>**PARTIES**</u>

**A.     Defendants**

18.     Brookdale Hospital Medical Center[1] and Jamaica Hospital Medical Center (collectively "defendants") are hospitals which were part of the MediSys Health Network.[2]

19.     Defendants were engaged in commerce or the production of goods for

---

[1]     Although defendant Brookdale Hospital Medical Center is also known as Brookdale University Hospital and Medical Center, the entity is the same.

[2]     Without waiving, and specifically reserving any rights to appeal, plaintiffs' allegations that reference MediSys Health Network in this Complaint are for the purpose of supporting their claims against Brookdale Hospital Medical Center and Jamaica Hospital Medical Center – not for the purpose of alleging claims against MediSys Health Network, consistent with the Court's Order dated July 24, 2012.

commerce.    Defendants are engaged in commerce whose annual gross volume of sales made is not less than $500,000.

20.    Defendants are plaintiffs' "employer" as defined by the FLSA, 29 U.S.C. § 203(d) and NYLL.

***Brookdale Hospital Medical Center***

21.    According to their website, Brookdale Hospital Medical Center joined MediSys Health Network in 2000.

22.    Brookdale Hospital Medical Center is a full service medical, surgical, pediatric, and rehabilitative, specialty and long term care provider.

23.    Brookdale Hospital Medical Center is located in Brooklyn, New York. Brookdale Hospital Medical Center is one of the largest voluntary nonprofit teaching hospitals in Brooklyn.

24.    According to Brookdale Hospital Medical Center, they are comprised of 530 acute-care beds, 448 skilled nursing beds in the Schulman and Schachne Institute for Nursing and Rehabilitation, 87 units of assisting living and independent living at the Arlene and David Schlang Pavilion, a home health care agency, and an adult day care center.

25.    On its website, people can apply for jobs at Brookdale Hospital Medical Center.

26.    Brookdale Hospital Medical Center employs approximately 4,000 employees, and, at one time, employed Named Plaintiff Nellie Sampson.

27.    As an employer of these individuals, Brookdale Hospital Medical Center gave some if not all of them an employee handbook.

28.    Brookdale Hospital Medical Center was responsible for paying employees.  For

example, Brookdale Hospital Medical Center's name appeared on employee paystubs.

*Jamaica Hospital Medical Center*

29.     According to Jamaica Hospital Medical Center's 990 Form, MediSys Health Network is their parent organization and sole corporate member.

30.     As set forth in their website, Jamaica Hospital Medical Center provides the public general medical, pediatric, and psychiatric emergency services, ambulatory care, ambulatory surgery, diagnostic and treatment services, and home health services.  They also provide long term care at the Trump Pavilion.

31.     On its website, people can apply for jobs at Jamaica Hospital Medical Center.

32.     Jamaica Hospital Medical Center employs thousands of employees, and, at one time, employed Named Plaintiff Timothy Gill.

33.     Jamaica Hospital Medical Center was responsible for paying employees.  For example, Jamaica Hospital Medical Center's name appeared on employee paystubs.

**B.     Plaintiffs**

*Named Plaintiffs*

34.     At all relevant times, Nellie Sampson and Timothy Gill ("Plaintiffs") were employees of defendants and were employed within this district.

35.     At all relevant times, Brookdale Hospital Medical Center employed Named Plaintiff Nellie Sampson, and she worked for Brookdale Hospital Medical Center in the Schulman and Schachne Institute for Nursing and Rehabilitation from approximately November 30, 2001 until June 1, 2008 as a registered nurse.  Brookdale Hospital Medical Center was responsible for paying Ms. Sampson, and Brookdale Hospital Medical Center's name appeared on employee paystubs.  Brookdale Hospital Medical Center, though its

-5-

management, determined Ms. Sampson's scheduled hours and rate of pay.   Therefore, Ms. Sampson worked at and was an employee of Brookdale Hospital Medical Center.

36.     As a registered nurse for defendant Brookdale Hospital Medical Center, Named Plaintiff Sampson was typically scheduled from 3 pm until 11:15 pm approximately five days a week, totaling 37.5 hours, excluding time for which Ms. Sampson did not receive compensation. However, occasionally, Ms. Sampson picked up an additional 11 pm until 7:15 am shift resulting in a workweek of at least 45 hours, excluding time for which Ms. Sampson did not receive compensation.  In addition to the scheduled hours listed above, Ms. Sampson worked time for which she did not receive compensation, including during her meal breaks which were typically missed or which were interrupted while completing regular duties, including completing documentation, answering calls, and tending to emergency situations; before her scheduled start time in order to begin her regular job duties, including meeting with outgoing staff, receiving report and making rounds, typically resulting in an additional 10 minutes a week; after her scheduled end time while continuing her regular care duties, including giving report and taking inventory of the narcotics, typically resulting in an additional 15 minutes of time each shift or as long as 30 minutes of time if she was tending to an emergency or dealing with an ongoing patient issue; and for training such as CPR training which was approximately two hours every two years, and in-service classes on topics such as new treatments, wound care, medication administration, IV training, and HIV training which would typically be approximately eight hours twice a year.  As a result, Ms. Sampson experienced uncompensated time of at least 5 hours and 10 minutes in weeks without training time and up to 15 hours and 10 minutes in weeks with training time.  Given that Ms. Sampson typically worked at least 37.5 hours per week for which she received

compensation, at least part of the uncompensated time she worked should have been paid at overtime rates (*e.g.,* the first 2.5 hours should have been paid at straight time rates and all additional hours should have been paid at overtime rates), and when her scheduled hours exceeded forty hours, all of such uncompensated time should have been paid at overtime rates. Named Plaintiff Sampson was subject to the 1199 SEIU collective bargaining agreement ("CBA").

37. At all relevant times, defendant Jamaica Hospital Medical Center employed Named Plaintiff Timothy Gill, and he worked for Jamaica Hospital Medical Center at Hi-Tech Home Care from approximately February 2004 until February 2005 as a respiratory therapist. Mr. Gill completed his drug screening and background check at Jamaica Hospital Medical Center. Additionally, he completed his employee orientation at Jamaica Hospital Medical Center. As an employee of Jamaica Hospital Medical Center, Mr. Gill contacted Human Resources within the hospital itself if he had any questions. As an employee of Jamaica Hospital Medical Center, he also received an employee handbook. Further, his supervisor was also an employee of Jamaica Hospital Medical Center and had an office at Jamaica Hospital Medical Center. Jamaica Hospital Medical Center set Mr. Gill's rate of pay and compensation through Mr. Gill's supervisor. Further, Jamaica Hospital Medical Center's name appeared on employee paystubs. Mr. Gill also received his accounts from hospitals in the MediSys Health Network, including Jamaica Hospital Medical Center. Therefore, Mr. Gill was an employee of and worked at Jamaica Hospital Medical Center.

38. As a respiratory therapist for defendants, Named Plaintiff Gill was typically scheduled from 8 am until 5 pm approximately five days a week totaling 35 hours, excluding time for which Mr. Gill did not receive compensation. In addition to the scheduled hours

listed above, Mr. Gill worked time for which he did not receive compensation, including during his meal breaks which he typically missed or which were interrupted while completing his regular duties, including answering telephone calls from patients and doctors and repairing or setting up equipment; before his scheduled start time in order to begin his regular duties including retrieving his equipment from defendant and subsequently dropping off the equipment to other locations, typically resulting in an additional two hours every week; and after his scheduled end time while continuing his regular duties, including completing patient visits and checking equipment functionality, typically resulting in an additional hour and a half each shift.  Given that Mr. Gill typically worked 35 hours per week for which he received compensation, this additional uncompensated time of at least 14 hours and 30 minutes, would have resulted in his total hours exceeding 40 hours per week therefore requiring all hours over 40 to be paid at overtime rates (*e.g*, the first five hours of uncompensated time should have been paid at straight time rates and all additional hours should have been paid at overtime rates).  Named Plaintiff Gill was not subject to a CBA while employed by Jamaica Hospital Medical Center.

### Class Members

39.     The Class Members are those current and former employees as defined above.

40.     Plaintiffs and Class Members are similarly situated.

## FACTUAL BACKGROUND

41.     MediSys Health Network Inc. is a large health care provider in New York.

42.     The Brookdale Hospital Medical Center and Jamaica Hospital Medical Center were part of the MediSys Health Network Inc.

43.      Across the United States, pay practices throughout the health care industry

are being investigated for failure to properly pay hourly employees for all time worked, including overtime to those employees working over 40 hours in a week. *See* New York Times Article "Pay Practices in Health Care Are Investigated," attached hereto as <u>Exhibit A</u>.

44. Class Counsel's investigation has confirmed that indeed there is a common practice in the healthcare industry that results in hourly employees not being compensated for all time worked, including overtime compensation.

45. As discussed below, defendants here maintained several illegal pay policies that denied Plaintiffs and Class Members compensation for all hours worked, including applicable premium pay rates.

### *Meal and Break Deduction Policy*

46. One of the policies resulting in Plaintiffs and Class Members not receiving compensation for all time worked was defendants' "Meal and Break Deduction Policy." Defendants maintain the Meal and Break Deduction Policy throughout their facilities and centers.

47. Under this policy, defendants' timekeeping system automatically deducts time from employees' paychecks each day for meals, breaks and other reasons.

48. Plaintiffs and Class Members are deducted at least thirty minutes from their pay each shift they work long enough shifts for a meal break. This deduction occurs on every shift to every Plaintiff and Class Member, regardless of their position, unit or location.

49. Plaintiffs and Class Members do in fact perform work during those breaks and are not paid for that time. During this time, Plaintiffs and Class Members were performing tasks such as continuing regular job duties, answering/returning phone calls, equipment maintenance, completing documentation, and tending to emergency situations.

50.     Defendants' Meal and Break Deduction Policy is legally challengeable in several respects given that the defendants do not satisfy their obligations to use all reasonable efforts to determine if people worked during meal breaks and did not receive pay.

51.     First, despite automatically deducting time for meal breaks, defendants fail to ensure that Plaintiffs and Class Members do not perform work during those breaks.

52.     To the contrary, defendants actually knowingly permit Plaintiffs and Class Members to be available to work throughout their shifts and consistently require their employees to work during their unpaid breaks.   This is particularly the case given that defendants operate on a 24/7 basis.   They do not shut down their operations or take other sufficient steps to ensure that Plaintiffs and Class Members do not perform work during the breaks which they automatically deduct.

53.     Nor do defendants prohibit Plaintiffs and Class Members from working during their unpaid breaks and do not have rules against such work.

54.     Plaintiffs and Class Members are also not relieved by another employee when their break comes, or asked to leave their work location. Further, given the demands of the health care industry and short staffing, defendants' management knew that to get the tasks done they assigned to Plaintiffs and Class Members, when they needed to get done, Plaintiffs and Class Members had to work through their meal breaks, even during times they were not paid for their meal breaks.

55.     Second, defendants admittedly shift their statutory obligation to record and pay for all hours worked to their employees.

56.     Regardless of the location, defendants' policies uniformly shift to the Plaintiffs and Class Members the defendants' statutory responsibility to ensure that the Plaintiffs and

Class Members are paid for time worked during meal breaks.  In particular, at all of the defendants' locations, one of the common pillars of defendants' policy is that Plaintiffs and Class Members are responsible for ensuring all time worked during meal periods is properly credited and paid to Plaintiffs and Class Members.

57.     Defendants' policies and practices do not make the defendants and their managers the ones responsible for ensuring that time they permit Plaintiffs and Class Members to work is paid and credited to the Plaintiffs and Class Members.

58.     Pursuant to this policy at all locations, Plaintiffs and Class Members will not necessarily be paid for compensable work during meal periods if they themselves do not assume the responsibility to ensure the wages are paid.

59.     Third, the Meal Break Deduction Policy results in extensive uncompensated work being performed by Plaintiffs and Class Members.

60.     As described by the Plaintiffs, they like other Class Members often performed work during their meal breaks and as such their experiences are shared by all Class Members.

61.     At each of defendants' facilities each day Class Members work during a substantial percentage of meal periods and a substantially smaller number of meal periods are credited to the Class Members.

62.     The amount and frequency of such uncompensated work was so substantial that it reflects the defendants' actual policy or practice for the compensation of Plaintiffs and Class Members during their meal periods.

63.     Fourth, defendants do not have available to them the defense that they have used all reasonable efforts to prevent uncompensated work from being performed and all reasonable efforts to inquire as to whether such work was being performed.

64.     As discussed above, the defendants made no efforts to prevent Plaintiffs and Class Members from working during meal periods for which Plaintiffs and Class Members were not compensated.

65.     Additionally, in terms of inquiring about whether Plaintiffs and Class Members were working uncompensated time, as well as making sure that work did not happen, defendants failed to conduct regular and effective audits and surveys which would have revealed the uncompensated work being performed by Plaintiffs and Class Members.

66.     Further, defendants failed to adequately monitor Plaintiffs and Class Members to ascertain whether uncompensated work is being performed and to enforce policies which ensure compensation for all time worked.

67.     The defendants do not systematically review the records of their employees' work to determine if uncompensated work is being performed and whether there are inconsistencies between those records and the wage payments to Plaintiffs and Class Members.

68.     Nor do defendants engage in effective training of their managers or their employees to ensure they understand that employees must be compensated for all hours worked, including during meal breaks.

69.     Moreover, reasonable efforts to record and pay Plaintiffs and Class Members properly would not include shifting to Plaintiffs and Class Members defendants' statutory obligations of properly recording time and compensating employees.

70.     The defendants did not routinely discipline Plaintiffs and Class Members who failed to record their meal breaks.

71.     The defendants do not take into account literature and surveys in the medical

field which show that employees with similar job duties in the same or similar hospitals work during meal periods at far higher rates than that for which the defendants credit the Plaintiffs and Class Members for such meal periods. The defendants have not attempted to systematically inquire as to whether such inconsistencies between such surveys and defendants' own payments to Plaintiffs and Class Members indicates a serious, systemic problem in regards to Plaintiffs and Class Members not getting paid for all time worked.

72.     Plaintiffs and Class Members, regardless of location, position, unit or shift, are subject to the Meal and Break Deduction Policy and are not fully compensated for work they perform during breaks.

73.     As a result of the uniform policy, Plaintiffs and Class Members are entitled to compensation for all time they performed work for defendants, including during their unpaid breaks. Thus, overall, defendants' policy leads to Plaintiffs and Class Members not being compensated for all hours worked.

74.     In addition, defendants know or should have known that the Plaintiffs and Class Members perform work during these meal and other unpaid breaks, but still do not pay them for this time pursuant to their Meal and Break Deduction Policy.

75.     One of the ways defendants are aware of such work being performed is because the defendants permit, and often request, that such work be done by the Plaintiffs and Class Members during their unpaid meal breaks.  This work is done on defendants' premises during operational hours, and in full view of the defendants' managers and supervisors.  Thus defendants permit that such work be done, and have actual and constructive knowledge it is being performed.

76.     Defendants also know that Plaintiffs and Class Members are receiving assigned

tasks that must be completed by the appointed deadline, which results in employees having to work through their meal breaks even though they are not getting paid for the work.

77. Accordingly, defendants should have known that Plaintiffs and Class Members perform work during their unpaid breaks. Even though defendants know or should have known their employees are performing such work, defendants fail to compensate their employees for such work.

78. This additional uncompensated time should have been paid at overtime rates when Plaintiffs, as discussed above, and Class Members' scheduled shifts exceeded 40 hours in a week, or when the uncompensated time from missed or interrupted meal breaks, pre- and post- schedule work, and training time, pushed their hours for the week over 40.

79. Plaintiffs and Class Members subject to the Meal and Break Deduction Policy are members of Class A.

***Unpaid Pre- and Post Schedule Work Policy***

80. Another policy resulting in uncompensated time for Plaintiffs and Class Members is defendants' "Unpaid Pre- and Post Schedule Work Policy."

81. Under this policy, defendants suffered or permitted Plaintiffs and Class Members to perform work before and/or after the end of their scheduled shifts.

82. However, defendants failed to pay Plaintiffs and Class Members for all time spent performing such work as a result of defendants' policies, practices and/or time recording system.

83. For example, Plaintiffs and Class Members were not allowed to record all of their work performed before or after scheduled shifts.

84. Additionally, even if time was recorded before or after scheduled shifts, it was

not compensated properly.

85.     For example, Plaintiffs and Class Members often had to continue their regular shift responsibilities before and/or after their scheduled shift ended.  During this time, for example, Plaintiffs and Class Members charted, completed inventory, met with a supervisor, provided reports to relief, received reports, attended to urgent situations and completed general patient care duties.  This time spent working was uncompensated.

86.     Defendants' Pre- and Post-Schedule Work Policy is also legally challengeable in several respects.

87.     First, despite not compensating Plaintiffs and Class Members for their work before and after their scheduled shift, defendants fail to ensure that Plaintiffs and Class Members do not perform work before and after their shifts.  As discussed above, defendants operate on a 24/7 basis and expect Plaintiffs and Class Members to respond to the hospital demands regardless of whether it is outside of their scheduled shifts.

88.     Additionally, defendants do not prohibit Plaintiffs and Class Members from working before and after their shifts and do not have rules against such work.

89.     Second, as stated above, defendants cannot shift their statutory obligation to record and pay for all hours worked to their employees, including requiring employees to record deviations from their scheduled hours.   In fact, defendants routinely only paid Plaintiffs and Class Members for their scheduled shifts and not for work performed before and after their scheduled shifts.

90.     Third, the Pre- and Post-Schedule Work Policy results in extensive uncompensated work being performed by Plaintiffs and Class Members.

91.     As described by the Plaintiffs, they like other Class Members often performed

work during before and after their shifts and as such their experiences are shared by all Class Members.

92.     The amount and frequency of such uncompensated work was so substantial that it reflects the defendants' actual policy or practice for the compensation of Plaintiffs and Class Members for time worked before and after their shifts.

93.     Fourth, defendants do not have available to them the defense that they have used all reasonable efforts to prevent uncompensated work from being performed and all reasonable efforts to inquire as to whether such work was being performed.

94.     As discussed above, the defendants made no efforts to prevent Plaintiffs and Class Members from working before and after their scheduled shifts for which Plaintiffs and Class Members did not receive compensation.

95.     Additionally, as discussed above, in terms of inquiring about whether Plaintiffs and Class Members were working uncompensated time, as well as making sure that work did not happen, defendants failed to conduct regular and effective audits and surveys which would have revealed the uncompensated work being performed by Plaintiffs and Class Members and to adequately monitor employees to ascertain whether uncompensated work is being performed and to enforce policies which ensure compensation for all time worked.

96.     The defendants do not systematically review the records of their employees' work to determine if uncompensated work is being performed and whether there are inconsistencies between those records and the wage payments to Plaintiffs and Class Members.

97.     Defendants also fail to engage in effective training of their managers or their employees to ensure they understand that employees must be compensated for all hours

worked, including during before and after their shifts.

98.   Moreover, reasonable efforts to record and pay Plaintiffs and Class Members properly would not include shifting to Plaintiffs and Class Members defendants' statutory obligations of properly recording time and compensating employees.

99.   The defendants did not routinely discipline Plaintiffs and Class Members who fail to record work performed before and after their scheduled shifts.

100.   The defendants do not take into account literature and surveys in the medical field which show that employees with similar job duties in the same or similar hospitals perform work before and after their scheduled shifts.

101.   In addition, defendants know or should have known that the Plaintiffs and Class Members perform work before and after their scheduled shifts, but still do not pay them for this time pursuant to their Pre- and Post-Schedule Work Policy.

102.   For example, defendants were aware such work was performed because the defendants permit, and often request, that such work be done by the employees.  This work is done on defendants' premises during operational hours, and in full view of defendants' managers and supervisors.  Thus defendants permit that such work be done, and have actual and constructive knowledge it is being performed.

103.   Plaintiffs and Class Members also had conversations with defendants' managers in which they discussed how they were working before or after their scheduled shift and were not getting paid for such work.

104.   Defendants also know that Plaintiffs and Class Members are receiving assigned tasks that must be completed by the appointed deadline, which results in Plaintiffs and Class Members having worked beyond their scheduled shifts even though they are not being paid

for the work.

105.    Although defendants, including managers, were aware Plaintiffs and Class Members performed this work beyond their scheduled work shifts, Plaintiffs and Class Members continued to perform work for which they were not compensated.

106.    This additional uncompensated time should have been paid at overtime rates when Plaintiffs, as discussed above, and Class Members' scheduled shifts exceeded 40 hours in a week, or when the uncompensated time from missed or interrupted meal breaks, pre- and post- schedule work, and training time, pushed their hours for the week over 40.

107.    Plaintiffs and Class Members subject to the Unpaid Pre- and Post-Schedule Work Policy are members of Class B.

**Unpaid Training Policy**

108.    Defendants also suffered or permitted Plaintiffs and Class Members to attend compensable training programs.

109.    However, defendants fail to pay Plaintiffs and Class Members for all time spent attending such training sessions (the "Unpaid Training Policy").

110.    Often these training activities occurred during regular working hours; were required by defendants; and were directly related to their position with defendants.  Further, Plaintiffs and Class Members were often required to actively participate in the training.

111.    For example, Plaintiffs and Class Members attended mandatory in-services and training sessions covering topics such as CPR, new treatments, wound care, medication administration, IV training, and HIV training.  Such training related to Plaintiffs and Class Members' jobs by, for example providing instruction on techniques to be used by employees when performing their jobs and regularly occurred during working hours.

-18-

112. Even though defendants know or should have known their employees are performing such work, defendants fail to compensate their employees for such work.

113. Defendants' Unpaid Training Policy is also legally challengeable in several respects.

114. First, defendants fail to ensure that Plaintiffs and Class Members are compensated for all training time, despite requiring Plaintiffs and Class Members to complete such training.

115. Second, consistent with routinely paying Plaintiffs and Class Members only for their scheduled shifts, defendants shift their statutory obligation to record and pay for all hours worked by requiring Plaintiffs and Class Members to record time for training performed.

116. Third, the Unpaid Training Policy results in extensive uncompensated work being performed by employees.

117. As described by Named Plaintiff Sampson, she often completed training and her experiences are shared by Class Members.

118. The amount and frequency of such uncompensated work was so substantial that it reflects the defendants' actual policy or practice for the compensation of Class Members for training.

119. Fourth, defendants do not have available to them the defense that they have used all reasonable efforts to prevent uncompensated work from being performed and all reasonable efforts to inquire as to whether such work was being performed.

120. As above, the defendants made no efforts to prevent Plaintiffs and Class Members from training without compensation nor did they inquire about whether employees

were performing training without compensation. They also failed to conduct regular and effective audits and surveys which would have revealed the uncompensated work; to adequately monitor Plaintiffs and Class Members to ascertain whether uncompensated work is being performed and to enforce policies which ensure compensation for all time worked; to systematically review the records of their Plaintiffs and Class Members' work to determine if uncompensated work is being performed and whether there are inconsistencies between those records and the wage payments to Plaintiffs and Class Members; and to engage in effective training of their managers or their employees to ensure they understand that employees must be compensated for all hours worked, including training time.

121.    Moreover, reasonable efforts to record and pay employees properly would not include shifting to Plaintiffs and Class Members defendants' statutory obligations of properly recording time and compensating employees.

122.    The defendants did not routinely discipline Plaintiffs and Class Members who fail to record training time.

123.    This additional uncompensated time should have been paid at overtime rates when Plaintiffs, as discussed above, and Class Members' scheduled shifts exceeded 40 hours in a week, or when the uncompensated time from missed or interrupted meal breaks, pre- and post-schedule work, and training time, pushed their hours for the week over 40.

124.    All Plaintiffs and Class Members subject to the Unpaid Training Policy are members of Class C.

125.    Collectively, the Meal and Break Deduction Policy, the Unpaid Pre- and Post-Schedule Work Policy, and the Unpaid Training Policy are referred to herein as the "Unpaid Work Policies."

*Additional Allegations*

126.   Plaintiffs and Class Members were subject to defendants' timekeeping policies which fail to ensure that employees are compensated for all hours worked, including pursuant to the Unpaid Work Policies.

127.   Even though defendants permitted its employees to perform such work, defendants still fail to compensate their employees for this time.

128.   Defendants' practice is to be deliberately indifferent to these violations of the statutory wage and overtime requirements.

129.   For example, through the paystubs and payroll information they provided to Plaintiffs and Class Members, defendants deliberately concealed from their Plaintiffs and Class Members that they did not receive compensation for all compensable work that they performed and misled them into believing they were being paid properly.

130.   Indeed, defendants, through their corporate publications and through statements of their agents, represented that wages would be paid legally and in accordance with defendants' obligations pursuant to applicable laws.

131.   Defendants misrepresented in their employee manuals and policy manuals to Plaintiffs and Class Members that they would be paid for all hours worked including those worked both under and in excess of forty in a work week.

132.   Defendants intended for Plaintiffs and Class Members to rely upon defendants' misrepresentations that they would be paid for all the time worked, including applicable premium pay.

133.   However, at all times, defendants intended to violate applicable laws by failing to pay Plaintiffs and Class Members for all the time worked, including applicable premium

pay.

134.    Further, by maintaining and propagating the illegal Unpaid Work Policies, defendants deliberately misrepresented to Plaintiffs and Class Members that they were being properly paid for all compensable time, even though Plaintiffs and Class Members were not receiving pay for all time worked including applicable premium pay.

135.    The Plaintiffs and Class Members are not experts in proper payment under labor laws, and more specifically are not aware of what time is compensable for interrupted and missed meal breaks, nor how the defendants' internal computer systems were determining the amount they were being paid.

136.    Further, when questioned, the defendants falsely assured Plaintiffs and Class Members that the defendants understood federal and state labor laws and that based on that knowledge, the defendants were ensuring that they were properly paying the Plaintiffs and Class Members.

137.    The defendants made this representation despite the fact that such claims were false, fully knowing that Plaintiffs and Class Members were relying on the defendants' "expertise" and assurances.

138.    Further, these assurances were not contradicted by the information in legal postings required by state or federal law to be displayed prominently at places of work to which Plaintiffs and Class Members had access.

139.    Prior to seeking legal advice from Class Counsel, the Plaintiffs were never alerted to the defendants' concealment of their violation of the law by failing to pay the Plaintiffs and Class Members properly.  Plaintiffs and Class Members are under no duty to inquire of defendants that they were paid for all hours worked including applicable premium

-22-

pay.

140.   Further, not until the commencement of this action were Class Members made aware that the defendants' conduct in fact violated the law. As a result, employees were unaware of their claims.

141.   The defendants engaged in such conduct and made such statements to conceal from the Plaintiffs and Class Members their rights and to frustrate the vindication of the employees' rights.  Such conduct by the defendants equitably tolls the statute of limitations covering Plaintiffs' and Class Members' claims and defendants are estopped from asserting statute of limitations defenses against Plaintiffs and Class Members.   Defendants' failure to pay overtime as required by the FLSA is willful.

142.   Among the relief sought, Plaintiffs and Class Members seek injunctive relief under state law to prevent defendants from continuing the illegal policies and practices perpetuated pursuant to the Unpaid Work Policies.

143.   Additionally, as set forth in the allegations above, the defendants concealed from the Plaintiffs and Class Members the facts that are the basis for their claims.

144.   Because of such conduct, the Plaintiffs and Class Members did not discover in the relevant statute of limitations period that the defendants were not paying them properly.

145.   The Plaintiffs and Class Members exercised due diligence, but still were unaware of their rights.

146.   Defendants were responsible for compensating employees for all time suffered or permitted to work.  As discussed above, defendants' names appeared on the paychecks of employees.

147.   However, because defendants did not pay Plaintiffs and Class Members for all

work performed, including during meal breaks, before and after their shifts, and for training, defendants failed to pay Plaintiffs and Class Members for all time suffered or permitted to work.  Because Plaintiffs and Class Members were not paid for all hours worked, they were not paid timely for that work as required by the New York Labor Law.

148.   Defendants failed to pay all wages due to Plaintiffs and Class Members on regular days designated in advance pursuant to New York Labor Law.

149.   Defendants failed to act in good faith by failing to pay wages and overtime as required by New York Labor Law.

150.   As a direct and proximate cause of defendants' failure to act in good faith, defendants violated the New York Labor Law.

151.   In addition to the loss of wages, Plaintiffs and Class Members have suffered non-economic harm as a result of defendants' policies.  These included, but are not limited to, the personal loss of break and rest time, personal suffering and emotional distress.

152.   Because defendants' Unpaid Work Policies involve an employer intentionally misleading and deceiving Plaintiffs and Class Members about their wages, and withholding wages legally and properly payable to Plaintiffs and Class Members, they are policies that are against the strong public policy of the State of New York with respect to employees' wages.

153.   Plaintiffs and Class Members also allege that defendants have engaged in a failure to keep accurate records in the course of maintaining their Unpaid Work Policies in their dealings with Plaintiffs and Class Members.

154.   As such, defendants failed to make, keep and preserve true and accurate records of the hours worked by Plaintiffs and Class Members in violation of New York Labor Law.

155.    Plaintiffs and Class Members were not classified as exempt employees because hourly employees do not fall under one of the enumerated exemptions under the FLSA or NYLL.

### FIRST CAUSE OF ACTION
*FLSA*

156.    Plaintiffs and Class Members reallege the above paragraphs as if fully restated herein.

157.    Defendants willfully violated their obligations under the FLSA and are liable to Plaintiffs and Class Members.

### SECOND CAUSE OF ACTION
*New York Labor Law*

158.    Plaintiffs and Class Members reallege the above paragraphs as if fully restated herein.

159.    As a direct and proximate cause of defendants' acts, including defendants' failure to act in good faith, defendants willfully violated the New York Labor Law and Plaintiffs and Class Members have suffered damages pursuant to N.Y. LAB. LAW § 190(8), N.Y. LAB. LAW § 191 *et seq.*, including N.Y. LAB. LAW §§ 191, 193, 198, and 12 N.Y. COMP. CODES R. & REGS. § 142-2.2.

**WHEREFORE**, Plaintiffs and Class Members demand judgment against defendants in their favor and that they be given the following relief:

(a)    an order preliminarily and permanently restraining defendants from engaging in the aforementioned pay violations;

(b)    an award crediting Plaintiffs and Class Members for all hours worked;

(c)    an award of the value of Plaintiffs' and Class Members' unpaid wages and overtime;

(d)     liquidated damages under the FLSA equal to the sum of the amount of wages and overtime which were not properly paid to Plaintiffs and Class Members;

(e)     under N.Y. LAB. LAW § 198, an additional amount as liquidated damages up to one-hundred percent of the total amount of wages found to be due;

(f)     an award of reasonable attorneys' fees, expenses, expert fees and costs incurred in vindicating Plaintiffs' and Class Members' rights;

(f)     an award of pre- and post-judgment interest;

(g)     the amount equal to the value which would make Plaintiffs and Class Members whole for the violations; and

(h)     such other and further legal or equitable relief as this Court deems to be just and appropriate.

## JURY DEMAND

Plaintiffs demand a jury to hear and decide all issues of fact in accordance with Federal Rule of Civil Procedure 38(b).

Dated: August 13, 2012

**THOMAS & SOLOMON LLP**

By:     /s/  Jessica L. Witenko
        J. Nelson Thomas, Esq.
        Michael J. Lingle, Esq.
        Jessica L. Witenko, Esq.
        *Attorneys for Plaintiffs and Class Members*
        693 East Avenue
        Rochester, New York 14607
        Telephone:  (585) 272-0540
        nthomas@theemploymentattorneys.com
        mlingle@theemploymentattorneys.com
        jwitenko@theemploymentattorneys.com